KASOWITZ BENSON TORRES LLP

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

MARC E. KASOWITZ
DIRECT DIAL: (212) 506-1710
DIRECT FAX: (212) 835-5010
MKASOWITZ@KASOWITZ.COM

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

April 23, 2021

**VIA ECF**
The Honorable John G. Koeltl
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *Roche Cyrulnik Freedman LLP v. Jason Cyrulnik*, No. 1:21-cv-01746

Dear Judge Koeltl:

We represent Defendant Jason Cyrulnik in this action and write, pursuant to Rule II.B. of the Court's Individual Practices, to request a pre-motion conference in connection with our anticipated motion to dismiss the Complaint filed by Roche Cyrulnik Freedman LLP ("RCF").

This action involves a dispute concerning the governance and prospective dissolution of RCF, a limited liability partnership organized under the laws of Florida, which should be resolved by the Florida court in which Cyrulnik has commenced a parallel action.

In January 2020, Cyrulnik left his equity partnership at Boies Schiller Flexner LLP, where he had practiced for 15 years, to found RCF, together with Kyle Roche and Devin Freedman. Cyrulnik held 27% of RCF's equity and was responsible for generating most of the firm's revenue. In February 2021, Roche, Freedman, and certain other RCF partners (the "Conspiring Partners") secretly conspired to unlawfully oust Cyrulnik from RCF so that they could seize a cryptocurrency asset that had been expressly pledged to Cyrulnik at the time of the firm's founding and which had dramatically appreciated in value in the preceding days to approximately $60 million. The parties' partnership agreement expressly precluded the removal of a founding partner without cause, so the Conspiring Partners secretly met to fabricate a non-existent "cause" for the purported termination – in essence, that Cyrulnik had raised his voice during two telephone calls the prior year – and then claimed that they could seize and split amongst themselves Cyrulnik's assets. After we advised the Conspiring Partners that we intended to file a lawsuit absent confirmation that they would honor their financial commitments, they proposed to schedule a settlement phone call on Sunday, February 28. That stall tactic was laid bare when, instead of the Sunday call they proposed, they raced to the courthouse to file this anticipatory declaratory action that Saturday, February 27.

On March 9, 2021, Cyrulnik commenced an action against RCF and the Conspiring Partners in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, captioned *Cyrulnik v. Roche, et. al.*, Case No: 2021-005837-CA-01 (the "Florida Action"), seeking dissolution of RCF – a claim that courts have made clear should be resolved only by the Florida courts – as well as asserting related claims for monetary damage.

As discussed below, the Complaint should be dismissed because this Court lacks subject matter jurisdiction and, at a minimum, dismissed (or stayed) in favor of the Florida Action because Florida is the appropriate forum to adjudicate this dispute.

**A. <u>The Court Lacks Subject Matter Jurisdiction (FRCP 12(b)(1))</u>**

As a threshold matter, there is no diversity jurisdiction here because Cyrulnik and RCF are not citizens of different states. For purposes of diversity jurisdiction, a limited partnership is considered to be a citizen of every state of which one or more of its partners is a citizen. *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 615 (2d Cir. 2019). Federal courts therefore lack diversity jurisdiction over an action between a limited partnership and one of its members, like the one here. *Schibuk v. Poinciana-Regency Ltd. P'ship*, 764 F. Supp. 878, 881 (S.D.N.Y. 1991) ("[T]here can be no diversity of citizenship in a suit by a limited partner against the limited partnership . . . since plaintiff's citizenship would be present on both sides of the case.").

Conclusive documentary evidence, which may be considered on the contemplated motion proves this. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Diversity jurisdiction is assessed as of the date the Complaint was filed. *Dumann Realty, LLC v. Faust*, 2013 WL 30672, at *4 (S.D.N.Y. Jan. 3, 2013). On March 3, 2021 – *four days after* Plaintiff filed this action – Plaintiff sent a letter to Cyrulnik notifying him of his purported "termination" from RCF "effective March 1, 2021" – *two days after* the Complaint was filed. This negates RCF's attempt to manufacture diversity jurisdiction on the theory that the Conspiring Partners had removed him from the firm before this action was commenced.

