# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL   212.763.0884
DIRECT EMAIL  shecker@kaplanhecker.com

May 10, 2021

**VIA ECF**

The Honorable John G. Koeltl
United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

                Re:    *Roche Freedman LLP v. Jason Cyrulnik*, No. 1:21-cv-1746 (S.D.N.Y.)

Dear Judge Koeltl:

       We represent Plaintiff Roche Freedman LLP ("RF") in this matter and write in response to Defendant Jason Cyrulnik's April 23, 2021 letter seeking permission to file a motion to dismiss. (*See* Dkt. No. 9.)

       Cyrulnik mischaracterizes the relevant facts. As detailed in the complaint, RF's partners removed Cyrulnik for cause because he engaged in a pattern of increasingly abusive and obstructive behavior that materially impaired RF's ability to carry on its business. The complaint describes well-documented instances of this conduct, which included a pattern of verbal abuse, screaming fits of rage, belittling attempts to increase firm diversity, single-minded pursuit of his own enrichment at RF's expense, and causing RF associates to threaten to quit if they had to continue working with him. Cyrulnik's allegation – that the entire firm of partners and associates fabricated a unified story of his abusive and destructive behavior, and conspired to remove him, all because of a highly volatile cryptocurrency asset that RF has not even completely earned – is simply absurd.

      After being notified of his removal, Cyrulnik refused to leave the partnership unless RF paid him millions of dollars beyond what he was owed. He later informed RF that these demands were "non-negotiable." Accordingly, on February 27, 2021, RF commenced this action seeking a declaration that Cyrulnik's removal was proper and determining the compensation he's entitled to due to that involuntary withdrawal.

      Ten days later, Cyrulnik filed his own action in Florida state court (the "Florida Action"), asserting nine separate counts premised on his claims that he was not properly terminated and is entitled to compensation beyond what is contemplated by the founding partners' initial agreements. Incredibly—and notwithstanding that five of the six founding partners, including Cyrulnik, reside

**KAPLAN HECKER & FINK LLP**

in either New York or New Jersey—Cyrulnik now seeks to dismiss RF's earlier-filed action in favor of his later-filed one. His arguments are fatally flawed and should be rejected.

### A. The Court Has Subject-Matter Jurisdiction

Cyrulnik's argument that the Court lacks subject-matter jurisdiction is baseless. RF and Cyrulnik are currently, and were at the time the complaint was filed, citizens of different states.

As detailed in the complaint, Cyrulnik was removed for cause on February 12, 2021, more than two weeks before RF commenced this action on February 27. (*See* Dkt. No. 1-4.) Although Cyrulnik claims that "[c]onclusive" documentary evidence "proves" that he was not removed until March 1, the "evidence" he references is an administrative letter regarding the termination of his *benefits*. (*See* Ex. A.) Consequently, RF is (both now and when the complaint was filed) a citizen of New York and Florida (where its partners reside) and Cyrulnik is a citizen of New Jersey.

Nevertheless, Cyrulnik asserts that for the Court to exercise subject-matter jurisdiction, RF must "negative the possibility" that RF is a New Jersey citizen (*i.e.*, RF must prove at this stage that Cyrulnik was properly removed for cause), and that, by invoking this Court's diversity jurisdiction, RF "impermissibly asks this Court to presume the ultimate relief they seek – that is, to presume that the termination was valid." The law says otherwise. "[W]here the overlap between jurisdictional and merits evidence 'is such that fact-finding on the jurisdictional issue will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury, then the Court must leave the jurisdictional issue for the trial.'" *Wiwi v. Royal Dutch Petroleum Co.*, 626 F. Supp. 2d 377, 383 (S.D.N.Y. 2009) (quoting *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006)).

Courts in the Second Circuit have repeatedly explained that "[w]here jurisdiction is 'so intertwined with the merits that its resolution depends on the merits,' the court should use the standard 'applicable to a motion for summary judgment' and dismiss *only where 'no triable issues of fact' exist*." *Evans v. SSN Funding, LP*, 2017 WL 3671180, at *5 (S.D.N.Y. Aug. 23, 2017) (emphasis in original) (quoting *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 467 (S.D.N.Y. 2001)). Courts apply this standard where the issue of whether diversity jurisdiction exists overlaps with the merits of the underlying claim. For example, in *Inteliclear, LLC v. Victor*, the court declined to dismiss a case for lack of diversity jurisdiction where the plaintiff LLC provided "sufficient evidence to create a genuine dispute of material (jurisdictional) facts" that defendant was properly dissociated as a member. 2016 WL 5746349, at *5-6 (D. Conn. Oct. 3, 2016). Thus, Cyrulnik is wrong in suggesting that the existence of a "material and genuine controversy" regarding his removal *destroys* jurisdiction; to the contrary, such a dispute *establishes* jurisdiction.

