Marc E. Kasowitz (mkasowitz@kasowitz.com)
Michael A. Hanin (mhanin@kasowitz.com)
Gavin D. Schryver (gschryver@kasowitz.com)
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel.:  (212) 506-1700
Fax:  (212) 506-1800

*Attorneys for Defendant Jason Cyrulnik*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROCHE CYRULNIK FREEDMAN LLP, | Civil Action No. |
| Plaintiff, | 21-cv-01746 (JGK) |
| v. | |
| JASON CYRULNIK, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JASON CYRULNIK'S**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY THIS ACTION**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 4

     A.    RCF's Egregious Scheme To Misappropriate Millions Of Dollars In
          Cryptocurrency And Other Assets Pledged To Cyrulnik ....................................... 4

     B.    RCF Engages In Sham Settlement Negotiations To Delay Cyrulnik's Filing
          Of The Florida Dissolution Action .......................................................... 7

     C.    RCF Purports To Terminate Cyrulnik After Filing Its Complaint ........................ 8

     D.    Cyrulnik Files The Florida Dissolution Action ...................................... 9

ARGUMENT ................................................................................................ 10

I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS
    ACTION ............................................................................................. 10

     A.    Legal Standard ................................................................................ 10

     B.    Cyrulnik Was Still A Partner Of RCF At The Time This Case Was
          Commenced ............................................................................... 10

     C.    The Purported Termination Was Improper And Void Ab Initio, In Any Event... 12

II.    THE COURT SHOULD DISMISS THIS ACTION IN FAVOR OF THE FLORIDA
    DISSOLUTION ACTION ....................................................................... 14

     A.    The Court Should Exercise Its Discretion And Decline To Hear This
          Improper Anticipatory Declaratory Judgment Action ......................................... 14

     B.    The Balance of the Convenience Weighs Heavily In Favor Of Dismissal .......... 16

III.    THE COURT SHOULD ABSTAIN FROM HEARING THIS CASE ........................... 16

     A.    The Court Should Abstain Under The *Wilton* Abstention Doctrine .................... 16

     B.    The Court Should Abstain Under The *Burford* Abstention Doctrine ................. 20

     C.    The Court Should Abstain Under The *Colorado River* Abstention Doctrine ....... 21

IV.    IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS ACTION IN
    FAVOR OF THE FLORIDA DISSOLUTION ACTION ................................................. 22

CONCLUSION ........................................................................................... 23

## TABLE OF AUTHORITIES

**Case(s)**                                                                                    **Page(s)**

*Cohen v. Rosicki, Rosicki & Assocs., P.C.,*
   897 F.3d 75 (2d Cir. 2018)..................................................................................................4

*Dish Network, L.L.C. v. Am. Broad. Companies, Inc.,*
   No. 12 CIV. 4155 LTS KNF, 2012 WL 2719161 (S.D.N.Y. July 9, 2012) .....................14, 15

*Dow Jones & Co., Inc. v. Harrods, Ltd.,*
   237 F. Supp. 2d 394 (S.D.N.Y. 2002)..............................................................................15, 19

*Dumann Realty, LLC v. Faust,*
   No. 09 Civ. 7651(JPO), 2013 WL 30672 (S.D.N.Y. Jan. 3, 2013) .................................. 10-11

*EMS Indus. Corp. v. Acciai Speciali Terni, USA, Inc.,*
   No. 99 CIV. 9050 (RWS), 2000 WL 101233 (S.D.N.Y. Jan. 26, 2000) ...............................22

*Feiwus v. Genpar, Inc.,*
   43 F. Supp. 2d 289 (E.D.N.Y. 1999) .....................................................................................20

*Friedman v. Revenue Mgmt. of New York, Inc.,*
   38 F.3d 668 (2d Cir. 1994)......................................................................................................20

*Gibbs & Hill, Inc. v. Harbert Int'l, Inc.,*
   745 F. Supp. 993 (S.D.N.Y. 1990) .........................................................................................16

*Goodman v. Polyvinyl Films, Inc.,*
   No. 95 CIV. 3365 PKL, 1999 WL 33030 (S.D.N.Y. Jan. 21, 1999) ......................................13

*Grupo Dataflux v. Atlas Glob. Grp. L.P.,*
   541 U.S. 567 (2004)................................................................................................................11

*Hai Yang Liu v. 88 Harborview Realty, LLC,*
   5 F. Supp. 3d 443 (S.D.N.Y. 2014) .......................................................................................13

*Hernandez-Avila v. Averill,*
   725 F.2d 25 (2d Cir. 1984)......................................................................................................11

*Hertz Corp. v. Friend,*
   559 U.S. 77 (2010) .................................................................................................................10

*In re Citigroup Erisa Litig.,*
   104 F. Supp. 3d 599 (S.D.N.Y. 2015).......................................................................................6

*Kahn v. Oppenheimer & Co.,*
   No. 08 CIV. 11368 (JGK), 2009 WL 4333457 (S.D.N.Y. Dec. 1, 2009)...........................4, 11

*Knox v. Zarzeski*,
  No. 05 Civ. 10694 (CLB)(MDF), 2006 WL 8461751 (S.D.N.Y. July 11, 2006)...................22

*Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*,
  830 F. App'x 50 (2d Cir. 2020) .........................................................................................21

*Lawrence Moskowitz CLU. Ltd. v. ALP, Inc.*,
  No. 19 CIV. 3868 (ER), 2020 WL 1503558 (S.D.N.Y. Mar. 30, 2020)................................21

*Liberty Mut. Ins. Co. v. Hurlbut*,
  585 F.3d 639 (2d Cir. 2009)...............................................................................................20

*Louise Paris, Ltd. & Ross Stores Inc., v. Fabric Selection, Inc.*,
  No. 17 CIV 5697 (JSR), 2017 WL 4776734 (S.D.N.Y. Oct. 6, 2017) ............................ 14-15

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000)..................................................................................................4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ...............................................................................................................21

*Mouchantaf v. Int'l Modeling & Talent Ass'n*,
  368 F. Supp. 2d 303 (S.D.N.Y. 2005)..................................................................................22

