# Exhibit 6

L5D1ROCC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  ROCHE CYRULNIK FREEDMAN LLP,

4               Plaintiff,

5          v.                            21 Civ. 1746 (JGK)

6  JASON CYRULNIK,

7               Defendant.              Remote Conference
   ------------------------------x

8                                       May 13, 2021
                                        3:33 p.m.
9
   Before:
10
                         HON. JOHN G. KOELTL,
11
                                        District Judge
12
                              APPEARANCES
13
   KAPLAN HECKER AND FINK LLP
14      Attorneys for Plaintiff
   BY:  SEAN HECKER, ESQ.
15
   ROCHE FREEDMAN, LLP
16      Attorneys for Plaintiff
   BY:  ERIC S. ROSEN, ESQ.
17
   KASOWITZ, BENSON, TORRES LLP
18      Attorneys for Defendant
   BY:  MARC E. KASOWITZ, ESQ.
19      KEVIN A. CYRULNIK, ESQ.
        GAVYN D. SCHRYVER, ESQ.
20

21

22

23

24

25

L5D1ROCC

1          (Case called)

2          THE COURT:  Who appears on behalf of the plaintiff?

3          MR. HECKER:  Your Honor, Sean Hecker from Kaplan

4     Hecker and Fink for plaintiffs, and with me is co-counsel Eric

5     Rosen of the Roche Freedman firm.

6          MR. ROSEN:  Good afternoon.

7          THE COURT:  Good afternoon.

8          Who appears for the defendant?

9          MR. KASOWITZ:  Your Honor, Marc Kasowitz from

10    Kasowitz, Benson, Torres, on behalf of defendant.

11         THE COURT:  Okay.  I've reviewed your correspondence.

12    Defendant wants to make a motion to dismiss or stay, lack of

13    jurisdiction, abstention.  Plaintiff says the motion has no

14    merit.  Parties have a right to make a motion.  There's nothing

15    that I can do to prevent parties from making motions.  You've

16    set out your respective positions.

17         One senses, reading the correspondence, that this is a

18    dispute that should or will eventually be settled.  You all can

19    spend your attorney's fees litigating the current motion or

20    devote yourselves to trying to settle the case.  As you know,

21    we have two ready alternatives -- one is the mediation panel;

22    the second is the magistrate judge.  It's Magistrate Judge

23    Netburn.  Third option, of course, is for you to hire a third

24    party and pay the third party to mediate the dispute.

25         So obviously, the defense has the right to make the

L5D1ROCC

1    motion, and then I'll eventually decide it.  It will take some

2    time.  It will take some time to make the motion; it will

3    certainly take some time for me to decide it.

4            I'm not going to stay this case certainly in favor of

5    a state court action in Florida that was filed subsequently.

6    So at the very least, the motion will be pending here.

7            I'm perfectly happy to listen to the parties as to

8    what they would like to say.  This is my first time to talk to

9    all of you.  So Mr. Hecker, briefly, do you want to describe

10   the case, then I'll ask Mr. Kasowitz to describe his motion,

11   and then you can respond.

12           MR. HECKER:  Happy to, your Honor.  This is an action

13   that our client brought for declaratory judgment that

14   Mr. Cyrulnik was properly removed from the partnership for

15   cause as a result of an escalating series of incidents over a

16   period of time that, frankly, interfered with the ability of

17   the firm to conduct its business and caused a number of

18   associates to quit, to threaten to quit the firm.

19           We've had discussions with Mr. Kasowitz.  We would

20   have been all too happy to continue to address this dispute

21   privately.  That wasn't the choice they wanted to make, so we

22   find ourselves here.  Mr. Cyrulnik was removed from the

23   partnership before we filed this action.  The action was

24   brought seeking a declaration that it was properly for cause.

25           THE COURT:  Right.  How was the removal from the

L5D1ROCC

1    partnership documented?

2              MR. HECKER:  With a vote of the partners and

3    notification to Mr. Cyrulnik on February 26th, I believe.  I

4    believe there's a communication to him in writing to that

5    effect, in advance of the filing of our action.  We're not here

6    trying to persuade the Court that Mr. Cyrulnik, you know,

7    shouldn't be entitled to make his motion, so I don't have any

8    more to say about that.

9              THE COURT:  What does the partnership agreement

10   provide with respect to termination of a partner?

11             MR. HECKER:  If it were only so easy, your Honor.  The

12   two equity partners who initially founded the firm, Kyle Roche

13   and Mr. Freedman, had a memorandum of understanding in place

14   that contemplated the execution of a partnership agreement.

