Marc E. Kasowitz (mkasowitz@kasowitz.com)
Michael A. Hanin (mhanin@kasowitz.com)
Gavin D. Schryver (gschryver@kasowitz.com)
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel.: (212) 506-1700
Fax: (212) 506-1800

*Attorneys for Defendant Jason Cyrulnik*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROCHE CYRULNIK FREEDMAN LLP,<br><br>Plaintiff,<br><br>v.<br><br>JASON CYRULNIK,<br><br>Defendant. | Civil Action No.<br>21-cv-01746 (JGK) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JASON CYRULNIK'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 4

    A.    RCF's Egregious Scheme To Misappropriate Millions Of Dollars In
          Cryptocurrency And Other Assets Pledged To Cyrulnik ...................... 4

    B.    RCF Engages In Sham Settlement Negotiations To Delay Cyrulnik's Filing
          Of The Florida Action ................................................................... 7

    C.    RCF Purports To Terminate Cyrulnik After Filing Its Original Complaint ........... 8

    D.    The Florida Action ....................................................................... 9

    E.    The Florida Court Denies RCF's Motion To Stay The Florida Action ................. 9

ARGUMENT ................................................................................................... 10

I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION........................ 10

    A.    Cyrulnik Was A Partner Of RCF At The Time This Case Was Commenced ...... 10

    B.    The Purported Termination Was Improper And Void Ab Initio, In Any Event ... 12

II.    THE COURT SHOULD DISMISS THIS ACTION IN FAVOR OF THE FLORIDA ACTION............. 13

III.    THE COURT SHOULD ABSTAIN FROM HEARING THIS CASE ............................................. 16

    A.    The Court Should Abstain Under The *Wilton* Abstention Doctrine .................... 16

    B.    The Court Should Abstain Under The *Burford* Abstention Doctrine .................. 19

    C.    The Court Should Abstain Under The *Colorado River* Abstention Doctrine....... 20

CONCLUSION ................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Citigroup Erisa Litig.*,
  104 F. Supp. 3d 599 (S.D.N.Y. 2015) ........................................................................6

*Cohen v. Rosicki, Rosicki & Assocs., P.C.*,
  897 F.3d 75 (2d Cir. 2018) ........................................................................................4

*Dish Network, L.L.C. v. Am. Broad. Cos., Inc.*,
  No. 12-CV-4155(LTS)(KNF), 2012 WL 2719161 (S.D.N.Y. July 9, 2012) ...........14

*Dow Jones & Co., Inc. v. Harrods, Ltd.*,
  237 F. Supp. 2d 394 (S.D.N.Y. 2002) ....................................................................14

*Dumann Realty, LLC v. Faust*,
  No. 09-CV-7651(JPO), 2013 WL 30672 (S.D.N.Y. Jan. 3, 2013) .........................10

*Feiwus v. Genpar, Inc.*,
  43 F. Supp. 2d 289 (E.D.N.Y. 1999) ......................................................................20

*Friedman v. Revenue Mgmt. of New York, Inc.*,
  38 F.3d 668 (2d Cir. 1994) .................................................................................19, 20

*Gibbs & Hill, Inc. v. Harbert Int'l, Inc.*,
  745 F. Supp. 993 (S.D.N.Y. 1990) .........................................................................15

*Goodman v. Polyvinyl Films, Inc.*,
  No. 95-CV-3365(PKL), 1999 WL 33030 (S.D.N.Y. Jan. 21, 1999) .......................12

*Gross v. Bare Escentuals, Inc.*,
  No. 03-CV-3089(RLC), 2006 WL 3161386 (S.D.N.Y. Oct. 30, 2006) ...................13

*Grupo Dataflux v. Atlas Glob. Grp. L.P.*,
  541 U.S. 567 (2004) ................................................................................................10

*Hai Yang Liu v. 88 Harborview Realty, LLC*,
  5 F. Supp. 3d 443 (S.D.N.Y. 2014) ........................................................................12

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) ..................................................................................................10

*Kahn v. Oppenheimer & Co.*,
  No. 08-CV-11368(JGK), 2009 WL 4333457 (S.D.N.Y. Dec. 1, 2009) ...............4, 10

*Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*,
 830 F. App'x 50 (2d Cir. 2020) ..................................................................21

*Lawrence Moskowitz CLU. Ltd. v. ALP, Inc.*,
 No. 19-CV-3868(ER), 2020 WL 1503558 (S.D.N.Y. Mar. 30, 2020) ...................20

*Liberty Mut. Ins. Co. v. Hurlbut*,
 585 F.3d 639 (2d Cir. 2009)........................................................................20

*Louise Paris, Ltd., v. Fabric Selection, Inc.*,
 No. 17-CV-5697(JSR), 2017 WL 4776734 (S.D.N.Y. Oct. 6, 2017)....................14

*Makarova v. United States*,
 201 F.3d 110 (2d Cir. 2000).........................................................................4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983)......................................................................................21

*Mouchantaf v. Int'l Modeling & Talent Ass'n*,
 368 F. Supp. 2d 303 (S.D.N.Y. 2005).............................................................22

*Nat'l Union Fire Ins. Co. v. Int'l Wire Grp., Inc.*,
 No. 02-CV-10338(SAS), 2003 WL 21277114 (S.D.N.Y. June 2, 2003) ...............14

*Pabco Const. Corp. v. Allegheny Millwork PBT*,
 No. 12-CV-7713, 2013 WL 1499402 (S.D.N.Y. Apr. 10, 2013) ..........................22

*Radioactive, J.V. v. Manson*,
 153 F. Supp. 2d 462 (S.D.N.Y. 2001)............................................................22

*Raharney Cap., LLC v. Cap. Stack LLC*,
 138 A.D.3d 83 (1st Dep't 2016) ...................................................................18

*Rothman v. Gregor*,
 220 F.3d 81 (2d Cir. 2000)............................................................................9

*S & S Candies, Inc. v. Hershey Foods Corp.*,
 No. 00-CV-5243(DLC), 2000 WL 1425092 (S.D.N.Y. Sept. 26, 2000)............14, 15

