**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ROCHE CYRULNIK FREEDMAN LLP,

      Plaintiff,

v.

JASON CYRULNIK,

      Defendant.

Civ. No. 1:21-cv-01746 (JGK)

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

FACTUAL BACKGROUND .............................................................................................. 1

I.      FORMATION OF ROCHE FREEDMAN LLP ....................................................... 1

II.     CYRULNIK ENGAGES IN ABUSIVE AND OBSTRUCTIVE BEHAVIOR TO
        INCREASE HIS OWN COMPENSATION .............................................................. 2

III.    CYRULNIK IS REMOVED FROM RCF FOR CAUSE, REFUSES TO LEAVE,
        AND CONCOCTS A CONSPIRACY THEORY TO SHAKE THE FIRM DOWN .......... 4

IV.     CYRULNIK FILES A RETALIATORY ACTION IN FLORIDA ...................................... 5

V.      RF SUPPLEMENTS THE COMPLAINT BASED ON CYRULNIK'S
        SUBSEQUENT MISCONDUCT .............................................................................. 6

ARGUMENT ..................................................................................................................... 6

I.      THE COURT HAS SUBJECT-MATTER JURISDICTION ........................................... 6

        A.      The Court Determines Diversity as of the Date of the Amended Complaint. ............. 7

        B.      The Original Complaint Also Alleges Diversity Jurisdiction. ..................................... 8

        C.      RF's Evidence Creates a Genuine Dispute of Material Jurisdictional Facts. ............ 11

        D.      Cyrulnik's Evidence Does Not Eliminate Genuine Disputes of Material Fact. ......... 12

II.     THE FEDERAL FIRST-FILED RULE IS INAPPLICABLE ............................................ 14

III.    THERE IS NO BASIS FOR ABSTENTION ................................................................ 16

        A.      Cyrulnik's Wilton/Brillhart Argument Is Frivolous .................................................... 16

        B.      Colorado River Abstention Is Inappropriate .............................................................. 17

        C.      Burford Abstention Is Inappropriate .......................................................................... 20

CONCLUSION ................................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*800-Flowers, Inc. v. Intercont'l Florist, Inc.*,
   860 F. Supp. 128 (S.D.N.Y. 1994) ..................................................................... 16

*Aktas v. JMC Dev. Co., Inc.*,
   2010 WL 2520980 (N.D.N.Y. June 15, 2010)....................................................... 19

*Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*,
   328 F. Supp. 3d 141 (S.D.N.Y. 2018) ................................................................. 18

*Arch Ins. Co. v. Pfizer, Inc.*,
   771 F. App'x 49 (2d Cir. 2019) ......................................................................... 15

*Beckworth v. Bizier*,
   48 F. Supp. 3d 186 (D. Conn. 2014)................................................................... 20

*Burrell v. State Farm Fire & Cas. Co.*,
   2001 WL 797461 (S.D.N.Y. July 12, 2001) ........................................................ 19

*Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*,
   2011 WL 13261585 (S.D.N.Y. Nov. 3, 2011)...................................................... 14

*Chen v. Sun*,
   2016 WL 270869 (S.D.N.Y. Jan. 21, 2016) .......................................................... 7

*Cohen v. Reed*,
   868 F. Supp. 489 (E.D.N.Y. 1994) ..................................................................... 20

*Cont'l Cas. Co. v. Dep't of Highways*,
   379 F.2d 673 (5th Cir. 1967) ............................................................................ 10

*Cromer Fin. Ltd. v. Berger*,
   137 F. Supp. 2d 452 (S.D.N.Y. 2001) .................................................................. 8

*Cruz v. TD Bank, N.A.*,
   855 F. Supp. 2d 157 (S.D.N.Y. 2012), *aff'd*, 742 F.3d 520 (2d Cir. 2013) ............... 20

*DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*,
   770 F. Supp. 2d 627 (S.D.N.Y. 2011) ........................................................... 17, 18

*Dish Network, LLC v. Am. Borad. Cos., Inc.*,
   2012 WL 2719161 (S.D.N.Y. July 9, 2012) ........................................................ 15

*Dittmer v. Cty. of Suffolk*,
   146 F.3d 113 (2d Cir. 1998)............................................................................. 17

*Dow Jones & Co., Inc. v. Harrods, Ltd.*,
   237 F. Supp. 2d 394 (S.D.N.Y. 2002) ................................................................. 15

*Evans v. SSN Funding, LP*,
   2017 WL 3671180 (S.D.N.Y. Aug. 23, 2017) ................................................... 8, 9

*Frydman v. Verschleiser*,
   172 F. Supp. 3d 653 (S.D.N.Y. 2016) (Koeltl, J.) ...................................... 17, 18, 19

*Goodman v. Polyvinyl Films, Inc.*,
   1999 WL 33030 (S.D.N.Y. Jan. 21, 1999) ............................................................ 8

*Grupo Dataflux v. Atlas Global Group, LP*,
   541 U.S. 567 (2004) ............................................................................................... 7

*Hackner v. Guar. Tr. Co. of N.Y.*,
   117 F.2d 95 (2d Cir. 1941) .................................................................................... 7

*Hamm v. United States*,
   439 F. Supp. 2d 262 (W.D.N.Y. 2006), *aff'd*, 483 F.3d 135 (2d Cir. 2007) ............ 8

*Inteliclear, LLC v. Victor*,
   2016 WL 5746349 (D. Conn. Oct. 3, 2016) .......................................................... 9

*InteliClear, LLC v. Victor*,
   2017 WL 2213125 (D. Conn. May 18, 2017) ...................................................... 10

*Ironshore Specialty Ins. Co. v. Maxon Indus. Inc.*,
   2020 WL 6263742 (S.D.N.Y. Oct. 22, 2020) ..................................................... 17

*Ivy-Mar Co., Inc. v. Weber-Stephen Prods., Co.*,
   1993 WL 535166 (S.D.N.Y. Dec. 22, 1993) ...................................................... 15

*Kate Aspen, Inc. v. Fashioncraft-Excello, Inc.*,
   370 F. Supp. 2d 1333 (N.D. Ga. 2005) ............................................................... 15

*Katin v. Apollo Sav.*,
   460 F.2d 422 (7th Cir. 1971) ............................................................................... 21

*Kay-R Elec. Corp. v. Stone & Webster Constr. Co., Inc.*,
   23 F.3d 55 (2d Cir. 1994) .................................................................................... 10

*Kelly v. Vesnaver*,
   2018 WL 1054827 (E.D.N.Y. Jan. 11, 2018) ....................................................... 7

*KyTEL Int'l Grp., Inc. v. Rent A Center, Inc.*,
   43 F. App'x 420 (2d Cir. 2002) ........................................................................... 14

