UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

ROCHE CYRULNIK FREEDMAN LLP,

                    Plaintiff,

        - against -

JASON CYRULNIK,

                    Defendant.

———————————————————————

21-cv-1746 (JGK)

OPINION AND ORDER

**JOHN G. KOELTL, District Judge:**

The plaintiff, Roche Cyrulnik Freedman LLP ("RCF" or the "Firm"), brought this action against Jason Cyrulnik for declaratory judgment, breach of fiduciary duty, and intentional interference with contract. Cyrulnik now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and, in the alternative, urges the Court to abstain from exercising jurisdiction over the claims in favor of a state court action that is currently stayed in Florida (the "Florida action").[1]

For the reasons that follow, Cyrulnik's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is **denied**, and his request for the Court to otherwise abstain is **denied**.

---

[1] The defendant's motion to dismiss also argued that this action should be dismissed under the first-filed rule. However, because the plaintiff agrees that the first-filed rule is inapplicable here, the Court does not consider this argument independent from the defendant's related argument that the Court should dismiss the plaintiff's claims under the Wilton abstention doctrine.

I.

The following facts are accepted as true for the purposes of this motion.

On August 1, 2019, lawyers Kyle Roche and Velvel Freedman formed Roche Freedman LLP ("RF"). Am Compl. ¶ 12, ECF No. 31.[2] Their goal in forming RF was to "create a cutting-edge litigation boutique that would handle high end cryptocurrency, cannabis, and commercial litigation matters," id., and that would be "more collaborative, collegial, and transparent than many traditional large law firms," id. ¶ 3.

Over the course of October and November 2019, Roche and Freedman began negotiating an agreement to have Amos Friedland, Nathan Holcomb, Edward Normand, and Jason Cyrulnik join RF as founding partners of a new firm, RCF. Id. ¶ 15. On December 27, 2019, "after significant negotiations and oral understandings and agreements had been reached," Roche, Freedman, Cyrulnik, Normand, Friedland, and Holcomb (collectively, the "Founding Partners") executed a memorandum of understanding (the "MOU") "for the purposes of building a high-end litigation law firm to be named Roche Cyrulnik Freedman LLP." Id. ¶ 17. RCF was — and

---

[2] Unless otherwise noted, all alterations, citations, footnotes, and internal quotation marks in quoted text in this Opinion and Order are omitted.

continues to be — registered as a limited liability partnership ("LLP") in Florida. Id. ¶ 7.

The MOU memorializes portions of the agreements preliminarily reached between the Founding Partners. Id. ¶ 17. The MOU provides that "[a] Founding Partner cannot be removed without cause. A Founding Partner can be removed for cause only on the affirmative vote of ⅔ of the Firm's equity partners." Id. ¶ 26. The MOU also provides a specific mechanism for calculating what RCF would owe to a withdrawing partner (the "withdrawal provision"). Id. ¶ 27.

But the MOU was "never intended to be a comprehensive document that embodied all of the partners' negotiated terms." Id. ¶ 23. Instead, as provided in the MOU itself, id. ¶ 25, the Founding Partners contemplated that a formal partnership agreement (the "Partnership Agreement") would be negotiated and made effective on or around January 1, 2020, id. ¶¶ 23, 25. However, a formal agreement was never finalized. Id. ¶ 18.

RCF alleges that, after the MOU was signed and RCF commenced operations, "Cyrulnik began engaging in a pattern of abusive behavior that impeded Firm governance" and that "escalated over time." Id. ¶ 29. For example, RCF argues that Cyrulnik:

> screamed at other partners; refused to allow other partners to weigh in on Firm administrative matters; concealed financial information from other Founding

> Partners (and commanded the Firm's Director of
> Operations to do the same); caused associates to tell
> Firm partners they would quit the Firm if forced to
> continue working on his matters; single-mindedly
> attempted to reallocate Firm profit to himself in a
> manner that required intervention to prevent harm to
> Firm clients, associates, staff, and other partners; and
> attempted to assume total control over the Firm's
> management decisions – yelling at partners that they
> were "going rogue" when they did not obtain his
> "permission" prior to making decisions, despite partner
> emails and calls expressly addressing the decisions at
> issue.

Id.; see also id. ¶¶ 30-40. RCF alleges that Cyrulnik's conduct

"made it impossible to carry on Firm governance with Cyrulnik as

a partner." Id. ¶ 41.

Beginning in January 2020 and throughout the following

year, Cyrulnik allegedly refused to engage in conversations

about drafting the Partnership Agreement as required by the MOU.

