UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROCHE CYRULNIK FREEDMAN LLP,<br><br>    Plaintiff,<br><br>v.<br><br>JASON CYRULNIK,<br><br>    Defendant.<br><br>JASON CYRULNIK,<br><br>    Counterclaim-Plaintiff,<br><br>v.<br><br>ROCHE CYRULNIK FREEDMAN LLP, KYLE ROCHE, DEVIN FREEDMAN, AMOS FRIEDLAND, NATHAN HOLCOMB, and EDWARD NORMAND,<br><br>    Counterclaim-Defendants. | Case No. 1:21-cv-01746 (JGK) |

**COUNTERCLAIM-DEFENDANT KYLE ROCHE AND DEVIN FREEDMAN'S
<u>REPLY IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

I.   CYRULNIK'S REQUEST TO STRIKE ROCHE AND FREEDMAN'S OPENING BRIEF AND FOR SANCTIONS SHOULD BE DENIED ................................................ 2

II.  CYRULNIK'S CLAIMS AGAINST ROCHE AND FREEDMAN PERSONALLY SHOULD BE DISMISSED ............................................................................................... 5

CONCLUSION ............................................................................................................................. 7

## **TABLE OF AUTHORITIES**

**Cases**

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
  2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018) ............................................................................. 6

*G-I Holdings, Inc. v. Baron & Budd*,
  2002 WL 1934004 (S.D.N.Y. Aug. 21, 2002) ............................................................................. 4

*In re Platinum-Beechwood Litig.*,
  2020 WL 159765 (S.D.N.Y. Jan. 13, 2020) ................................................................................ 3

*Patterson v. Morgan Stanley*,
  2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ................................................................................ 3

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
  153 F. Supp. 3d 628 (S.D.N.Y. 2015) ......................................................................................... 2

*Rappaport v. Gelfand*,
  197 Cal. App. 4th 1213 (2011) .................................................................................................... 5

*Stillman v. Townsend*,
  2006 WL 2067035 (S.D.N.Y. July 26, 2006) ............................................................................. 3

*Sussman v. Bank of Israel*,
  56 F.3d 450 (2d Cir. 1995) .......................................................................................................... 4

Counterclaim-Defendants Kyle Roche and Devin Freedman respectfully submit this reply in support of their Motion to Dismiss Defendant Jason Cyrulnik's[1] Counterclaims.

## INTRODUCTION

As Roche and Freedman demonstrated in their Motion, the false allegations upon which Cyrulnik premises his counterclaims and third-party claims are belied even by the documents incorporated by reference in his pleading. It's no surprise then that a Motion responding to his claims attaches the portions of documents he omitted, explains the true content of documents he mischaracterizes, and otherwise challenges his rendition of "facts" that he has failed to plausibly allege. It's also no surprise that Cyrulnik' reaction to a filing revealing the true nature of his conduct is to ask that it be "struck" and its authors "sanctioned." But the Firm's filing is wholly proper and adds important context from the portions of documents Cyrulnik neglected to attach to his counterclaims and otherwise mischaracterized. As explained below, there is nothing inappropriate or wrong about that, and certainly nothing sanctionable.

More importantly, Cyrulnik completely fails to respond to much of the Motion's arguments about why his claims should proceed against the Firm and not the individual partners. Saliently, he provided no response that any Token[2]-related claim was purposely cabined by the

---

[1] Cyrulnik improperly labels the Founding Partners the "Conspiring Partners" because, as detailed in the complaint, they voted to remove him for cause after having been subjected to his yelling, abuse, constant fighting, constant attempts to seize power, frustrating of partner meetings and the drafting/signing of a partnership agreement, chasing associates from the Firm, ignoring Firm rules and committees to file cases without permission, onboarding clients without engagement letters, refusal to issue and collect delinquent invoices, among other inappropriate conduct. Roche and Freedman object to this label.

[2] Cyrulnik alleges the Firm removed him because it no longer needed him due to a highly volatile cryptoasset that was yet to fully vest for years. Dkt. No. 126 at 5. As explained, that would have been quite an ill-conceived move due to the volatility of cryptoassets. In fact, from the date the Motion was filed, the asset fell nearly 70%, and is now trading at only about 40% of the value it was when Cyrulnik was removed.

Parties to be a contractual Firm obligation. He's thus conceded the point and should be permitted to pursue Token-related claims only against the Firm.

## ARGUMENT

### I. CYRULNIK'S REQUEST TO STRIKE ROCHE AND FREEDMAN'S OPENING BRIEF AND FOR SANCTIONS SHOULD BE DENIED

Cyrulnik requests the Court "strike" Roche and Freedman's opening brief because it contains "superfluous information from outside the pleadings." (Dkt. No. 126 at 9-10.) He also requests that "an appropriate sanction" be "imposed against" Roche, Freedman, and their counsel. (*Id.* at 10.) His requests are meritless.

