**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROCHE CYRULNIK FREEDMAN LLP,<br><br>    Plaintiff,<br><br>v.<br><br>JASON CYRULNIK,<br><br>    Defendant.<br><br>JASON CYRULNIK,<br><br>    Counterclaim-Plaintiff,<br><br>v.<br><br>ROCHE CYRULNIK FREEDMAN LLP, KYLE ROCHE, DEVIN FREEDMAN, AMOS FRIEDLAND, NATHAN HOLCOMB, and EDWARD NORMAND,<br><br>    Counterclaim-Defendants.<br><br>JASON CYRULNIK,<br><br>    Third-Party Plaintiff,<br><br>v.<br><br>KYLE ROCHE, DEVIN FREEDMAN, AMOS FRIEDLAND, NATHAN HOLCOMB, and EDWARD NORMAND,<br><br>    Third-Party Defendants. | Case No. 1:21-cv-01746 (JGK) |

**REPLY MEMORANDUM OF LAW OF COUNTERCLAIM AND THIRD-PARTY DEFENDANTS NATHAN HOLCOMB, EDWARD NORMAND, AND AMOS FRIEDLAND IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE <u>ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

I. THE COURT SHOULD DISMISS CYRULNIK'S STATUTORY
COUNTERCLAIMS TO THE EXTENT THEY SEEK TO HOLD HOLCOMB,
NORMAND, OR FRIEDLAND PERSONALLY LIABLE ............................................... 1

II. THE COURT SHOULD DISMISS CYRULNIK'S COMMON LAW CLAIMS
AGAINST HOLCOMB, NORMAND, AND FRIEDLAND ............................................. 4

III. IN THE ALTERNATIVE, THE COURT SHOULD ORDER CYRULNIK
TO MAKE A MORE DEFINITE STATEMENT ............................................................. 7

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Accurate Grading Quality Assur., Inc. v. Thorpe*,
    2013 WL 1234836 (S.D.N.Y. Mar. 26, 2013) ................................................................. 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................... 8

*Charles Ramsey Co. v. Fabtech-NY LLC*,
    2020 WL 352614 (N.D.N.Y. 2020) ................................................................................. 9

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
    2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018) ................................................................. 3

*Ederer v. Gursky*,
    9 N.Y.3d 514 (2007) ........................................................................................................ 2

*Heller v. Pillsbury Madison & Sutro*,
    50 Cal. App. 4th 1367 (1996) .......................................................................................... 3

*Hyunmi Son v. Reina Bijoux, Inc.*,
    823 F. Supp. 2d 238 (S.D.N.Y. 2011) .............................................................................. 4

*Larmoyeux v. Montgomery*,
    963 So. 2d 813 (Fla. 3d DCA 2007) ................................................................................ 4

*Lawlis v. Kighlinger & Gray*,
    562 N.E.2d 435 (Ind. Ct. App. 1990) .............................................................................. 6

*Patel v. Contemporary Classics of Beverly Hills*,
    259 F.3d 123 (2d Cir. 2001) ............................................................................................. 8

*Phelps v. Frampton*,
    170 P.3d 474, (Mont. 2007) ............................................................................................. 6

*Rappaport v. Gelfand*,
    197 Cal. App. 4th 1213 (2011) .................................................................................... 2, 3

*Transcapital Bank v. Shadowbrook at Vero, LLC*,
    226 So. 3d 856 (Fla. 4th DCA 2017) ............................................................................... 7

*W. Acquisitions & Invs. Grp., Inc. v. Zimmer Gunsul Frasca Architects, LLP*,
    2008 WL 11331815 (S.D. Fla. Aug. 13, 2008) ................................................................ 2

**Other Authorities**

Fed. R. Civ. P. 11(b)(3) ............................................................................................................ 8

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 4, 9

Fed. R. Civ. P. 12(e) ................................................................................................................. 9

Fla. Stat. § 620.8306(1) ............................................................................................................ 2

Fla. Stat. § 620.8306(3) ................................................................................................. 1, 2, 3, 7

Fla. Stat. § 620.8405 ................................................................................................................. 2

Fla. Stat. § 620.8701(1) ............................................................................................................ 3

Lynn Bai & Sarah Harden, *Limited Liability Partnerships: An (Overlooked) Hole in the Shield*, 23 U. Pa. J. Bus. L. 862 (2021) ............................................................................................. 2

# INTRODUCTION

The brief in support of the motion ("Mot.") showed that Cyrulnik fails to plausibly allege any claim for damages against Holcomb, Normand, and Friedland. Confronted with these pleading deficiencies, Cyrulnik offers little in the way of direct response. The Motion showed, for example, that the compensation obligations Cyrulnik alleges are the Firm's, not the partners' personally. His silence in opposition concedes the point.

