**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL          212-763-0883
DIRECT EMAIL         shecker@kaplanhecker.com

July 13, 2022

**Via ECF**
The Honorable Sarah Netburn
United States Magistrate Judge
40 Foley Square, Room 430
New York, NY 10007

Re:     *Roche Cyrulnik Freedman LLP v. Jason Cyrulnik*, No. 1:21-cv-1746 (S.D.N.Y.)

Dear Judge Netburn:

RF submits a limited response to the following points raised in Cyrulnik's letter filed yesterday. DE 162.

### (1) Cyrulnik misrepresents RF's position on its 30(b)(6) witness

Cyrulnik claims RF refused to let him take a 30(b)(6) deposition of the Firm. DE 162, at n3. That's simply untrue. All RF did was ask Cyrulnik to consolidate the 30(b)(6) deposition of RF with the deposition of one or more of RF's partners to expedite matters and reduce the number of depositions Cyrulnik is seeking. 162-6, at 5. And Cyrulnik agreed to that proposal. *Id*. at 3.

### (2) Cyrulnik seeking 21 depositions is unreasonable, as are his objections to depositions of third parties with relevant information

The Federal Rules of Civil Procedure limit parties to 10 depositions per side. Cyrulnik seeks more than double that number. His 21 requested depositions, however, appear designed to harass the firm, its lawyers, clients, and important business contacts. Many of the individuals named have no relevant information. Others have no non-privileged information. Cyrulnik's proposed justification for these depositions is that he should be entitled to depose anyone at the Firm who did not complain about him. But RF does not claim it removed Cyrulnik because of his interactions with *everyone* at the Firm. And individuals who did not complain about him, or who have not been identified as fact witnesses to the claims and defenses at issue have no relevant testimony to provide.

Cyrulnik's request for 21 depositions also serves his attempt to extend the discovery schedule and impose additional burdens on RF. If he really thought 21 depositions were necessary,

**KAPLAN HECKER & FINK LLP**                                                                 2

he should have raised this issue long ago, not 30-days before the discovery cutoff. RF proposes that the Court limit Cyrulnik to 12 depositions.

At the same time that he seeks to take 21 depositions, Cyrulnik argues (without any standing) that the Firm should not be permitted to depose third party witnesses that have directly relevant evidence corroborating RF's accounts of his abusive conduct. For example, *Cyrulnik* produced an email from Jeroen Van Kwawegen (a lawyer in private practice) where Mr. Kwawegen ███████████████████████████████████████████ Exhibit 1 (highlights added). He continued on, ███████████████████████████████████████████ *Id*. Because Cyrulnik claims RF fabricated allegations of his abuse, sexism, and inappropriate conduct, this disinterested, third-party witness is incredibly important to RF's case and his deposition ought to proceed. Moreover, this evidence is, at a minimum, relevant to Cyrulnik's for cause termination no matter its timing, as there is significant authority indicating that after-acquired evidence can be considered in the context of a for cause termination under New York law. *See Daytree at Cortland Square, Inc. v. Walsh*, No. 21-1991, 2022 WL 2345820, at *3 (2d Cir. June 29, 2022) ("But under New York law, 'when a party terminates a contract with an express 'for cause' termination provision, evidence discovered after the alleged breach can be used by the breaching party to justify its termination.'") (quoting *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers*, 894 F. Supp. 2d 288, 342 n.49 (S.D.N.Y. 2012)).

**(3) Hit counts on personal messages**

After hearing the robust process RF instituted to search personal messages, the Court found that it was "satisfied with respect to the personal messages that what the plaintiffs have done is adequate . . . I think a sufficient search was done, a reasonable search was done, and what was appropriate has been produced." (Hrg. Trans. at 25:23-26:4). The Court, however, asked RF to review "the volume of texts that we would be talking about . . . in the ten days that precedes the February meeting," and talk with counsel about it. *Id*. at 29:4-13. There are 121 messages during that period between the 16 custodians. RF will review these messages to resolve this issue without further Court intervention.

**(4) RF's relevancy parameters identifying clients and vendors should not be disclosed**

In conducting its own review for documents, RF developed a list of email domain names belonging to clients, vendors, local counsel, and opposing counsel. This list was used to exclude irrelevant documents from RF's review. When Cyrulnik was having trouble reducing the hit counts of his overly broad search terms, he requested RF use these relevancy parameters to reduce Cyrulnik's hit counts. RF was happy to do so, but no good deed goes unpunished. After demanding

**KAPLAN HECKER & FINK LLP**

3

RF apply its relevancy parameters, Cyrulnik now demands a copy of that list. But this Court has already denied a similar request by RF, holding that "I typically don't order parties to do discovery on discovery." Hrg. Trans. 68:13-14. That's especially true in this particular case now that Cyrulnik (a competitor of RF) wants to obtain what amounts to a highly confidential trade secret: RF's client and vendor list.

### (5) Proposed Scheduling Order

In case it makes things easier for the Court, RF attaches a proposed scheduling order that lays out the dates RF proposed in its letter to the Court (DE 160). See attached Exhibit 2.

Thank you for your consideration.

Respectfully,

Sean Hecker

cc: Counsel of Record (via ECF)