# KAPLAN HECKER & FINK LLP

**350 FIFTH AVENUE | 63RD FLOOR**
**NEW YORK, NEW YORK 10118**

**1050 K STREET NW | SUITE 1040**
**WASHINGTON, DC 20001**

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL         212-763-0883
DIRECT EMAIL      shecker@kaplanhecker.com

August 4, 2022

**VIA ECF**

The Honorable Sarah Netburn
United States Magistrate Judge
40 Foley Square, Room 430
New York, NY 10007

Re:     *Roche Cyrulnik Freedman LLP v. Jason Cyrulnik*, No. 1:21-cv-1746 (JGK) (SN)

Dear Judge Netburn:

We represent Plaintiff Roche Freedman LLP ("RF") and write to request a pre-motion discovery conference and protective order with respect to a 30(b)(6) deposition notice, containing 36 proposed topics, which Defendant unilaterally set on only 10 days' notice (the "Notice," attached as Exhibit A).

Specifically, RF respectfully requests the Court reschedule the deposition to a time counsel and the deponent are available because (i) Defendant did not seek to coordinate the deposition date, (ii) sufficient notice was not provided, (iii) counsel is not available, and (iv) neither is the deponent. In the context of meeting and conferring with counsel for the Defendant, RF has offered 8/24, 8/25 (starting at 11:30am), 8/26 (zoom), or 8/31, but Defendant refused to reschedule the deposition because (1) they prefer to take the 30(b)(6) deposition before scheduling any other depositions for strategic reasons, and (2) they claim that the resulting delay (of 2 weeks) would make it difficult to keep the current discovery schedule.

We further ask for the Court to rule on certain of the 36 proposed 30(b)(6) topics, which we believe are objectionable.

### I.     Factual Background

At 7:25pm on Friday night, July 29, 2022, without *any* prior coordination relating to schedules, Cyrulnik served the 36-topic 30(b)(6) Notice, which unilaterally set RF's deposition for 10-days later, on August 8, 2022. RF promptly objected and the parties have met and conferred. The parties were able to resolve some objections as to certain of the topics. Unfortunately, Defendant has refused to make reasonable accommodations for scheduling the date of the deposition.

Specifically, RF's counsel explained that (i) the Notice included 36 broad topics and RF needed time to ensure its representative was properly prepared, (ii) due to a mixture of court hearings and personal vacations, counsel was not available during the week of August 8, and that

KAPLAN HECKER & FINK LLP

(iii) RF's designee has a longstanding and prescheduled family vacation for the week of August 15. RF's counsel therefore offered 8/24, 8/25 (starting at 11:30am), 8/26 (by zoom due to the Sabbath), or 8/31, as alternative dates. Cyrulnik's counsel rejected these scheduling concerns and dates and stated they will not cancel the 8/8 notice unless RF agrees to conduct the deposition tomorrow, or during the week of August 8. Because RF cannot prepare for this deposition that quickly and counsel is not available then either – RF was left with no choice but to bring this motion.

> **II.    Cyrulnik provided insufficient notice for the deposition; it should be rescheduled to one of the dates RF has reasonably proposed**

Under Federal Rule of Civil Procedure 30(b), "[a] party who wants to depose a person by oral questions *must give reasonable written notice* to every other party." *JB Aviation, LLC v. R Aviation Charter Servs., LLC*, 2016 WL 4444794, at *3 (E.D.N.Y. Aug. 23, 2016) (quoting Fed. R. Civ. P. 30(b)(1)) (emphasis in original). "Courts addressing what constitutes 'reasonable notice' have generally determined that 14 days is presumptively reasonable." *Id.* (collecting cases). Indeed, where a party receives less notice and "promptly move[s] for a protective order," the "deposition *must not* be used against" that party. *Automated Transactions LLC v. First Niagara Fin. Grp., Inc.*, 2011 WL 13213256, at *2 (W.D.N.Y. May 10, 2011) (quoting Fed. R. Civ. P. 32(a)(5)(A)) (emphasis added).

Cyrulnik served the Notice on July 29, 2022, and unilaterally scheduled RF's deposition for August 8, 2022—*i.e.*, just ten days later. Given that the Notice includes 36 extremely broad topics, ten days' notice was plainly insufficient.

