# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0889
DIRECT EMAIL   shecker@kaplanhecker.com

August 10, 2022

**VIA ECF**

The Honorable Sarah Netburn
United States Magistrate Judge
40 Foley Square, Room 430
New York, NY 10007

Re:   *Roche Cyrulnik Freedman LLP v. Jason Cyrulnik*, No. 1:21-cv-1746 (JGK)(SN)

Dear Judge Netburn:

Plaintiff writes to request a pre-motion discovery conference regarding subpoenas that Plaintiff has further narrowed and proposes to issue to former Roche Freedman clients that (a) moved their matters to Cyrulnik's new law firm, and (b) have, collectively, refused to pay over $3.3 million of open invoices ("Cyrulnik Clients").

Cyrulnik opposes these subpoenas on grounds that no relevant evidence exists. But the Court should not credit Cyrulnik's mischaracterization of the potential value of different sources of relevant information. For example, Cyrulnik recently asked the Court to quash the deposition of Ms. Ilana Miller, the former co-general counsel of Boies Schiller Flexner LLP, whom Cyrulnik described as an "irrelevant character witness." D.E. 162, at 5. But when Ms. Miller was deposed, she testified that:



In short, the deposition Cyrulnik sought to prevent produced highly relevant testimony from a disinterested, third-party witness who independently witnessed Cyrulnik engage in precisely the type of unprofessional conduct that is at the heart of this case. So, too, here, we expect that these narrowly-drawn subpoenas will produce information relevant to RF's claims that Cyrulnik tortiously interfered with RF's attempts to recoup millions of dollars of fees owed to the Firm.

**KAPLAN HECKER & FINK LLP**                                                                 2

As detailed herein, the Court should allow these narrow subpoenas to issue.

   A.  *Proposed narrowed subpoena*

The proposed subpoenas would only seek the following documents from Cyrulnik Clients:

> All documents concerning amounts payable by you to the Firm [i.e., Roche Freedman], including those concerning (i) Firm invoices, (ii) payment of those invoices, and any documents (iii) reflecting input or comments made by Mr. Cyrulnik related to the invoices or payment of them.

**I.   Procedural History**

The Cyrulnik Clients collectively owe Plaintiff ("RF") more than $3.3 million. After Cyrulnik's for-cause removal, all the Cyrulnik Clients chose to move their matters to Cyrulnik's new firm. (DE 31 ¶ 104.) Cyrulnik then demanded the Firm keep all monies paid by the Cyrulnik Clients in escrow, a demand the Firm refused. Thereafter, the Cyrulnik Clients sent seemingly coordinated responses to the Firm's demands for payment, and, with two minor exceptions, the Cyrulnik Clients failed to pay open invoices. (*Id.* ¶ 105.)

Based on these facts, RF asserts claims against Cyrulnik for tortious interference and breach of fiduciary duty. (*Id.* ¶¶ 90-108.) Specifically, RF alleges that, among other things, Cyrulnik failed to assist RF in collecting the outstanding fees and, in fact, caused the Cyrulnik Clients to withhold those fees from the Firm. (*Id.* ¶¶ 95-96, 104-05.) Cyrulnik has not moved to dismiss these claims, which remain pending.

To obtain further support for its claims, RF issued subpoenas to the Cyrulnik Clients that sought eleven categories of documents. The Court paused those subpoenas in May 2022 on the grounds that Cyrulnik was "still in the process of responding to Plaintiffs' discovery requests." (Dkt. No. 125 at 5.) The Firm has had to obtain numerous orders from the Court to facilitate Cyrulnik's full production of documents relating to the Cyrulnik Clients. Specifically, Cyrulnik first refused to produce documents between him and the Cyrulnik Clients on privilege grounds. (DE 185 at 72:12-25.). The Court rejected that privilege assertion (*id.*), and Cyrulnik produced his communications with the Cyrulnik Clients up until March 14, 2021. But because the Firm's tortious interference and breach of fiduciary duty claims arose after Cyrulnik was removed on February 12, 2021, and are based on Cyrulnik's conduct thereafter, the Firm asked him to produce related documents until July 2, 2021, the date the Firm filed its Amended Complaint. (DE 160 at 4-5.) Cyrulnik refused again, requiring the Firm to return to this Court, which granted the Firm's request. (DE 169.) Cyrulnik claims to have fully complied with that production order.

**II.  Cyrulnik's document production confirms the subpoenas are necessary**

Cyrulnik states he has completed his production. (Dkt. No. 160 at 4). But the documents he produced have major gaps that demonstrate (i) there is more to discover about his interactions with the Cyrulnik Clients over the Firm's invoices, and that (ii) Cyrulnik kept these communications off email.

