UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROCHE FREEDMAN LLP,<br><br>     Plaintiff,<br> v.<br><br>JASON CYRULNIK,<br>     Defendant. | No. 1:21-cv-1746 |
| JASON CYRULNIK,<br><br>     Counterclaim-Plaintiff,<br> v.<br><br>ROCHE FREEDMAN LLP, KYLE ROCHE,<br>DEVIN FREEDMAN, AMOS FRIEDLAND,<br>NATHAN HOLCOMB, and<br>EDWARD NORMAND,<br><br>     Counterclaim-Defendants. | |

**MEMORANDUM IN SUPPORT OF NON-PARTY ATTORNEY
JEROEN VAN KWAWEGEN'S MOTION TO QUASH AND FOR A
<u>PROTECTIVE ORDER PREVENTING HIS DEPOSITION</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 4

    I.      The Subpoena Should Be Quashed Because It Seeks Irrelevant Information From a Non-Party ................................................................................ 5

    II.     The Subpoena Imposes An Exceptional Burden And Prejudice on Non-Party JvK to Testify About His Opposing Counsel's Litigation Tactics In An Ongoing Case .................................................................................................. 7

    III.    The Subpoena Is Duplicative And Cumulative Of The Extensive Judicial Record In The Delaware Case ................................................................................ 9

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Anwar v. Fairfield Greenwich Ltd.*,
   297 F.R.D. 223 (S.D.N.Y. 2013) ..................................................................................6, 7

*In re Blackstone Partners, L.P.*,
   2005 WL 1560505 (S.D.N.Y. July 1, 2005) ................................................................4, 7, 11

*Concord Boat Corp. v. Brunswick Corp.*,
   169 F.R.D. 44 (S.D.N.Y. 1996) .............................................................................................7

*Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*,
   2014 WL 6686600 (S.D.N.Y. Nov. 21, 2014) ......................................................................5

*Kirschner v. Klemons*,
   2005 WL 1214330 (S.D.N.Y. May 20, 2005) .......................................................................4

*Paramount v. QVC*,
   637 A.2D 34 (Del. 1994) .......................................................................................................9

*In re Straight Path Comms. Inc. Consol. S'holder Litig.*,
   C.A. No. 2017-0486-SG ............................................................................................. *passim*

*In re Subpoena Issued to Dennis Friedman*
   350 F.3d 65 (2d Cir. 2003).....................................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(2)(C) .................................................................................................3, 4, 10

Fed. R. Civ. P. 45(d)(3).................................................................................................................2, 4

Non-Party Attorney Jeroen van Kwawegen submits this memorandum in support of his motion to quash the August 17, 2022 Notice of Deposition Duces Tecum (the "Subpoena") seeking a discovery deposition of Mr. van Kwawegen ("JvK").

## **INTRODUCTION**

The Subpoena seeks an extraordinary result: to compel a non-party attorney (JvK) to provide sworn testimony about his opposing counsel, Defendant Jason Cyrulnik ("Cyrulnik"), regarding Cyrulnik's behavior in a completely unrelated case pending in Delaware Chancery Court captioned *In re Straight Path Communications Inc. Consolidated Stockholder Litigation*, C.A. No. 2017-0486-SG) ("*Straight Path*"). Even more extraordinary, the testimony would be given at a time when the unrelated Delaware case is **in the middle of trial** and JvK and Cyrulnik are opposing each other as respective lead trial counsel. It would be unprecedented and improper to force JvK to testify—and to permit Cyrulnik to cross examine JvK—about the *Straight Path* litigation and the decisions made by JvK as counsel for plaintiffs and the class while the case is ongoing.

By way of background, Cyrulnik is counsel for defendants in *Straight Path*, which has been pending for five years in the Delaware Court of Chancery before Vice Chancellor Glasscock. The *Straight Path* case concerns allegations that Cyrulnik's clients (Straight Path's controlling stockholder and another company he controls) breached their fiduciary duties and aided and abetted breaches of duty by causing Straight Path to release a valuable indemnification claim for significantly less than it was worth in connection with the sale of the company, which materially harmed Straight Path's stockholders.

