KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL    212-763-0883
DIRECT EMAIL   shecker@kaplanhecker.com

September 22, 2022

**VIA ECF**

The Honorable Sarah Netburn
United States Magistrate Judge
40 Foley Square, Room 430
New York, NY 10007

Re:   *Roche Freedman LLP v. Jason Cyrulnik*, No. 1:21-cv-1746 (JGK)(SN)

Dear Judge Netburn:

We write on behalf of Plaintiff and Counterclaim-Defendants (the "RF Parties"), pursuant to Local Civil Rule 37.2 and the Court's Individual Practice II.C, to request a pre-motion conference regarding a deposition subpoena that Defendant Jason Cyrulnik issued to Christen Ager-Hanssen, a resident of the United Kingdom, on September 15, 2022.

### I.    The deposition subpoena should be quashed

The deposition subpoena should be quashed because (i) Cyrulnik's proposed deposition of Mr. Ager-Hanssen is not permitted by the Court's prior order and (ii) the burdens imposed, and delays caused by such a deposition would vastly outweigh any benefits and would be prejudicial to the RF Parties.

*First*, in July 2022, the Court authorized Cyrulnik to "conduct 10 depositions plus up to five additional depositions so long as the total additional deposition time does not exceed 10 hours." (Dkt. No. 169.) Cyrulnik has already scheduled 15 depositions, including depositions of non-parties William Tracy, Jordana Haviv, Richard Cipolla, Katherine Eskovitz, Alex Potter, Kelvin Goode, Daniel Stone, Start Up, and Derek Rundell. (Dkt. No. 222.) He has, moreover, already conducted eight depositions. Cyrulnik's proposed deposition of Mr. Ager-Hanssen therefore goes beyond what the Court has authorized.

*Second*, Cyrulnik's last-minute bid to depose Mr. Ager-Hanssen should be denied because the deposition cannot fairly be conducted without substantially delaying discovery in this matter and because the burdens imposed on the parties by such a deposition would vastly outweigh any benefit and would be prejudicial to the RF Parties. Among other things, it would have no probative

value. *See* Fed. R. Civ. P. 30(a)(2) (party's right to take more than ten depositions is subject to Fed. R. Civ. P. 26(b)(1) and (2)); *Frazier v. Morgan Stanley & Co., LLC*, 2021 WL 2709250, at *5 (S.D.N.Y. July 1, 2021) (court has "inherent authority" to limit third-party discovery). As explained below, Mr. Ager-Hanssen is a foreign national who harbors extreme animus toward Counterclaim-Defendant Kyle Roche and has demonstrated that he will go to great lengths to cause damage to Mr. Roche and his reputation. It appears that Mr. Ager-Hanssen was hired by defendants in another class action wholly unrelated to this matter to target, and harm, Mr. Roche. Testimony in this case would, therefore, further that directive. Accordingly, the RF Parties would need to conduct extensive document discovery to prepare for the deposition, including to gather the necessary impeachment evidence to protect against the substantial risk that Mr. Ager-Hanssen would provide misleading or false testimony.

Mr. Ager-Hanssen claims he provides "conflict management" services for "eccentric billionaires," where he uses methods such as "covert recording" and "social engineering" to help his clients gain strategic advantages in litigation. (Ex. 1.) Indeed, in a 2014 article printed in DN Magasinet,[1] Mr. Ager-Hansen has explained that his strategy involves "infiltrating the other party," with his "intelligence people." (Ex. 2 at 9.) He elaborated that:

> [T]here are about 50 of us. We engage in traditional operations such as strategic, financial and legal advice, but take it further to more complex and complex levels. In the firm there are computer geeks, financial geeks **and former intelligence officers from the CIA, MI6 and Mossad. Most of us are from the Mossad. The Israeli agents are the best at social engineering.**

(*Id*. (emphasis added).) Mr. Ager-Hansen stated, "I am not an agent," "I am a general," and that he provides "military names" like "Operation Primrose" to "all the cases he gets involved in." (*Id*. at 10.) He claims that "I have been in the war against powerful people for many years, and never lost. I know what it means to operate at this level." (*Id*.)

In the interview, Mr. Ager Hansen explains that on behalf of a Swedish billionaire, he "ran a double game – or social engineering" where his "mission was to **pretend** that [he] was going to bring about a settlement between [the parties]." (*Id*. at 11 (emphasis added).) In pursuit of that fraudulent objective, Ager-Hansen met with the opposing party "many times," and secretly recorded "everything he said." (*Id*.) The opposing party in that case was quoted as saying that Ager Hanssen "has no business methods . . . he deals in manipulation." (*Id*. at 12.)

