# Kasowitz Benson Torres LLP

Kevin A. Cyrulnik
Direct Dial: (212) 506-3368
Direct fax: (212) 656-1792
KCyrulnik@kasowitz.com

1633 Broadway
New York, New York 10019
(212) 506-1700
Fax: (212) 506-1800

Atlanta
Houston
Los Angeles
Miami
Newark
San Francisco
Silicon Valley
Washington DC

September 27, 2022

**VIA ECF**

The Honorable Sarah Netburn
Thurgood Marshall
United States Courthouse
40 Foley Square, Room 430
New York, New York 10007

      Re:    *Roche Freedman LLP v. Cyrulnik*, Case No. 1:21-cv-01746 (JGK) (SN)

Dear Judge Netburn:

We write in response to Plaintiff/Counterclaim-Defendants' letter, filed on Friday, requesting a pre-motion conference to quash Jason Cyrulnik's deposition subpoena to Christen Ager-Hanssen.

As an initial matter, Counterclaim-Defendants' letter violates the Court's rules, as Counterclaim-Defendants did not even seek to raise this dispute with us (let alone meet-and-confer, as required by Rule II.C. of Your Honor's Individual Practices) before writing to the Court – the first we heard that Counterclaim-Defendants had an issue with our subpoena was when we received their letter through ECF.

In any event, aside from violating the Court's rules, Counterclaim-Defendants' letter is meritless in every respect. At bottom, Counterclaim-Defendants ask the Court to quash a subpoena because they know that damning testimony from a third-party witness will further expose the pretextual scheme they perpetrated. The testimony they seek to prevent Cyrulnik from taking (and the Court from hearing) is from an individual named Christen Ager-Hanssen, with whom Counterclaim-Defendant Kyle Roche had met several times over the past year to discuss the Roche Freedman law firm, their practice and their various dealings with the Tokens that are at the center of this lawsuit. Mr. Ager-Hanssen has come forward to attest to Roche's damning admissions about what Roche and his partners sought to do to Cyrulnik in 2021, when the Tokens skyrocketed in value. (Dkt. No. 62, ¶¶ 5, 65-69.) While he has denied participating in a scheme to deprive Cyrulnik of his Tokens throughout this litigation, Roche apparently *admitted* to Mr. Ager-Hanssen that he regretted agreeing to give Cyrulnik his share of the Tokens as part of the deal to induce Cyrulnik to leave Boies Schiller and co-found RCF, and that Roche implemented the scheme at the heart of this lawsuit to accomplish his objective of taking back Cyrulnik's Tokens.

Discovery to date already corroborates Mr. Ager-Hanssen's revelations and provides compelling evidence of that scheme, including that, just as the Tokens were suddenly skyrocketing in value, Counterclaim-Defendants (i) intentionally decided not to provide Cyrulnik with **any notice** of **any alleged ground** for removal – or even that they were considering removing him at all; (ii) conspired to ensure that there were **no records** of their meeting or scheming, including by using a secret disappearing message chat platform and leaving in place the "disappearing messages" feature until after they had concluded their meetings and pretextual termination; (iii) excluded other partners from the meeting, including Cyrulnik and Paul Fattaruso, the equity partner who worked with Cyrulnik on his many cases, knowing that Mr. Fattaruso would never have gone along with their scheme; (iv) ███████████████████████████████████████████████████████; (v) discussed in writing ███████████████████████████████████████████████████████ and (vi) commenced this action on a Saturday night in order to preempt Cyrulnik's lawsuit and in an effort to try and tarnish his esteemed reputation by creating an unbelievable misimpression of Cyrulnik that the Counterclaim-Defendants knew was not true. Indeed, discovery now shows that Cyrulnik **never once** spoke to an associate in a harsh manner in 16 years of practice, and that his partners' pretextual efforts to justify their actions are just that.

For his part, Roche has admitted under oath that ███████████████████████████████████████████████████████. In the recent weeks, Roche has withdrawn entirely from the firm's class action practice in light of his damning admissions to Mr. Ager-Hanssen on other subjects, including the Tokens. Based on those admissions, the firm's adversaries and even co-counsel have filed multiple motions seeking the removal of Roche Freedman from representing its clients. For its part, in seeking to justify Roche's candid and startling admissions to Mr. Ager-Hanssen – including that jurors are "idiots" who "control the flow of all the money that happens in American class actions," and that the many absent class members whom Roche Freedman represents are also "idiots" – the firm has claimed that Roche's statements were "demonstrably false" and "highly inappropriate."[1]

One would be hard-pressed to think of more relevant pieces of evidence than candid admissions from a named Counterclaim-Defendant and named firm partner concerning the very scheme that Cyrulnik seeks to redress in this lawsuit. And it is no surprise that Counterclaim-Defendants are desperate to somehow suppress additional evidence of their actions and scheme. But that is not the way discovery works. Counterclaim-Defendants are free to cross-examine and raise whatever theories they would like with respect to Roche's admissions – intoxication, secret recordings, or hidden ulterior motivations. But they are not entitled to quash a subpoena of a

---

[1] *See, e.g., In re Tether & Bitfinex Crypto Asset Litigation*, No. 19-Civ.-9236 (S.D.N.Y.), Dkt. No. 232 (Roche Freedman letter to Judge Failla, describing Mr. Roche's "demonstrably false" statements and "inappropriate remarks disparaging jurors and class members").

disinterested, non-party, percipient witness with personal knowledge of damning admissions made by a party to this case.

We also briefly address various misstatements in the motion itself.

- *First*, as to the 15-deposition limit, Counterclaim-Defendants fail to apprise the Court that Cyrulnik informed them he was not proceeding with Katherine Eskovitz's deposition – such that Mr. Ager-Hanssen's deposition would not take Cyrulnik over the limit set by the Court.

- *Second*, Counterclaim-Defendants complain about document discovery they want in connection with Mr. Ager-Hanssen's deposition, but they fail to identify what documents they actually seek – indeed, they recently served discovery on Cyrulnik, who testified about the few communications he received from the witness at his deposition earlier this week, and who intends to produce the document that witness sent Cyrulnik. Moreover, Counterclaim-Defendants claim to have plenty of material they intend to use for cross-examining this witness (although, for the avoidance of doubt, that material is just an attempt to distract from what Mr. Ager-Hanssen will likely say about Roche, who himself is now an admitted liar). (*See supra*, n.1.)

Accordingly, we respectfully ask the Court to deny Counterclaim-Defendants' request for a conference and deny their request to quash the subpoena to Mr. Ager-Hanssen, a disinterested, non-party, percipient witness with facts that bear directly on the claims in this action.

We thank the Court for its attention to this matter.

                                                                Respectfully submitted,

                                                                /s/ *Kevin A. Cyrulnik*

                                                                Kevin A. Cyrulnik

cc:     Counsel of Record (via ECF)