**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63ʳᴰ FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL       212-763-0883
DIRECT EMAIL      shecker@kaplanhecker.com

October 6, 2022

**VIA ECF**

The Honorable Sarah Netburn
United States Magistrate Judge
40 Foley Square, Room 430
New York, NY 10007

Re:   *Roche Freedman LLP v. Jason Cyrulnik*, No. 1:21-cv-1746 (JGK)(SN)

Dear Judge Netburn:

We write on behalf of Plaintiff and Counterclaim-Defendants (the "RF Parties"), in response to Cyrulnik's letter seeking reconsideration of this Court's September 28, 2022, order quashing his proposed deposition of non-party Christen Ager-Hanssen. (DE 262 (order); DE 264 (reconsideration letter).) Cyrulnik's arguments for reconsideration are wrong and certainly insufficient to meet the high burden associated with reconsideration. The motion should be denied.

Reconsideration "is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Mazzei v. The Money Store*, 2022 WL 3155249, at *1 (S.D.N.Y. Aug. 5, 2022) (quoting *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 701 (S.D.N.Y. 2011)). "To succeed on a motion for reconsideration, the movant carries a heavy burden." *Id.* Specifically, he or she "must show 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Id.* (quoting *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)). Indeed, under Local Civil Rule 6.3's "strict" standard, *Ramgoolie v. Ramgoolie*, 2020 WL 6135056, at *1 (S.D.N.Y. Oct. 16, 2020), the movant is required to "concisely" set forth "the matters or controlling decisions which counsel believes the Court has overlooked." Local Civ. R. 6.3.

Cyrulnik's reconsideration motion does not meet *any* of these requirements. First, he does not argue the Court "overlooked" any "controlling decisions." In fact, his motion (like his original opposition) cites no authority whatsoever. (DE 264.) Second, Cyrulnik does not cite "new evidence," but instead rehashes many of the same points the Court already considered and rejected. Third, Cyrulnik fails to demonstrate any need to correct "clear error" or "manifest injustice." On this basis alone, Cyrulnik's motion must be denied.

Moreover, the arguments Cyrulnik did include in his motion confirm that nothing has changed over the past week to warrant reconsideration.

**KAPLAN HECKER & FINK LLP**

2

First, Cyrulnik argues the Court overlooked that the *RF Parties*, not *Ager-Hanssen*, filed the motion to quash. That's clearly untrue. The order plainly states: "*Plaintiff* has moved to quash a subpoena issued by Defendant seeking to depose non-party Christen Ager-Hanssen." (DE 262 (emphasis added).)

Second, Cyrulnik asserts the RF Parties "lack standing to complain about any burden to Mr. Ager-Hanssen." But neither the RF Parties' letter motion nor the Court's order were based on any burden to Mr. Ager-Hanssen. Instead, the RF Parties' argument was based on the burden imposed on *them* in connection with the proposed deposition. Indeed, as they previously explained, given Mr. Ager-Hanssen's extreme bias and professional mandate to harm Mr. Roche's reputation, the RF Parties would need to pursue extensive international, third-party discovery to gather the necessary impeachment evidence to protect themselves from the near certainty that Mr. Ager-Hanssen would provide intentionally false testimony. (DE 256 at 1-4.) That discovery would be time-consuming, complex, and expensive, and it would inevitably (and considerably) delay progress in this action (for which, under the current schedule, fact discovery is officially closed). (*Id.*)[1] Cyrulnik does not—and cannot—argue otherwise. It was this considerable burden the Court relied on when quashing the subpoena.

Third, Cyrulnik's argument that the Court should reconsider its decision because Mr. Ager-Hanssen "possesses highly relevant information," also fails. As an initial matter, it is indistinguishable from the already-rejected argument Cyrulnik made in his original opposition. *See Ramgoolie*, 2020 WL 635056, at *1 ("In evaluating a motion for reconsideration, the Court should construe Local Civil Rule 6.3 narrowly to ensure that the motion 'is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998))). But even setting that aside, as the RF Parties previously explained, Mr. Ager-Hanssen's testimony would have no probative value: all available evidence demonstrates that he was hired by a defendant in a class action that the Firm is prosecuting to cause harm to Mr. Roche. (DE 256 at 1-4 (summarizing evidence).). His professional mandate to harm Mr. Roche, his long history of doing just that sort of work, and his seeking Cyrulnik out to voluntarily offer harmful testimony, underscores that lack of probative value and further demonstrates that the Court correctly concluded that the subpoena was issued for an "improper purpose." (DE 262.)