Even if the Conspiring Partners had not conceded that they purported to terminate Cyrulnik after the filing of the Complaint, Plaintiff's theory impermissibly asks this Court to presume the ultimate relief they seek – that is, to presume that the termination was valid (which it was not).[1] This upends the applicable standard. It is well-settled that, to establish complete diversity, plaintiff in its complaint must "negative the possibility" that the plaintiff and any defendant share citizenship. *Goodman v. Polyvinyl Films*, 1999 WL 33030, at *1 (S.D.N.Y. Jan. 21, 1999); *see also Baer v. United Services Auto. Ass'n*, 503 F.2d 393, 397 (2d Cir. 1974) (same); *Herrick Co. v. SCS Commc'ns*, 251 F.3d 315, 322–23 (2d Cir. 2001) (plaintiff has the burden). Here, not only does the Complaint not "negative the possibility" that Cyrulnik's purported removal was not valid, but on the contrary, it expressly alleges that a "*material and genuine controversy*" exists "as to *whether* [Cyrulnik] was removed from the RCF partnership for cause." (Complaint ¶ 78). Courts in this district have rejected attempts to assert declaratory judgment actions to end run around the diversity statute – as RCF attempts to do here. *See, e.g.*, *Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443, 451 (S.D.N.Y. 2014) ("[W]here Plaintiff's membership and entitlement to the defendant LLC's assets is in dispute, the Court is hesitant to evaluate a declaratory judgment claim where doing so would provide an end run around the diversity statute.").

**B. <u>Relevant Abstention Doctrines Mandate Dismissal, or in the Alternative a Stay</u>**

Beyond these jurisdictional defects, three independent abstention doctrines compel dismissal (and at a minimum a stay) of this declaratory relief action in favor of the parallel Florida

[1] Though not necessary for purposes of this motion, the Complaint also fails to state a claim for two reasons: *First*, the pretextual cause allegations do not constitute cause under Florida law. *Second*, even if the purported cause removal had been proper (it was not), the agreement unambiguously grants Cyrulnik the assets at issue in any event.

Action, which is the appropriate forum for adjudicating (and with respect to certain core claims, the *only* forum that should adjudicate) this dispute.

*First*, under the *Brillhart* abstention doctrine, federal courts abstain from adjudicating declaratory relief actions where a "parallel state . . . court proceeding is addressing the same issues with the same parties" to ensure that federal courts do not engage in "gratuitous interference" with state courts. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995). In assessing the application of *Brillhart*, courts consider whether: (1) a judgment will serve a useful purpose in clarifying or settling the legal issues involved; (2) a judgment would finalize the controversy and offer relief from uncertainty; (3) the proposed remedy is being used merely for procedural fencing or a race to *res judicata*; (4) the declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state court; and (5) there is a better or more effective remedy. *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 105 (2d Cir. 2012). Each of these factors weighs in favor of abstention because the declaratory relief sought in this action will be adjudicated in the Florida Action, together with the multiple Florida state-specific legal issues concerning the dissolution of a Florida limited partnership that courts make clear should be adjudicated by the Florida courts, not here.

*Second*, the Court should decline jurisdiction under the *Burford* abstention doctrine as well, which provides that a federal court should abstain "to avoid needless disruption of state efforts to establish coherent policy in an area of comprehensive state regulation." *Friedman v. Revenue Mgmt. of New York, Inc.*, 38 F.3d 668, 671 (2d Cir. 1994). Here, Florida comprehensively regulates limited liability partnerships, *see* Fla. Stat. § 620.1101, and there is no need for this Court to do so and usurp the role of the Florida courts. Moreover, to the extent the Court declines to dismiss (or stay) Plaintiff's declaratory relief claim, Defendant would effectively be forced to assert his pending claims, including for dissolution of the Florida partnership and his other state-law claims, as compulsory counterclaims in this action, which would then compel dismissal (or a stay) in any event, as the Second Circuit is clear that "every federal court that has addressed the issue of dissolving state corporations has either abstained or noted that abstention would be appropriate." *Friedman*, 38 F.3d at 671; *see also Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289, 296 n.6 (E.D.N.Y. 1999) (noting that federal courts "have almost uniformly ruled that even if federal courts have subject matter jurisdiction over claims for corporate dissolution, they should abstain from exercising it").

*Third*, the Court should also decline jurisdiction under the *Colorado River* abstention doctrine because: (i) there is a parallel state action between the same parties that will fully resolve the relief sought in this declaratory judgment action; (ii) adjudicating the declaratory action in this Court will result in piecemeal litigation; and (iii) it is undisputed that Florida state law governs the action. *See, e.g.*, *Lawrence Moskowitz CLU v. ALP,* 830 F. App'x 50, 52–53 (2d Cir. 2020).

Should the Court decline to dismiss the action, it should at a minimum stay the action pending resolution of the Florida Action. *See*, *e.g.*, *Knox v. Zarzeski*, 2006 WL 8461751, at *6 (S.D.N.Y. July 11, 2006) (staying action pending outcome of state dissolution proceeding in the interest of "comity and judicial economy").

Respectfully,
/s/ Marc E. Kasowitz
Marc E. Kasowitz

cc.: All Counsel of Record (via ECF)