Although Cyrulnik accuses RF of attempting "to end run around the diversity statute," the lone case cited, *Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443 (S.D.N.Y. 2014), is irrelevant. There, the plaintiff asserted state-law claims premised on facts under which the court would lack diversity jurisdiction, and sought to manufacture jurisdiction by tacking on a declaratory judgment claim premised on a dispute over those same facts. *See id.* at 451-52. Here, in contrast, the entire action is premised on facts under which the Court has diversity jurisdiction—*i.e.*, that Cyrulnik was properly removed as an RF partner. *Compare Symes v. Harris*, 472 F.3d 754, 758-59 (10th Cir. 2006) (diversity), *with Hogan v. Galvanting Prods., LLC*, 2013 WL 4544127, at *3 (D. Neb. Aug. 26, 2013) (no diversity).

KAPLAN HECKER & FINK LLP

3

### B. Abstention is not appropriate here

In an act of gamesmanship, Cyrulnik seeks to stay or dismiss this action in favor of his own later-filed action, notwithstanding that he—along with almost all of the relevant witnesses—live more than 1,000 miles away from his preferred forum.[1] Cyrulnik seeks abstention on three grounds (*Wilton*, *Burford*, and *Colorado River*). None are applicable.

*First*, *Wilton* abstention fails both as a matter of law and because RF intends to amend to assert damages claims. Specifically, RF intends to amend its complaint to include claims for damages stemming from, *inter alia*, Cyrulnik's breach of fiduciary duties owed to RF. This alone precludes *Wilton* abstention. *Kanciper v. Suffolk Cty. Soc'y for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 93 (2d Cir. 2013) ("We have stated before, and we now hold, that *Wilton* does not apply where, as here, a plaintiff does not seek purely declaratory relief, but also seeks damages caused by the defendant's conduct." (alterations omitted)).

But Cyrulnik's *Wilton* argument fails even without such an amendment. Under Second Circuit authority, a district court properly rejects an argument for *Wilton* abstention where the requested declaratory judgement "will serve a useful purpose in clarifying or settling the legal issues involved" and that "judgment would finalize the controversy and offer relief from uncertainty." *Wilmington Tr., N.A. v. Estate of McClendon*, 287 F. Supp. 3d 353, 366 (S.D.N.Y. 2018). Here, the requested declaratory judgment would provide RF and Cyrulnik with clarity regarding what RF is obligated to pay Cyrulnik and resolve the claims Cyrulnik asserted in the Florida Action; for example, a declaratory judgment finding Cyrulnik was properly removed from RF—and therefore only entitled to the compensation contemplated by Paragraph VI(C) of the MOU—would doom Cyrulnik's conversion and breach of fiduciary duty claims. Moreover, the remaining factors relevant to the *Wilton* inquiry cut against abstention: RF's decision to sue Cyrulnik in both parties' "home forum" is clearly proper; friction between sovereigns would not result from adjudicating this action because "this case centers on 'a question of contract interpretation that is well within the competency of this Court,'" not a complex state-law issue; and there is no evidence that litigating this action over 1,000 miles away from the parties' "home forum" could provide a "a better or more effective remedy." *Cont'l Cas. Co. v. Phoenix Life Ins. Co.*, 2020 WL 4586699, at *3-4 (D. Conn. Aug. 10, 2020).

*Second*, because Cyrulnik cannot overcome the "heavily weighted" balance "in favor of the exercise of jurisdiction" under *Wilton*, he cannot satisfy the more onerous *Colorado River* standard. *Niagara Mohawk Power*, 673 F.3d at 100-04.

*Third, Burford* abstention—which "is concerned with protecting complex state administrative processes from *undue* federal interference," such as where a plaintiff seeks to use a federal forum "to overturn a prior state court or agency determination," *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 170 (S.D.N.Y. 2012), *aff'd*, 742 F.3d 520 (2d Cir. 2013) (emphasis in original)—quite obviously does not apply. RF does not seek to overturn or interfere with any administrative proceedings; instead, it seeks resolution of the type of partnership dispute that federal courts

---

[1] Notably, controlling Florida precedent requires Cyrulnik's later-filed Florida state court action to be stayed pending resolution of this case. *Beckford v. Gen. Motors Corp.*, 919 So. 2d 612, 613 (Fla. 3d DCA 2006) ("It is well-settled that when a previously filed federal action is pending between substantially the same parties on substantially the same issues, a subsequently filed state action should be stayed pending the disposition of the federal action."). RF has already moved to stay the Florida action.

KAPLAN HECKER & FINK LLP

routinely adjudicate. *See Cohen v. Reed*, 868 F. Supp. 489, 498-99 (E.D.N.Y. 1994) (rejecting *Burford* argument in case that "essentially involve[d] a dispute concerning a fiduciary's conduct with respect to a limited partnership"); *see also, e.g.*, *Silverman v. Worsham Bros. Co., Inc.*, 625 F. Supp. 820, 826-27 (S.D.N.Y. 1986) (adjudicating Florida partnership dispute); *R4 Props. v. Riffice*, 2014 WL 4724860, at *2-11 (D. Conn. Sept. 23, 2014) (same). The possibility that Cyrulnik *might* later choose to assert a baseless counterclaim to dissolve RF neither changes that fact, nor provides a basis for abstention. *See Katin v. Apollo Sav.*, 460 F.2d 422, 424 n.5 (7th Cir. 1971) (rejecting abstention argument based on "the possibility of counterclaims").

Abstention doctrines represent "extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012). This case does not meet that narrow exception.

Respectfully,

Sean Hecker