*Nat'l Union Fire Ins. Co. v. Int'l Wire Group, Inc.*,
  No. 02 Civ. 10338, 2003 WL 21277114 (S.D.N.Y. June 2, 2003)........................................15

*Pabco Const. Corp. v. Allegheny Millwork PBT*,
  No. 12 CIV 7713, 2013 WL 1499402 (S.D.N.Y. Apr. 10, 2013)...........................................22

*Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*,
  943 F.3d 613 (2d Cir. 2019)................................................................................................10

*Raharney Cap., LLC v. Cap. Stack LLC*,
  138 A.D.3d 83 (1st Dep't 2016) .........................................................................................18

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000)....................................................................................................9

*S & S Candies, Inc. v. Hershey Foods Corp.*,
  No. 00 CIV 5243 (DLC), 2000 WL 1425092 (S.D.N.Y. Sept. 26, 2000) ............................15

*Schibuk v. Poinciana-Regency Ltd. P'ship*,
  764 F. Supp. 878 (S.D.N.Y. 1991) ......................................................................................10

*TIG Ins. Co. v. Fairchild Corp.*,
  No. 07 CIV. 8250 (JGK),
  2008 WL 2198087 (S.D.N.Y. May 27, 2008) .........................................3, 16, 17, 18, 19, 22

*Wilton v. Seven Falls Company*,
   515 U.S. 277 (1995)..................................................................................3, 16, 17, 19

**<u>Statutes and Rules</u>**                                                   **<u>Page(s)</u>**

28 U.S.C. § 2201, *et seq*.......................................................................................1

28 U.S.C. § 1332..................................................................................................10

Florida Statute § 620.870...................................................................................9, 17

Florida Statute § 620.8405................................................................................9, 17

Florida Statute § 620.8801................................................................................9, 17

Florida Statute § 620.1101, *et seq*......................................................................20

Federal Rule of Civil Procedure 12(b)(1) ..............................................................1, 4

22 NYCRR Part 1200, Rule 7.5.............................................................................12

Defendant Jason Cyrulnik respectfully submits this memorandum of law in support of his motion, pursuant to Federal Rule of Civil Procedure 12(b)(1), the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and multiple abstention doctrines, to dismiss the complaint filed by Plaintiff Roche Cyrulnik Freedman LLP ("RCF") or, in the alternative, stay this action in favor of a related action pending in Florida state court (the "Motion").[1]

## PRELIMINARY STATEMENT

This is a textbook anticipatory declaratory judgment action filed to preempt Cyrulnik's comprehensive action pending in Florida state court, following an egregious, pretextual scheme perpetrated by certain of RCF's partners, who have attempted to misappropriate for themselves Cyrulnik's interest in valuable assets of the firm he co-founded and built, including an enormously valuable cryptocurrency that exponentially increased in value to more than $250 million only days before these partners deployed their scheme.

In February 2021, the Conspiring Partners (defined below) suddenly informed Cyrulnik that, at a secret meeting held without even notifying two of the firm's seven equity partners (comprising nearly 30% of the firm's equity), they had voted to "remove" him from the firm and asked him to agree to a confidential mediation to resolve the splitting of the firm.  Cyrulnik told the Conspiring Partners that a prerequisite for any discussion of splitting the firm was a commitment to remit all of the consideration and assets that were guaranteed to him under the parties' agreements, and that, short of that commitment, he would commence litigation.  The Conspiring Partners sought to delay Cyrulnik's impending legal action by stringing him along for more than a week, ultimately proposing a Sunday follow-up date for a settlement discussion

---

[1]  RCF's complaint (the "Complaint" or "Compl.") is attached as Exhibit 1 to the accompanying Declaration of Marc E. Kasowitz, dated June 11, 2021 ("Kasowitz Decl.").  Citations to "Ex. __" refer to exhibits attached to the Kasowitz Decl.

between Cyrulnik's counsel and the firm's newly retained litigation counsel.  They then secretly filed this action on Saturday night – the evening before the Sunday settlement meeting they had set – in an effort to win some manufactured "race to the courthouse" and preclude Cyrulnik from pursuing claims in Florida state court, the appropriate forum to dissolve the Florida partnership and compensate Cyrulnik for the damages their egregious misconduct had caused.  This improper, anticipatory declaratory judgment action is nothing more than the product of that procedural gamesmanship, which in and of itself warrants dismissal pursuant to two universally recognized exceptions to the "first-filed" rule.

Several additional and independent reasons compel dismissal as well.  As a threshold matter, this Court lacks subject matter jurisdiction.  Indisputable documentary evidence (and common sense) establishes that there is no diversity between the Plaintiff (Roche **Cyrulnik** Freedman LLP) and the Defendant (RCF's named partner, Jason **Cyrulnik**).  To the extent RCF argues that this Court is permitted to adjudicate this case based on the assumption that it *may* prevail on its request for a declaration that Cyrulnik was properly removed for cause (*i.e.*, the only way RCF even argues diversity here), it is wrong.  Such end-runs around diversity jurisdiction are not permitted, particularly where it concerns declaratory claims, because it requires this Court to assume the merits of the core and ultimate issues in dispute at the outset and creates a "heads I win, tails you lose" situation:  if this Court finds for Cyrulnik at the conclusion of this case, it would be forced to hold that it lacks jurisdiction to make that very finding, mooting the entirety of the litigation and sending the parties back to square one.

Even if this Court did have jurisdiction, moreover, it should abstain from exercising it. Three independent abstention doctrines compel dismissal of this anticipatory declaratory judgment action in favor of the parallel litigation in Florida state court, which is the more comprehensive

and appropriate forum for adjudicating (and with respect to certain core claims, the *only* forum that should adjudicate) this dispute.