15   That partnership agreement was never executed, and plaintiffs

16   would allege in part because of Mr. Cyrulnik's refusing to

17   really engage on the topic.  So the firm was operating on the

18   basis of an MOU that didn't spell this out in detail but

19   contemplated a later partnership agreement that was never

20   executed.  And I apologize.  To correct one issue, the

21   communication in writing to Mr. Cyrulnik came on February 12th.

22   I had the date wrong.

23             THE COURT:  Okay.  Mr. Kasowitz, what would you like

24   to tell me?

25             MR. KASOWITZ:  Just a few things, your Honor.

L5D1ROCC

1          First of all, I'm surprised by the statement by the

2     firm that the firm would have been happy to have continued

3     settlement discussions at the outset of this but that

4     Mr. Cyrulnik had chosen not to.  In fact, it's exactly the

5     opposite, your Honor.  On Friday, February 26th, we were

6     engaged with discussions with Mr. Hecker about the possibility

7     of trying to settle this, and in fact, Mr. Hecker said to me on

8     that day –– because we had conversations for two or three days,

9     and Mr. Hecker said to me on that day, well, Marc, why don't

10    we –– both of the clients on both sides observe the Sabbath so

11    they'll be incommunicado.  I will call you on Sunday morning,

12    on the 28th, and then we can continue these discussions.  And I

13    said, Fine, Sean, that would be fine with me.  And then on

14    Saturday night, before Sunday morning, they filed this action

15    that is now in front of your Honor peremptorily, and they filed

16    it as a declaratory judgment action, for some kind of purpose.

17    I'm not sure why.  But that's what ended the settlement

18    discussions here.

19          Look, your Honor, this is a situation where this

20    purported termination by the firm of Mr. Cyrulnik is pretextual

21    in every respect.  And what happened here, your Honor, was,

22    Mr. Cyrulnik left the partnership he had at Boies Schiller to

23    start this firm with Messrs. Freedman and Roche, and

24    Mr. Cyrulnik was overwhelmingly the rainmaker in this new firm.

25    He accounted for 70 percent of the billing, 70 percent of the

L5D1ROCC

1    profits during the year that they were in business together,

2    and to the extent that his partners had some contingency

3    matters and the like or other incentive-based matters that they

4    were bringing in, the understanding among them was that they

5    were all depending on Mr. Cyrulnik for the fees that were

6    keeping this firm running on a day-to-day basis.

7              Now it is true that Mr. Roche and Mr. Freedman had

8    some arrangement with a client which was going to be

9    compensating the firm in cryptocurrency, and what this case is

10   about, your Honor, is that when the cryptocurrency took a huge

11   spike, increase in value, then Messrs. Freedman and Roche

12   decided to try to get rid of Mr. Cyrulnik because they,

13   frankly, didn't want to pay him what the value of the asset was

14   under the partnership agreement they had.  Mr. Hecker said that

15   there was no partnership agreement.  In fact, there was a

16   memorandum of understanding.  And while that memorandum of

17   understanding did provide, among other things, that there would

18   be further terms to be worked out, it was very, very clear

19   indeed as to what assets the partners would have and what

20   shares of those assets the partners would have.

21             And what happened was that Mr. Freedman and Mr. Roche

22   then undertook to have Mr. Cyrulnik agree to take far less than

23   what he was entitled to under the memorandum of understanding,

24   and when he refused to do that, they held a meeting in which

25   they claimed to vote him out.  The meeting was a clandestine,

L5D1ROCC

1   secret meeting.  The partnership agreement provided very

2   clearly, your Honor, that named partners in the firm could not

3   be removed except by unanimous consent.  And of course there

4   was no unanimous consent to remove Mr. Cyrulnik, so what

5   Messrs. Freedman and Roche did was to come up with some

6   pretext.  And I'll tell you, your Honor, the pretext that they

7   came up with and what they claim qualifies as cause under this

8   partnership agreement are quite extraordinary.  In a letter

9   that was sent in February -- I think it was February 12th -- to

10  Mr. Cyrulnik, they said that, among other things, "your refusal

11  to participate in firm-related discussions in good faith and

12  instead consistently leveraging adversarial tactics like

13  temporizing," temporizing, your Honor, were what qualified as

14  good cause to fire the named partner and primary producer in

15  that law firm, who was responsible for 2/3 of the income.