*Schibuk v. Poinciana-Regency Ltd. P'ship*,
 764 F. Supp. 878 (S.D.N.Y. 1991) ................................................................10

*Take-Two Interactive Software, Inc. v. Benzies*,
 No. 16-CV-2699(VSB), 2017 WL 2728434 (S.D.N.Y. June 22, 2017)..................22

*TIG Ins. Co. v. Fairchild Corp.*,
 No. 07-CV-8250(JGK), 2008 WL 2198087 (S.D.N.Y. May 27, 2008) .......... *passim*

*Wilton v. Seven Falls Company*,
515 U.S. 277 (1995)........................................................................................16, 19

## Statutes and Rules

28 U.S.C. § 1332.........................................................................................................10

28 U.S.C. § 2201.........................................................................................................16

Fed. R. Civ. P. 12(b)(1)...........................................................................................1, 4

Fla. Stat. Ann. § 620.1101........................................................................................20

Fla. Stat. Ann. § 620.870.......................................................................................9, 17

Fla. Stat. Ann. § 620.8405.....................................................................................9, 17

Fla. Stat. Ann. § 620.8801.....................................................................................9, 17

22 NYCRR Part 1200, Rule 7.5.................................................................................11

Defendant Jason Cyrulnik respectfully submits this memorandum of law in support of his motion (the "Motion"), pursuant to Federal Rule of Civil Procedure 12(b)(1), the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and multiple abstention doctrines, to dismiss the amended complaint filed by Plaintiff Roche Cyrulnik Freedman LLP ("RCF").[1]

## PRELIMINARY STATEMENT[2]

This is a textbook anticipatory declaratory judgment action filed to preempt Cyrulnik's comprehensive action pending in Florida state court, which he filed to redress an egregious, pretextual scheme perpetrated by certain RCF partners, who have attempted to misappropriate for themselves Cyrulnik's interest in valuable assets of the firm he co-founded and built, including an enormously valuable cryptocurrency that exponentially increased in value to more than $250 million only days before these partners deployed their scheme.

After a 15-year career at the national law firm Boies Schiller Flexner LLP ("BSF"), Cyrulnik left his equity partnership to co-found RCF in January 2020.  He was the largest equity holder at RCF and accounted for the majority of its clients and business.  In ▮▮▮▮ 2021, the Conspiring Partners suddenly informed Cyrulnik that, at a secret meeting held without even notifying two of the firm's seven equity partners (comprising nearly 30% of the firm's equity), they had voted to "remove" him from the firm and asked him if he would agree to a confidential mediation to resolve the splitting of the firm.  Cyrulnik told the Conspiring Partners that a prerequisite for any such discussion was a commitment to remit all of the consideration and assets that were guaranteed to him under the parties' agreements (on which he relied in giving up his

---

[1]  RCF's amended complaint ("Amended Complaint" or "Compl.") is attached as Exhibit 1 to the accompanying Declaration of Marc E. Kasowitz, dated August 13, 2021 ("Decl."). Citations to "Ex.__" refer to exhibits attached to the Decl.

[2]  Capitalized terms in the Preliminary Statement have the meaning assigned to them elsewhere in this memorandum.

long-standing equity partnership at BSF), and that, short of that commitment, he would commence litigation. The Conspiring Partners sought to delay Cyrulnik's impending legal action by stringing him along for more than a week, ultimately proposing a Sunday follow-up date for a settlement discussion between Cyrulnik's counsel and the firm's newly retained litigation counsel. They then secretly filed this action on Saturday night – the evening before the Sunday settlement meeting they had set – in an effort to win some manufactured "race to the courthouse" and preclude Cyrulnik from pursuing claims in Florida state court, the appropriate forum to dissolve this Florida partnership and compensate Cyrulnik for the damages their egregious misconduct had caused. This improper, anticipatory declaratory judgment action is nothing more than the product of that procedural gamesmanship, which in and of itself warrants dismissal pursuant to two universally recognized exceptions to the "first-filed" rule.

Indeed, just two weeks ago, after full briefing and argument concerning the Conspiring Partners' gamesmanship, the court overseeing the Florida Action denied RCF's motion to stay that action in favor of this "first-filed" action, expressly holding that the Conspiring Partners (each a defendant in the Florida Action) and RCF had filed this action "in anticipation of Cyrulnik's impending lawsuit [in Florida]" and that this action constitutes "an anticipatory filing that should not divest Cyrulnik of his choice of forum." In any event, RCF's filing of the Amended Complaint months after the Florida Action was filed renders this action "second-filed."

Several additional and independent reasons compel dismissal as well. As a threshold matter, this Court lacks subject matter jurisdiction. Indisputable documentary evidence (and common sense) establishes that there is no diversity between Plaintiff (Roche **Cyrulnik** Freedman LLP) and Defendant (RCF's named partner, Jason **Cyrulnik**). To the extent RCF argues that this Court is permitted to adjudicate this case based on the assumption that RCF *may* prevail on its

request for a declaration that Cyrulnik was properly removed (*i.e.*, the only way RCF even argues diversity here), RCF is wrong.  Such end-runs around diversity jurisdiction are not permitted, particularly where declaratory claims are concerned, because such an approach requires this Court to assume the merits of the core and ultimate issues in dispute at the outset and creates a "heads I win, tails you lose" situation:  if this Court finds for Cyrulnik at the conclusion of this case, it would be forced to hold that it lacks jurisdiction to make that very finding, mooting the entirety of the litigation and sending the parties back to square one.

Even if this Court did have jurisdiction, it should abstain from exercising it.  Three independent abstention doctrines compel dismissal of this case in favor of the Florida Action, which is the more comprehensive and appropriate forum (and with respect to certain core claims, the *only* forum) for adjudicating this dispute.  Indeed, the Florida court has already determined that the Florida Action <u>will proceed</u>, and thus a denial of this Motion will necessarily lead to duplicative litigation and may lead to inconsistent judgments.