*Lan Sang v. Ming Hai*,
  951 F. Supp. 2d 504 (S.D.N.Y. 2013) ................................................................ 14

*Leighton Techs. LLC v. Oberthur Card Sys., S.A.*,
  531 F. Supp. 2d 591 (S.D.N.Y. 2008) .................................................................. 9

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
  17 F. Supp. 3d 385 (S.D.N.Y. 2014) (Koeltl, J.) ................................................ 15

*Liu v. 88 Harborview Realty, LLC*,
  5 F. Supp. 3d 443 (S.D.N.Y. 2014) ..................................................................... 11

*London v. Polishook*,
  189 F.3d 196 (2d Cir. 1999)................................................................................... 8

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
  1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) ........................................................ 18

*Mersentes v. Corrigan*,
  2010 WL 3959615 (S.D.N.Y. Sept. 30, 2010) .................................................... 19

*Nat'l Union Fire Ins. Co. v. Int'l Wire Int'l Grp., Inc.*,
  2003 WL 21277114 (S.D.N.Y. June 2, 2003) .................................................... 15

*Nat'l Union Fire Ins. Co. v. Texaco Refining & Mktg., Inc.*,
  803 F. Supp. 1247 (S.D. Tex. 1992) .................................................................... 19

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
  673 F.3d 84 (2d Cir. 2012)................................................................................... 16

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
  779 F.3d 1036 (9th Cir. 2015) .............................................................................. 7

*Parker v. WI Waterstone, LLC*,
  790 F. App'x 926 (10th Cir. 2019) ....................................................................... 8

*R4 Props. v. Riffice*,
  2014 WL 4724860 (D. Conn. Sept. 23, 2014) .................................................... 20

*Rockwell Int'l Corp. v. United States*,
  549 U.S. 457 (2007)........................................................................................... 7, 8

*S&S Candies, Inc. v. Hershey Foods Corp.*,
  2000 WL 1425092 (S.D.N.Y. Sept. 26, 2000)................................................... 15

*Semi-Tech Litig., LLC v. Bankers Tr. Co.*,
  272 F. Supp. 2d 319 (S.D.N.Y. 2003) .................................................................. 9

*Shepherd v. Keyser*,
 2021 WL 1842159 (S.D.N.Y. May 7, 2021) ...................................................... 10

*Shields v. Murdoch*,
 891 F. Supp. 2d 567 (S.D.N.Y. 2012) ............................................................. 18

*Silverman v. Worsham Bros. Co., Inc.*,
 625 F. Supp. 820 (S.D.N.Y. 1986) ................................................................. 20

*Stagg, P.C. v. U.S. Dep't of State*,
 983 F.3d 589 (2d Cir. 2020) ........................................................................... 11

*Sunwealth Global HK Ltd. v. Pinder Int'l, Inc.*,
 2021 WL 1145245 (S.D.N.Y. Mar. 23, 2021) .......................................... 14, 17

*Viacom Int'l Inc. v. Kearney*,
 1999 WL 92601 (S.D.N.Y. Feb. 22, 1999) ...................................................... 20

*Victory v. Pataki*,
 814 F.3d 47 (2d Cir. 2016) ............................................................................. 13

*Vill. of Westfield v. Welch's*,
 170 F.3d 116 (2d Cir. 1999) ........................................................................... 17

*Wilton v. Seven Falls Company*,
 515 U.S. 288 (1995) ........................................................................................ 16

*Winfield v. Citibank, N.A.*,
 842 F. Supp. 2d 560 (S.D.N.Y. 2012) ............................................................. 17

*Wiwi v. Royal Dutch Petroleum Co.*,
 626 F. Supp. 2d 377 (S.D.N.Y. 2009) ............................................................. 10

*Woodford v. Cmty. Action Agency of Greene Cty., Inc.*,
 239 F.3d 517 (2d Cir. 2001) ........................................................................... 19

**FACTUAL BACKGROUND**

I.     **FORMATION OF ROCHE FREEDMAN LLP**

On August 1, 2019, Kyle Roche and Velvel Freedman left Boies Schiller Flexner LLP ("BSF") to start their own firm, Roche Freedman LLP ("RF"). (Am. Compl. ¶ 12.)

After RF's formation, several BSF attorneys discussed with Roche and Freedman the prospect of joining RF. (*Id.* ¶ 15.) On December 27, 2019, then-BSF attorneys Amos Friedland, Nathan Holcomb, Edward Normand, and Jason Cyrulnik, along with Roche and Freedman (the "Founding Partners"), executed a memorandum of understanding (the "MOU") that "establishe[d] *the intent to form* a partnership" between them. (*Id.* ¶ 17 (emphasis added).) The MOU "sets out the basic terms *upon which* the Founding Partners *will enter into* a definitive partnership agreement . . . for the purposes of building a high-end litigation law firm to be named Roche Cyrulnik Freedman LLP." (*Id.* (emphasis added).)

The Founding Partners recognized in the MOU that it was not comprehensive or final and that a formal partnership agreement would have to be negotiated and signed:

> The terms of this MOU are not comprehensive, and additional terms, including further clarification of areas of responsibility and resources to be committed, will be incorporated into a formal Partnership Agreement (the "Partnership Agreement") to be negotiated and to be made effective on or around January 1, 2020.

(*Id.* ¶ 32.) Given such ambiguities and uncertainties, and given that the MOU contemplated the allocation and exclusion of assets to RCF, Roche and Freedman (who collectively owned 100% of RF) made sure they would be protected until such time as a comprehensive partnership agreement had been negotiated, drafted, and signed. The MOU therefore provided:

> The Founding Partners understand that equity in Roche Freedman LLP is currently split 50/50 between Kyle Roche and Velvel Freedman. *After execution of the Partnership Agreement*, and effective January 2020, the equity division in the Firm *will be* the following: [list of equity split follows].

(Declaration of Eric Rosen ("Rosen Decl.") Ex. 1 § II) (emphasis added).) While the MOU provided that the Founding Partners would "work towards the finalization of the Partnership Agreement," Cyrulnik barred progress and no partnership agreement was ever executed. (Am. Compl. ¶¶ 18, 43.) Accordingly, pursuant to the MOU, Cyrulnik never received equity in RF.

The MOU also provided an incomplete overview of how assets would be allocated once RCF was formed and delineated a formula governing the Founding Partners' compensation. (*See id.* ¶¶ 17-20, 25-28.) The MOU contemplated certain crypto-currency tokens ("Tokens") would be distributed *outside* the firm's formula compensation model, primarily to the Founding Partners who would provide legal services to a startup ("Startup") over the next several years—Roche, Freedman, and Cyrulnik. (*Id.* ¶ 20.) Knowing the amount of work would be demanding, long-lasting, and hard to predict ex-ante, the MOU provided the firm could "revisit" the agreed-upon distribution. (*Id.*)

The MOU committed the Founding Partners to "work together and co-operate in good faith" and to "fully participate to develop the Firm." (*Id.* ¶ 25.) It provided that any Founding Partner could be "removed for cause" by an "affirmative vote of 2/3 of the Firm's equity partners," and that any partner that withdrew from the Firm within the first eighteen months would receive only their "formula compensation." (*Id.* ¶¶ 26-28.)