Id. ¶ 43. RCF alleges that this refusal was intended by Cyrulnik

to "leverage gaps in the incomplete document to try to seize

power and a financial advantage to the detriment of the Firm."

Id. As 2020 continued, Cyrulnik allegedly began taking steps to

"hide financial information from other partners," id. ¶ 45, and

his "attempts to exercise . . . unilateral, unauthorized

control" over the Firm allegedly increased, id. ¶ 48. His

behavior soon "escalated to the point of threatening the Firm's

ability to service a client, had resulted in more abusive

interactions with partners, and had placed an associate in an

absolutely untenable and high-stress position." Id. ¶ 61.

4

By early 2021, it "became obvious" to the other Founding
Partners of RCF that "it was no longer possible for RCF to carry
on Firm governance with Cyrulnik as a Firm partner." Id. ¶ 64.
On February 10, 2021, Roche, Freedman, Friedland, Holcomb, and
Normand "affirmatively and unanimously voted to remove Cyrulnik
for cause . . . to protect the interests of clients, associates,
staff, and the remaining partners of the Firm." Id. ¶ 66. On
February 12, Roche wrote an e-mail to Cyrulnik informing him of
this decision. Id. ¶ 67. In response, over a phone call later
that day, Cyrulnik allegedly "demanded [that] the Firm retract
the letter and claimed there were no grounds to remove him for
cause." Id. ¶ 68. Cyrulnik also apparently stated that "he would
be open to working out a peaceful departure if the Firm
committed to give him (1) everything 'owed' to him under the
2019 MOU and (2) everything 'owed' to him pursuant to a side
letter agreement between the Named Partners." Id.

In the time since this February 12 call, Cyrulnik has
apparently "refused to accept that he is no longer a partner at
the Firm," id. ¶ 70, claiming that his removal was pretextual,
id. ¶ 69. On February 26, Cyrulnik's attorney contacted the Firm
and "threatened" that if the Firm did not give Cyrulnik
"immediate unfettered access" to the Firm's bank accounts and
the right to bring in new matters, it would "guaranty"

litigation "to protect [Cyrulnik's] unquestioned partnership rights." Id. ¶ 72.

On February 27, 2021, RCF commenced this action in this Court. ECF No. 1. RCF's original complaint alleged only a claim for a declaratory relief as to the propriety of Cyrulnik's removal from RCF and a declaration that he was therefore entitled only to the amount provided in the withdrawal provision of the MOU. See id. Ten days later, on March 9, 2021, Cyrulnik commenced the Florida action against the Firm and the remaining Founding Partners, bringing claims for dissolution, buyout, accounting, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, conversion, and civil conspiracy on the basis of his allegedly improper removal. See Cyrulnik v. Roche et al., No. 2021-005837-CA-01 (Fla. 11th Cir. Ct. filed Mar. 9, 2021). On March 12, 2021, Cyrulnik formed a new law firm, Cyrulnik Fattaruso LLP. Rosen Decl. Exs. 6, 7, ECF Nos. 50-6, 50-7.

On March 24, 2021, as this litigation and the litigation in the Florida action were ongoing, RCF requested that Cyrulnik submit billable time records for services that he rendered as an RCF partner in 2021. Am. Compl. ¶ 75, ECF No. 31. Cyrulnik's attorney responded that "Cyrulnik would not be providing the records unless numerous conditions were met," id. ¶ 76, and "to this day, Cyrulnik has still not provided his billable time

6

records," id. ¶ 78. RCF also alleges that clients that Cyrulnik
originated at the Firm have failed to pay their invoices since
Cyrulnik's departure. Id. ¶¶ 81-82. RCF claims that these
clients owe the Firm over $3.3 million dollars in unpaid
invoices. Id. ¶ 82.

On July 2, 2021, RCF amended its complaint in this Court,
adding claims for breach of fiduciary duty and intentional
interference with contract on the basis of Cyrulnik's alleged
failure to facilitate the Firm's collection of money owed to it
by Cyrulnik's clients and his purported encouragement or
inducement of his clients to withhold such payment. ECF No. 31.
On August 13, 2021, Cyrulnik brought this motion to dismiss. ECF
No. 36.

On December 15, 2021, the Florida action was stayed pending
disposition of this federal action on RCF's motion. Roche, No.
2021-005837-CA-01, Dkt No. 56; see also Roche v. Cyrulnik, No.
3D21-1741, 2021 WL 5226566 (Fla. Dist. Ct. App. Nov. 10, 2021)
(appellate decision quashing the Florida trial court's original
order denying RCF's motion to stay).