*First*, Cyrulnik does not actually identify any material that cannot be considered on a motion to dismiss. Because he can't. In his counterclaims, Cyrulnik took the Firm's 34-page MOU with three Exhibits (A, B, and C) and only filed the first nine (9) pages, *i.e.,* none of its exhibits. Roche and Freedman's Motion attached the remaining 25 pages to include Exhibit A, B, and C.[3] As explained below, the Motion then properly discussed how those exhibits affect the portions of the MOU Cyrulnik was selectively using in his counterclaims, and how those portions otherwise affect Cyrulnik's claims. The Motion also attached a document from the New York Department of State and discussed communications Cyrulnik referenced and/or described in his counterclaims. In sum, Roche and Freedman's brief includes discussion of agreements Cyrulnik partially attached to the counterclaims, discussions of communications Cyrunlik referenced, and records from the New York Department of State.[4] All are properly raised in a motion to dismiss. *See Pehlivanian*

---

[3] See Motion, Dkt. No. 104, at n1 (explaining Cyrulnik only attached part of the MOU to his counterclaims and citing authority to attach the remaining parts of the agreement he omitted).

[4] Thus, this case is nothing like the cases Cyrulnik cites where the court rejected Plaintiff's attempt to save its complaint from a motion to dismiss by adding factual allegations to its brief in

*v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 642 (S.D.N.Y. 2015) ("When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken."). For this reason alone, Cyrulnik's request must be rejected. *See Patterson v. Morgan Stanley*, 2019 WL 4934834, at *4 (S.D.N.Y. Oct. 7, 2019) (denying motion to strike allegations in motion to dismiss because they were all taken from "documents . . . referenced in the Complaint, documents Plaintiffs relied on in bringing suit . . . or matters of which judicial notice may be taken.") (alterations omitted).

*Second*, and more fundamentally, the materials are not "extraneous." The factual discussion and documents attached to the motion provide important context to interpreting the 9-pages of the MOU Cyrulnik did attach. It also provides context as to why the "obligations" Cyrulnik has attempted to sue over belonged (before Cyrulnik's breach and removal) to the Firm and why the individual partners have no personal liability for the alleged actions. The discussion likewise demonstrates why Cyrulnik's attempt to assert personal liability on individual partners should be dismissed, and shows why his attempt to assert personal liability against the individual partners is just a different form of the "highly adversarial tactics" employed during his time at the Firm that was intended to "bring [the Founding Partners] to their breaking point." *See* Dkt. No. 31.[5] Finally,

---

opposition. *Stillman v. Townsend*, 2006 WL 2067035, at *6 (S.D.N.Y. July 26, 2006); *In re Platinum-Beechwood Litig.*, 2020 WL 159765, at *1 (S.D.N.Y. Jan. 13, 2020) (same).

[5] Notably, in this litigation, Cyrulnik's requests to have the Firm dissolved despite the fact that (i) it was formed by Roche and Freedman months before he got involved, (ii) over a year after his for-cause removal, it continues to employ nearly 30 attorneys and staff members, (iii) it continues to act as counsel for scores of clients, and (iv) he has moved on to a competing firm. This request is just another example of his continued highly adversarial tactics.

the documents and discussion underscore the unfairness of imposing personal liability against the individual Counterclaim-Defendants in this action, including Roche and Freedman. (*See* Dkt. No. 108 at 6-7 (arguing that "[j]oint and several liability would be a draconian penalty").)

*Third*, Cyrulnik's request for sanctions against Roche, Freedman, and their counsel must likewise be denied. Cyrulnik accuses Roche and Freedman of including statements in their opening brief that were "plainly made for the industry press that has been following this case." (Dkt. No. 126 at 9). That's untrue. And Cyrulnik has no basis for that hypocritical accusation.[6] More importantly, even if statements *were* included to garner media attention (they weren't), that would not establish the "improper purpose" necessary for imposing sanctions. *Cf. G-I Holdings, Inc. v. Baron & Budd*, 2002 WL 1934004, at *16 (S.D.N.Y. Aug. 21, 2002) ("The Second Circuit has held that efforts to generate media attention are insufficient to show an improper purpose '[t]o the extent that a complaint is not held to lack foundation in law or fact.'" (quoting *Sussman v. Bank of*