Instead, seeking to save his statutory claims, Cyrulnik misconstrues a provision in Florida's RUPA. The leading case cited in the opening brief addressed the *identical* provision in California's RUPA and rejected the same misreading that Cyrulnik advances. The fact that a statute covering *both* general and limited liability partnerships refers to claims against individual partners does not abrogate protections specific to limited liability partnerships.

Cyrulnik also fails to save his common law claims. Having alleged that **"removal would not impact Cyrulnik's core compensation rights under the MOU in any event" (¶ 81)**, which is fatal to his claims, Cyrulnik now says he was pleading in the alternative and assuming *arguendo* that his removal had cause. That is neither here nor there. The point is this: Under Cyrulnik's own allegations, *regardless of whether or not there was cause for his removal*, removal did not affect his compensation. It therefore caused no financial harm.

# ARGUMENT

**I. THE COURT SHOULD DISMISS CYRULNIK'S STATUTORY COUNTER-CLAIMS TO THE EXTENT THEY SEEK TO HOLD HOLCOMB, NORMAND, OR FRIEDLAND PERSONALLY LIABLE**

The Motion showed (at 6) that under Fla. Stat. § 620.8306(3), partners in a limited liability partnership are not personally liable for its obligations. Cyrulnik's own authority makes clear that this provision "bars" claims against individual partners to the extent they are "based on the

partnership's obligations." *W. Acquisitions & Invs. Grp., Inc. v. Zimmer Gunsul Frasca Architects, LLP*, 2008 WL 11331815, at *3 (S.D. Fla. Aug. 13, 2008).

Citing Fla. Stat. § 620.8405, Cyrulnik contends (at 10–14) that partners may "sue each other, including for precisely the claims that Cyrulnik has brought." That argument might make sense in the context of a *general partnership*, where "all partners are liable jointly and severally for all obligations of the partnership." Fla. Stat. § 620.8306(1). But Fla. Stat. § 620.8405 does not abrogate the protection Fla. Stat. § 620.8306(3) confers on *limited liability* partners.

The Motion's leading case answers Cyrulnik's argument. In *Rappaport v. Gelfand*, 197 Cal. App. 4th 1213 (2011), the dissociated partner argued that, under California's identical analogue to Fla. Stat. § 620.8405, the remaining partners were personally liable for his buyout. *Id.* at 1230. The court *rejected* that argument, explaining that the provision "must be construed in the context of the UPA provisions that apply to *limited liability partnerships*, which are entirely different from general partnerships." *Id.* (emphasis in original). Partners in a limited liability partnership, the court explained, are "not liable" for "debts, obligations, or liabilities of or chargeable to the partnership." *Id.* (quoting Cal. Corp. Code § 16306(c)). Because the "purchase of a dissociating partner's interest" under California's buyout statute was "clearly an obligation of the limited liability partnership," the individual partners could not "be held individually liable for payment of the buyout price." *Id.* at 1230–32.[1]

Cyrulnik mischaracterizes *Rappaport* (at 13 n.3) as holding that "the individual partners were not liable for the obligation of the partnership" *because* the plaintiff "did not allege that the

---

[1] Cyrulnik (at 12 n.2) cites *Ederer v. Gursky*, 9 N.Y.3d 514 (2007), but as the Motion explained (at 8 n.6), New York's partnership statute is materially different from Florida's. *Ederer* has also been persuasively criticized. *See Ederer*, 9 N.Y.3d at 526–27 (Smith, J., dissenting); Lynn Bai & Sarah Harden, *Limited Liability Partnerships: An (Overlooked) Hole in the Shield*, 23 U. Pa. J. Bus. L. 862, 863 (2021).