Moreover, as mentioned above, counsel and RF's corporate designee have personal and professional conflicts until the week of August 22 that prevent adequate preparation and appearance before that week. To be sure, RF has told Cyrulnik he should feel free to move forward with other depositions in the interim. This was not an effort to delay the case. But the 30(b)(6) deposition of the Plaintiff and Counterclaim-Defendant in this action, encompassing 36 different topics, requires time for preparation. And given competing work obligations and August vacations, an earlier date was not feasible. Cyrulnik, however, seeks to leverage his insufficient notice in yet another attempt to extend discovery. On the parties' meet and confer, Cyrulnik (who asked the Court for 21 depositions and received 15) stated he would not depose any of the other witnesses in this case until he takes RF's 30(b)(6) deposition. He then concluded that he would only accommodate RF's proposed alternative dates if RF agreed to extend the discovery period by a month. RF's request, however, is patently reasonable, and the sort of issue most parties can resolve without court intervention. Moreover, if Cyrulnik thought he needed RF's 30(b)(6) deposition first, nothing stopped him from trying to coordinate it over the last 30 days. Cyrulnik should not be permitted to use his unilateral (and insufficient) notice of RF's deposition to leverage another discovery extension.

Accordingly, RF respectfully requests that its deposition be rescheduled to either 8/24, 8/25 (starting at 11:30am), 8/26 (zoom), or 8/31.

KAPLAN HECKER & FINK LLP                                                                                3

### III. Certain topics in the notice should be struck and/or narrowed

As "with other forms of discovery, the Court has the discretion to issue a protective order or limit the scope of a Rule 30(b)(6) deposition notice." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 2022 WL 2702378, at *2 (E.D.N.Y. Feb. 11, 2022). "In reviewing a Rule 30(b)(6) notice of deposition, the Court considers whether the topics are 'proportional to the needs of the case, not unduly burdensome or duplicative, and described with 'reasonable particularity.'" *Id.* (quoting *Blackrock Allocation Target Shares v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 9400671, at *1 (S.D.N.Y. Apr. 27, 2017)). "'Reasonable particularity' means that the noticing party must describe the noticed topics with 'painstaking specificity' as to subject areas that are relevant to the dispute at issue." *Id.* Indeed, as a necessary condition, "deposition topics must be 'relevant to any party's claim or defense.'" *Bigsby v. Barclay Capital Real Estate, Inc.*, 329 F.R.D. 78, 81 (S.D.N.Y. 2019).

Moreover, "depositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories." *Liveperson, Inc. v. 24/7 Customer, Inc.*, 2015 WL 4597546, at *7 (S.D.N.Y. July 30, 2015) (quoting *JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002))). Indeed, an entity is not bound by a Rule 30(b)(6) witness's testimony regarding legal conclusions. *AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 229 n.9 (3d Cir. 2009) (explaining that 30(b)(6) witness's testimony regarding interpretation of contract was the "type of legal conclusion" that was "not binding" on the entity, and that the entity was "entitled to produce contrary evidence at trial"). Many of the 36 topics included in the Notice are improper under these legal standards.

**Insufficiently particular/vague topics**. **Topics 11, 16, 21, 25, 27**, are not described with the required "painstaking specificity." For many of these, Cyrulnik lists the topic without any limitation whatsoever, or any detail to help RF's designee prepare for questions. For example, Topic **11** simply states: "[o]wnership interests in RCF." RF does not understand what kind of information Cyrulnik seeks concerning this topic and thus can't prepare for it. The same issue exists for Topic **16,** which just states: "[a]llocation of associate time at RCF"; Topic **21**, which lists the "timing of filing of any contingency cases in 2021"; or Topic **25**, which seeks to ask about "all actual or contemplated contingency cases commenced by the Firm or its attorneys." It is simply unclear how RF is supposed to prepare for questions about every contingency case the firm "contemplated." Topic **27** is likewise vague and ambiguous, stating simply that Cyrulnik demands RF be prepared to testify about "RCF firm policies and procedures" without any direction to help guide preparation. In short, the topics—as written—do not provide RF with sufficient information to properly prepare a witness.