**KAPLAN HECKER & FINK LLP**                                                                 3

Specifically, the documents produced demonstrate that, after Cyrulnik's removal, he coordinated and drafted the Cyrulnik Clients' communications with RF. *See* JC0008967 (email from Cyrulnik to Cyrulnik Client stating "[a]s per our phone conversation, below is a draft email" to send to Roche Freedman); JC0008970 (same, but to another client); JC0008971 (same, but to another client); JC0008977 (same, but to another client); JC0008978 (same, but to another client).

The production also shows that Cyrulnik Clients specifically asked Cyrulnik whether they should pay RF what they owed. *See e.g.*, JC0009121 ("Jason, invoice from your old firm. Should we pay this? Not sure: I don't know the terms of your departure. Please advise"); JC0009124 ("Hi Jason, Hope all is well and you had a nice [holiday]. Please see below and attached and let me know how to handle"); JC0009107 ("Please confirm that we should pay this invoice and future invoices from Roche Freedman given your departure from the firm."); JC0009111 ("Good afternoon Jason . . . I was hoping you can look over the attached invoice and let me know if it's all correct. Perhaps I can negotiate a discount with the firm").

These documents prove that Cyrulnik discussed payment of the Firm's invoices with the Cyrulnik Clients, but did so telephonically so as not to create a record. *See, e.g.*, JC0009128 (attaching RF invoices and stating "Jason, [c]an you **call** me to discuss please."); JC0009175 (attaching RF invoices and stating "Jason – **per your conversation** with Neil yesterday, attached are the 4 invoices received from RF since your departure"); *see also*, JC0008967 ("[a]s per our **phone conversation**" and pasting draft email to Firm); JC0008970 (same); JC0008971 (same); JC0008977 (same); JC0008978 (same) (all emphases added).

So, we know (i) the Cyrulnik Clients were in touch with Cyrulnik about the transition, (ii) that they allowed Cyrulnik to draft their correspondence with the Firm, that (iii) they asked Cyrulnik whether they should pay these invoices, (iv) spoke to him about the invoices telephonically, and (v) all uniformly refused to pay. Despite this, Cyrulnik did not produce any documents (emails, texts, or Signal messages) that reflect the substance of what he told the Cyrulnik Clients to ensure the uniform lack of payment that occurred after the Firm refused to hold those fees in escrow. In the meet and confer process, Cyrulnik's counsel asserted that this lack of documentation exists because Cyrulnik "did not provide advice to his clients concerning payments to [RF]," but RF should not be required to accept Cyrulnik's denial—especially where the evidence produced to date by Cyrulnik (i) undermines his assertion and where (ii) Cyrulnik has previously denied allegations that have since been established by documentary evidence to be true. (*E.g.*, DE. 72 ¶ 81 (denying RF's allegation that he coordinated the Cyrulnik Client responses, which he clearly did, as demonstrated by JC0008967, JC0008970, JC0008971, JC0008977, and JC0008978); DE 162 (saying deposition of Ilana Miller would be irrelevant, which it wasn't, as demonstrated by her testimony that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

RF is entitled to fully discover why the Cyrulnik Clients have refused to pay, and the extent to which Cyrulnik influenced that decision. Such information is directly relevant to RF's tortious interference and breach of fiduciary duty claims, not privileged, and can only be obtained from the Cyrulnik Clients themselves. Under such circumstances, RF's proposed subpoenas are plainly within the scope of permissible discovery and should be permitted to proceed. *See, e.g.*, *Uni-World Capital LP v. Preferred Fragrance, Inc.*, 2014 WL 12939056, at *1-2 (S.D.N.Y. Dec. 1, 2014)

KAPLAN HECKER & FINK LLP

4

(denying motion to quash, where documents sought were "plainly relevant" and there was "no indication that plaintiffs could obtain the requested documents from other sources").

RF has sought, in good faith, to obviate the need for these subpoenas. It has worked with Cyrulnik, and successfully moved the Court twice for further relief to avoid this third-party discovery. But it's become unavoidable. The proposed subpoenas are narrowly tailored, target only documents concerning this highly relevant issue, and are plainly proper. Denial of the proposed subpoenas now would prejudice the Firm in its ability to prove its case.

Thank you for your consideration.

KAPLAN HECKER & FINK LLP

Sean Hecker
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Email: shecker@kaplanhecker.com

*Attorneys for Plaintiff*