JvK is Cyrulnik's opposing counsel in *Straight Path*. There, JvK is one of the lead trial lawyers representing the Lead Plaintiff and the already-certified Class of Straight Path

stockholders alleging that Cyrulnik's clients breached their fiduciary duties.[1]  Trial in the case commenced on August 29, 2022.  By order of the Delaware Court, the trial is scheduled to take place for five days from August 29 through September 2, 2022 and then resume for up to an additional five days from December 5 through December 9, 2022.  *See* Ex. A[2].

The highly irregular Subpoena seeks to force JvK to testify about his opposing counsel's litigation strategies and overall behavior during the long-running *Straight Path* case.  It would also permit Cyrulnik to cross-examine JvK on these points.  And all of this would occur while *Straight Path* is literally in the middle of trial.  The Subpoena imposes an undue burden upon JvK. Such an unusual subpoena to a non-party should be quashed absent the most compelling circumstances that, at a minimum, would require a conclusive showing that the non-party testimony is essential to the parties' core claims or defenses and is totally unavailable from any other source.  Fed. R. Civ. P. 45(d)(3) (a court "must quash or modify a subpoena that …subjects a person to undue burden").  Those circumstances do not exist here.  The Subpoena should be quashed.

First, the testimony it seeks is not relevant to the underlying dispute between Cyrulnik and his former law firm, Roche Cyrulnik Freedman LLP ("RCF" or the "law firm").  The complaint filed by RCF to initiate this case does not make a single reference to Cyrulnik's conduct in the *Straight Path* litigation or his interactions with JvK.  The core of the dispute between RCF and Cyrulnik is centered on the law firm's decision to terminate Cyrulnik "for cause" in February 2021. RCF's complaint concerns internal law firm matters such as Cyrulnik's alleged bullying behavior

---

[1] RCF also served a subpoena duces tecum on Mark D. Richardson, one of the other lead trial lawyers representing Lead Plaintiff in the *Straight Path* litigation.

[2] "Ex" refers to the exhibits attached to the accompanying Declaration of Jeremy P. Robinson.

2

towards RCF's other partners, clients and associates.  JvK has no knowledge of those issues.  And JvK had nothing to do with RCF's decision to terminate Cyrulnik.

The subpoena, by contrast, seeks information regarding JvK's subjective impressions of Cyrulnik's conduct and litigation strategies in the *Straight Path* litigation. As noted, this testimony is not relevant to the underlying lawsuit.  Even if it were, testimony from an opposing counsel concerning an opponent's conduct during a heavily contested litigation is of minimal probative value.  The Delaware case was (and continues to be) a vigorous litigation.  Any testimony JvK may be forced to give on this matter would result in a meaningless "he said/he said" dispute between litigation adversaries in the heat of battle.

<u>Second</u>, the extreme burden and prejudice that the Subpoena imposes on JvK, the Lead Plaintiff, and the certified Class far outweighs any minimal relevance his testimony might provide. Testimony from attorneys as fact witnesses is highly disfavored, and it is particularly prejudicial to force an attorney to testify about litigation tactics and strategic decisions in an ongoing case. As explained below, the burdens and prejudices imposed by the Subpoena are obvious and many, including:  it prejudices JvK's representation of his clients and a certified class of investors, runs afoul of applicable rules regarding attorney conduct that have been adopted by the Delaware Supreme Court and that JvK is subject to, and raises the specter of insurmountable privilege and work-product issues as JvK is questioned about litigation decisions made in the Delaware case.

<u>Finally</u>, the information sought by the subpoena is largely duplicative of the extensive judicial record in the Delaware case that is available to RCF.  Deposition subpoenas to non-parties must be quashed when the testimony sought is "cumulative and duplicative," or "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).  As set forth below, there are a number of transcripts, motions for sanctions, and

decisions by the Delaware judge that lay out the essential facts of how the Delaware case has been litigated by those parties. RCF either already has these records or recently took steps to obtain them from the Delaware court. And the trial itself is also open to the public and a matter of public record. These public documents and judicial records are far more probative than (and almost entirely duplicative of) any testimony that JvK could provide regarding what has transpired in the *Straight Path* litigation over the course of the prior five years. This extensive record renders unnecessary any prejudicial and burdensome deposition of JvK.