This background is particularly important because in early January 2022, Mr. Ager-Hanssen arranged for Mr. Roche to attend meetings with him in London that were ostensibly about Mr. Ager-Hanssen investing in a litigation finance startup. Indeed, Mr. Ager-Hanssen paid for Mr. Roche and his now fiancé to travel first class to London to meet with him and paid for their accommodations while there. As the RF Parties later learned, these meetings were arranged on false pretenses and Mr. Ager-Hanssen caused Mr. Roche to be secretly recorded at those meetings.

---

[1] The RF Parties have attached a machine translation of this article as Exhibit 2.

Mr. Roche did not know about these recordings until late August 2022, when an anonymous tabloid website called CryptoLeaks published a series of highly edited and out of context video clips from the London meetings. Some of those clips show an intoxicated Mr. Roche making highly inappropriate remarks concerning Roche Freedman LLP's ("RF") class action practice.

This publication helped identify Mr. Ager Hanssen's current employer. CryptoLeaks is a website devoted to promoting conspiracy theories involving the crypto company Dfinity—a defendant in a high-profile class action RF is prosecuting in the Northern District of California. *See* Am. Compl., *Valenti v. Dfinity USA Research LLC*, No. 3:21-cv-06118 (N.D. Cal. Feb. 3, 2022), ECF No. 45. The site describes, for example, an alleged "corrupt attack" by the *New York Times* against Dfinity, as well as an alleged "multi-billion dollar price manipulation" scheme that targeted a crypto-asset issued by Dfinity.[2] Moreover, the founder of Dfinity (also a defendant in that action) is coordinating with CryptoLeaks, if not directly controlling its operations.[3] CryptoLeaks published the videos, along with an inflammatory and factually unsubstantiated article, just days before oral argument was scheduled for Dfinity's motion to dismiss in the California action.

Mr. Ager-Hanssen has since engaged in a media campaign against Mr. Roche. He has, for example, tweeted about Mr. Roche at least 30 times since. Mr. Ager-Hanssen has stated that he "want[s] to see Kyle Roche disbarred" and that he has an "obsession" with Mr. Roche. (Ex. 3 at 1-2.) He has purportedly compiled a 490-page "Statement regarding Roche Freedman & Avalabs" that is only available to those who will "explain why [they] have an interest." (*Id.* at 3.) He has also conducted interviews about Mr. Roche with Coingeek, a website owned by the billionaire financier of Craig Wright, against whom RF (on behalf of its client) recently obtained a $143 million judgment. (*Id.* at 4.)

Consistent with this agenda, Mr. Cyrulnik testified this week that Mr. Ager-Hanssen reached out to him and volunteered to appear without a subpoena[4] and provide testimony against Mr. Roche. Apparently, Mr. Ager-Hanssen intends to testify that Mr. Roche made comments about this litigation that Mr. Ager-Hanssen conveniently *did not record*. Indeed, none of Mr. Roche's recorded statements in the CryptoLeaks videos concerned, or had anything to do with, the subject of this litigation, which is Cyrulnik's for-cause removal from RF. And Mr. Ager-Hanssen has absolutely zero personal knowledge regarding this action. He had no prior association with and did not meet Mr. Roche until nearly a year after Cyrulnik was removed from RF, and he had never spoken with Cyrulnik until a few weeks ago, after CryptoLeaks released the videos. Under these circumstances, Mr. Ager-Hanssen's enthusiastic cooperation with Cyrulnik is highly suspect.

---

[2] In the last several weeks, RF has learned that the defendants behind the release of the videos showing Mr. Ager-Hansen and Mr. Roche may intend physical harm against Mr. Roche. RF has contacted law enforcement about the matter.

[3] *See*, *e.g.*, https://tinyurl.com/2uym92m9

[4] While a proposed subpoena was attached to the Notice of Deposition, given the length of time it takes to serve a foreign national under the Hague Convention, it is unlikely that Cyrulnik intends to serve the subpoena. Moreover, the subpoena does not include Mr. Ager-Hanssen's address which would obviously make it impossible to effectuate service.

The RF Parties have no doubt that Mr. Ager-Hanssen would offer nothing but fabricated, prejudicial testimony designed to inflict maximum harm on Mr. Roche. Accordingly, if Mr. Ager-Hanssen's deposition goes forward, the RF Parties would need—and would be greatly prejudiced if they did not receive—substantial discovery prior to that deposition to protect themselves from the extreme risks that Mr. Ager Hanssen's testimony poses.