Fourth, Cyrulnik's new argument that Mr. Ager-Hanssen's testimony is suddenly probative because Cyrulnik has been unable to find any other evidence to support his incredible allegations of a "deplorable scheme," is inconsistent with his argument from last week that "[d]iscovery to date . . . provides compelling evidence of that scheme" (DE 260), and is contrary to the

---

[1] Indeed, courts have frequently observed that international discovery is not only extremely time-consuming, but also expensive and burdensome. *See, e.g.*, *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 314 F.R.D. 341, 347 (S.D.N.Y. 2016) (observing that "international non-party discovery against BNP Paribas" was "an effort guaranteed to be expensive, time-consuming, and cumbersome, with no corresponding guarantee of success"); *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 456 (E.D.N.Y. 2008) (observing that "[o]btaining the discovery through the Hague Convention can be costly, uncertain, [and] time-consuming"); *Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 2010 WL 1507792, at *3 (S.D.N.Y. Apr. 15, 2010) ("Discovery in China could only be conducted pursuant to the Hague Convention which, in practice, is extremely expensive and time consuming.").

KAPLAN HECKER & FINK LLP

3

fundamental principle that a "motion for reconsideration is not an opportunity for making new arguments that could have been previously advanced." *Mazzei*, 2022 WL 3155249, at *1 (quoting *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012)). But even more importantly, the fact that Cyrulnik has no other evidence to support his false conspiracy theory beyond the voluntary testimony of an internationally-infamous "conflict management" professional who admits to engaging in fraud and manipulation with the assistance of former CIA, MI6, and Mossad operatives, and who has tweeted incessantly about his personal animus toward Mr. Roche and his "obsession" with seeing him "disbarred"—supports the RF Parties' position, not Cyrulnik's. Indeed, it demonstrates that (i) Mr. Ager-Hanssen's supposed "evidence" consists of nothing beyond fabrications, (ii) his testimony is sought for an improper purpose, and (iii) the international discovery needed to protect the RF Parties from this malfeasance would be incredibly time-consuming and expensive.[2] In any event, Mr. Ager-Hanssen is not a fact witness to the key issue in dispute in this case: Cyrulnik's for-cause removal from the Firm by Counterclaim-Defendants for his inappropriate conduct toward them and Firm associates, about which Mr. Ager-Hanssen has absolutely zero to say because he was a complete stranger to those events.

In short, none of Cyrulnik's arguments provide a basis for reconsideration. The Court correctly concluded that Cyrulnik's proposed deposition of Mr. Ager-Hanssen would impose burdens that outweigh any conceivable benefit, seeks "information not likely to be relevant or admissible at trial," and "appear[s] to have been issued for improper purposes." (DE 262.) Cyrulnik's motion for reconsideration should be denied.

Thank you for your consideration.

Respectfully,

Sean Hecker

cc:   Counsel of Record (via ECF)

---

[2] Cyrulnik attempts to escape this flip-flop on the evidence he has by inaccurately representing that the RF Parties admit they, by communicating with Signal, "destroyed" the "written communications concerning their secret meeting and efforts to remove Cyrulnik from the firm." (DE 264 at 1-2). But this is an absolutely untrue accusation that Cyrulnik cannot support with any testimony. In fact, he inexplicably fails to inform the Court that the record evidence demonstrates exactly the opposite. First, the RF Parties testified there were no substantive written communications regarding the removal meeting on Signal. Ex. 1, Roche Freedman LLP Dep. at 147:7-11 (no Signal messages regarding meeting); Ex. 2, Freedman Dep. (Rough) at 72:25-75:4 (no recollection of any substantive communications); Ex. 3, Friedland Dep. (Rough) at 200:6-9, 286:7-15 (no Signal messages regarding removal meeting or potential removal). Second, since the *inception* of the firm, the RF Parties **and Cyrulnik** all used Signal as a matter of common practice for security purposes and not to accomplish some nefarious purpose. *See* DE 140-2 (screenshot of **Cyrulnik enabling** disappearing messages with Normand after discussing the feature in November 2019); DE 140-4 (screenshot of **Cyrulnik enabling** disappearing messages with Roche in early 2021); DE140-3 (screenshot of **Cyrulnik enabling** disappearing messages with Freedman in December 2019).