*First*, as this Court previously held in the factually analogous *TIG Insurance Company v. Fairchild Corporation* case, "[t]he facts of this case, even as presented in the plaintiff's Complaint, fall squarely within the type of situation contemplated by [the Supreme Court's decision in] *Wilton* [*v. Seven Falls Company*], and therefore call for abstention." Even were the Court to adjudicate RCF's declaratory judgment claim here, Cyrulnik's claims for dissolution of, or a buyout via disassociation from, RCF necessarily still would need to be adjudicated in the pending Florida Dissolution Action (defined below), which would constitute "just the sort of 'vexatious' and 'uneconomical' interference with a pending state court proceeding that *Wilton* and *Brillhart* seek to avoid." *Second*, under the *Burford* doctrine, this Court should abstain from asserting jurisdiction over the internal affairs of a Florida entity organized under Florida's laws, which is better and more appropriately addressed by Florida's regulatory schemes, especially in the complex and state-specific area of the dissolution, since the Second Circuit has noted that "every federal court that has addressed the issue of dissolving state corporations has either abstained or noted that abstention would be appropriate." *Third*, under the *Colorado River* doctrine, this Court should abstain from exercising jurisdiction over only a small piece of a much larger litigation that will ultimately be litigated before a Florida court.

**STATEMENT OF FACTS**[2]

A.    **RCF's Egregious Scheme To Misappropriate Millions Of Dollars
In Cryptocurrency And Other Assets Pledged To Cyrulnik**

Before co-founding RCF, Cyrulnik had served as a long-time equity partner at the prominent law firm Boies Schiller Flexner LLP ("BSF"), where he worked for fifteen years. Kyle Roche and Devin Freedman, both former associates of BSF, left BSF as junior lawyers (Roche a third-year associate and Freedman a junior counsel at the firm) in 2019 to start their own small firm focusing on cryptocurrency and other specialized practice areas. (Compl. ¶ 12.) Seeking to transform their small practice into a major litigation boutique by attracting a highly respected, experienced partner with an established, successful practice and cash flow to fund the firm's operations and to help procure lead counsel appointments in their class-action cases, Roche and Freedman heavily recruited Cyrulnik and ultimately induced him to leave BSF in December 2019 to co-found a new Florida law firm – RCF. (Compl. ¶ 15.)

Cyrulnik and the other RCF founding partners – Roche, Freedman, Amos Friedland, Nathan Holcomb, and Edward Normand (the "Conspiring Partners," and together with Cyrulnik, the "Founding Partners") – negotiated the terms of their new partnership, which they memorialized in a memorandum of understanding (the "Agreement"). (Compl. ¶ 17; Ex. 2 ¶ 29.) A linchpin to

---

[2]  Although many of the substantive allegations in RCF's Complaint are false, for purposes of this Motion, they are accepted as true to the extent they do not contradict documentary evidence, which may be considered on a motion to dismiss. Here, the Agreement and Side Letter (defined below), are attached to, or referenced in, the Complaint and accordingly may be considered on this Motion. *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018). And documentary evidence, such as emails and letters sent by RCF to Cyrulnik that are cited below, may be considered because (i) RCF relied on them in bringing suit, they are in RCF's possession and it has knowledge of them, *Kahn v. Oppenheimer & Co.*, No. 08 CIV. 11368 (JGK), 2009 WL 4333457, at *2 (S.D.N.Y. Dec. 1, 2009); and (ii) the Court "may refer to evidence outside the pleadings" in connection with a Rule 12(b)(1) motion to dismiss, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

the firm's formation, Cyrulnik was given the largest equity stake in the firm, together with certain guaranteed management rights, and certain fixed and guaranteed interests in firm assets, including RCF's pending and future contingency and alternative fee matters, among other things.  (Ex. 2 ¶ 30.)  One of the key assets allocated to Cyrulnik in the Agreement was cryptocurrency (referred to as "Tokens") that a firm client had agreed to convey to RCF as payment for the firm's ongoing work.  (Compl. ¶¶ 14, 20; Ex. 2 ¶ 32.)  The Agreement expressly granted each of the Founding Partners a fixed allocation of the Tokens, as follows:  Freedman, 32%; Roche, 28%; Cyrulnik, 25%; and Normand, Friedland, and Holcomb, 5% each.  (Ex. 2 ¶ 32.)

Along with the Agreement, Cyrulnik entered into a side letter (the "Side Letter") with Roche and Freedman to address two primary issues:  (i) certain of the parties' rights with respect to the firm's name, and (ii) the allocation of interests in a specific contingency matter that was excluded from RCF's equity and compensation model.  (Ex. 2 ¶ 36.)  Pursuant to the Side Letter, Roche agreed to pay Cyrulnik $850,000 in exchange for Cyrulnik allowing the junior lawyer to list himself as the first named partner of RCF.  (*Id.*)  The Side Letter also granted Cyrulnik a fixed and guaranteed 25% interest in all recoveries realized from the specified contingency matter.  (*Id.*)

In the first year of the firm's existence, Cyrulnik was RCF's linchpin, bringing in the overwhelming majority of its core clients and managing most of the firm's revenues and its largest litigations.  His robust practice – which RCF and the Conspiring Partners needed to legitimize the firm and to sustain the firm until the contingency and other alternative fee arrangements matters could generate any significant revenue – singlehandedly accounted for more than 60% of the RCF's revenue and roughly 70% of the firm's profits in 2020  In addition, Cyrulnik's presence played a significant role in securing for the firm other benefits, like lead counsel appointments in

contingency class action cases, and in advising more junior lawyers like Freedman on various issues arising in some of their matters.

The firm grew steadily, and Cyrulnik met with Roche and Freedman continually through January 2021 to plan for administration of the firm and its cases over the next year.  In ▆▆▆ 2021, the value of the Tokens suddenly exploded, experiencing exponential growth that promised significant profit for the firm, and in particular its Founding Partners – including Cyrulnik, whose share of the Tokens was worth more than $60 million by mid-▆▆▆  Below is a chart of the Token's price between ▆▆▆▆▆▆▆▆▆▆▆ the day of the Conspiring Partners' secret meeting to expel Cyrulnik from the firm.[3]



On ▆▆▆ 2021 – just as the Tokens were reaching their peak value as shown on the above chart – the Conspiring Partners hand-picked certain partners to attend a secret meeting in

---

[3]  The Court can take judicial notice of such public pricing data.  *See In re Citigroup Erisa Litig.*, 104 F. Supp. 3d 599, 615-16 (S.D.N.Y. 2015) (taking judicial notice of stock prices).

which they voted to terminate Cyrulnik as a partner, purportedly for "cause," without notice or ever having even raised the prospect of such a proposal, based on their claim that Cyrulnik had raised his voice during two telephone conversations back in 2020.  (Compl. ¶ 66.)  Despite the express language in the Agreement unequivocally granting a list of guaranteed assets to Cyrulnik as inducement for leaving BSF to start the firm, the Conspiring Partners then proceeded to advance the spurious claim that Cyrulnik had somehow forfeited his interest in any assets of the partnership, including his $60 million share of the Tokens, which the Conspiring Partners intended to share amongst themselves.  (Compl. ¶¶ 76-77.)  They then informed the rest of the partners who had not been included in the conspiracy.