16          So, your Honor, this is a far different situation than

17  the situation that the firm would have you believe, and we want

18  to -- we've sought permission to make this motion really on two

19  grounds.  And the first ground is because there's no diversity

20  jurisdiction here, your Honor.  The lawsuit was filed, as I

21  said, on Saturday, February 28th, and then several days

22  later -- and the lawsuit both includes Mr. Cyrulnik as a

23  plaintiff -- because he was a member of the firm as of that

24  time, and the suit is brought in the name of the firm -- and as

25  a defendant, and Mr. Cyrulnik, of course, is a resident of New

L5D1ROCC

1   Jersey and therefore there is no complete diversity here.  It
2   wasn't until several days later, on March 3rd, that the law
3   firm sent to Mr. Cyrulnik a termination notification.  So he
4   was clearly a partner of the firm at the time that this
5   happened, and any claim that is being advanced by the firm now
6   that he wasn't is negated by their own letter, and in the
7   letter that they've submitted to the Court, they say that this
8   letter was "merely about benefits."  But that's not the case at
9   all.  The letter, which is attached to their letter says, "This
10  letter is regarding your termination" from the firm.
11          THE COURT:  They say that they notified him of his
12  termination on February the 12th already.
13          MR. KASOWITZ:  They said that they took a vote, your
14  Honor, on February 12th.
15          MR. HECKER:  No, he was --
16          MR. KASOWITZ:  I'm sorry.  I'm sorry.
17          THE COURT:  Hold on.  Hold on.  Hold on.
18          MR. KASOWITZ:  I'm sorry, your Honor.
19          THE COURT:  Mr. Kasowitz has the floor.
20          Go ahead, Mr. Kasowitz.
21          MR. KASOWITZ:  Yes.  I apologize, your Honor.
22          They say that they notified him on February the 12th,
23  and as I said, that February the 12th notice was the one where
24  they talk about, of all things, your Honor, temporizing, that
25  cause under New York -- under Florida law would be made out by

L5D1ROCC

1    a partner's temporizing and the like.

2             So in any event, your Honor, look, they didn't

3    terminate him until later, which was their own letter.  He's on

4    both sides of the caption.  There isn't any diversity

5    jurisdiction, any subject matter jurisdiction here, in the

6    first place; and in the second place, your Honor, look, we had

7    no choice, after this surprise lawsuit was brought in the

8    middle of settlement discussions, other than to bring the

9    appropriate lawsuit here, which is one for dissolution, which

10   we brought under Florida law, because this is a Florida law

11   firm.  Mr. Freedman is a Florida resident.  It has a Florida

12   office.  And the remedies under Florida law for this kind of

13   situation where there is, you know, an impassable or what

14   becomes an impassable situation among partners is either a

15   dissolution or a dissociation, which is a unique Florida

16   remedy, your Honor, where there is a buyout, which provides for

17   a buyout of a particular partner in certain situations.  The

18   law seems to be pretty clear that these are uniquely within the

19   competence of the Florida State court, and we've brought our

20   action within the business commercial division of the state

21   court in Miami.  So we believe that abstention -- were the

22   Court to find contrary to our position that there is diversity

23   jurisdiction, we believe that under several doctrines of

24   abstention, this would be the kind of case where, especially

25   given the remedy, the proper remedy that's being sought, where

L5D1ROCC

```
 1    this or any other federal court would properly abstain.  That's

 2    our position, your Honor.

 3             THE COURT:  It seems relatively clear that this is a

 4    case that the parties ultimately want to settle.  You say

 5    settlement discussions were broken off and you had wanted to

 6    continue them.  What do you suggest that I should do in order

 7    to get the parties to attempt to settle the case now rather

 8    than divert their resources to the motion to dismiss and

 9    further litigation on two fronts?  I set out for you, you know,

10    we have the mediation panel, we have a magistrate judge; the

11    parties can have a third-party mediator but you'd pay.  What do

12    you think I should do?  Or just let you both fight it out?

13             MR. KASOWITZ:  Well, your Honor, frankly, it's not

14    clear to me -- strike that, your Honor.  I apologize.

15             Look, I think we should litigate this motion because I

16    think it's important that the case be in the proper court for

17    disposition.  And I think that the proper court is state court

18    in Florida, given that it's a Florida law firm and given that,

19    if we're unable to settle it, then the only proper resolution,

20    frankly, is going to be a dissolution, or a dissociation.  So I

21    would, you know -- we would be amenable to mediating, as we

22    were before the lawsuit was launched by surprise.  I just think

23    that putting it in the right jurisdiction is probably the right

24    thing to do.  That's my overall sense, your Honor.

25             THE COURT:  But as you know, it will take some time to
```

L5D1ROCC

1    brief the motion.  You're certainly welcome to brief it.  And

2    it will take some time for me to decide it.  I don't know

3    what's going to happen to your pending lawsuit in Florida.  But

4    both of you will be expending attorney's fees on the litigation

5    until such time as you resolve it.  Presumably a resolution is

6    going to depend on the substance of the resolution, wherever

7    the case is pending.