*First*, as this Court previously held in the factually analogous *TIG Insurance Company v. Fairchild Corporation* case, "[t]he facts of this case, even as presented in the plaintiff's Complaint, fall squarely within the type of situation contemplated by [the *Wilton* abstention doctrine], and therefore call for abstention."  Even were the Court to adjudicate RCF's declaratory judgment claim here, Cyrulnik's claims for dissolution of, or a buyout via disassociation from, RCF will be adjudicated in the pending Florida Action, which would constitute "just the sort of 'vexatious' and 'uneconomical' interference with a pending state court proceeding that *Wilton* and *Brillhart* seek to avoid."  *Second*, under the *Burford* doctrine, this Court should abstain from asserting jurisdiction over the internal affairs of a Florida entity organized under Florida's laws, which is better and more appropriately addressed by Florida's regulatory schemes, especially in the complex and state-

specific area of the dissolution, since the Second Circuit has noted that "every federal court that has addressed the issue of dissolving state corporations has either abstained or noted that abstention would be appropriate." *Third*, under the *Colorado River* doctrine, this Court should abstain from exercising jurisdiction over only a small piece of a much larger litigation that currently is being litigated before the Florida court, which already denied RCF's motion to stay.

## STATEMENT OF FACTS[3]

### A.    RCF's Egregious Scheme To Misappropriate Millions Of Dollars In Cryptocurrency And Other Assets Pledged To Cyrulnik

Before co-founding RCF, Cyrulnik was a long-time equity partner at the prominent law firm BSF.  Kyle Roche and Devin Freedman, both former associates of BSF, left BSF in 2019 as junior lawyers (Roche a third-year associate and Freedman a junior counsel at the firm) to start their own small firm focusing on cryptocurrency and other specialized practice areas. (Compl.¶12.)   Seeking to transform their small practice into a major litigation boutique by attracting a highly respected, experienced partner with an established, successful practice and cash flow to fund the firm's operations and to help procure lead counsel appointments in their class-action cases, Roche and Freedman heavily recruited Cyrulnik and ultimately induced him to leave BSF in December 2019 to co-found a new Florida law firm – RCF.  (Ex.2 ¶3.)

---

[3]   Although many of the allegations in RCF's Complaint are false, for purposes of this Motion, they are accepted as true to the extent they do not contradict documentary evidence, which may be considered on a motion to dismiss.  Here, the Agreement (defined below) is referenced in the Complaint and accordingly may be considered on this Motion.  *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018).   And documentary evidence, such as emails and letters sent by RCF to Cyrulnik that are cited below, may be considered because (i) RCF relied on them in bringing suit, they are in RCF's possession and it has knowledge of them, *Kahn v. Oppenheimer & Co.*, No. 08-CV-11368(JGK), 2009 WL 4333457, at *2 (S.D.N.Y. Dec. 1, 2009); and (ii) the Court "may refer to evidence outside the pleadings" in connection with a Rule 12(b)(1) motion to dismiss, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Cyrulnik and RCF's other founding partners – Roche, Freedman, Amos Friedland, Nathan Holcomb, and Edward Normand (the "Conspiring Partners," and together with Cyrulnik, the "Founding Partners") – negotiated the terms of their new partnership, which they memorialized in a memorandum of understanding (the "Agreement"). (Compl.¶17; Ex.2 ¶29.) A linchpin to the firm's formation, Cyrulnik was given the largest equity stake in the firm, together with certain guaranteed management rights, and certain fixed and guaranteed interests in firm assets, including RCF's pending and future contingency and alternative fee matters, among other things. (Ex.2 ¶30.) One of the key assets allocated to Cyrulnik in the Agreement was cryptocurrency (referred to as "Tokens") that a firm client had agreed to convey to RCF as payment for the firm's retention. (Compl.¶¶14, 20; Ex.2 ¶32.) The Agreement expressly granted each of the Founding Partners a fixed allocation of the Tokens:  Freedman, 32%; Roche, 28%; Cyrulnik, 25%; and Normand, Friedland, and Holcomb, 5% each. (Ex.2 ¶32.)

In the first year of the firm's existence, Cyrulnik brought in the overwhelming majority of its core clients and managed most of the firm's revenues and its largest litigations. His robust practice – which RCF and the Conspiring Partners needed to legitimize and sustain the firm until the firm's non-hourly matters could generate any significant revenue – accounted for more than 60% of the RCF's revenue and roughly 70% of its profits in 2020. In addition, Cyrulnik's presence played a significant role in securing for the firm other benefits, like lead counsel appointments in contingency class action cases, and in advising more junior lawyers like Freedman on various issues arising in some of their matters. (*Id.* ¶39-42.)

The firm grew steadily, and Cyrulnik met with Roche and Freedman continually through January 2021 to plan for administration of the firm and its cases over the next year. In ███ 2021, the value of the Tokens suddenly exploded, experiencing exponential growth that promised

significant profit for the firm, and in particular its Founding Partners – including Cyrulnik, whose

share of the Tokens was worth more than $60 million by mid-████   Below is a chart of the

Token's price between ████████████████████, the day of the Conspiring Partners'

secret meeting to try and seize Cyrulnik's assets by purporting to expel him from the firm.[4]



On ████████, 2021 – just as the Tokens were reaching their peak value as shown on the

above chart – the Conspiring Partners invited select partners to attend a secret meeting in which

they voted to terminate Cyrulnik as a partner, purportedly for "cause," without notice, based on

their claim that Cyrulnik had raised his voice during two telephone conversations back in 2020.

(Compl.¶66; Ex.2 ¶69.)  Despite the express language in the Agreement unequivocally granting a

list of guaranteed assets to Cyrulnik as inducement for leaving BSF to start the firm, the Conspiring

Partners then proceeded to advance the spurious claim that Cyrulnik had somehow forfeited his

---

[4]   The Court can take judicial notice of such public pricing data.  *See In re Citigroup Erisa Litig.*,
104 F. Supp. 3d 599, 615-16 (S.D.N.Y. 2015) (taking judicial notice of stock prices).

interest in any assets of the partnership, including his $60 million share of the Tokens, which the Conspiring Partners intended to share amongst themselves.  (Ex.2 ¶¶77-86.)  They then informed the rest of the partners who had not been included in the conspiracy.