## II.   CYRULNIK ENGAGES IN ABUSIVE AND OBSTRUCTIVE BEHAVIOR TO INCREASE HIS OWN COMPENSATION

In January 2020, Cyrulnik embarked on a campaign to increase his own compensation—to the detriment of RCF and its partners, associates, and staff. (*Id.* ¶¶ 29, 39.) Cyrulnik took these steps on primarily three fronts.

*First*, Cyrulnik attempted to strongarm RCF's partners into modifying the firm's compensation formula to divert compensation to himself. (*Id.* ¶ 32.) When Cyrulnik first raised this agenda

item, he was professional. (*Id.*) But when everyone declined to capitulate, he resorted to hostile, obstructive, and abusive tactics. In July 2020, for example, Cyrulnik lost control, erupted into a rage, and screamed because Freedman did not agree with his proposed compensation changes. (*Id.* ¶ 33.) Both Roche and Freedman wrote to Cyrulnik his behavior was unacceptable. (*Id.* ¶¶ 36-37.) But Cyrulnik's misconduct continued. At subsequent partnership meetings, when other partners disagreed with his proposed changes, he interrupted, spoke over, filibustered, and refused to let them voice their opinions. (*Id.* ¶ 41.)

*Second*, Cyrulnik violated RCF's agreements, MOU, and procedures. For example, he (1) instructed a firm administrator to withhold financial information from two Founding Partners (*id.* ¶ 45); (2) refused to discuss a comprehensive Partnership Agreement (*id.* ¶ 43); (3) caused the firm to undertake representations without its New Matter Committee's approval (*id.* ¶ 40); (4) failed to obtain engagement letters for nearly every client he originated (*id.*); and (5) refused to send out invoices totaling $4 million of billable work (*id.* ¶ 42).

*Third*, in a ploy to boost his own compensation, Cyrulnik attempted to monopolize associate time by, without authority, instructing associates to prioritize his matters, and by retaliating against partners who tried to resist his unauthorized monopolization. (*Id.* ¶¶ 30, 49-50.) In December 2020, for example, Cyrulnik discovered an associate was spending time on a matter managed by Holcomb and Katherine Eskovitz and demanded he immediately stop. (*Id.* ¶¶ 52-53.) When Eskovitz and Holcomb resisted Cyrulnik's demand, Cyrulnik shrieked that *he* was "in charge of allocating associates" and that *he* had unilateral authority to reallocate associates, and he proclaimed the associate was "not on this case now." (*Id.* ¶ 55.) After yelling for approximately thirty minutes, Cyrulnik ended the call. (*Id.*) Eskovitz immediately emailed Cyrulnik that she had "not had a call like this in my career." (*Id.* ¶ 57.)

Undeterred, Cyrulnik sought retaliation. He told Roche and Freedman that they needed to help him put Eskovitz and Holcomb "in their place" (*id.* ¶ 59) and repeatedly asked Roche and Freedman to reduce their compensation and eventual equity allocations. (*Id.*) He then secretly, and with full knowledge of an imminent court-ordered deadline in the Holcomb/Eskovitz matter, uni-laterally told that associate he was staffed to *another* Cyrulnik-originated matter and instructed him to spend *the vast majority of his time* on that new matter. (*Id.* ¶ 60.)

By this point, associates had expressed serious concerns about Cyrulnik. (*Id.* ¶ 62.) These associates pleaded to be removed from his matters, and, around December 2020, two associates said they would leave the firm if they had to continue working with Cyrulnik. (*Id.* ¶ 63.)

## III.    CYRULNIK IS REMOVED FROM RCF FOR CAUSE, REFUSES TO LEAVE, AND CONCOCTS A CONSPIRACY THEORY TO SHAKE THE FIRM DOWN

By early 2021, RCF could no longer carry on its business with Cyrulnik. (*Id.* ¶ 64.) Ac-cordingly, the Founding Partners—minus Cyrulnik—met in New York to discuss how to proceed. (*Id.* ¶ 65.) On February 10, they unanimously voted to remove Cyrulnik for cause. (*Id.* ¶ 66.) They told Cyrulnik two days later, stating that they "have voted to remove you for cause from the firm's partnership." (*Id.* Ex. D.) Accordingly, by February 10 (and certainly by February 12), Cyrulnik had been removed. (*Id.* ¶ 71.) Notwithstanding Cyrulnik's misconduct, the remaining Founding Partners told him that they intended "to work with [Cyrulnik] on a transition plan to ensure that (i) [his] future endeavors are a success, and that (ii) the firm's clients are not prejudiced by [his] removal." (*Id.* Ex. D.)

Cyrulnik refused to leave. (Am. Compl. ¶ 70.) RF's counsel attempted to deescalate and proposed mediation and arbitration. Cyrulnik's counsel responded: "I'm at dinner and I haven't had a chance to talk to my clients about this . . . We can talk whenever you'd like, but I'm going to make sure Jayson's [sic] rights aren't [sic] fully protected." (Dkt. No. 38-4.) RF's counsel

responded: "[g]iven that we both have clients observing Shabbat, how about we connect early Sunday morning." (*Id.*) Instead of agreeing, Cyrulnik's lawyer rejected RF's previously offered compromise and demanded that RF (i) immediately provide Cyrulnik with "unfettered access" to its bank accounts, and (ii) allow Cyrulnik to compel the Firm to handle new Cyrulnik-originated matters without regard to his removal. (*Id.*) Cyrulnik's counsel stated that failure to comply with these his demands "will guaranty a resort to litigation." (*Id.*) These demands were a de facto rejection of RF's suggestion they talk on Sunday and demonstrated the futility of any such talks.

In short, Cyrulnik's accusation—that RF's offer for a Sunday call was "a bad-faith offer and an improper, deceitful stall tactic" because RF asked Cyrulnik "to wait until after the conclusion of the Jewish Sabbath" before commencing an action against RF—is disingenuous. RF *never* requested Cyrulnik forbear from commencing a lawsuit. To the contrary (and as alleged), RF commenced this action to confirm Cyrulnik was "validly removed from the Firm" because it was stuck with an abusive, erratic, and unreasonable lawyer who kept holding himself out as a member of the Firm after being removed. (Am. Compl. ¶ 88.)