## II.

Cyrulnik first argues that RCF's claims should be dismissed
pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of
subject matter jurisdiction. For the following reasons, this
motion is **denied.**

**A.**

The plaintiff bears the burden of proving the Court's subject matter jurisdiction by a preponderance of the evidence. Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. Id. Where jurisdictional facts are disputed, the Court has "the power and the obligation to consider matters outside the pleadings, such as affidavits [and] documents, . . . to determine whether subject matter jurisdiction exists." See Parks v. Off. of Temp. & Disability Assistance, 675 F. Supp. 2d 440, 441 (S.D.N.Y. 2009).

**B.**

RCF argues that the Court has subject matter jurisdiction over its claims based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Section 1332(a)(1) provides that district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and is between "citizens of different States." For this "diversity jurisdiction" to lie, "all plaintiffs must be citizens of states diverse from those of

all defendants." Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., 772 F.3d 111, 118 (2d Cir.), as amended (Nov. 12, 2014). For an individual, citizenship depends on the state in which that person is domiciled, meaning that "place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Linardos v. Fortuna, 157 F.3d 945, 948 (2d Cir. 1998). For an LLP, citizenship depends on the citizenship of its partners: an LLP is treated as a citizen of every state of which its partners are citizens. Milberg LLP v. HWB Alexandra Strategies Portfolio, No. 19-cv-4058, 2020 WL 3833829, at *2 (S.D.N.Y. July 8, 2020), aff'd sub nom. Milberg, LLP v. Drawrah Ltd., 844 F. App'x 397 (2d Cir. 2021).

RCF argues that the Court has diversity jurisdiction over its claims because, at the time it filed its amended complaint, Cyrulnik was "indisputably not an [RCF] partner" because he had started his own law firm. Pl.'s Opp. 7, ECF No. 49. Accordingly, it argues, the Firm did not share a domicile with Cyrulnik, and neither did any partner, and there was therefore complete diversity.

Initially, this argument fails because, even where the plaintiff files an amended complaint, the relevant frame of reference for diversity jurisdiction is the time of the filing of the original complaint. See Grupo Dataflux v. Atlas Glob.

Grp., L.P., 541 U.S. 567, 571 (2004) (affirming that diversity jurisdiction is dependent on "the state of facts that existed at the time of filing"); Herrick Co. v. SCS Commc'ns, Inc., 251 F.3d 315, 329 (2d Cir. 2001) ("[T]he requirements of complete diversity were not demonstrated at the time [the plaintiff] filed its initial complaint, so . . . federal jurisdiction over the case would be invalid ab initio."). Indeed, while a plaintiff can amend its pleadings to cure defective jurisdictional allegations, a plaintiff's amended pleadings cannot cure defective jurisdiction itself. See Fund Liquidation Holdings LLC v. Bank of Am. Corp., 991 F.3d 370, 389 (2d Cir. 2021) (citing Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473 (2007)), cert. denied sub nom. Bank of Am. Corp. v. Fund Liquidation, No. 21-505, 2022 WL 89304 (U.S. Jan. 10, 2022). Any change of domicile of the Firm between the filing of the original complaint and the amended complaint is therefore immaterial. See, e.g., Reyes v. Sprint Holdings, LLC, No. 17-cv-624, 2018 WL 3369672, at *4 (E.D.N.Y. July 9, 2018).[3]

---

[3] Rockwell International Corporation v. United States, 549 U.S. 457 (2007), is not to the contrary. Rockwell held that, in determining which allegations are relevant in the context of a claim under the False Claims Act, courts may consider both the allegations in the original complaint and the allegations as amended. Id. at 473-74. In no way did Rockwell break with the United States Supreme Court's longstanding precedent, reaffirmed only three years prior by Rockwell's same author, that jurisdiction is determined by the conditions as they existed at the commencement of suit. Rockwell itself explicitly recognized the general "rule that subject-matter jurisdiction 'depends on the state of things at the time of the action