---

[6] Cyrulnik's claim that the Firm is seeking to cater to industry press continues his pattern of misrepresenting the truth. https://www.law360.com/articles/1360089 (no comment from Firm's counsel versus "Marc E. Kasowitz . . . called the allegations 'false and irresponsible. Mr. Cyrulnik will continue to focus on fully protecting the interests of his law firm and clients . . . The motives and conduct of his partners who launched this attack to take over the firm and appropriate for themselves Mr. Cyrulnik's interests will be fully and appropriately addressed in the proper forum.'"); https://www.law360.com/articles/1459700 (no comment from Firm's counsel versus "We are confident that Mr. Cyrulnik's rights will be vindicated and that he will be awarded the substantial assets and damages to which he indisputably is entitled," said Gavin D. Schryver of Kasowitz . . .); https://www.law360.com/articles/1487919 (no comment from Firm's counsel versus "Marc Kasowitz . . . told Law360 . . . that the partners' arguments are a 'groundless sideshow' to shift blame away from themselves. The attorneys 'are responsible for their actions and participation in the ill-conceived scheme, motivated by greed, which they perpetrated to steal Mr. Cyrulnik's share of enormously valuable cryptocurrency and other assets . . . Their 'transparent ploy' to shake the claims 'will not work; the law is clear that these individual partners (in addition to the firm) are liable for what they did,' he added."); https://www.law360.com/articles/1495904 (no comment from Firm's counsel versus "Marc Kasowitz . . . said it was 'nonsensical' that Cyrulnik would induce clients not to pay their bills. Under the firm's pay formula, 'most' of the fees at issue would have gone to Cyrulnik anyway . . . These partners' attempt to concoct some claim so they can harass the many clients who left them is as transparent as their attempt to steal Mr. Cyrulnik's assets for their own self gain,' Kasowitz said.").

*Israel*, 56 F.3d 450, 459 (2d Cir. 1995))). Cyrulnik does not (and cannot) argue that the factual statements included in Roche and Freedman's opening brief—largely quotations from agreements and written communications that Cyrulnik intentionally chose to reference and characterize but not attach to his Counterclaims—lack foundation in fact. His request for sanctions is frivolous.

**II.    CYRULNIK'S CLAIMS AGAINST ROCHE AND FREEDMAN PERSONALLY SHOULD BE DISMISSED**

Roche and Freedman again join the arguments of their partners Friedland, Holcomb, and Normand in their reply brief filed concurrently with this reply ("FHN Brief").

Cyrulnik's dissolution, buyout, and accounting claims (Counts 1–3) can only be asserted against the Firm. For Cyrulnik to recover the compensation he seeks through common law claims against Roche and Freedman personally, he would have to allege individual obligations related to his compensation that they breached. But he cannot. As explained in the FHN Brief, and the caselaw cited therein, the RUPA provision Cyrulnik cites does not work to radically abrogate the protections for Limited Liability Partnerships and blindly permit any partner to sue another for the Limited Liability Partnership's obligations – it simply removes the historical requirement to file an accounting action and permits a cause of action against an individual partner, *if one otherwise properly exists*. FHN Brief at §I; *Rappaport v. Gelfand*, 197 Cal. App. 4th 1213 (2011). An obligation of the Firm, however, remains one of the Firm, and RUPA does not permit Plaintiffs to just name anyone they want as defendants.

Moreover, for the same reasons discussed in the FHN Brief, Cyrulnik's common-law claims (Counts 4–10) must be dismissed because they concern the Firm's obligations, not the obligations of any individual partner. FHN Brief at §II.

In fact, and as discussed in both opening Motions, the centerpiece of Cyrulnik's claims is his alleged entitlement to 25% of the Tokens. But he has no response to the Motions' argument

5

that any obligation to pay Tokens is a contractual obligation the Parties purposely cabined to just the Firm in the MOU they all signed and which stated unequivocally that: "the Founding Partners understand that **Roche Freedman LLP** has agreed to distribute its . . . Tokens according to the following breakdown …" (Dkt. No. 106-2 at §B) (emphasis added). Cyrulnik said nothing in response to this argument and has therefore conceded it. *Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) ("Numerous courts have held that a plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument." (collecting cases)). Thus, at the very minimum, the Court should dismiss those claims to the extent Cyrulnik seeks Token-related damages from the individual defendants.

Cyrunlik may pursue his contract-based claim against the Firm for now – but the individual defendants should be dismissed from what is clearly a contract claim against the Firm dressed up improperly in alternate causes of action against the individual partners.[7]

---

[7] As will be explained at the appropriate time, these claims against the Firm will fail, too.

**CONCLUSION**

Roche and Freedman respectfully request, for the foregoing reasons, that the Court dismiss Cyrulnik's Counterclaims as against them personally,[8] deny Cyrulnik's request to strike their opening brief, and deny Cyrulnik's request to impose sanctions on them and their counsel.

Dated: June 8, 2022
New York, NY

Sean Hecker
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0889
shecker@kaplanhecker.com

*Counsel for Kyle Roche and Devin Freedman*

---

[8] Roche concedes that Cyrulnik's breach of contract claim against him for Roche's alleged failure to pay some of the amounts owed in the Side Letter should not be dismissed at this juncture. That claim, while factually flawed, is properly brought against Roche in his individual capacity. It is the only such claim.

7

## CERTIFICATE OF COMPLIANCE

I hereby certify that according to the word count feature of the word processing program used to prepare this brief, the brief contains 2,150 words (exclusive of the cover page, certificate of compliance, table of contents, and table of authorities), and complies with Local Civil Rule 11.1 of the Southern District of New York, as well as with this Court's Individual Practice Rule 2.D.

_____
Sean Hecker

8