2

defendants engaged in any wrongful conduct." That is incorrect. The dispositive issue was whether the obligation allegedly breached was "an obligation of the limited liability partnership." 197 Cal. App. 4th at 1231.[2] If Cyrulnik's argument is that a partner in a limited liability partnership can be held personally liable for the partnership's obligations so long as that partner engaged in wrongful conduct in breach of *some other obligation* and giving rise to *some other claim*, he provides no authority to support such bootstrapping. A partner's breach of his or her own obligation of course could give rise to personal liability *for that breach*. But subjecting the partner to personal liability for the *partnership's* breaches of *its* obligations would defy the statutory directive that "[a]n obligation of a partnership incurred while the partnership is a limited liability partnership, whether arising in contract, tort, or otherwise, is *solely* the obligation of the partnership." Fla. Stat. § 620.8306(3) (emphasis added).

Cyrulnik's statutory claims concern partnership obligations. This means that, to the extent he seeks to hold Holcomb, Normand, and Friedland personally liable for damages, these claims fail. If Cyrulnik were entitled to a buyout, as shown, then Fla. Stat. § 620.8701(1) places that obligation on the Firm. As to his claims for an accounting and dissolution, he offers no response to the Motion's arguments that the corresponding statutes do not sustain claims for money damages against individual partners—which is what he seeks. He thus concedes the point. *See* Mot. at 7–9; *Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) ("Numerous courts have held that a plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument." (collecting cases)). Finally, Cyrulnik's own authority refutes his claim for attorneys' fees. This precedent makes clear that, in

---

[2] *Heller v. Pillsbury Madison & Sutro*, 50 Cal. App. 4th 1367 (1996), does not address the relevant issue of whether a partner in a *limited liability partnership* may be held personally liable for obligations that RUPA assigns to the partnership.

the first instance, "the costs of a suit for a partnership accounting" are "paid out of the partnership estate." *Larmoyeux v. Montgomery*, 963 So. 2d 813, 821 (Fla. 3d DCA 2007).

## II. THE COURT SHOULD DISMISS CYRULNIK'S COMMON LAW CLAIMS AGAINST HOLCOMB, NORMAND, AND FRIEDLAND

The Motion showed (at 10) that Cyrulnik's common law claims lack the essential elements of either damages to, or the taking of some benefit from, the plaintiff. The *only* individual acts of Holcomb, Normand, and Friedland that Cyrulnik alleges are their removal votes. But by his own allegation, **"such a removal would not impact Cyrulnik's core compensation rights under the MOU in any event."** (¶ 81.) He thus had the same "core compensation rights" *after* Holcomb, Normand, and Friedland cast their votes as he did *beforehand*. And any *subsequent* events that affected his compensation were, as explained in the Motion (at 15–16), the Firm's actions. Cyrulnik also fails to allege that Holcomb, Normand, or Friedland received *any* pecuniary benefit.

Cyrulnik attempts to fix his pleading by suggesting (at 17) that his allegations are cabined to only one out of two "arguments (and sets of claims)" that he advances. He goes so far as to proclaim (at 18 & n.9) that if Holcomb, Normand, and Friedland entertain his second alternative argument, this is a judicial admission that his removal lacked cause. Not so.

Just as Rule 12(b)(6) instructs, Holcomb, Normand, and Friedland have assumed Cyrulnik's allegations are true—setting aside those that are vague or conclusory—and then assessed whether, on this assumption, Cyrulnik has stated a plausible claim. *See Hyunmi Son v. Reina Bijoux, Inc.*, 823 F. Supp. 2d 238, 241 (S.D.N.Y. 2011). Cyrulnik's allegation that removal did not affect his compensation rights means that *regardless of whether or not there was cause for his removal*, that removal did not affect his compensation. The votes that Holcomb, Normand, and Friedland cast therefore caused him no financial harm.

If Cyrulnik means to suggest that he is pleading *only* that in an alternative world where there was cause for his removal that "such a removal would not impact Cyrulnik's core compensation rights under the MOU in any event," that position is untenable. It would leave him alleging that in the first of two alternative scenarios alleged, there *was no cause* for his removal, and removal *did impact* his compensation rights; and in the second alternative scenario, there *was cause* for his removal, and removal *did not impact* his compensation rights. Taken together, these allegations would mean Cyrulnik would be entitled to *more* compensation if there *were cause* for his removal and *less compensation* if there *were no cause* for his removal. That makes no sense.