**Irrelevant topics**. **Topics 10, 17, 19, 20, 22, 28,** and **29** seek information that is just not relevant in any way to the parties' claims or defenses. Topic **10** states "[b]illing rates for RCF attorneys or paralegals"; Topic **17** is "hiring of associates to staff cases at RCF"; Topic **19** is "work performance of RCF attorneys"; Topic **20** is investigations regarding "employee" misconduct (as opposed to partner misconduct); Topic **29** is "RCF's indemnification of partners for legal expenses"; and Topic **22** is the voluntary "departure of Katherine Eskovitz from RCF." None of these topics has any bearing on whether Cyrulnik was properly removed from the Firm for cause. Indeed, the Court already reached that conclusion with respect to Ms. Eskovitz's voluntary departure from the Firm to found Eskovitz Law with her husband almost a year after Cyrulnik's for cause removal. (Dkt. No. 185 at 30:7-33:19.) Finally, neither is there any relevance to Topic

28 for "the Firm's relationship with, duties owed to, and discussions with Derek Rundell," who provided funding for the Firm in July 2019 (5-months before Cyrulnik joined). These topics should thus all be quashed.

Finally as described below, the following topics are *partly* overbroad and unduly burdensome because the portions described below seek information that is not relevant to any claim or defense:

- **Topic 13:** The portion that seeks information about "the termination of any employee" from RF (as opposed to partners subject to the MOU's for cause removal standard) are not relevant to any claims or defenses.

- **Topics 23, 25, and 26**: These proposed topics are overbroad because, although RF's financial information and the valuation of pre-removal contingency cases may[1] be relevant, the valuation of RF *after* Cyrulnik's removal and the valuation of contingency cases filed *after* Cyrulnik's removal are not relevant. (Dkt. No. 149 at 5.) RF's "efforts" to "secure funding" for contingency cases are likewise irrelevant (and almost certainly covered by attorney-client or work product privilege). More fundamentally, RF understood the Court's prior order to defer discovery on post-removal finances until expert discovery commenced. (Dkt. No. 185 at 58:2-12, 78:22-73:18.)

- The portion of **Topic 31** that seeks to discover what the Firm's individual partners did with their Token allocation once it was distributed to them (if anything) is wholly irrelevant to any claim Cyrulnik has. Indeed, the Tokens (like securities and commodities) have a public market that prices them and Cyrulnik has the details of all distributions of Tokens made to individual partners, the timing of those distributions, the amount of Tokens they received, and he can easily look at what the market value of those Tokens were on distribution. What those partners later decided to do with those assets, has no bearing on Cyrulnik's claims. Indeed, Cyrulnik's claims do not rise or fall on (and are not impacted by) whether those Tokens were sold for cash, exchanged for other cryptoassets, or placed in a savings account. It is simply highly intrusive financial discovery that isn't permitted.

- **Topic 32** is overbroad to the extent it seeks information concerning the "scope of work, billing, [and] payment arrangements" between RF and its client Startup. Although RF's engagement agreements with the Startup are relevant to the extent those agreements concern the number and schedule of Tokens received, and the Firm's obligations to earn those Tokens, nothing more is relevant as Cyrulnik's claims in this action all stem from his alleged contractual right to receive Tokens the Firm receives from Startup because he signed the MOU. Indeed, the Court has previously rejected Cyrulnik's previous attempts to obtain discovery into every aspect of RF's relationship with the Startup, a Firm client. (Dkt. No. 149 at 4-5; Dkt. No. 185 at 50:25-51:2.)

---

[1] Cyrulnik was never an equity partner of the Firm because he failed to satisfy a condition precedent to equity partnership. RF will raise this issue for adjudication at the appropriate time and should RF prevail, discovery into the value of RF's cases will be rendered irrelevant.

KAPLAN HECKER & FINK LLP

5

- **Topic 33** is overbroad to the extent it seeks information about the "Firm's retention of documents" after Cyrulnik's removal, which the Court has already concluded is not relevant. (July 5, 2022, Hr'g Tr. at 61:13-24.)

<u>Legal contentions and conclusions</u>. Topic **14** improperly seeks RF's legal conclusions as to what "[a]ctions constitute 'cause' for removal of a partner" under the MOU. This is a pure legal issue, detached from any factual context, and is thus an improper topic for a 30(b)(6) deposition. In addition, because 30(b)(6) testimony on this topic would not bind RF, permitting Cyrulnik to ask about it would only serve to waste the parties' time and resources.

Thank you for your consideration.

Respectfully,

Sean Hecker

cc:  Counsel of Record (via ECF)