For the reasons herein, the Subpoena should be quashed.

## **ARGUMENT**

A subpoena to a non-party should be quashed if its relevance is outweighed by the burden imposed on the subpoenaed party. *In re Blackstone Partners, L.P.,* No. 04 CIV. 7757 (NRB), 2005 WL 1560505, at *2 (S.D.N.Y. July 1, 2005) (determining whether to quash a subpoena "depends upon such factors as relevance. . . and the burden imposed.").[3] Where, as here, a subpoena pursuing information "with little apparent or likely relevance to the subject matter is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." *Id*. (quoting *Kirschner v. Klemons*, No. 99 Civ. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 20, 2005).

Given the genuine disruption and prejudice that would be caused by forcing JvK to testify about the behavior of his opposing trial counsel in an ongoing matter, the Subpoena should be quashed even if it sought marginally relevant information. *See* Fed. R. Civ. P. 26(c) (a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"); Fed. R. Civ. P. 45(d)(3) (a court "must quash or modify

---

[3] Unless otherwise indicated, internal citations and quotations are omitted, and emphasis is added.

4

a subpoena that . . . subjects a person to undue burden"); *Blackstone Partners*, 2005 WL 1560505, at *2. This is particularly true here because the information sought by the Subpoena is largely cumulative and duplicative of the judicial record available to RCF in the Delaware case.

**I.      The Subpoena Should Be Quashed Because It Seeks Irrelevant Information From a Non-Party**

The issues being litigated in this case concern the question of whether, in February 2021, RCF justifiably terminated Cyrulnik for cause. As set forth in RCF's complaint, this dispute centers on Cyrulnik's alleged mistreatment of the law firm's other partners, associates and employees. There are no allegations about Cyrulnik's treatment of opposing counsel and none whatsoever that relate to the *Straight Path* litigation or JvK.

For example, RCF's complaint contains detailed allegations that it terminated Cyrulnik for cause given his:

- "verbal abuse and bullying towards **other partners**,"
- "mocking and belittling [of] **other partners**,"
- "interfering with **Firm staffing decisions** and unilaterally obstructing associate assignments,"
- "creating an unsustainable work environment for **associates**," and
- otherwise obstructing and interfering with internal Firm management.

*See, e.g.,* Complaint, ¶4 (emphasis added); *see also id.* 29-63 (detailing Cyrulnik's alleged internal mistreatment of Firm partners, associates and staff). None of this concerns JvK or the *Straight Path* litigation. *See Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, No. 12 Civ. 2827 (NRB), 2014 WL 6686600, at *4 (S.D.N.Y. Nov. 21, 2014) (no value in deposing a non-party witness who "had no involvement with the key events in this case…").

5

Further, the main provision of the Firm's foundational memorandum of understanding (MOU) that RCF alleges that Cyrulnik violated was his promise to "**work together and cooperate in good faith and to fully participate to develop the Firm**." *See, e.g.,* Complaint, ¶¶4, 25, 65 (emphasis added). This commitment is an internal Firm-facing one and has nothing to do with Cyrulnik's external-facing conduct towards JvK as his opposing counsel in the *Straight Path* litigation. *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. 223, 228 (S.D.N.Y. 2013) (finding that "because the testimony sought by the defendants is of limited, if any, relevance to the issues in this case, the two proposed depositions would impose undue burden and expense").

Even setting aside *Straight Path* and JvK, the complaint does not contain a single allegation concerning Cyrulnik's conduct towards **any** of his opposing counsel. To the contrary, it draws a direct **contrast** between Cyrulnik's treatment of RCF's partners as opposed to his treatment of opposing counsel. For example, Exhibit C to the complaint is a December 30, 2020 email from RCF partner Katherine Eskovitz to Cyrulnik, which is attached to and incorporated within the complaint. In this email, Ms. Eskovitz *inter alia* chastises Cyrulnik for his treatment of Firm partners. *See* Complaint, Ex. C at 1 (criticizing Cyrulnik for "screaming at us, interrogating us, interrupting us… ignoring our answers… and further attacking us"). Notably, Eskovitz's email expressly contrasts Cyrulnik's allegedly abusive treatment of his partners from a situation involving opposing counsel, exclaiming "I am not a witness you are cross-examining **or an opponent**." *Id*. (emphasis added).