That discovery would be expensive, complicated, and time-consuming, especially given the international component. For example, the RF Parties would need to gather evidence relating to Mr. Ager-Hanssen's credibility and bias, including from Mr. Ager-Hanssen himself, who is a foreign national, and apparently wanted for tax evasion in Sweden.[5] They would need to obtain Mr. Ager-Hansen's 490 page "Statement" and gather evidence from Cyrulnik regarding his direct communications with Mr. Ager-Hanssen—both of which Cyrulnik has inexplicably refused to provide despite admittedly having these documents and multiple requests from the RF Parties for their production. (Ex. 4.) They would need to gather evidence from CryptoLeaks, an anonymously-run website. And they would need to gather evidence from Dfinity, a Swiss foundation and a defendant in a class action being prosecuted by RF where discovery is currently stayed under the PSLRA.

Precisely how long it would take to obtain such discovery is unclear. What is clear, however, is that the RF Parties would be unable to obtain it prior to the currently noticed deposition date of October 6. It is, moreover, equally clear that the burdens associated with this deposition—*i.e.*, costly third-party discovery—substantially outweigh any conceivable benefit. *See Silipos, Inc. v. Bickel*, 2007 WL 1180571, at *1 (S.D.N.Y. Apr. 13, 2007) (quashing deposition subpoena on grounds that "the burden and expense" of deposition "outweighs its likely benefit"). Indeed, Mr. Ager-Hanssen's testimony, driven by his animus against Mr. Roche as opposed to personal knowledge, would have nearly zero probative value and would amount to nothing more than an attempt to collaterally impeach Kyle Roche, which is improper under the law. Accordingly, Cyrulnik's deposition subpoena should be quashed and the deposition of Mr. Ager-Hanssen should not go forward.

## II. **In the alternative, Mr. Ager-Hanssen should be required to respond to a document subpoena from the RF Parties before being deposed**

In the event that the Court concludes otherwise, Mr. Ager-Hanssen—who is a resident of the United Kingdom—must be obligated to respond to a document subpoena from the RF Parties *before* his deposition. His voluntary decision to ask Cyrulnik for the opportunity to testify against Mr. Roche constitutes his consent to this Court's jurisdiction. *See, e.g.*, *Roberts v. Bennaceur*, 658 F. App'x 611, 616 (2d Cir. 2016) ("[A] court will obtain, through implied consent, personal jurisdiction over a defendant if 'the actions of the defendant during the litigation amount to a legal submission to the jurisdiction of the court, whether voluntary or not.'" (quoting *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 134 (2d Cir. 2011)) (cleaned up)). Accordingly, the Court has the power to compel Mr. Ager-Hanssen to produce documents in response to a subpoena from the RF Parties. *See Favale v. Roman Catholic Diocese of Bridgeport*, 233 F.R.D. 243, 245

---

[5] *See* https://financialpost.com/telecom/media/one-time-open-text-pursuer-sets-his-wandering-eye-on-media-world

n.1 (D. Conn. 2005) (exercising jurisdiction over non-party with respect to motion to compel, where non-party "voluntarily appeared and testified" at deposition).

The RF Parties respectfully request that the Court should exercise that power in the event it believes the deposition should proceed. As explained above, the RF Parties would be highly prejudiced if they were unable to obtain documents from Mr. Ager-Hanssen in advance of any deposition. Given Mr. Ager-Hanssen's apparent animus toward Mr. Roche (including his stated desire to have Mr. Roche "disbarred"), and Cyrulnik's communications with Mr. Ager-Hansen, the RF Parties reasonably believe that Mr. Ager-Hanssen will provide false testimony. Indeed, Mr. Ager-Hanssen has targeted Mr. Roche and has stated that "[i]f people screw with me, I will screw them 10 times harder. I'm a street fighter. I'm a crazy mother$%#er."

To protect against this substantial risk, and to adequately demonstrate bias and falsity to a jury, the RF Parties would need Mr. Ager-Hanssen to produce, prior to his deposition, documents bearing on his bias and credibility. Absent such a document production, the RF Parties' ability to impeach Mr. Ager-Hanssen would be severely harmed.

In addition, to the extent that the Court concludes that Mr. Ager-Hanssen's deposition should go forward, the RF Parties respectfully request that they receive seven hours on the record to question Mr. Ager-Hanssen.

Thank you for your consideration.

Respectfully,

Sean Hecker

cc:     Counsel of Record (via ECF)