**B.     RCF Engages In Sham Settlement Negotiations To Delay Cyrulnik's Filing Of The Florida Dissolution Action**

Two days after the meeting, on ███████ 2021, the Conspiring Partners sent Cyrulnik an email, riddled with errors, misstatements, and mischaracterizations, notifying Cyrulnik of the Conspiring Partners' decision to purportedly remove him for "cause."  (Ex. 2 ¶ 72.)  In response, through counsel that he retained expressly to pursue this litigation, Cyrulnik placed the Conspiring Partners on notice that their actions were "in bad faith," in breach of their "contractual and fiduciary obligations to Cyrulnik and the firm's clients," and that he intended to hold them "liable for any resulting damage to Cyrulnik or his clients."  (*Id.* ¶ 79.).

The Conspiring Partners pressured Cyrulnik to agree to sign a confidential mediation and binding arbitration agreement to facilitate an "amicable" settlement that would involve re-division of some of his assets and rights under the Agreement.  (*Id.* ¶ 85.)  Cyrulnik told the Conspiring Partners that a necessary predicate for any discussion about splitting the firm was their commitment to provide him all of the compensation and assets he is owed under the Agreement.  (*Id.*)  On February 19, 2021, RCF and the Conspiring Partners inexplicably proposed

that Cyrulnik forego roughly $45 million in value by agreeing to give them three-quarters of his share of the Tokens, in addition to other rights and assets that belonged to him.  (*Id.* ¶ 86.)  Through counsel, Cyrulnik rejected the offer and told RCF and the Conspiring Partners that, if they did not commit to remitting to Cyrulnik all of the assets and interests that belonged to him pursuant to the parties' agreements, including his full share of the Tokens, Cyrulnik would be forced to commence litigation.  (*Id.*; Decl. ¶3; Exs. 3-4.)

Recognizing that Cyrulnik was on the brink of commencing litigation to enforce his rights, RCF and the Conspiring Partners' counsel, Sean Hecker, told Cyrulnik's counsel, Marc Kasowitz, that his clients were hoping to resolve the matter without the need for litigation, and, on February 26, 2021, proposed to speak again with Kasowitz on Sunday, February 28, 2021, expressly asking Kasowitz to wait until after the conclusion of the Jewish Sabbath that Cyrulnik and certain of the Conspiring Partners observe.  (Ex. 4.)  This turned out to be a bad-faith offer and an improper, deceitful stall tactic:  although they did not exchange a single additional communication, and notwithstanding their proposal to speak in furtherance of a potential resolution that Sunday, late on the night of Saturday, February 27, 2021, the Conspiring Partners caused RCF to commence this action.

RCF's Complaint contains a single claim for relief, seeking a declaration that the Conspiring Partners properly "removed" Cyrulnik and could keep his assets, including the compensation he had bargained for and was guaranteed under the parties' agreements. (Compl. ¶¶ 73-79.)

## C.   <u>RCF Purports To Terminate Cyrulnik After Filing Its Complaint</u>

On March 3, 2021, RCF's Director of Operations sent Cyrulnik a letter (the "Termination Letter") entitled "Termination Notification."  (Ex. 5.)  The Termination Letter states in the first

sentence "[t]his letter is regarding [Cyrulnik's] termination," and then states "[w]e are processing your termination with Roche Freedman LLP (formerly Roche Cyrulnik Freedman LLP) and Insperity PEO Services, L.P.[4] effective March 1, 2021," *i.e.*, two days after RCF filed the Complaint here. (*Id.* at p. 1.) The Termination Letter then explains the firm's termination process including the return of firm property, terminated employees' responsibility with regard to firm equipment, how to apply for unemployment, and information pertaining to benefits. (*Id.*) In other words, the Termination Letter served two purposes: (i) effecting the formal termination of Cyrulnik's employment from RCF (based on the earlier improper vote by the Conspiring Partners); and (ii) terminating Cyrulnik's (and his family's) medical and other benefits through Insperity.

## D.    Cyrulnik Files The Florida Dissolution Action

On March 9, 2021 – ten days after RCF commenced this action – Cyrulnik commenced an action against RCF and the Conspiring Partners in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "Florida Dissolution Action"). In the Florida Dissolution Action, Cyrulnik asserts a claim for dissolution of RCF – a Florida partnership – under Florida Statutes §§ 620.8405 and 620.8801; in the alternative, a claim demanding a buyout of his interests in the partnership pursuant to Florida Statute § 620.870; a claim for an accounting; and claims seeking damages based on RCF's and the Conspiring Partners' breach of contract, breach of the implied covenant, breach of fiduciary duties, conversion, unjust enrichment, and civil conspiracy. (Ex. 2 ¶¶ 85-141.)[5]

---

[4] Insperity is RCF's human resources service provider; the Termination Letter purported to, among other things, terminate Cyrulnik's tenure at RCF and his family's medical benefits. (Ex. 5.)

[5] The Court can take judicial notice of this complaint "as a public record." *Rothman v. Gregor*, 220 F.3d 81, 91-92 (2d Cir. 2000).

## ARGUMENT

**I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION**

Plaintiff's sole asserted basis for this Court's jurisdiction over this action is diversity under 28 U.S.C. § 1332.  (Compl. ¶ 9.)  But Plaintiff "Roche **Cyrulnik** Freedman LLP" and Defendant "Jason **Cyrulnik**" are not (and cannot possibly be) citizens of different states, and the Court therefore lacks jurisdiction.