8         You both had been talking about a possible resolution.

9    You indicated you would have liked to continue the discussion.

10   It seems odd to me that the parties now don't want to continue

11   to talk about the resolution but would prefer to devote their

12   resources to litigating a motion.  But so be it.  I mean, I'm

13   not going to send you to the magistrate judge or the mediation

14   panel if there is no desire by the parties.

15        MR. KASOWITZ:  Your Honor --

16        THE COURT:  Yes.  Go ahead.

17        MR. KASOWITZ:  Your Honor, look, I never say no to

18   mediation.  I think that it's -- I said what I said before

19   about it coming in the right context, but mediation is

20   mediation, and I, candidly, think that your Honor's instincts

21   here are very correct in terms of trying to have the parties

22   reach a business resolution because that's ultimately where it

23   should be ended anyway.  So we would be agreeable to -- we

24   would be agreeable to a mediation, your Honor.  And we would be

25   agreeable to, in the interest of saving expense, whether it's

L5D1ROCC

1    the panel or some other entity, that would be fine with us.

2                THE COURT:  Okay.  Mr. Hecker?

3                MR. HECKER:  Let me just say first, we're fine with

4    mediation.  Happy to do it with Magistrate Judge Netburn or

5    otherwise.

6                I would like to correct the record on a few items

7    which I think are important.  The first is:  Mr. Kasowitz's

8    suggestion that Mr. Cyrulnik was removed because of

9    quote-unquote temporizing is a rather ridiculous

10   characterization of what he actually -- the conduct he engaged

11   in, which was described at length, including screaming fits of

12   rage, abusive conduct, belittling of efforts by the firm to

13   diversify their attorney population, and causing a number of

14   associates to attempt to quit.  This is no pretext, and the

15   notion that this was a vast conspiracy made up of all of the

16   partners who unanimously voted him out of the firm, and told

17   him so on February 12th, because of a speculative token play is

18   just not true.

19               I want to correct one other thing.  The MOU provides

20   for removal of a partner by 2/3 vote.  It doesn't require

21   unanimity.  There was unanimity, but there was no further

22   definition in the MOU of what would constitute for cause.

23               So those are the basic facts here.  As I said, we're

24   happy to continue discussions in mediation.  I don't know that

25   it's really productive for me to correct some of what

L5D1ROCC

1   Mr. Kasowitz said in terms of the conditions we wanted to

2   attach to having such discussions, including to ensure they

3   move forward both quickly and also privately and those were

4   rejected, which is why we filed suit in the face of threats to

5   file suit by Mr. Kasowitz.  But regardless, we too agree that

6   it makes sense to try to have a discussion here, so we're happy

7   to begin those discussions in the interim.

8            THE COURT:  Okay.

9            MR. HECKER:  The last thing I would say is the letter

10  removing him was attached to the complaint, and not for

11  nothing, but the notice of the termination of his benefits was

12  described as regarding his termination, but the termination had

13  already occurred, just so we're clear on that.

14           THE COURT:  Okay.  All right.  Well, I'll refer it to

15  Magistrate Judge Netburn for purposes of settlement only.  And

16  I will ask Magistrate Judge Netburn, to the extent that she

17  can, consistent with her calendar, to attempt to move it

18  expeditiously.

19           Meanwhile, the defendant has the right to make a

20  motion to dismiss, and I would be attentive to you,

21  Mr. Kasowitz, as to when you wanted to make the motion.

22  Mr. Hecker can respond, you can reply.  If you want more time

23  to talk among yourselves or to talk with the magistrate judge,

24  that's fine by me also.  So you tell me.  When would you like

25  to make your motion?

L5D1ROCC

1      MR. KASOWITZ:  Well, your Honor, we're prepared to

2   make it promptly.  I think what we would do is to give this

3   process a bit of time to see if it can be successful.

4   Notwithstanding my view that -- notwithstanding my view that

5   there have been misrepresentations made, continuing

6   misrepresentations, frankly, I still go into any mediation,

7   especially one where a magistrate judge is presiding, in good

8   faith, and we'll see if we can get something done.

9      I think we'd like to file our motion in a month, 30

10  days, your Honor.  And we would --

11      THE COURT:  Okay.

12      MR. KASOWITZ:  -- certainly give the next, you know --

13  give some time to see if something can be accomplished.

14      THE COURT:  Okay.  Great.  So defendant's motion to

15  dismiss or stay due June 11th.  That's a Friday.  Plaintiff's

16  response due July 7, taking into account July 4.  And

17  defendant's reply July 21.  Okay?

18      MR. KASOWITZ:  Thank you, your Honor.  Thanks very

19  much.

20      MR. HECKER:  Thank you, Judge.

21      THE COURT:  Sure.  Good to talk to you all.  Bye now.

22      MR. KASOWITZ:  Bye-bye.

23                         o0o

24

25