**B.    RCF Engages In Sham Settlement Negotiations To Delay Cyrulnik's Filing Of The Florida Action**

Two days later, on ▮▮▮▮▮▮▮▮, 2021, the Conspiring Partners sent Cyrulnik an email, riddled with errors, misstatements, and mischaracterizations, notifying Cyrulnik of the Conspiring Partners' decision to purportedly remove him for "cause."  (Ex.2 ¶72.)  In response, through counsel that he retained expressly to pursue this litigation, Cyrulnik placed the Conspiring Partners on notice that their actions were "in bad faith," in breach of their "contractual and fiduciary obligations to Cyrulnik and the firm's clients," and that he intended to hold them "liable for any resulting damage to Cyrulnik or his clients."  (*Id.* ¶79.).

The Conspiring Partners tried to pressure Cyrulnik to agree to sign a confidential mediation and arbitration agreement to facilitate an "amicable" settlement that would involve re-division of some of his assets and rights under the Agreement and a splitting of the firm.  (*Id.* ¶85.)  Cyrulnik told the Conspiring Partners that a necessary predicate for any discussion about splitting the firm was their commitment to provide him all of the compensation and assets he is owed under the Agreement.  (*Id.*)  On February 19, 2021, RCF and the Conspiring Partners proposed that Cyrulnik forego roughly $45 million in value by agreeing to give them three-quarters of his share of the Tokens, in addition to other rights and assets that belonged to him.  (*Id.* ¶86.)  Through counsel, Cyrulnik rejected the offer and told RCF and the Conspiring Partners that, if they did not commit to remitting to Cyrulnik all of the assets and interests that belonged to him pursuant to the parties' agreements, including his full share of the Tokens, Cyrulnik would be forced to commence litigation.  (*Id.*; Decl. ¶3; Exs.3-4.)

Recognizing that Cyrulnik was on the brink of commencing litigation to enforce his rights, RCF and the Conspiring Partners' counsel, Sean Hecker, told Cyrulnik's counsel, Marc Kasowitz, that his clients were hoping to resolve the matter without the need for litigation, and, on February 26, 2021, proposed to speak again with Kasowitz on Sunday, February 28, 2021, expressly asking Kasowitz to wait until after the conclusion of the Jewish Sabbath that Cyrulnik and certain of the Conspiring Partners observe.  (Ex.4.)  This turned out to be a bad-faith offer and an improper, deceitful stall tactic: although they did not exchange a single additional communication, and notwithstanding their proposal to speak in furtherance of a potential resolution that Sunday, late on the night of Saturday, February 27, 2021, the Conspiring Partners caused RCF to commence this action.  RCF's original complaint contained a single claim for relief, seeking a declaration that the Conspiring Partners properly "removed" Cyrulnik and could keep his assets, including the compensation he had bargained for and was guaranteed under the parties' agreements.  (Dkt. 1.)

## C.   RCF Purports To Terminate Cyrulnik After Filing Its Original Complaint

On March 3, 2021, RCF's Director of Operations sent Cyrulnik a letter (the "Termination Letter") entitled "Termination Notification."  (Ex.5.)  The Termination Letter states in the first sentence "[t]his letter is regarding [Cyrulnik's] termination," and then states "[w]e are processing your termination with Roche Freedman LLP (formerly Roche Cyrulnik Freedman LLP) and Insperity PEO Services, L.P.[5] effective March 1, 2021," *i.e.*, two days after RCF filed the Complaint here.  (*Id.* p.1.)  The Termination Letter then explains the firm's termination process, including the return of firm property, terminated employees' responsibility with regard to firm equipment, how to apply for unemployment, and information pertaining to benefits.  (*Id.*)  In other

---

[5]   Insperity is RCF's human resources service provider; the Termination Letter purported to, among other things, terminate Cyrulnik's tenure at RCF and his family's medical benefits.  (Ex.5.)

words, the Termination Letter served two purposes:  (i) effecting the formal termination of Cyrulnik's employment from RCF (based on the earlier improper vote by the Conspiring Partners); and (ii) unilaterally terminating Cyrulnik's family's medical coverage and other benefits through Insperity.

**D.**     **The Florida Action**

On March 9, 2021 – ten days after RCF commenced this action – Cyrulnik commenced an action against RCF and the Conspiring Partners in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "Florida Action").  In the Florida Action, Cyrulnik asserts a claim for dissolution of RCF – a Florida partnership – under Florida Statutes §§ 620.8405 and 620.8801; in the alternative, a claim demanding a buyout of his interests in the partnership pursuant to Florida Statute § 620.870; a claim for an accounting; and claims seeking damages based on RCF's and the Conspiring Partners' breach of contract, breach of the Conspiring Partners' obligations under the covenant of good faith and fair dealing, breach of fiduciary duties, conversion, unjust enrichment, and civil conspiracy.  (Ex.2 ¶¶92-154.)[6]

**E.**     **The Florida Court Denies RCF's Motion To Stay The Florida Action**

On May 3, 2021, RCF and the Conspiring Partners filed a motion to stay the Florida Action in favor of this case, on the theory that this action was "first-filed."  (Ex.7 at 2.)  After full briefing and oral argument by all parties, on July 27, 2021, the Florida court denied RCF and the Conspiring Partners' request for a stay, issuing a written decision expressly holding that:  (i) RCF filed this New York action in "anticipation of Cyrulnik's impending lawsuit" in Florida which thereby justified a departure from the "first-filed" rule; and (ii) Florida is the proper jurisdiction to resolve

---

[6]  The Court can take judicial notice of this complaint "as a public record."  *Rothman v. Gregor*, 220 F.3d 81, 91-92 (2d Cir. 2000).

the majority of issues in dispute, including Cyrulnik's request for a dissolution of RCF or in the alternative a buy-out and Cyrulnik's state law claims that "are not within the subject matter of [this] federal action."  (*Id.* p.2-5.)