Similarly baseless is Cyrulnik claims that the entire partnership, along with the Firm's associates, are conspiring to create a false narrative to cover up a grand scheme engineered to seize Cyrulnik's alleged share of Tokens he did not earn, *and which the Firm already had the power to reallocate*. (*Id.* ¶ 69; *see also* Dkt. No. 37 at 9-12.) The discovery in this action will demonstrate that Cyrulnik's conspiracy theory is frivolous.

## IV.   CYRULNIK FILES A RETALIATORY ACTION IN FLORIDA

After attempting to avoid service here (*see* Dkt. No. 6), Cyrulnik filed suit in Florida state court (the "Florida Action") ten days after this suit was commenced (*see* Dkt. No. 38-2). Cyrulnik asserted claims against RF and its Founding Partners, who (with the exception of Freedman) live in New York. (*Id.*) Each of Cyrulnik's nine claims is premised on the same factual allegation at

issue here: whether Cyrulnik's removal was proper. (Dkt. No. 38-2 ¶¶ 95, 106, 110, 119, 130, 134, 137, 145, 151.) The Florida Action is still in its incipient stage, and the parties are litigating whether it should be stayed in favor of this action. (Rosen Decl. ¶ 5.) The trial court's decision not to stay the action is on appeal, as is a request to enter a stay pending appeal. (*Id.* ¶¶ 5, 8.)

## V.  RF SUPPLEMENTS THE COMPLAINT BASED ON CYRULNIK'S SUBSE-QUENT MISCONDUCT

After RF commenced this action in late February, RF notified Cyrulnik he had not submit-ted billable time records for 2021. (Am. Compl. ¶ 75.) Notwithstanding RF's repeated requests in March and April, Cyrulnik—in breach of his fiduciary duties and in retaliation against RF—has refused to produce those records. (*Id.* ¶¶ 76-79.) As a result, RF has been unable to bill clients for services rendered by Cyrulnik as an RF lawyer in 2021. (*Id.* ¶ 80.)

After Cyrulnik was removed, moreover, the clients he originated have, almost without ex-ception, refused to pay their outstanding bills, amounting to over $3.3 million. (*Id.* ¶ 82.) These clients have provided near-identical responses in their correspondence with RF, compelling the inference that Cyrulnik is coordinating their responses and advising them with respect to their obligations to RF. (*Id.* ¶¶ 81-82.) Cyrulnik has, in any event, not assisted RF in collecting these outstanding amounts. (*Id.* ¶¶ 95, 104.) Based on the harm Cyrulnik caused after RF's commence-ment of this action, RF supplemented its complaint on July 2, 2021, to assert claims against Cyrulnik for breach of fiduciary duty and tortious interference. (*See id.* ¶¶ 90-107.)

## ARGUMENT

## I.  THE COURT HAS SUBJECT-MATTER JURISDICTION

Cyrulnik incorrectly argues that the Court lacks diversity jurisdiction. The Court's task is to determine whether diversity existed, which it indisputably did, as of the date of the Amended

Complaint. In addition, if the Court were to look to the original filing date (contrary to the law), diversity existed then as well.

    A.    <u>The Court Determines Diversity as of the Date of the Amended Complaint.</u>

Cyrulnik was indisputably not an RF partner when the Amended Complaint was filed on July 2, 2021. Indeed, Cyrulnik had formed a new law firm by March 12, 2021. (Rosen Decl. Exs. 6, 7.) Accordingly, under the governing law, his jurisdictional argument fails.

"[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Chen v. Sun*, 2016 WL 270869, at *1 (S.D.N.Y. Jan. 21, 2016) (quoting *Wheeler v. Citigroup*, 938 F. Supp. 2d 466, 471 (S.D.N.Y. 2013)). Courts thus "look" to the party's "residence at the time" the "amended complaint was filed" to determine that party's citizenship. *Id.* at *3; *see also Kelly v. Vesnaver*, 2018 WL 1054827, at *3 (E.D.N.Y. Jan. 11, 2018) ("To determine whether complete diversity exists among the parties, the court looks to the facts at the time that the Amended Complaint was filed." (citing *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007))). It has long been the law that any contrary rule would be "purely formal" and would needlessly expose parties to "the delay and expense of a new suit, which at long last will merely bring the parties to the point where they now are." *Hackner v. Guar. Tr. Co. of N.Y.*, 117 F.2d 95, 98 (2d Cir. 1941).

Cyrulnik cites authority (at 15) to suggest jurisdiction is assessed when the original complaint is filed, but those cases are inapposite. For example, *Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567 (2004), did not involve any "supplemental pleading"; instead, the plaintiff merely argued that a post-filing change in its citizenship, *without the filing of any amended complaint*, was sufficient to confer jurisdiction. *Compare id.* at 569-70, *with Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1047 (9th Cir. 2015) ("More significantly, unlike *Grupo Dataflux*, the present case involves the filing of a supplemental pleading that became the operative pleading

in the case on which subject-matter jurisdiction must be based."). Subsequent Supreme Court precedent also clarifies that the filing of an amended complaint is a critical distinction. *See Rockwell*, 549 U.S. at 473-74 (courts "look to the amended complaint to determine jurisdiction"); *see also Parker v. WI Waterstone, LLC*, 790 F. App'x 926, 929 (10th Cir. 2019) (citing *Rockwell* and determining whether diversity jurisdiction exists based on allegations in amended complaint).[1]

In sum, even on the premise that Cyrulnik was a partner at RF as of February 27, 2021 (he was not), this Court still has subject-matter jurisdiction over RF's Amended Complaint, which was filed on July 2, 2021, well after Cyrulnik's time at RF had indisputably ended.

B.     The Original Complaint Also Alleges Diversity Jurisdiction.

Cyrulnik claims (at 17) that it is "well-settled that, to establish complete diversity, a plaintiff's complaint must 'negative the possibility that the plaintiff and any defendant share citizenship.'" *Goodman v. Polyvinyl Films, Inc.*, 1999 WL 33030, at *1 (S.D.N.Y. Jan. 21, 1999). This standard has no application where, as here, jurisdictional issues overlap with the merits.