However, "where jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits, the [C]ourt should use the standard applicable to a motion for summary judgment and dismiss only where no triable issues of fact exist." Evans v. SSN Funding, L.P., No. 15-cv-5514, 2017 WL 3671180, at *5 (S.D.N.Y. Aug. 23, 2017); accord London v. Polishook, 189 F.3d 196, 198-99 (2d Cir. 1999) (citing Careau Group v. United Farm Workers of Am., AFL-CIO, 940 F.2d 1291, 1293 (9th Cir. 1991)); 5 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 1350 (3d ed. 2020) ("[T]he court may postpone a decision until evidence is submitted at trial if the jurisdictional issue is intertwined with the merits of the case."). Importantly, this "intertwining" rule applies in this case regardless of whether the applicable frame of reference is the filing of the original complaint or the amended complaint. The determination of RCF's citizenship, whether on February 27, 2021, or on July 7, 2021, cannot be separated from RCF's claim that Cyrulnik was properly dissociated from the Firm. If RCF is correct on the merits of

---

brought.'" Id. at 473 (citing Mullan v. Torrance, 9 Wheat. 537, 539 (1824)). The Court in Rockwell merely distinguished between the "state of things" and the "alleged state of things," implying that while the state of things cannot change and thereby confer or divest a court of jurisdiction, the "alleged" state of things may. See id.; see also Fund Liquidation, 991 F.3d at 389 (noting that Rockwell distinguished between "[t]he state of things and the originally alleged state of things").

its claim for declaratory relief, diversity jurisdiction lies: RCF's citizenship would not be dependent on Cyrulnik's citizenship because Cyrulnik was removed from the Firm as of February 10, 2021, before this lawsuit was filed, and the parties would be completely diverse. However, if Cyrulnik is correct on the merits of his claim that he was not properly removed from the Firm, diversity jurisdiction is destroyed: Cyrulnik's status as a partner of RCF would render RCF a citizen of his home state, precluding complete diversity. In short, the "ultimate jurisdictional issue" is "precisely the same as the ultimate issue on the merits." Careau, 940 F.2d at 1293. Dismissal is therefore inappropriate at this stage. See InteliClear, LLC v. Victor (InteliClear I), No. 3:16-cv-1403, 2016 WL 5746349, at *5-6 (D. Conn. Oct. 3, 2016) (declining to dismiss for lack of subject matter jurisdiction because the court's "jurisdictional determination cannot be separated from Plaintiff's claim that Defendant, as a dissociated Member, must be enjoined from continuing to act as a Member of [the plaintiff firm]"), reconsideration denied, InteliClear, LLC v. Victor (InteliClear II), 2017 WL 2213125 (D. Conn. May 18, 2017).

Cyrulnik's arguments against the application of the "intertwining" rule are unpersuasive. First, deferring decision on this intertwined jurisdictional/merits question does not "provide an end run around the diversity statute." Def.'s Mot.

to Dismiss 13, ECF No. 37. The Court has an obligation to "determine whether it has jurisdiction . . . before it can dismiss the case for lack of such jurisdiction." Inteliclear I, 2016 WL 5746349, at *3. The Court will neither dismiss the case nor rule on the merits "until it can make the final jurisdictional determination on a fuller factual record." Id. Second, waiting to decide this question would not doom the parties to re-litigating the same issues in the Florida action if the Court finds RCF's termination of Cyrulnik improper and dismisses RCF's complaint for lack of jurisdiction. As RCF rightly points out, in such a situation, the Court's dismissal would preclude relitigation of the precise issues that led to the dismissal. See Stagg, P.C. v. U.S. Dep't of State, 983 F.3d 589, 605 n.9 (2d Cir. 2020); InteliClear II, 2017 WL 2213125, at *4 n.10.

Given the intertwined nature of the jurisdictional question with the merits, "[t]he Court is satisfied that the appropriate way to proceed is to hear and decide the factual issues bearing on its subject matter jurisdiction, recognizing that they also implicate elements of at least one of the substantive claims." InteliClear I, 2016 WL 5746349, at *5. Cyrulnik's motion to dismiss for lack of subject matter jurisdiction is accordingly **denied.**

III.

Cyrulnik argues that, in the event that the Court finds it has subject matter jurisdiction over RCF's claims, it should nonetheless abstain from hearing this case in favor of the Florida action. Cyrulnik argues that abstention is proper on the basis of one of three abstention doctrines: Wilton, Colorado River, or Burford. For the reasons explained below, none of these are applicable.

### A. Wilton Abstention

First, abstention based on the Wilton abstention doctrine, Wilton v. Seven Falls Co., 515 U.S. 277 (1995), is inappropriate in this case.

The Declaratory Judgment Act permits, rather than mandates, district courts to grant declaratory relief. 28 U.S.C. § 2201(a). Wilton explains that the purpose of the Act is to "place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." Wilton, 515 U.S. at 288. According to Wilton, in suits brought under the Declaratory Judgment Act, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Id. The general goal of the inquiry under Wilton is to determine whether the question at issue in the

federal suit "can better be settled in the proceeding pending in the state court." Id. at 282 (quoting Brillhart v. Excess Ins. Co., 316 U.S. 491, 495 (1942)).