With respect to the further grounds for dismissal of the common law claims set forth in the Motion, Cyrulnik is tellingly silent:

- Cyrulnik's own allegations undercut any inference that Holcomb, Normand, or Friedland obtained more valuable equity stakes by removing him, because he alleges that his business accounted for disproportionate profits. (Mot. at 4.) No response.

- Cyrulnik does not allege Holcomb, Normand, or Friedland obtained any more Tokens. (Mot. at 4.) No response.

- An allegation that the removal of an equity partner necessitates increases to the remaining partners' equity percentages to total 100% is insufficient. (Mot. at 12–13.) No response.

- If Cyrulnik had a claim for compensation, it would be a buyout pursuant to Fla. Stat. § 620.8701, which would leave the equity stakes of the remaining partners no more valuable than they were before. (Mot. at 13 n.8.) No response.

5

- Cyrulnik has alleged no promise of a benefit distinct from consequences that necessarily follow from an equity partner's removal. (Mot. at 13.) No response.

- The compensation obligations at issue are the Firm's. (Mot. at 14–15.) No response.

- Holcomb, Normand, and Friedland cannot cause the Firm to pay Cyrulnik. (Mot. at 15.) No response.

- Cyrulnik's allegations of conduct affecting his compensation concern acts of the Firm. (Mot. at 15–16.) No response.

The few efforts Cyrulnik does make to deflect the pleading and logical deficiencies in his claims are unavailing.

*First*, to the extent Cyrulnik suggests (at 14–15) that Holcomb, Normand, and Friedland breached the implied covenant and their fiduciary duties by "depriv[ing]" him of assets, the Motion explains (at 15–16) that he does not allege any facts that support a plausible inference that *they*, as opposed to *the Firm*, did anything to "deprive" him of compensation. *See Phelps v. Frampton*, 170 P.3d 474, 481 (Mont. 2007) (dismissing claim against individual partner, where plaintiff did "not identify an obligation under the Agreement and a *corresponding* breach of that obligation" by the individual partner) (emphasis in original).[3] Cyrulnik's vague (and unfounded) accusations (at 15) of "engaging in related efforts to improperly deprive him of his assets" are too conclusory to support claims even if they had been alleged.

---

[3] Cyrulnik cites *Lawlis v. Kighlinger & Gray*, 562 N.E.2d 435 (Ind. Ct. App. 1990), for the proposition that "when a partner is involuntarily expelled from a business and the power to involuntarily expel partners granted by a partnership agreement is exercised in bad faith or for a predatory purpose, the partnership agreement is violated, giving rise to an action for damages the affected partner has suffered as a result of his expulsion." (Cleaned up.) Setting aside that this decision was based on statutory language specific to Indiana, Cyrulnik's claims fail precisely because he has failed to allege damage he suffered "as a result of his expulsion," as opposed to damages resulting from subsequent actions taken by the Firm related to his compensation.

*Second*, Cyrulnik's effort (at 16–17) to highlight the complaint that *the Firm* filed against him just reinforces that the actions related to his compensation were actions of *the Firm*.

*Third*, Cyrulnik's suggestion (at 15 n.5) that Holcomb, Normand, and Friedland are "liable for conversion *to the extent* they have taken any Token distributions" fails because he cannot allege distributions beyond their MOU entitlements. *See, e.g.*, *Transcapital Bank v. Shadowbrook at Vero, LLC*, 226 So. 3d 856, 864 (Fla. 4th DCA 2017) ("[A] party which does not personally receive property which is the subject of an alleged conversion or civil theft cannot be held liable for such action.").

At bottom, Cyrulnik has alleged votes by Holcomb, Normand, and Friedland that, according to his own allegations, caused him *no financial harm* because they did not affect his "core compensation rights." And he has alleged subsequent acts and omissions *of the Firm* related to his compensation rights. These allegations do not add up to any claim against Holcomb, Normand, or Friedland. The only way they could is if Holcomb, Normand, or Friedland were personally liable for the Firm's obligations, which Fla. Stat. § 620.8306(3) prohibits. The common law claims against Holcomb, Normand, and Friedland must be dismissed.