In addition to its lack of relevance to the core dispute between RCF and Cyrulnik, any testimony from JvK would be of minimal probative value. It is not unusual for litigation adversaries to spar with each other and have sharp disagreements in a hotly contested high-stakes litigation such as *Straight Path*. Nor is it unusual for opposing counsel to take issue with the

litigation tactics that the other side employs during discovery or trial, or even to have tempers flare over the course of a multi-year hard fought litigation. It is hard to see how JvK's subjective impressions regarding the conduct of Cyrulnik and the litigation decisions made by Cyrulnik would be probative to the central question of whether RCF was justified in terminating Cyrulnik for cause under the MOU, especially given that neither the *Straight Path* litigation nor JvK were mentioned in RCF's complaint.

In short, the Subpoena seeks information that is irrelevant to the gravamen of this action, and there is no reasonable basis to compel non-party JvK to testify. *Anwar v. Fairfield Greenwich Ltd.,* 297 F.R.D. at 228; *Blackstone Partners*, 2005 WL 1560505, at *2 (citations omitted) (subpoena "is likely to be quashed as unreasonable even where the burden of compliance would not be onerous" where it pursues no likely relevant information); *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 50 (S.D.N.Y. 1996) (granting non-party's motion to quash subpoena that "pursue[d] material with little apparent or likely relevance to the subject matter…").

**II.    The Subpoena Imposes An Exceptional Burden And Prejudice on Non-Party JvK to Testify About His Opposing Counsel's Litigation Tactics In An Ongoing Case**

Even if the Subpoena did seek relevant information (and it does not), it should be quashed because it imposes extraordinary burdens and prejudices on a non-party and an attorney in the middle of trial. Federal courts look with extreme disfavor upon requests to obtain discovery from attorneys as fact witnesses. *See In re Subpoena Issued to Dennis Friedman* 350 F.3d 65, 70 (2d Cir. 2003) ("Courts have been especially concerned about the burdens imposed on the adversary process when lawyers themselves have been the subject of discovery requests, and have resisted the idea that lawyers should be subject to broad discovery [requests]"). This concern is further heightened in the circumstances present here, where the non-party attorney is being asked to testify about the litigation conduct of his opposing counsel in an entirely unrelated litigation, **while it is**

7

**in the midst of trial.** As noted above, trial in this matter began on August 29, 2022 and will continue for a week before resuming for a second week in early December 2022.

The burdens and prejudices that would inure to JvK if he were forced to testify at this time about his opposing counsel and the conduct of the *Straight Path* case are manifest. To begin, preparing for the deposition and testifying will unfairly disrupt JvK's trial preparation and serve as an unnecessary distraction from his efforts on behalf of the *Straight Path* plaintiffs.

Even more concerning, any testimony JvK might give could unfairly prejudice his prosecution of the *Straight Path* litigation. It is enormously prejudicial for an attorney to testify about the litigation strategy undertaken by himself and his opposing counsel in an ongoing case. In his direct testimony and, particularly in cross examination conducted by Cyrulnik's counsel, JvK could be questioned about a wide range of litigation and strategic decisions made over five years of litigation, all while the *Straight Path* case is in trial. It will provide an opportunity for his opposing trial counsel to question JvK directly about matters relating to trial strategy. To put it bluntly, this is unprecedented, highly inappropriate, and runs a severe risk of prejudicing JvK's representation of the Lead Plaintiff and the Class. It should not be allowed.

Moreover, the deposition would be fraught with difficult privilege issues. In order to comment on Cyrulnik's conduct and litigation strategies it would require JvK to walk through a minefield of work product protection, trial strategy and attorney-client privilege related issues. This is unnecessary given the lack of relevance and probative value of any testimony that JvK might be able to give. As noted, the issues would be even more difficult when Cyrulnik has an opportunity to cross-examine JvK regarding the entire history of the *Straight Path* litigation. The burdens associated with navigating these difficult privilege issues further demonstrate that the

benefits (if any) of the testimony sought are far outweighed by the disruption, prejudice and burden it would impose on non-party JvK.