### A.    Legal Standard

Diversity jurisdiction under 28 U.S.C. § 1332 lies only "if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State."  *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) (citation omitted).  In asserting an action based on 28 U.S.C. § 1332, "[t]he burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it" – here, RCF, as the plaintiff that commenced this case.  *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).  "When challenged on allegations of jurisdictional facts, a party must support its allegations by competent proof."  *Id.*

### B.    Cyrulnik Was Still A Partner Of RCF
At The Time This Case Was Commenced

For purposes of diversity jurisdiction, a limited liability partnership is considered to be a citizen of every state of which one or more of its partners is a citizen.  *Platinum-Montaur Life Scis.*, 943 F.3d at 615.  Federal courts therefore lack diversity jurisdiction over an action between a limited liability partnership and one of its members, like the one here.  *Schibuk v. Poinciana-Regency Ltd. P'ship*, 764 F. Supp. 878, 881 (S.D.N.Y. 1991).

Diversity jurisdiction is assessed as of the date a complaint is filed and an action commenced.  *See Dumann Realty, LLC v. Faust*, No. 09 Civ. 7651 (JPO), 2013 WL 30672, at *4

10

(S.D.N.Y. Jan. 3, 2013) (finding that diversity is assessed at the time the complaint is filed, and noting that, "*when [p]laintiffs brought this suit*, [plaintiff] . . . finds itself 'on both sides of the 'v.' sign' in [the] matter") (emphasis added); *Grupo Dataflux v. Atlas Glob. Grp. L.P.*, 541 U.S. 567, 570-71 (2004) (stating that it is "hornbook law" that federal jurisdiction "depends upon the state of things at the time of the action brought"); *Kahn*, 2009 WL 4333457, at *3 (dismissing for lack of jurisdiction even though subsequent events may have cured jurisdictional defects that existed when the complaint was filed).

Here, the indisputable and overwhelming evidence establishes that Cyrulnik was a partner of RCF at the time this action was commenced on February 27, 2021 – meaning that both he and RCF were considered residents of New Jersey, thus destroying diversity.  While the Conspiring Partners conspired and breached their duties in actions they took on ███████ 2021, they expressly concede that the purported termination was "effective March 1, 2021" – *two days after* the Complaint was filed.  (*See* Ex. 5 ("We are processing your termination with Roche Freedman LLP (formerly Roche Cyrulnik Freedman LLP) . . . effective March 1, 2021.").)

In fact, when RCF filed the Complaint, it expressly filed under the name Roche **Cyrulnik** Freedman LLP, and captioned the action as Roche **Cyrulnik** Freedman LLP v. **Cyrulnik**. Although RCF has since tried to unilaterally (and improperly) recast the caption as "*Roche Freedman LLP v. Jason Cyrulnik*," they cannot do so without authorization from this Court (*see Hernandez-Avila v. Averill*, 725 F.2d 25, 27 n.4 (2d Cir. 1984)), and either way it does not change the facts as they existed when this case was filed (which, as discussed above, is the only thing that matters in a diversity analysis).  Indeed, RCF's use of Cyrulnik's name in the caption would raise ethics concerns had his purported termination been effective prior to that time, since it would

involve the use of a trade name containing the name of an unaffiliated partner.  *See* 22 NYCRR Part 1200, Rule 7.5.

Faced with its fatal admission, RCF argued in response to Cyrulnik's pre-motion conference letter that the Court should read the Termination Letter to pertain solely to the termination of benefits, not the purported termination of Cyrulnik's status with the firm.  (Dkt. 12.) That contention flies in the face of reality and is belied by the text of Plaintiff's own Termination Letter, which is entitled "Termination Notification" (and not "Termination of Benefits Notification"), and expressly states that RCF is "***processing your termination***," with that "termination" to be "effective March 1, 2021."  (Ex. 5.)  Moreover, the Termination Letter addresses Cyrulnik's purported termination from *both* RCF (the entity of which Cyrulnik was a partner) *and* Insperity (the entity through which Cyrulnik and his family obtained their medical and other benefits).  (*Id.*)  If the Termination Letter were solely a "termination of benefits," it would have been limited to Insperity – there would be no need to reference Cyrulnik's termination from RCF.

In other words, while the Conspiring Partners conspired, voted, and egregiously breached their many duties on ▮▮▮▮▮▮ 2021, the "effective" date they selected for the object of their conspiracy – Cyrulnik's termination – was March 1, 2021.  Accordingly, at the time Plaintiff filed its Complaint, Cyrulnik was a partner of RCF, destroying diversity jurisdiction and requiring dismissal of this case.

### C.    The Purported Termination Was Improper And Void Ab Initio, In Any Event

In any event, RCF has failed to satisfy its burden of establishing diversity jurisdiction.  It is well-settled that, to establish complete diversity, a plaintiff's complaint must "negative the

possibility" that the plaintiff and any defendant share citizenship. *Goodman v. Polyvinyl Films, Inc.*, No. 95 CIV. 3365 PKL, 1999 WL 33030, at *1 (S.D.N.Y. Jan. 21, 1999).

Here, the crux of this case, and indeed the very declaration RCF seeks in its single cause of action, is *whether* Cyrulnik was properly terminated under the Agreement.   By relying exclusively on the fact that the Conspiring Partners properly "removed" Cyrulnik following their vote as the sole basis for carrying its burden of establishing diversity, RCF effectively asks this Court to decide the merits of this case – *i.e.*, whether RCF properly removed Cyrulnik notwithstanding the agreement's express requirement that a Founding Partner *cannot* be removed without cause – in its favor, prior to any discovery, through a jurisdictional ruling.   Circumventing the diversity statute is improper, particularly where, like here, the sole claim at issue is a declaratory judgment claim.   *See Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443, 451 (S.D.N.Y. 2014) ("[W]here Plaintiff's membership and entitlement to the defendant LLC's assets is in dispute, the Court is hesitant to evaluate a declaratory judgment claim where doing so would provide an end run around the diversity statute.").