## ARGUMENT

## I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION

Plaintiff's sole asserted basis for the Court's jurisdiction over this action is diversity under 28 U.S.C. § 1332.  (Compl.¶9.)  "The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it." *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). Because Plaintiff "Roche **Cyrulnik** Freedman LLP" and Defendant "Jason **Cyrulnik**" are not (and cannot possibly be) citizens of different states, Plaintiff cannot meet its burden and the Court therefore lacks jurisdiction.

### A.    Cyrulnik Was A Partner Of RCF At The Time This Case Was Commenced

Because a limited liability partnership is considered to be a citizen of every state of which one or more of its partners is a citizen, federal courts lack diversity jurisdiction over an action between a limited liability partnership and one of its members, like the one here.  *Schibuk v. Poinciana-Regency Ltd. P'ship*, 764 F. Supp. 878, 881 (S.D.N.Y. 1991).  Moreover, diversity jurisdiction is assessed as of the date a complaint is filed and an action commenced.  *See Dumann Realty, LLC v. Faust*, No. 09-CV-7651(JPO), 2013 WL 30672, at *4 (S.D.N.Y. Jan. 3, 2013) (noting that, "when [p]laintiffs brought this suit, [plaintiff] . . . finds itself 'on both sides of the 'v.' sign' in [the] matter"); *Grupo Dataflux v. Atlas Glob. Grp. L.P.*, 541 U.S. 567, 570 (2004) (stating that federal jurisdiction "depends upon the state of things at the time of the action brought"); *Kahn*, 2009 WL 4333457, at *3 (dismissing for lack of jurisdiction even though subsequent events may have cured jurisdictional defects that existed when complaint was filed).

Here, the indisputable and overwhelming evidence establishes that Cyrulnik was a partner of RCF at the time this action was commenced on February 27, 2021 – meaning that both he and RCF were residents of New Jersey, thus destroying diversity.   While the Conspiring Partners conspired and breached their duties in actions they took on ████████, 2021, including by purporting to seize and deny Cyrulnik access to his many assets being held by the firm in the days that followed, they expressly concede that the purported termination was "effective March 1, 2021" – *two days after* the Complaint was filed.  (*See* Ex.5 ("We are processing your termination … effective March 1, 2021.").)

In fact, when RCF filed the original and Amended Complaint, it filed under the name Roche **Cyrulnik** Freedman LLP, and captioned the action as *Roche **Cyrulnik** Freedman LLP v. **Cyrulnik***.   RCF's use of Cyrulnik's name would have been ethically impermissible had his purported termination been effective prior to that time, since it would involve the use of a trade name containing the name of an unaffiliated partner.  *See* 22 NYCRR Part 1200, Rule 7.5.  Indeed, in its Amended Complaint, RCF further concedes that complete diversity is lacking by alleging that while Cyrulnik is a citizen of New Jersey, "[n]o *other* RCF Partners" are citizens of New Jersey.  (Compl.¶9.)

Faced with its fatal admissions, RCF argued in response to Cyrulnik's pre-motion conference letter that the Court should ignore the Termination Letter's statement that the purported termination was to be "effective March 1" and read the letter as pertaining solely to the termination of benefits, not the purported termination of Cyrulnik's status with the firm.  (Dkt. 12.)  That contention is belied by the text of the Termination Letter, which is entitled "Termination Notification" (and not "Termination of Benefits Notification"), and expressly states that RCF is "*processing your termination*," with that "termination" to be "effective March 1, 2021."  (Ex.5.)

Moreover, the Termination Letter addresses Cyrulnik's purported termination from *both* RCF (the entity of which Cyrulnik was a partner) *and* Insperity (the entity through which Cyrulnik and his family obtained their medical and other benefits). (*Id.*) If the Termination Letter were solely a "termination of benefits," it would have been limited to Insperity – there would be no need to reference Cyrulnik's termination from RCF.

In other words, while the Conspiring Partners conspired, voted, and egregiously breached their many duties on ██████████, 2021, the "effective" date they selected for the object of their conspiracy – Cyrulnik's termination – was March 1, 2021.  Accordingly, at the time Plaintiff filed its Complaint, Cyrulnik was a partner of RCF, destroying diversity jurisdiction and requiring dismissal of this case.

### B.       The Purported Termination Was Improper
### And Void Ab Initio, In Any Event

In any event, RCF has failed to satisfy its burden of establishing diversity jurisdiction (even if it had made its purported termination effective prior to their filing of the complaint).  It is well-settled that, to establish complete diversity, a plaintiff's complaint must "negative the possibility" that the plaintiff and any defendant share citizenship. *Goodman v. Polyvinyl Films, Inc.*, No. 95-CV-3365(PKL), 1999 WL 33030, at *1 (S.D.N.Y. Jan. 21, 1999).

Here, the crux of this case, and the very declaration RCF seeks, is *whether* Cyrulnik was properly terminated under the Agreement.  By relying exclusively on the fact that the Conspiring Partners properly "removed" Cyrulnik following their vote as the sole basis for carrying its burden of establishing diversity, RCF effectively asks this Court to decide the merits of this case – whether RCF properly removed Cyrulnik "for cause" – in its favor, prior to any discovery, through a jurisdictional ruling, particularly in connection with a declaratory judgment claim.  *See Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443, 451 (S.D.N.Y. 2014) ("[W]here Plaintiff's

membership and entitlement to the defendant LLC's assets is in dispute, the Court is hesitant to evaluate a declaratory judgment claim where doing so would provide an end run around the diversity statute.").

RCF's attempted "end run around the diversity statute" would not only be improper, it would be fundamentally unfair because it creates a "heads I win, tails you lose" outcome where this Court would be precluded from ever ruling for Cyrulnik:  if the Court were to find at the end of this case that RCF's purported termination of Cyrulnik was improper and Cyrulnik remains a partner of the firm, it would, in the same breath, be forced to hold that it lacks jurisdiction to make such a finding, and would then be forced to dismiss the case.  Such a result would essentially require the parties to litigate to conclusion the dispute in this forum only to have the case dismissed for lack of diversity jurisdiction and the parties would then have to re-litigate the same issues (in addition to others) in the Florida court.  Indeed, as discussed below, this fact by itself supports an order dismissing this case in favor of the Florida Action, which is pending in a court that indisputably has jurisdiction over the parties' dispute.  (*See infra* Section III.).