Where the existence of subject-matter jurisdiction is "so intertwined with the merits that its resolution depends on the resolution of the merits, the trial court should employ the standard applicable to a motion for summary judgment" and "dismiss such a claim for lack of jurisdiction *only if there are no triable issues of fact.*" *London v. Polishook*, 189 F.3d 196, 198-99 (2d Cir. 1999) (emphasis added); *accord Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 467 (S.D.N.Y. 2001); *Evans v. SSN Funding, LP*, 2017 WL 3671180, at *5 (S.D.N.Y. Aug. 23, 2017); *Hamm v. United States*, 439 F. Supp. 2d 262, 264 (W.D.N.Y. 2006), *aff'd*, 483 F.3d 135 (2d Cir. 2007). As

---

[1] Cyrulnik's other cases, *Kahn v. Oppenheimer & Co., Inc.*, 2009 WL 4333457 (S.D.N.Y. Dec. 1, 2009), and *Dumann Realty, LLC v. Faust*, 2013 WL 30672 (S.D.N.Y. Jan. 3, 2013), neither cite *Rockwell* nor address what (per Cyrulnik) happened here—namely, where the plaintiff files a complaint, a party's citizenship changes to create diversity, *and then* the plaintiff files an amended complaint. In *Kahn*, although the plaintiff moved, the court did not discuss *when* that move occurred, 2009 WL 4333457, at *3, and in *Dumann*, there is no evidence that either party moved, 2013 WL 30672, at *2.

on summary judgment, it is the movant's "burden to show that there is no genuine issue as to any material fact." *Semi-Tech Litig., LLC v. Bankers Tr. Co.*, 272 F. Supp. 2d 319, 329 (S.D.N.Y. 2003); *see also Evans*, 2017 WL 3671180, at *6. Accordingly, where the plaintiff presents "enough evidence to create a genuine dispute of material jurisdictional facts," dismissal is inappropriate. *Inteliclear, LLC v. Victor*, 2016 WL 5746349, at *6 (D. Conn. Oct. 3, 2016); *see also Leighton Techs. LLC v. Oberthur Card Sys., S.A.*, 531 F. Supp. 2d 591, 595 (S.D.N.Y. 2008) ("If the plaintiff presents sufficient evidence to create a genuine dispute of material (jurisdictional) facts, then the case proceeds to trial, so that the factfinder can determine the facts, and the jurisdictional dispute will be reevaluated at that point.").

In *Inteliclear*, for example, the plaintiff LLC asserted claims against a former member seeking to enjoin him from, *inter alia*, "holding himself out as a member" of the LLC. 2016 WL 5746349, at *1-4. The former member "vehemently" disputed that he had "been effectively dissociated" from the LLC and claimed that, based on his continued membership in the LLC, the court lacked subject-matter jurisdiction. *Id.* at *4-5. After explaining that the "merits and jurisdictional determinations necessarily coincide[d]," the court rejected the defendant's argument because the LLC had "presented enough evidence to create a genuine dispute of material jurisdictional facts." *Id.* at *6. RF has likewise met this burden. *See* Part I.C & I.D, below.

Aware of this precedent (*see* Dkt. No. 12), Cyrulnik simply ignores it. Instead, he raises several arguments premised on his own personal view that it is improper for a court to exercise subject-matter jurisdiction where the jurisdictional facts and merits overlap.

*First*, Cyrulnik asserts (at 18) that RF is improperly asking "this Court to decide the merits of this case – whether [RF] properly removed Cyrulnik 'for cause' – in its favor, prior to any discovery, through a jurisdictional ruling." RF is doing no such thing. The standard is simply that

9

when these issues overlap, and a genuine dispute exists, the Court has jurisdiction, and the issue goes to the jury. *See Wiwi v. Royal Dutch Petroleum Co.*, 626 F. Supp. 2d 377, 383 (S.D.N.Y. 2009) ("[W]here the overlap between jurisdictional and merits evidence 'is such that fact-finding on the jurisdictional issue will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury, then the Court must leave the jurisdictional issue for the trial.'" (quoting *All. for Evtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006))). In fact, in nearly identical circumstances, the *Inteliclear* court rejected Cyrulnik's argument, explaining that it was "*not* 'decid[ing] the merits, under the guise of determining jurisdiction'" when it concluded it had subject-matter jurisdiction. 2016 WL 5746349, at *5 (quoting *Cont'l Cas. Co. v. Dep't of Highways*, 379 F.2d 673, 675 (5th Cir. 1967)) (emphasis added). To be clear, RF is only requesting the Court find it has subject-matter jurisdiction on the basis that RF has made the necessary factual showing of a material dispute under *London*. That finding *would not* have any preclusive effect with respect to the merits. *Cf. Kay-R Elec. Corp. v. Stone & Webster Constr. Co., Inc.*, 23 F.3d 55, 59 (2d Cir. 1994) (denial of summary judgment has no preclusive effect).

*Second*, Cyrulnik claims (at 18) that the Court's exercise of subject-matter jurisdiction would be "fundamentally unfair" because the parties would "have to re-litigate the same issues" if the Court later finds RF's "termination of Cyrulnik was improper and Cyrulnik remains a partner of the firm." This argument is also wrong. If the Court were "to dismiss the case for lack of subject matter jurisdiction after determining that the defendant remained a member of the plaintiff LLC, 'the dismissal would nevertheless bind the parties as to that issue.'" *InteliClear, LLC v. Victor*, 2017 WL 2213125, at *4 n.10 (D. Conn. May 18, 2017). That is because "a dismissal for lack of jurisdiction" precludes "relitigation of the issues determined in ruling on the jurisdiction question." *Shepherd v. Keyser*, 2021 WL 1842159, at *3 (S.D.N.Y. May 7, 2021); *see also Stagg, P.C. v.*

*U.S. Dep't of State*, 983 F.3d 589, 605 n.9 (2d Cir. 2020) ("[A]court 'always possesses jurisdiction to determine its jurisdiction, and any fact upon which that decision is grounded may serve as the basis for an estoppel by judgment in any later action.'").

*Third*, Cyrulnik claims (at 17-18) that RF's declaratory judgment claim is an "attempted 'end run around the diversity statute.'" This argument, based on a misleading citation to *Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443 (S.D.N.Y. 2014), is meritless. In *Liu* the plaintiff alleged he was a member of the defendant LLC, asserted numerous state-law claims for damages premised on that allegation, and sought a declaration establishing that he was a member of the defendant LLC. *Id.* at 451. The court suggested that it was "reticent" to "resolve the related declaratory judgment dispute," given that "the lion's share" of the case involved "state law causes of action over which, taking Plaintiff's allegations as true," the court lacked subject-matter jurisdiction. *Id.* at 451-52. Here, in contrast, *all of RF's claims* are premised on its allegation that Cyrulnik *was removed* from RF for cause on February 12, 2021. There are thus no "state law causes of action over which, taking [RF]'s allegations as true," the Court lacks subject-matter jurisdiction.