There are several factors to consider when determining whether abstention under Wilton is appropriate, id. at 282-83, but a prerequisite to its application is that the plaintiff seeks "purely declaratory relief," Kanciper v. Suffolk Cty. Soc'y for the Prevention of Cruelty to Animals, Inc., 722 F.3d 88, 93 (2d Cir. 2013). Thus, where "a plaintiff does not seek purely declaratory relief, but also seeks damages caused by the defendant's conduct," abstention under Wilton is inappropriate. Id.

This rule directly precludes application of the Wilton doctrine in this case. In addition to seeking declaratory relief, RCF seeks damages as a result of Cyrulnik's alleged intentional interference with contract and his breach of fiduciary duty. The existence of these claims for damages is fatal to Cyrulnik's argument in favor of Wilton abstention. See, e.g., id.; Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 106 (2d Cir. 2012); InteliClear, LLC v. Victor (InteliClear III), 3:16-cv-1403, 2017 WL 2225212, at *2 (D. Conn. May 18, 2017).

While Cyrulnik is correct that there is an exception to this general rule when a plaintiff's claims for damages "stem

from the underlying request for declaratory relief," Gen. Star
Int'l Indem. Ltd. v. Chase Manhattan Bank, No. 01-cv-11379, 2002
WL 850012, at *5 (S.D.N.Y. May 3, 2002), aff'd, 57 F. App'x 892
(2d Cir. 2003), this exception is inapplicable here. Whether
Cyrulnik is liable to RCF for intentional interference with
contract and breach of fiduciary duty — and what he might
consequently owe to RCF — is not "contingent" on whether he was
properly removed from the partnership. Cf. id. Indeed, it can
both be that Cyrulnik was not properly removed from the Firm,
and that the claim for declaratory relief is denied, and that he
is liable for breach of fiduciary duty and intentional
interference with contract. These are separate claims.
Cyrulnik's urged exception therefore does not apply.

Nor, contrary to Cyrulnik's argument, is there any basis
for the Court to ignore RCF's claims for damages because they
were omitted in the original complaint. The two claims for
damages that RCF added in its amended complaint are not so
facially without merit that they should be shrugged off as
tactical ploys to avoid application of the Wilton doctrine.
Moreover, even where "the applicability of Wilton abstention is
not entirely free from doubt, the wiser course is to consider
the movant's entitlement to a stay under the stricter abstention
criteria set forth in Colorado River." Nat'l Union Fire Ins. Co.
of Pittsburgh, Pa. v. Titeflex Corp., No. 07-cv-2609, 2008 WL

11396745, at *5 (S.D.N.Y. Mar. 12, 2008). For the reasons described below, abstention under this alternative basis is also inappropriate.

## B. **Colorado River** Abstention

Abstention under the doctrine provided in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), is improper in this case.

In Colorado River, the United States Supreme Court held that abstention can be proper in certain situations involving the contemporaneous exercise of concurrent jurisdiction for reasons of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. at 817. However, there is a strong presumption that the district court should retain jurisdiction. A court may only abstain under Colorado River in "exceptional circumstances," id. at 813, and "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," id. at 817; see also All. of Am. Insurers v. Cuomo, 854 F.2d 591, 603 (2d Cir. 1988); Frydman v. Verschleiser, 172 F. Supp. 3d 653, 663 (S.D.N.Y. 2016).

"Before a court evaluates the appropriateness of abstention under Colorado River, it must make a threshold determination that the federal and state court cases are 'parallel.'" Shields

v. Murdoch, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012) (quoting Dittmer v. Cnty. of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998)). Proceedings in state and federal court are "parallel for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." Id.; see also Frydman, 172 F. Supp. at 663.