## III. IN THE ALTERNATIVE, THE COURT SHOULD ORDER CYRULNIK TO MAKE A MORE DEFINITE STATEMENT

The Motion argued (at 16–17) that the Court should not permit Cyrulnik and his counsel to trade on ambiguity in their pleading to squeeze past a motion to dismiss while withholding any specification of the factual basis for his claims.

Remaining coy about what he means to allege, Cyrulnik suggests (at 19) that Holcomb, Normand, and Friedland have somehow conceded that they expected to receive some benefit. Not so. The point of the passage Cyrulnik selectively excerpts is that it is *not* clear whether Cyrulnik is alleging, on the one hand, merely that a partner's removal increases the equity percentages of

the remaining partners, or on the other hand, that Holcomb, Normand, and Friedland expected to receive some pecuniary benefit in exchange for their votes. (Mot. at 18–19.)

Cyrulnik is also wrong to suggest that any allegations that can be "summarized" pass muster. *See, e..g.*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Nor does the fact that the Firm answered Cyrulnik's allegations by *denying* them imply any waiver. *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) ("[T]he defense of failure to state a claim is not waivable.").

It is telling that Cyrulnik's counsel (at 19 n.10) disclaims any certification obligation under Rule 11(b)(3). But that is just what Rule 11(b)(3) says: "By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

Cyrulnik's counsel is thus unprepared to make this certification for any actual allegation that Holcomb, Normand, and Friedland expected to receive some pecuniary benefit in exchange for their votes. Cyrulnik is willing to commit (at 19 n.10) only to the theory that the "the removal of an equity partner increases the equity percentages of the remaining equity partners." This tautology, as noted, does not plausibly support the conclusion that Holcomb, Normand, and Friedland received a pecuniary benefit, because that conclusion is incoherent under Cyrulnik's allegations. (Mot. at 4, 12–13 & n.8). He alleges that he was responsible for an outsized portion of the Firm's revenue (which necessarily means that eliminating this revenue would necessarily *diminish*, not increase, the pecuniary value of the remaining partners' equity), and he also alleges that his removal did not affect his core compensation rights (which necessarily means that the value of equity

remaining in the Firm would be diminished by the value of compensation owed to Cyrulnik for his equity, leaving the remaining partners with equity stakes that were higher in percentage terms but of no greater pecuniary value). (¶¶ 4, 40, 81.) Contradictory or incoherent allegations cannot satisfy *Iqbal* or *Twombly*. *See, e.g., Accurate Grading Quality Assur., Inc. v. Thorpe*, 2013 WL 1234836, at *8 (S.D.N.Y. Mar. 26, 2013); *Charles Ramsey Co. v. Fabtech-NY LLC*, 2020 WL 352614, at *13 (N.D.N.Y. 2020) (collecting precedent).

Cyrulnik appears to suggest (at 19 n.10) that the Court should overlook these pleading deficiencies because (he wrongly thinks) discovery may unearth facts that could help him. But the Federal Rules do not permit a plaintiff to shoot first and ask questions later, particularly where personal livelihoods are at stake. With no basis for the false speculations that he evidently harbors, Cyrulnik nevertheless sought to hold Holcomb, Normand, and Friedland personally liable for preposterous sums. Under Rules 12(b)(6) and 12(e), the Court should dismiss the claims against Holcomb, Normand, and Friedland, or else put Cyrulnik to the task of making a more definite statement, if he is willing to do so.

## CONCLUSION

Holcomb, Normand, and Friedland respectfully submit that the Court should dismiss all claims against them with prejudice pursuant to Rule 12(b)(6) or, at a minimum, order a more definite statement pursuant to Rule 12(e).

Dated: June 8, 2022
      New York, NY

_____
Sean Hecker
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0889
shecker@kaplanhecker.com

*Counsel for Nathan Holcomb, Edward Normand, and Amos Friedland*

## CERTIFICATE OF COMPLIANCE

I hereby certify that according to the word count feature of the word processing program used to prepare this brief, the brief contains 2,800 words (exclusive of the cover page, certificate of compliance, table of contents, and table of authorities), and complies with Local Civil Rule 11.1 of the Southern District of New York, as well as with this Court's Individual Practice Rule 2.D.

_/s/ Sean Hecker_
Sean Hecker