The potential disruption to the *Straight Path* trial in the Delaware Chancery Court is also a significant prejudice that should be avoided. As noted, *Straight Path* is a hotly-contested litigation. It would be extremely disruptive to the Delaware Chancery Court's conduct of the *Straight Path* trial to permit opposing counsel to be deposed during trial. It would be unfair to the parties, counsel, and the Delaware Court to interject another level of animosity and adversarial disagreement between two opposing trial counsel in the midst of a trial.

On this last point, there is significant concern that the requested testimony runs afoul of specific rules of civility adopted by the Delaware Supreme Court and the Chancery Court rules. The Principles of Professionalism for Delaware Lawyers directs attorneys to refrain from engaging in "personal attacks" and states explicitly that:

> a lawyer should avoid conduct that undermines the judicial system or the public's confidence in it, as a truth seeking process for resolving disputes in a rational, amicable and efficient way.

Paragraph B. JvK is admitted to practice in Delaware pro hac vice and is subject to these rules. Forcing JvK to testify under oath regarding Cyrulnik's conduct in the *Straight Path* litigation, and allowing Cyrulnik to cross-examine JvK on the same subject, would contravene the spirit of the governing rules in Delaware and would serve no purpose but to undermine confidence in the judicial system. *See also Paramount v. QVC*, 637 A.2D 34, 52-55(Del. 1994) (discussing Delaware Supreme Court requirement of civility in litigation).

### III. The Subpoena Is Duplicative And Cumulative Of The Extensive Judicial Record In The Delaware Case

Finally, the information sought by the subpoena is largely duplicative of the extensive judicial record of the *Straight Path* litigation that is available to RCF. As noted above, the Federal

9

Rules require that subpoenas to non-parties "must" be limited where the discovery sought is "cumulative and duplicative," or "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). This Rule applies here to justify quashing the subpoena to JvK.

The *Straight Path* case has been vigorously litigated for over five years. As such, there is an extensive and well-developed record available from the Delaware Court that lays out the relevant facts of how the *Straight Path* case has been litigated by those parties, including motions, deposition transcripts and judicial opinions.

For example, the plaintiffs in *Straight Path* filed a motion for discovery sanctions arising from the defendants' alleged "obstruct[ion] [of] [p]aintiffs' ability to take testimony." *See* Ex. B at 1. The parties also filed other discovery motions and motions directed at Cyrulnik's role at trial, as well as motions to dismiss, a hotly contested class certification motion and a voluminous summary judgment motion. By way of an additional example, the record shows that the *Straight Path* parties took depositions of no less than **36 witnesses spanning 49 volumes of transcripts**. *See, e.g.,* Ex. C. This vast record is available to RCF without having to prejudice JvK by forcing him to sit for a deposition.

Moreover, the *Straight Path* trial itself—which is underway right now and will continue in two phases through December 2022—is open to the public and a matter of public record. These public documents and available judicial records are far more probative (and almost entirely duplicative) of any marginally relevant testimony that JvK might be able to provide.

RCF is free to move to unseal and obtain all of these materials—and whatever else it wishes—from the Delaware docket. In fact, recognizing this reality, RCF **already took steps to**

**unseal** the Delaware record by filing on August 26, 2022 a challenge seeking to unseal multiple documents in the *Straight Path* case.  Ex. D.

In sum, there is an easier and less prejudicial path for RCF to obtain the information it seeks concerning the *Straight Path* litigation, which RCF itself appears to have already acknowledged in moving to unseal the record in that case.  There is no need to subject JvK to a harassing and prejudicial deposition while he is in the middle of the *Straight Path* trial. *See, e.g., Blackstone Partners*, 2005 WL 1560505, at *3 (affirming an order quashing subpoena to former senior managing director at non-party partnership, which "would be cumulative and would subject [non-party partnership] to undue burden").

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court quash the Subpoena and issue a protective order preventing JvK's deposition.

DATED:  August 30, 2022

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/  John C. Browne*
John C. Browne (Bar No.JB-0391)
Jeremy P. Robinson (Bar No. JR-8358)
johnb@blbglaw.com
jeremy@blbglaw.com
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1492
Fax: (212) 554-1444

*Counsel for Non-Party Jeroen van Kwawegen*