RCF's attempted "end run around the diversity statute" would not only be improper, it would be fundamentally unfair because it creates a "heads I win, tails you lose" outcome where this Court would be precluded from ever ruling for Cyrulnik:  if the Court were to find at the end of this case that RCF's purported termination of Cyrulnik was improper and Cyrulnik remains a partner of the firm, it would, in the same breath, be forced to hold that it lacks jurisdiction to make such a finding, and would then be forced to dismiss the case.   Such a result would essentially require the parties to fully litigate the dispute in this forum only to have the case dismissed for lack of diversity jurisdiction and the parties would then have to re-litigate the same issues (in addition to others) in the Florida court.   Indeed, as discussed below, this fact by itself supports an order

dismissing (or at least staying) this case in favor of the Florida Dissolution Action, which is pending in a Court that indisputably has jurisdiction over the parties' dispute.  (*See infra* Section III.A.).

## II.    THE COURT SHOULD DISMISS THIS ACTION IN FAVOR OF THE FLORIDA DISSOLUTION ACTION

Independent of the Court's lack of subject matter jurisdiction, this Court should dismiss this action in favor of the Florida Dissolution Action under two exceptions to the "first-filed" rule: (1) "special circumstances" warrant giving priority to the second suit and (2) the "balance of convenience" favors the second-filed action.

### A.    The Court Should Exercise Its Discretion And Decline To Hear This Improper Anticipatory Declaratory Judgment Action

RCF has argued – both here and in Florida – that the "first-filed" rule mandates that this action should proceed and the Florida Dissolution Action should be stayed.  The opposite is true: the "anticipatory filing" exception warrants the immediate dismissal of this bad-faith anticipatory action.

"[T]he Second Circuit has held that the presumption of priority accorded the first-filed suit will give way … 'where "special circumstances" warrant giving priority to the second suit,' with such "special circumstances" expressly including the situation here, where "'the first-filed lawsuit is an improper anticipatory declaratory judgment action.'"  *Dish Network, L.L.C. v. Am. Broad. Companies, Inc.*, No. 12 CIV. 4155 LTS KNF, 2012 WL 2719161, at *2 (S.D.N.Y. July 9, 2012) (citation omitted); *see also Louise Paris, Ltd., v. Fabric Selection, Inc.*, No. 17 CIV. 5697 (JSR), 2017 WL 4776734, at *2 (S.D.N.Y. Oct. 6, 2017) (noting, in granting dismissal, that "[p]recedence is not afforded to a declaratory judgment action filed specifically to gain the 'home field advantage' over an imminent coercive suit").  Courts regularly exercise their discretion to dismiss

anticipatory declaratory actions like this one.  *See Nat'l Union Fire Ins. Co. v. Int'l Wire Group, Inc.*, No. 02 Civ. 10338, 2003 WL 21277114, at *6 (S.D.N.Y. June 2, 2003) ("Courts in the Second Circuit have repeatedly refused to exercise jurisdiction over declaratory actions motivated by a desire to wrest the choice of forum from the real plaintiff."); *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 440 (S.D.N.Y. 2002) (dismissing a first-filed anticipatory judgment complaint); *Dish Network*, 2012 WL 2719161, at *2 (same); *S & S Candies, Inc*. *v. Hershey Foods Corp.*, No. 00 CIV. 5243 (DLC), 2000 WL 1425092, at *1-2 (S.D.N.Y. Sept. 26, 2000) (same).

Here, RCF filed this action a few days before the Florida Dissolution Action was commenced, and won the race to the courthouse solely as a result of its own transparent gamesmanship – including by urging Cyrulnik not to commence litigation while the parties purportedly discussed a resolution to their dispute, including by scheduling a call with Cyrulnik's counsel to discuss such a resolution after the Jewish Sabbath (which the Conspiring Partners know Cyrulnik observes), solely as a stall tactic so that they could win the proverbial race to court. (Ex. 4.)  In case the facts were not obvious enough on their face, just a few weeks ago, Plaintiff expressly conceded to this Court that it filed this anticipatory declaratory action in response to – and to preempt – Cyrulnik's threats to file this action:  **"*[W]e filed suit in the face of threats to file suit by Mr. Kasowitz [Cyrulnik's counsel].*"**  (Ex. 6 at 13.)  And, consistent with the cases that are frequently held to be improper anticipatory filings, this action includes a solitary claim for declaratory judgment – no damages are sought, and there is no mention whatsoever of resolving outstanding issues regarding the dissolution of or disassociation from RCF, a Florida partnership. Accordingly, this is indisputably an improper anticipatory declaratory judgment action, and the Court should exercise its discretion and decline to hear it, either by dismissing or staying this action.  To rule otherwise would be to reward RCF for winning the "race to the courthouse," and

penalize Cyrulnik for attempting in good faith to resolve this dispute before filing suit.  *See S & S Candies, Inc*, 2000 WL 1425092, at *1-2 (S.D.N.Y. Sept. 26, 2000) (the exercise of the first-to-file doctrine would unfairly penalize the defendant, which attempted to resolve the dispute before filing suit).

### B.     The Balance of the Convenience Weighs Heavily In Favor Of Dismissal

The "balance of convenience" also heavily favors the Florida Dissolution Action.  In applying the "balance of convenience" exception, courts in this Circuit look to nine factors that are similar to the factors relevant to the Court's analysis under the *Wilton* abstention doctrine, described *infra*.  *See Gibbs & Hill, Inc. v. Harbert Int'l, Inc*., 745 F. Supp. 993, 996 (S.D.N.Y. 1990).  As discussed below, each of those factors favors dismissal of this action in favor of the Florida Dissolution Action.  *See* Section III.A, *infra*.

### III.    THE COURT SHOULD ABSTAIN FROM HEARING THIS CASE

Even if this Court had subject matter jurisdiction over this case (it does not), it should not exercise it in any event.   Three abstention doctrines compel dismissal of this anticipatory declaratory judgment action in favor of the parallel litigation pending in Florida, which is the more appropriate (and for the core claim, the *only*) forum for adjudicating this dispute.