## II.     THE COURT SHOULD DISMISS THIS ACTION IN FAVOR OF THE FLORIDA ACTION

RCF has argued that the "first-filed" rule mandates that this action should proceed and the Florida Action should be stayed.  RCF is wrong.

As an initial matter, RCF has forfeited any argument that this action should be treated as "first-filed" by filing the Amended Complaint to assert two new claims wholly unrelated to its initial request for declaratory relief.  *See, e.g., Gross v. Bare Escentuals, Inc.*, No. 03-CV-3089(RLC), 2006 WL 3161386, at *2 (S.D.N.Y. Oct. 30, 2006) (New York case became "second-filed action" after plaintiffs amended complaint).  But even assuming the complaint had not been amended months after the Florida action was filed and that this action could be considered "first-

filed" (and it should not), this Court should dismiss it in favor of the Florida Action under two recognized exceptions to the "first-filed" rule: (1) "special circumstances," including the filing of an anticipatory declaratory action, warrant giving priority to the Florida Action, and (2) the "balance of convenience" favors the Florida Action.

The Second Circuit has held that "the presumption of priority accorded the first-filed suit will give way" where "'special circumstances' warrant giving priority to the second suit," with such "special circumstances" expressly including the situation here, *i.e.*, the first-filed lawsuit being "an improper anticipatory declaratory judgment action." *Dish Network, L.L.C. v. Am. Broad. Cos., Inc.*, No. 12-CV-4155(LTS)(KNF), 2012 WL 2719161, at *2 (S.D.N.Y. July 9, 2012) (citation omitted); *see also Louise Paris, Ltd., v. Fabric Selection, Inc.*, No. 17-CV-5697(JSR), 2017 WL 4776734, at *2 (S.D.N.Y. Oct. 6, 2017) ("[P]recedence is not afforded to a declaratory judgment action filed specifically to gain the 'home field advantage' over an imminent coercive suit."). Courts regularly exercise their discretion to dismiss anticipatory declaratory actions like this one. *See Nat'l Union Fire Ins. Co. v. Int'l Wire Grp., Inc.*, No. 02-CV-10338(SAS), 2003 WL 21277114, at *6 (S.D.N.Y. June 2, 2003) ("Courts in the Second Circuit have repeatedly refused to exercise jurisdiction over declaratory actions motivated by a desire to wrest the choice of forum from the real plaintiff."); *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 440 (S.D.N.Y. 2002) (dismissing first-filed anticipatory judgment complaint); *Dish Network*, 2012 WL 2719161, at *4-6 (same); *S & S Candies, Inc. v. Hershey Foods Corp.*, No. 00-CV-5243(DLC), 2000 WL 1425092, at *1-2 (S.D.N.Y. Sept. 26, 2000) (same).

Here, RCF filed this action a few days before the Florida Action was commenced, and won the race to the courthouse solely as a result of its own transparent gamesmanship – including by urging Cyrulnik not to commence litigation while the parties purportedly discussed a resolution to

their dispute and scheduling a call with Cyrulnik's counsel to discuss such a resolution after the Jewish Sabbath (which the Conspiring Partners know Cyrulnik observes), solely as a stall tactic so that they could win the proverbial race to court.  (Ex.4.)  Indeed, during the parties' May 13, 2021 conference, Plaintiff expressly conceded to this Court that **"we filed suit in the face of threats to file suit by Mr. Kasowitz [Cyrulnik's counsel]."**  (Ex.6 at 13:4-5.)

Notably, in deciding RCF and the Conspiring Partners' motion to stay, the Florida court determined that a departure from the "first-filed" rule was appropriate here precisely because this action "was filed in anticipation of Cyrulnik's impending lawsuit [in Florida]" and that this action "was an anticipatory filing that should not divest Cyrulnik of his choice of forum."  (Ex.7 at 4.) The Florida court noted that it "fully accepts the concept of the first filed rule," but went on to explain that "extraordinary circumstances" may justify the "denial of a stay in favor of [the] earlier-filed federal action."  (*Id.* at 3.)  After reviewing the parties "pre-filing history," the Florida court determined that it would be "procedurally unfair" and "frustrate[] the goal of attempting to resolve claims through good faith settlement discussions" if Cyrulnik were prohibited from proceeding with the Florida Action "simply because the Defendant anticipated the impending suit and preemptively struck by filing suit first in a different court."  (*Id.* at 4.)  This Court should likewise decline to reward RCF for winning the "race to the courthouse," or penalize Cyrulnik for attempting in good faith to resolve this dispute before filing suit.  *See S & S Candies*, 2000 WL 1425092, at *1-2 (exercise of first-to-file doctrine would unfairly penalize defendant that attempted to resolve dispute before filing suit).

The "balance of convenience" also heavily favors the Florida Action.  In applying the "balance of convenience" exception, courts in this Circuit look to nine factors that are similar to the factors relevant to the Court's analysis under the abstention doctrines described below.  *Gibbs*

*& Hill, Inc. v. Harbert Int'l, Inc.*, 745 F. Supp. 993, 996 (S.D.N.Y. 1990).  As discussed below, each of those factors favors dismissal of this action in favor of the Florida Action.

## III.   THE COURT SHOULD ABSTAIN FROM HEARING THIS CASE

Even if this Court had subject matter jurisdiction over this case (it does not), it should abstain from exercising it under three independent abstention doctrines, each of which compels dismissal of this anticipatory declaratory judgment action in favor of the Florida Action, which is the more appropriate (and for the core claim, the *only*) forum for adjudicating this dispute.