C.      RF's Evidence Creates a Genuine Dispute of Material Jurisdictional Facts.

Where Cyrulnik concedes (at 17-18) that the merits and jurisdiction overlap (they both hinge on his status as an RF equity partner), the Court has subject-matter jurisdiction as long as RF presents evidence to create a genuine dispute of material fact on that issue. RF easily meets this burden. Indeed, not only does RF allege that Cyrulnik did not become an equity partner (as no Partnership Agreement was signed), RF also alleges that Cyrulnik was removed for cause by February 12. (Am. Compl. ¶¶ 71, 80.) RF supports those allegations with documentary evidence, including (i) the MOU stating no equity would be distributed until a Partnership Agreement was

signed (Rosen Decl. Ex. 1 § II) and (ii) the email sent to Cyrulnik on February 12 informing him of his removal (*see* Am. Compl. Ex. D).

In contending that his removal was "ultra vires and void *ab initio*" (Dkt. No. 38-2 ¶ 95), Cyrulnik fails to address that *under the clear language of the MOU, he never received equity in RF and thus was not an equity partner***.** If he *had* become an RF equity partner, moreover, RF laid out detailed factual allegations demonstrating "cause" existed to justify his removal and attached *actual contemporaneous evidence* supporting these allegations. (*See* Am. Compl. Exs. A-C.)

D.    <u>Cyrulnik's Evidence Does Not Eliminate Genuine Disputes of Material Fact.</u>

Against the weight of this evidence, Cyrulnik has failed to establish the absence of a genuine dispute of material jurisdictional fact. As an initial matter, Cyrulnik has failed to overcome the express language of the MOU stating that he would not receive any equity in the firm until he executed a partnership agreement—which, as alleged, never happened. Cyrulnik's other arguments are also unavailing.

*First*, Cyrulnik argues (at 16) that he must not have been removed when the Complaint was filed in February 2021, because the Complaint was filed on behalf of Roche *Cyrulnik* Freedman LLP. This is absurd. The Complaint was filed on behalf of Roche Cyrulnik Freedman LLP because the Florida Division of Corporations had not yet processed RF's request to change the Firm's name. (Rosen Decl. ¶ 4.) The Complaint unambiguously stated: "Defendant *was removed for cause*, per the Memorandum of Understanding, by an affirmative vote of 2/3 of the Firm's equity partners." (Compl. ¶ 75.)

*Second*, Cyrulnik contends (at 16) that RF "concede[d]" Cyrulnik is *still* a partner at RF in its Amended Complaint, by "alleging that while Cyrulnik is a citizen of New Jersey, '[n]o *other* RCF Partners' are citizens of New Jersey.'" This is mere imprecision in drafting. The original Complaint did not include the word "other." (Compl. ¶ 9.) And there is no dispute that when the

Amended Complaint was filed, in July, Cyrulnik was not a partner at RF. (*See supra* at 7.) The use of "other" was intended merely to underscore that no partner of RF was a New Jersey citizen. In light of the entire premise of RF's action—Cyrulnik was removed from RF for cause on February 12, 2021 (*see, e.g.*, *id.* ¶¶ 71, 80)—Cyrulnik's reading of the word "other" is plainly unreasonable. Indeed, the preceding sentence pleads that RF "is a citizen of Florida and New York and Cyrulnik is a citizen of New Jersey." (Am. Compl. ¶ 9.) Cyrulnik does not cite this language.

*Third*, Cyrulnik contends (at 16-17) that a letter sent by a firm administrator (not the partnership) on March 3, 2021, provides "indisputable" evidence that Cyrulnik was a partner at RF until March 1. But that letter does not concern—or even mention—Cyrulnik's removal from RF's partnership, which occurred weeks earlier. (*See* Dkt. No. 38-5.) Rather, it informed him of the effective date of his "termination" with Insperity, which, pursuant to co-employment agreements with RF and each of its partners and employees, provides payroll and benefits services for RF. (Rosen Decl. ¶ 9.) Indeed, the letter explains when Cyrulnik's employee benefits will "cease" and notifies him that he may have the right "to continue coverage under COBRA." (Dkt. No. 38-5.) Given the nature of the relationship between Insperity, RF, and Cyrulnik, it is thus unsurprising that the letter refers to *both* RF and Insperity. (*Id.*) The letter does not remotely satisfy Cyrulnik's burden of establishing that he remained a partner after February 27. *See Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) ("In assessing the record to determine whether there is a genuine dispute as

to any material fact, we resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought.").

## II.    THE FEDERAL FIRST-FILED RULE IS INAPPLICABLE

Cyrulnik argues (at 18-21) that the Court should dismiss RF's claims pursuant to the so-called first-filed rule. This argument is frivolous.[2]

The first-filed rule "permits the transfer or dismissal of subsequently commenced litigation involving the same parties and the same issues when both suits are pending in federal courts." *KyTEL Int'l Grp., Inc. v. Rent A Center, Inc.*, 43 F. App'x 420, 422 (2d Cir. 2002). It only "applies where there is concurrent *federal* litigation, not where a federal court contends with concurrent state litigation." *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013) (emphasis in original); *see also Sunwealth Global HK Ltd. v. Pinder Int'l, Inc.*, 2021 WL 1145245, at *5 (S.D.N.Y. Mar. 23, 2021) (same) (collecting cases); *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 2011 WL 13261585, at *1 (S.D.N.Y. Nov. 3, 2011) ("Whether a federal court should defer to a concurrent action pending in state court raises an issue of abstention, rather than an issue under the first-filed rule."). Because the competing action here is pending in *Florida state court*, dismissing this case under the first-filed rule would be reversible error. *See KyTEL*, 43 F. App'x at 422 ("Because RAC's Texas Action is in state court, it was error for the District Court to dismiss on the basis of the first filed rule."); *Arch Ins. Co. v. Pfizer, Inc.*, 771 F. App'x 49, 50

---

[2] Cyrulnik incorrectly argues (at 18) that this action is no longer "first-filed" because there was an amendment. *Compare Kitaru Innovations Inc. v. Chandaria*, 698 F. Supp. 2d 386, 391 n.3 (S.D.N.Y. 2010) ("[T]his circuit applies the first-filed rule in favor of a plaintiff who amends his complaint to include issues that his adversary has raised in a second-filed suit in another district."), *with Gross v. Bare Escentuals, Inc.*, 2006 WL 3161386, at *2 (S.D.N.Y. Oct. 30, 2006) (finding Defendants' filling of a declaratory judgment action in another forum did not become the "first filed" action after the original plaintiff amended its complaint).

(2d Cir. 2019) ("We agree with both parties on appeal that the first-filed rule has no application here because the Delaware Morabito action is in *state* court, not federal court.").