In this case, the state and federal actions are not parallel, and abstention under Colorado River is therefore inappropriate. See Dittmer, 146 F.3d at 118 ("[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under Colorado River." (emphasis added)); Farkas v. D'Oca, 857 F. Supp. 300, 303 (S.D.N.Y. 1994). RCF brought claims in this Court for declaratory judgment on the question of whether Cyrulnik was properly removed from the partnership and the amount of money that he is accordingly owed, and intentional interference with contract and breach of fiduciary duty as a result of Cyrulnik's apparent failure to have his clients pay their fees to the Firm after his departure. By contrast, Cyrulnik's claims in the Florida action are for dissolution, buyout, accounting, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, conversion, and civil conspiracy on the basis of Cyrulnik's allegedly improper removal from RCF. Plainly, these

are not parallel actions. While "[p]erfect symmetry of parties and issues is not required," parallelism requires "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." Shields, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012). And, here, resolution of the Florida action would dispose only of RCF's first claim for declaratory relief; it would leave untouched its claims for intentional interference with contract and for breach of fiduciary duty. "[W]hen dismissal of the federal proceeding would leave a defendant free from any proceeding on issues in question, abstention is unwarranted." Dalzell Mgmt. Co. v. Bardonia Plaza, LLC, 923 F. Supp. 2d 590, 598 (S.D.N.Y. 2013). Cyrulnik's request for the Court to abstain pursuant to the Colorado River abstention doctrine is therefore **denied.**[4]

## C. **Burford** Abstention

Finally, Burford abstention is inappropriate here. See Burford v. Sun Oil Co., 319 U.S. 315 (1943).

Under Burford, a federal court should dismiss an action where (1) federal court review would raise "difficult questions of state law bearing on policy problems of substantial public

---

[4] In coming to this conclusion, the Court is also mindful that the Florida action is presently stayed. Staying the federal action in such circumstances would, at least temporarily, preclude the plaintiff from proceeding in either forum on any claim for relief. This also counsels in favor of denying the defendant's request to abstain under Colorado River. See, e.g., Vladimir v. Cowperthwait, No. 06-cv-5863, 2007 WL 1964157, at *2 (S.D.N.Y. July 3, 2007).

import whose importance transcends the result in the case then at bar," or (2) the action's "adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 726–27 (1996).

But neither of these concerns are present here. RCF's claims in this case are for declaratory relief as to the propriety of Cyrulnik's removal from RCF under Florida state law, and for damages as a result of his alleged breach of fiduciary duty and intentional interference with contract. While Cyrulnik argues that Burford abstention is appropriate because Florida "comprehensively regulates its limited liability partnerships," Def.'s Mot. to Dismiss 20, ECF No. 37, he does not identify how this Court's determination of whether he was properly dissociated from RCF would "be disruptive of state efforts to establish a coherent policy," Cruz v. TD Bank, N.A., 855 F. Supp. 2d 157, 169 (S.D.N.Y. 2012) (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989)), aff'd and remanded, 742 F.3d 520 (2d Cir. 2013). Put simply, Cyrulnik has not explained why the exercise of this Court's jurisdiction, which it has a "virtually unflagging obligation . . . to exercise," Colorado River, 424 U.S. at 817, would so unduly interfere with Florida's laws to warrant the application of this exceptional doctrine, id. at 813

("Abstention from the exercise of federal jurisdiction is the exception, not the rule."); Quackenbush, 517 U.S. at 726-27. His conclusory arguments to the contrary are insufficient.

Cyrulnik argues that "[i]f this Court does not dismiss this Action, [he] will necessarily be forced to assert his dissolution/dissociation claims in this action," an amendment which he argues would "undeniably" force the Court to abstain under Burford. Def.'s Reply 8, ECF No. 53. While it is true that federal courts may properly abstain from ruling on motions to dissolve state corporations, Friedman v. Revenue Management of N.Y., Inc., 38 F.3d 668, 671 (2d Cir. 1994), federal courts have decided actions to dissolve state partnerships, Sriram v. Preferred Income Fund III Ltd. P'ship, 22 F.3d 498, 501-02 (2d Cir. 1994); see also Nutronics Imaging, Inc. v. Danan, No. 96-cv-2950, 1998 WL 426570, at *5 (E.D.N.Y. June 10, 1998). In any event, were Cyrulnik to bring a claim for dissolution or disassociation, the Court could abstain from that claim and not the other claims pending in this case. See, e.g., Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 262, 271 (S.D.N.Y. 2008) (declining to decide claims for dissolution on the basis of Burford but exercising jurisdiction over other claims, including claims for breach of fiduciary duty and declaratory judgment). There is therefore no basis to abstain under Burford, and Cyrulnik's request is **denied**.

IV.

The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit.

For the foregoing reasons, the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), and the defendant's request for the Court to abstain, are both **denied.** The Clerk is directed to close Docket No. 36.


**SO ORDERED.**

Dated:     **New York, New York**
           **January 27, 2022**

                                        _____
                                           **John G. Koeltl**
                                        **United States District Judge**