### A.     The Court Should Abstain Under The *Wilton* Abstention Doctrine

In *Wilton v. Seven Falls Company*, the Supreme Court explained that the purpose of the Declaratory Judgment Act is to "place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants."  515 U.S. 277, 288 (1995).  Citing to *Wilton* and its progeny, in a case factually analogous to this action, this Court confirmed that, "[i]n the declaratory judgment context, the normal principle that federal courts

should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *TIG Ins. Co. v. Fairchild Corp*., No. 07 CIV. 8250 (JGK), 2008 WL 2198087 (S.D.N.Y. May 27, 2008) at \*2.   Under those considerations, "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Wilton*, 515 U.S. at 288.   That is precisely the situation here.

There are nine factors that courts – including this Court in *TIG* – utilize in deciding whether to abstain under *Wilton*:

> (1) the scope of the pending state proceeding and the nature of the defenses available there; (2) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding; (3) whether the necessary parties have been joined; and (4) whether such parties are amenable to process in that proceeding. . . . (5) avoiding duplicative proceedings; …(6) avoiding forum shopping. . . . (7) the relative convenience of the fora; (8) the order of filing; and (9) choice of law . . . .

*TIG Ins. Co.* 2008 WL 2198087 at \*2-3.   In assessing these factors, "[t]he general goal of the inquiry is to determine whether the question at issue in the federal suit 'can better be settled in the proceeding pending in the state court.'" *Id.* (quoting *Wilton*, 515 U.S. at 282).   The answer here is a resounding "yes" – the question raised by RCF in this case can better be settled in the Florida court, which has a vested interest in and is the proper court to adjudicate Cyrulnik's related claims for dissolution of the Florida partnership or, in the alternative, a buyout of his interests via disassociation under the same Florida statute, one of which is necessary given RCF's attempt to remove Cyrulnik.[6]

---

[6]   Either Cyrulnik was improperly removed for purported "cause," in which case RCF cannot practically carry on its business and needs to be dissolved by a Florida court pursuant to Florida Statutes §§ 620.8405 and 620.8801, or he was properly removed, in which case he is disassociated from the firm and entitled to a buyout pursuant to Florida Statute § 620.870 in any event.   Either way, this Florida partnership dispute is undoubtedly "better settled" by a Florida court.

*First*, because this case (like *TIG*) is an anticipatory declaratory judgment action and "another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court," abstention will avoid unnecessary meddling with the state court proceedings. *TIG Ins. Co.*, 2008 WL 2198087, at *3. Specifically, the issues in this case deal with the governance of a Florida limited liability partnership, and are "intimately tied to matters of state law which are being litigated in state court." *Id.* That is particularly true here where, as discussed above, Cyrulnik's claim for dissolution or dissociation should be adjudicated by a Florida court applying Florida statutes. *See Raharney Cap., LLC v. Cap. Stack LLC*, 138 A.D.3d 83, 86-87 (1st Dep't 2016) ("We agree with the near-universal view that the courts of one state do not have the power to dissolve a business entity formed under another state's laws.").

*Second*, the Florida Dissolution Action is "broader than the present suit" and "entirely subsumes this action, adding other parties and issues as well." *TIG Ins. Co.*, 2008 WL 2198087, at *3. All of the parties to this action are also parties to the Florida Dissolution Action, and all of the claims and issues present here can be adjudicated there as well. By contrast, the Florida Dissolution Action includes additional parties not present here (the Conspiring Partners), and Florida state law claims for dissolution or disassociation that cannot be resolved in this action, either.

*Third and fourth*, as noted above, this action does not include all of the necessary parties to resolve Cyrulnik's dispute. By contrast, as in *TIG*, "all of the parties here are also parties in the [Florida] Action. Therefore abstaining here avoids piecemeal and duplicative litigation and allows for all the parties' claims' to be resolved in the [Florida] Action." *Id.* at *4. The Florida Dissolution Action includes *eight* additional claims against *five* additional parties (the Conspiring Partners) who are not parties to this action.

*Fifth*, because this Court cannot wade into the dissolution or disassociation of a Florida limited liability partnership, the Florida Dissolution Action will *have* to proceed at some point, resulting in duplicative litigation, and creating the possibility of disparate results.

*Sixth*, as discussed above (*see supra* Section II.A), there is no doubt that Plaintiff was engaged in improper forum-shopping when it filed this anticipatory declaratory judgment.

*Seventh*, Florida is the more convenient forum.  As in *TIG*, "any convenience for the plaintiff [here, a Florida partnership] is substantially outweighed by the inconvenience to the other parties who would have to litigate the same issues in both this action and the [Florida] Action." *TIG Ins. Co.*, 2008 WL 2198087, at *4.

*Eighth,* as in *TIG*, RCF's technical filing of its complaint a mere ten days before Cyrulnik filed the Florida Dissolution Action should be afforded no deference.  *Id.* at *4 (noting that "priority in filing is mitigated by the fact that there was only a one week gap between" the actions). As this Court aptly noted in *TIG*, "there can be no mechanistic accrual of rights that attaches by reason of reaching the courthouse first, or indeed of engaging in a race at all."  *Id.* (quoting *Dow Jones & Co.*, 237 F. Supp. 2d at 443; *see also Wilton*, 515 U.S. at 279-80 (deciding to abstain despite a month gap).

*Ninth*, Florida law applies to RCF, a Florida partnership; to the extent any choice of law issues arise, the Florida court is best suited to decide them.

In short, consistent with this Court's conclusion in *TIG,* "the various individual factors that comprise the more fundamental *Wilton* question of whether the federal or state forum provides a more appropriate avenue of resolution, overwhelmingly favor abstaining in the present case and leaving the questions raised by the declaratory plaintiff to be resolved in the [state court] Action. Proceeding with the plaintiff's declaratory judgment action would be just the sort of 'vexatious'

and 'uneconomical' interference with a pending state court proceeding that *Wilton* and *Brillhart* seek to avoid." *TIG Ins. Co.*, 2008 WL 2198087, at *5.