### A.   The Court Should Abstain Under The *Wilton* Abstention Doctrine

In *Wilton v. Seven Falls Company*, the Supreme Court explained that the purpose of the Declaratory Judgment Act is to "place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants."  515 U.S. 277, 288 (1995).  Citing *Wilton* and its progeny, in a case factually analogous to this action, this Court confirmed that, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  *TIG Ins. Co. v. Fairchild Corp.*, No. 07-CV-8250(JGK), 2008 WL 2198087, at *2 (S.D.N.Y. May 27, 2008).  Under those considerations, "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."  *Wilton*, 515 U.S. at 282.  That is precisely the situation here.[7]

There are nine factors that courts – including this Court in *TIG Ins. Co.* – utilize in deciding whether to abstain under *Wilton*:

---

[7]  RCF's attempt to avoid abstention under *Wilton* by amending its complaint nearly five months after the fact to add non-declaratory judgment claims should be rejected as bad faith.

> (1) the scope of the pending state proceeding and the nature of the
> defenses available there; (2) whether the claims of all parties in
> interest can satisfactorily be adjudicated in that proceeding;
> (3) whether the necessary parties have been joined; and (4) whether
> such parties are amenable to process in that proceeding. …
> (5) avoiding duplicative proceedings; … (6) avoiding forum
> shopping.… (7) the relative convenience of the fora; (8) the order of
> filing; and (9) choice of law ….

*TIG Ins. Co.*, 2008 WL 2198087, at *2. In assessing these factors, "[t]he general goal of the inquiry is to determine whether the question at issue in the federal suit 'can better be settled in the proceeding pending in the state court.'" *Id.* (quoting *Wilton*, 515 U.S. at 282). The answer here is a resounding "yes" – the question raised by RCF in this case can be better settled by the Florida court, which has a vested interest in, and has already determined that Florida is the proper court to adjudicate, Cyrulnik's related claims for dissolution of the Florida partnership or, in the alternative, a buyout of his interests via disassociation under the same Florida statute.[8] (*See* Ex.7.)

    *First*, because this case (like *TIG Ins. Co.*) is an anticipatory declaratory judgment action dealing with issues concerning the governance of a Florida limited liability partnership that are "intimately tied to matters of state law which are being litigated in state court," abstention will "avoid unnecessary meddling with the state court proceedings." *TIG Ins. Co.*, 2008 WL 2198087, at *3. That is particularly true here where, as the Florida court itself recognized, Cyrulnik's claim for dissolution or dissociation must be adjudicated by a Florida court applying Florida statutes. *See* Ex.7; *see also Raharney Cap., LLC v. Cap. Stack LLC*, 138 A.D.3d 83, 86-87 (1st Dep't 2016)

---

[8]  Either Cyrulnik was improperly removed for purported "cause," in which case RCF cannot practically carry on its business and needs to be dissolved by a Florida court pursuant to Florida Statutes §§ 620.8405 and 620.8801, or he was properly removed, in which case he is disassociated from the firm and entitled to a buyout pursuant to Florida Statute § 620.870. Of course, the Florida court already determined that Florida is the "jurisdiction with the authority" to resolve these claims and "an issue for the [Florida] Court to decide" precisely for this reason (among others). (Ex.7 at 4.)

("We agree with the near-universal view that the courts of one state do not have the power to dissolve a business entity formed under another state's laws.").

*Second*, *third and fourth*, the Florida Action is "broader than the present suit" and "entirely subsumes this action, adding other parties and issues as well." *TIG Ins. Co.*, 2008 WL 2198087, at *3. All of the parties to this action are also parties to the Florida Action, and all of the claims and issues present here can be adjudicated there as well. By contrast, the Florida Action includes additional parties (each of the Conspiring Partners) and claims (dissolution and disassociation, among others) not present here, and Florida is the "jurisdiction with the authority" to resolve Cyrulnik's claims for dissolution or dissociation. (Ex.7 at 4.) "Accordingly, abstaining here avoids piecemeal and duplicative litigation and allows for all the parties' claims to be resolved in the [Florida Action]." *Id.*, at *4.

*Fifth*, because the Florida court already denied RCF and the Conspiring Partners' motion to stay in the Florida action (Ex.7), the Florida action will proceed, resulting in duplicative litigation and the possibility of disparate results.

*Sixth*, there is no doubt that RCF was engaged in improper forum-shopping when it filed this anticipatory declaratory judgment.

*Seventh*, Florida is the more convenient forum. As in *TIG Ins. Co.*, "any convenience for the plaintiff [here, a Florida partnership] is substantially outweighed by the inconvenience to the other parties who would have to litigate the same issues in both this action and the [Florida] Action." *Id.*

*Eighth,* as in *TIG Ins. Co.*, RCF's technical filing of its complaint a mere ten days before Cyrulnik filed the Florida Action should be afforded no deference. *Id.* (noting that "priority in filing is mitigated by the fact that there was only a oneweek gap between" the actions). As this

Court aptly noted in *TIG Ins. Co.*, "there can be no mechanistic accrual of rights that attaches by reason of reaching the courthouse first, or indeed of engaging in a race at all." *Id.*; *see also Wilton*, 515 U.S. at 279-80 (abstaining despite a month gap).

*Ninth*, Florida law applies to RCF, a Florida partnership; to the extent any choice of law issues arise, the Florida court is best suited to decide them.  Indeed, the Florida court expressly determined that Florida, not the federal court, is the more appropriate jurisdiction to resolve the parties' state law claims.  (Ex.7 at 5 ("[T]he federal action would not resolve many of the issues involved in the state action.").

In short, consistent with this Court's conclusion in *TIG Ins. Co.,* "the various individual factors that comprise the more fundamental *Wilton* question of whether the federal or state forum provides a more appropriate avenue of resolution, overwhelmingly favor abstaining in the present case and leaving the questions raised by the declaratory plaintiff to be resolved in the [state court] Action.  Proceeding with the plaintiff's declaratory judgment action would be just the sort of 'vexatious' and 'uneconomical' interference with a pending state court proceeding that *Wilton* and *Brillhart* seek to avoid." *TIG Ins. Co.*, 2008 WL 2198087, at \*5.