Cyrulnik ignores this precedent and argues (at 19-20) RF's action was "anticipatory" and can therefore be dismissed under the first-filed rule. Unsurprisingly, *none* of Cyrulnik's cases involve a competing state-court action. *See Nat'l Union Fire Ins. Co. v. Int'l Wire Int'l Grp., Inc.*, 2003 WL 21277114, at *6 (S.D.N.Y. June 2, 2003) (pending in S.D. Tex.); *Dish Network, LLC v. Am. Borad. Cos., Inc.*, 2012 WL 2719161, at *4-5 (S.D.N.Y. July 9, 2012) (pending in C.D. Cal.); *S&S Candies, Inc. v. Hershey Foods Corp.*, 2000 WL 1425092, at *1-2 (S.D.N.Y. Sept. 26, 2000) (pending in M.D. Pa.); *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 440-41 (S.D.N.Y. 2002) (action pending in U.K., and court did not apply first-filed rule). Cyrulnik's argument further fails because RF's action is not an "anticipatory" declaratory judgment action.

*First*, in contrast to Cyrulnik's cases, RF asserts damage claims. *See Ivy-Mar Co., Inc. v. Weber-Stephen Prods., Co.*, 1993 WL 535166, at *2 (S.D.N.Y. Dec. 22, 1993) (declining to apply exception, where plaintiff sought "not only declaratory relief regarding the infringement claims, but also assert[ed] various affirmative causes of action"); *Kate Aspen, Inc. v. Fashioncraft-Excello, Inc.*, 370 F. Supp. 2d 1333, 1339 (N.D. Ga. 2005) (declining to apply "anticipatory" exception to first-filed rule, where party also sought money damages).

*Second*, "[i]n order for a declaratory judgment action to be anticipatory, it must be filed *in response* to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 393-94 (S.D.N.Y. 2014) (Koeltl, J.) (emphasis added). RF did not file its original Complaint to beat Cyrulnik to the courthouse, *see Nat'l Union Fire Ins. Co.*, 2003 WL 21277114, at *6, or even in response to a specific threat of litigation, *see Dish Network, LLC*, 2012 WL 2719161, at *4. RF commenced this action

15

because Cyrulnik refused to leave RF after being removed for cause, continued holding himself

out as a lawyer at the firm, and because RF believed his behavior posed a risk to associates, staff,

and partners at the firm. (*See* Compl. ¶¶ 1, 6); *800-Flowers, Inc. v. Intercont'l Florist, Inc.*, 860 F.

Supp. 128, 133 (S.D.N.Y. 1994) (action not anticipatory, where plaintiff had "a legitimate and

meritorious rationale for seeking declaratory judgment"). Cyrulnik's suggestion (at 19-20) that the

Florida court already resolved the factual issue of whether RF's action was "anticipatory" is

grossly misleading: that factual issue *was not even litigated* in Florida because RF argued it was

irrelevant under applicable state law. (*See* Rosen Decl. ¶ 6 & Ex. 3.)

Cyrulnik's assertion that this action should be dismissed under the first-filed rule because

"[t]he 'balance of convenience' heavily favors the Florida Action" is even less persuasive. Five of

the six Founding Partners worked out of RF's New York office and live in the Tri-State Area; the

associates who refused to work with Cyrulnik are based in New York; and a meeting that occurred

in New York led to Cyrulnik's removal. (*See* Am. Compl. ¶ 65); *Liberty Mut. Ins. Co.*, 17 F. Supp.

3d at 395 (listing relevant factors).

## III.   THERE IS NO BASIS FOR ABSTENTION

### A.    Cyrulnik's Wilton/Brillhart Argument Is Frivolous

Cyrulnik's argument that the Court should abstain from exercising jurisdiction pursuant to

*Wilton v. Seven Falls Company*, 515 U.S. 288 (1995), is frivolous. "*Wilton* does not apply where,

as here, a plaintiff does not seek purely declaratory relief, but also seeks damages caused by the

defendant's conduct." *Kanciper v. Suffolk Cty. Soc'y for the Prevention of Cruelty to Animals,

Inc.*, 722 F.3d 88, 93 (2d Cir. 2013) (alterations omitted); *see also Niagara Mohawk Power Corp.

v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 106 (2d Cir. 2012) ("*Wilton* does not

apply where, as here, a plaintiff does not seek purely declaratory relief, but also, for example,

disputes a payment made to the defendants and seeks damages caused by the defendant's conduct."

(internal quotations omitted)); *Vill. of Westfield v. Welch's*, 170 F.3d 116, 124 n.5 (2d Cir. 1999) (*Wilton* didn't apply where plaintiff didn't seek "purely declaratory relief"); *Sunwealth Global HK Ltd. v. Pinder Int'l, Inc.*, 2021 WL 1145245, at *6 (S.D.N.Y. Mar. 23, 2021) ("Since the action before the Court involves claims for damages in addition to a request for a declaratory judgment, *Brillhart* cannot apply, and abstention under *Brillhart* is inappropriate."). This rule is so clear that even the presence of a *counterclaim* seeking damages is enough to render *Wilton* inapplicable. *See Ironshore Specialty Ins. Co. v. Maxon Indus. Inc.*, 2020 WL 6263742, at *4 (S.D.N.Y. Oct. 22, 2020) ("The presence of a counterclaim for damages calls for the application of the exceptional circumstances test set forth in Colorado River, and not the Brillhart/Wilton discretionary standard."). Cyrulnik inexcusably fails to direct the Court to any of this controlling precedent.

B.      Colorado River Abstention Is Inappropriate

Cyrulnik urges (at 25-26) the Court to abstain pursuant to the narrow *Colorado River* doctrine, which "presents an 'extraordinary and narrow exception' to 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them.'" *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 572 (S.D.N.Y. 2012) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976)). A court "may only abstain under *Colorado River* in 'exceptional circumstances.'" *Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 663 (S.D.N.Y. 2016) (Koeltl, J.) (citations omitted).

"Before a court evaluates the appropriateness of abstention under *Colorado River*, it must make a threshold determination that the federal and state court cases are 'parallel.'" *Id.* If they are not, "*Colorado River* abstention is unquestionably not appropriate." *DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 644 (S.D.N.Y. 2011) (quoting *Farkas v. D'Oca*, 857 F. Supp. 300, 303 (S.D.N.Y. 1994)); *see also Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) ("Therefore, a finding that the concurrent proceedings are 'parallel' is a necessary

prerequisite to abstention under *Colorado River*."). "Any doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction." *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577-78 (S.D.N.Y. 2012); *Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 328 F. Supp. 3d 141, 151 (S.D.N.Y. 2018) (same). For actions to be parallel, "resolution of the state action must 'dispose of *all* claims presented in the federal case.'" *DDR Constr. Servs.*, 770 F. Supp. 2d at 664 (emphasis in original) (quoting *Stone v. Patchett*, 2009 WL 1108596, at *14 (S.D.N.Y. Apr. 23, 2009)); *Ambac Assurance Corp.*, 328 F. Supp. 3d at 150 (same). "[T]he mere existence of overlapping issues does not make the cases parallel." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, 1994 WL 88129, at *4 (S.D.N.Y. Mar. 15, 1994); *DDR Constr. Servs.*, 770 F. Supp. 2d at 645 (same).