**B.   The Court Should Abstain Under The *Burford* Abstention Doctrine**

The *Burford* abstention doctrine also warrants the same result.  This doctrine provides that a federal court should abstain "to avoid needless disruption of state efforts to establish coherent policy in an area of comprehensive state regulation." *Friedman v. Revenue Mgmt. of New York, Inc.*, 38 F.3d 668, 671 (2d Cir. 1994).  The Second Circuit has explained that courts evaluating *Burford* abstention consider three factors: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009) (citation omitted).

Each of those factors weighs heavily in favor of abstention here.  Florida comprehensively regulates its limited liability partnerships.  *See* Fla. Stat. Ann. § 620.1101, *et seq*.  Moreover, to the extent the Court declines to abstain, Defendant would effectively be forced to assert his pending claims, including for dissolution of a Florida partnership, as counterclaims in this action, which would then compel dismissal (or a stay) in any event, as the Second Circuit is clear that "every federal court that has addressed the issue of dissolving state corporations has either abstained or noted that abstention would be appropriate." *Friedman.*, 38 F.3d at 671; *see also Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289, 296 n.6 (E.D.N.Y. 1999) (noting that federal courts "have almost uniformly ruled that even if federal courts have subject matter jurisdiction over claims for corporate dissolution, they should abstain from exercising it").  Accordingly, the first and third factors of the *Burford* abstention doctrine warrant abstention.

**C.**    **The Court Should Abstain Under The *Colorado River* Abstention Doctrine**

Separately, the Court should also decline jurisdiction under the *Colorado River* abstention doctrine because (i) there is a parallel state action between the same parties that will fully resolve the relief sought in this declaratory judgment action; (ii) adjudicating the declaratory action in this Court will result in piecemeal litigation; and (iii) it is undisputed that Florida state law governs the action. *See, e.g.*, *Lawrence Moskowitz CLU. Ltd. v. ALP, Inc.*, No. 19 CIV. 3868 (ER), 2020 WL 1503558, at *8 (S.D.N.Y. Mar. 30, 2020), *aff'd sub nom. Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 F. App'x 50 (2d Cir. 2020) (dismissing a case which was "the classic example . . . where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties").

In deciding whether to dismiss a federal court action under *Colorado River* because of a parallel state-court litigation, courts consider the six-factor "exceptional circumstances" test. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983). The six factors are:  (1) assumption of jurisdiction over a property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the actions were filed; (5) whether state or federal law provides the rule of decision; and (6) whether the state court proceeding adequately protects the rights of the party seeking federal jurisdiction. *Id.* at 19-26.

Here, the second through sixth factors are essentially the same as the factors applied in connection with the *Wilton* doctrine, and, for the reasons set forth above, favor abstention. The Supreme Court has stated that "the most important factor in [its] decision to approve the dismissal [in *Colorado River*] was the 'clear federal policy . . . [of] avoidance of piecemeal adjudication . . . .'" *Id.* at 16. It is indisputable that the resolution of this action will resolve only a small portion of the larger issues in this case, and will not resolve Cyrulnik's core claims for dissolution of or

disassociation from a Florida partnership, which will necessitate duplication and present the distinct possibility of inconsistent outcomes. *See Mouchantaf v. Int'l Modeling & Talent Ass'n*, 368 F. Supp. 2d 303, 307 (S.D.N.Y. 2005) ("Since the New York and Arizona actions center on identical issues and are inextricably intertwined, the avoidance of piecemeal and duplicative litigation is a decisive factor favoring abstention in this case."); *see also Pabco Const. Corp. v. Allegheny Millwork PBT*, No. 12 CIV. 7713, 2013 WL 1499402, at *3 (S.D.N.Y. Apr. 10, 2013) (finding a stay appropriate where, among other things, there was a "strong likelihood of needless duplication of the state proceeding").

## IV.   IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS ACTION IN FAVOR OF THE FLORIDA DISSOLUTION ACTION

Although *Wilton* generally promotes staying, rather than dismissing, declaratory judgment claims "in order to preserve any of the plaintiff's claims that might not be resolved by the pending state proceeding," the case should be dismissed where, like here, "the entirety of the plaintiff's claim here also constitutes a defense in the" other action. *TIG Ins. Co.,* 2008 WL 2198087, at *5. That is precisely the situation here:  there is no contention that RCF's lone declaratory judgment cannot simply be asserted as a defense or even counterclaim in the Florida Dissolution Action, and so this case should be dismissed.  However, to the extent the Court is not inclined to dismiss this action, it should, at a minimum, stay this action pending a final decision from the Florida court in the interest of comity and judicial economy. *See, e.g., Knox v. Zarzeski*, No. 05 Civ. 10694 (CLB)(MDF), 2006 WL 8461751, at *6 (S.D.N.Y. July 11, 2006) (staying action pending outcome of state dissolution proceeding in the interest of "comity and judicial economy"); *EMS Indus. Corp. v. Acciai Speciali Terni, USA, Inc.*, No. 99 CIV. 9050 (RWS), 2000 WL 101233, at *2 (S.D.N.Y. Jan. 26, 2000) (staying action under *Colorado River*); *Pabco Const. Corp.*, 2013 WL 1499402, at *5 (same).

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action for lack of jurisdiction, abstain from exercising jurisdiction over this action, or, in the alternative, stay this action in favor of the Florida Dissolution Action.

Dated: June 11, 2021
      New York, New York               Respectfully submitted,

                                    KASOWITZ BENSON TORRES LLP

                                  By: */s/ Marc E. Kasowitz*
                                      Marc E. Kasowitz (mkasowitz@kasowitz.com)
                                      Michael A. Hanin (mhanin@kasowitz.com)
                                      Gavin D. Schryver (gschryver@kasowitz.com)
                                  1633 Broadway
                                  New York, New York 10019
                                  Tel.:    (212) 506-1700
                                  Fax:    (212) 506-1800

                                  *Attorneys for Defendant Jason Cyrulnik*

23

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that according to the word count feature of the word processing program used to prepare this brief, the brief contains 6,986 words (exclusive of the cover page, certificate of compliance, table of contents, and table of authorities), and complies with Local Civil Rule 11.1 of the Southern District of New York, as well as with this Court's Individual Practice Rule 2.D.

*/s/ Marc E. Kasowitz*
Marc E. Kasowitz