## B.  <u>The Court Should Abstain Under The *Burford* Abstention Doctrine</u>

The *Burford* abstention doctrine warrants the same result.  This doctrine provides that a federal court should abstain "to avoid needless disruption of state efforts to establish coherent policy in an area of comprehensive state regulation." *Friedman v. Revenue Mgmt. of New York, Inc.*, 38 F.3d 668, 671 (2d Cir. 1994).  The Second Circuit has explained that courts evaluating *Burford* abstention consider three factors: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and

(3) whether the subject matter of the litigation is traditionally one of state concern." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009) (citation omitted).

All three factors weigh heavily in favor of abstention here.  Florida comprehensively regulates its limited liability partnerships.  *See* Fla. Stat. Ann. § 620.1101, *et seq*.   As the Florida court explained, Florida is the "jurisdiction with authority to determine" (i) "whether the partnership should be dissolved" and (ii) "the alternative request for buyout if judicial dissolution is found in appropriate or inequitable."  (Ex.7 at 4.)  Moreover, to the extent the Court declines to abstain, Defendant would effectively be forced to assert his pending claims, including for dissolution of a Florida partnership, as counterclaims in this action, which would then compel dismissal in any event, as the Second Circuit is clear that "every federal court that has addressed the issue of dissolving state corporations has either abstained or noted that abstention would be appropriate." *Friedman*, 38 F.3d at 671; *see also Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289, 296 n.6 (E.D.N.Y. 1999) (federal courts "have almost uniformly ruled that even if federal courts have subject matter jurisdiction over claims for corporate dissolution, they should abstain from exercising it").

## C.   The Court Should Abstain Under The *Colorado River* Abstention Doctrine

Separately, the Court should also decline jurisdiction under the *Colorado River* abstention doctrine because (i) there is a parallel state action between the same parties that will fully resolve the relief sought in this declaratory judgment action; (ii) adjudicating this action in this Court will result in piecemeal litigation; and (iii) it is undisputed that Florida state law governs the action. *See, e.g.*, *Lawrence Moskowitz CLU. Ltd. v. ALP, Inc.*, No. 19-CV-3868(ER), 2020 WL 1503558, at *8 (S.D.N.Y. Mar. 30, 2020), *aff'd sub nom. Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 F. App'x 50 (2d Cir. 2020) (dismissing a case which was "the classic example . . .  where all of

the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant

seeks a declaration of nonliability and the other potentially liable defendants are not parties").

In deciding whether to dismiss a federal court action under *Colorado River* because of a

parallel state-court litigation, courts consider the six-factor "exceptional circumstances" test.

*See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).  The six factors

are:  (1) assumption of jurisdiction over a property; (2) inconvenience of the federal forum; (3) the

desirability of avoiding piecemeal litigation; (4) the order in which the actions were filed;

(5) whether state or federal law provides the rule of decision; and (6) whether the state court

proceeding adequately protects the rights of the party seeking federal jurisdiction.  *Id.* p.19-26.

Here, the second through sixth factors are essentially the same as the factors applied in

connection with the *Wilton* doctrine, and, for the reasons set forth above, favor abstention.

Moreover, the Supreme Court has stated that "the most important factor in [its] decision to approve

the dismissal [in *Colorado River*] was the 'clear federal policy. . .[of] avoidance of piecemeal

adjudication . . . .'"  *Id.* p.16; *see also Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 F. App'x

50, 53 (2d Cir. 2020) ("The district court acted well within the bounds of its discretion in weighting

the danger of piecemeal litigation factor more strongly than others.").  In light of the Florida

decision, it is now indisputable that the resolution of this action will not resolve Cyrulnik's core

claims for dissolution of or disassociation from a Florida partnership, which will be adjudicated in

the Florida Action along with Cyrulnik's other state law claims.  (*See* Ex.7.)  Should this Court

deny this Motion, the parties will be faced with duplicative litigation concerning the same facts

and face the risk of inconsistent outcomes or judgments.  Courts have repeatedly held that these

risks justify abstention under *Colorado River*.  *See Mouchantaf v. Int'l Modeling & Talent Ass'n*,

368 F. Supp. 2d 303, 307 (S.D.N.Y. 2005) ("Since the New York and Arizona actions center on

identical issues and are inextricably intertwined, the avoidance of piecemeal and duplicative litigation is a decisive factor favoring abstention in this case."); *Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462, 475 (S.D.N.Y. 2001) (dismissing case in favor of avoiding piecemeal litigation where state court already determined that state case would proceed); *Take-Two Interactive Software, Inc. v. Benzies*, No. 16-CV-2699(VSB), 2017 WL 2728434, at *1 (S.D.N.Y. June 22, 2017) (abstaining where state court action was at a more advanced stage and state court was familiar with case); *see also Pabco Const. Corp. v. Allegheny Millwork PBT*, No. 12-CV-7713, 2013 WL 1499402, at *3 (S.D.N.Y. Apr. 10, 2013) (abstaining where there was a "strong likelihood of needless duplication of the state proceeding").

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss this action for lack of jurisdiction, or abstain from exercising jurisdiction over this action.[9]

---

[9]  This case should be dismissed because there is no contention that RCF's claims cannot simply be asserted as defenses or counterclaims in the Florida Action, since "the entirety of the plaintiff's claim here also constitutes a defense in the" other action. *TIG Ins. Co.,* 2008 WL 2198087, at *5. To the extent the Court is not inclined to dismiss this action, it should, at a minimum, stay this action pending a final decision from the Florida court in the interest of comity and judicial economy.

Dated: August 13, 2021
          New York, New York

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By: */s/ Marc E. Kasowitz*
          Marc E. Kasowitz (mkasowitz@kasowitz.com)
          Michael A. Hanin (mhanin@kasowitz.com)
          Gavin D. Schryver (gschryver@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel.:    (212) 506-1700
Fax:     (212) 506-1800

*Attorneys for Defendant Jason Cyrulnik*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that according to the word count feature of the word processing program used to prepare this brief, the brief contains 6,997 words (exclusive of the cover page, certificate of compliance, table of contents, and table of authorities), and complies with Local Civil Rule 11.1 of the Southern District of New York, as well as with this Court's Individual Practice Rule 2.D.


*/s/ Marc E. Kasowitz*
Marc E. Kasowitz