The respective actions here are not "parallel" because the Florida Action will not dispose of all of the claims RF has here. The Florida Action will not resolve RF's breach of fiduciary duty and tortious interference claims. (*See* Am. Compl. ¶¶ 73-82); *see Frydman*, 172 F. Supp. 3d at 664 (actions not parallel where state action would "not necessarily" address issues raised in federal action). In fact, Cyrulnik told the Florida court its case involves "many" different "claims, parties, and issues" (Rosen Decl. Ex. 4 at 16). For this reason alone, Cyrulnik's *Colorado River* argument fails.

In addition to this threshold issue precluding its application, *Colorado River* abstention would still be inappropriate under the relevant factors: (1) "the controversy involved a res over which one of the courts has assumed jurisdiction"; (2) "one forum is more inconvenient than the others for the parties"; (3) "staying the federal action will avoid piecemeal litigation"; (4) "one action is significantly more advanced than the other"; (5) "federal or state law provides the rule of decision"; and (6) "the federal plaintiff's rights will be protected in the state proceeding."

*Frydman*, 172 F. Supp. 3d at 663. "The presumption in favor of exercising jurisdiction dictates that 'the facial neutrality of a factor is a basis for retaining jurisdiction, not yielding it.'" *Id.* (quoting *Woodford v. Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001)).

The first, second, third, and fourth factors establish that this is not a case where the "strong presumption" against abstention is rebutted. *Id.*; *see also Woodford*, 239 F.3d at 522 ("*Only the clearest of justifications will warrant dismissal*." (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15-16 (1983)) (emphasis in original)). One, there is no res at issue in this case that *both* Courts have assumed jurisdiction over because RF's action against Cyrulnik is "fundamentally in personam." *Aktas v. JMC Dev. Co., Inc.*, 2010 WL 2520980, at *3-4 (N.D.N.Y. June 15, 2010). Two, litigating in Florida would be less convenient for the parties, who (along with most witnesses) are primarily located in the Tri-State Area. Three, Cyrulnik cannot be heard to complain about "piecemeal litigation" of his "own making," *Nat'l Union Fire Ins. Co. v. Texaco Refining & Mktg., Inc.*, 803 F. Supp. 1247, 1249-50 (S.D. Tex. 1992), especially given his representations that the two actions involve "many" different "claims, parties, and issues" (Rosen Decl. Ex. 4 at 16). Four, "[t]his action and the State Action are essentially at the same phase. The fourth *Colorado River* factor thus points to retaining jurisdiction." *Burrell v. State Farm Fire & Cas. Co.*, 2001 WL 797461, at *6 (S.D.N.Y. July 12, 2001)).

The sixth factor also does not help Cyrulnik: RF's breach of fiduciary duty and tortious interference claims are not even pending in the Florida Action. *See Mersentes v. Corrigan*, 2010 WL 3959615, at *3 (S.D.N.Y. Sept. 30, 2010) ("Since the claims in this case are not and were not pending in the other actions, no other litigation is an 'adequate vehicle for the complete and prompt resolution of the issues between the parties.'"). The fact that state law governs RF's claims hardly presents "exceptional circumstances" because "all diversity suits raise issues of state law." *Id.*; *see*

19

*also Viacom Int'l Inc. v. Kearney*, 1999 WL 92601, at *6 (S.D.N.Y. Feb. 22, 1999) ("As state law provides the rule of decision in every diversity case, abstention on this basis would make dismissals the rule rather than the exception, a result not intended by *Colorado River*.").

Cyrulnik therefore cannot establish the existence of the "exceptional circumstances" or "clearest of justifications" necessary to overcome the presumption "heavily weighted in favor of the exercise of jurisdiction." *Niagara Mohawk*, 673 F.3d at 100-01.

        C.    <u>Burford Abstention Is Inappropriate</u>

Cyrulnik's argument (at 24-25) for abstention under *Burford* also fails. "The purpose of *Burford* abstention is to 'avoid resolving difficult state law issues involving important public policies or avoid interfering with state efforts to maintain a coherent policy in an area of comprehensive regulation or administration.'" *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 168 (S.D.N.Y. 2012), *aff'd*, 742 F.3d 520 (2d Cir. 2013). The doctrine thus "seeks to avoid the danger of 'creating an opportunity to overturn a prior state court or agency determination.'" *Id.* at 169.

These concerns are not implicated in a routine partnership dispute. *See Cohen v. Reed*, 868 F. Supp. 489, 498-99 (E.D.N.Y. 1994) (rejecting *Burford* argument in case that "essentially involve[d] a dispute concerning a fiduciary's conduct with respect to a limited partnership"); *Beckworth v. Bizier*, 48 F. Supp. 3d 186, 208 (D. Conn. 2014) (declining to abstain under *Burford* with respect to claims concerning shareholder inspection rights); *Silverman v. Worsham Bros. Co., Inc.*, 625 F. Supp. 820, 826-27 (S.D.N.Y. 1986) (adjudicating Florida partnership dispute); *R4 Props. v. Riffice*, 2014 WL 4724860, at *2-11 (D. Conn. Sept. 23, 2014) (same). Cyrulnik suggests (at 25) that the fact that this action concerns a Florida partnership provides a basis for abstention, but he cites no authority to support that novel proposition—and to RF's knowledge, none exists. That Cyrulnik *may* (in the future) attempt to assert a baseless and premature counterclaim for dissolution here does not alter the conclusion that *Burford* abstention is inappropriate. *See Katin v. Apollo*

*Sav.*, 460 F.2d 422, 424 n.5 (7th Cir. 1971) (rejecting abstention argument that was based on "the possibility of counterclaims").

## **<u>CONCLUSION</u>**

RF respectfully submits, for the foregoing reasons, that the Court should deny Cyrulnik's motion to dismiss.

Dated:  September 21, 2020

By: */s/ Sean Hecker*       */s/ Eric Rosen*
Sean Hecker        Eric Rosen
KAPLAN HECKER & FINK LLP  ROCHE FREEDMAN LLP
350 Fifth Avenue, Suite 110    99 Park Avenue, 19th Floor
New York, New York 10118   New York, NY 10016
Tel: (212) 763-0883      Tel.: (646) 350-0527
Email: shecker@kaplanhecker.com  Email: erosen@rochefreedman.com

            *Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that according to the word count feature of the word processing program used to prepare this brief, the brief contains 6,811 words (exclusive of the cover page, certificate of compliance, table of contents, and table of authorities), and complies with Local Civil Rule 11.1 of the Southern District of New York, as well as with this Court's Individual Practice Rule 2.D.


*/s/ Eric Rosen*
Eric Rosen