Marc E. Kasowitz (mkasowitz@kasowitz.com)
Kevin A. Cyrulnik (kcyrulnik@ kasowitz.com)
Gavin D. Schryver (gschryver@kasowitz.com)
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel.:   (212) 506-1700
Fax:   (212) 506-1800

*Attorneys for Defendant/Counterclaim-Plaintiff
Jason Cyrulnik*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROCHE FREEDMAN LLP,<br><br>        Plaintiff,<br><br>   v.<br><br>JASON CYRULNIK,<br><br>        Defendant. | Case No. 1:21-cv-01746-JGK |
| JASON CYRULNIK,<br><br>        Counterclaim-Plaintiff,<br><br>   v.<br><br>ROCHE FREEDMAN LLP, KYLE ROCHE,<br>DEVIN FREEDMAN, AMOS FRIEDLAND,<br>NATHAN HOLCOMB, and<br>EDWARD NORMAND,<br><br>        Counterclaim-Defendants. | |

**DEFENDANT/COUNTERCLAIM-PLAINTIFF JASON CYRULNIK'S**
**OBJECTION TO MAGISTRATE JUDGE NETBURN'S**
**ORDER DATED SEPTEMBER 28, 2022**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ....................................................................................................................... 3

ARGUMENT ............................................................................................................................ 6

I.  THE LEGAL STANDARD ............................................................................................ 6

II.  THE ORDER IS CLEARLY ERRONEOUS AND CONTRARY TO LAW ................... 7

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Clifford v. Tron Foundation*,
  No. 20-cv-02804 (S.D.N.Y.)................................................................................4

*In re Countrywide Fin. Corp. Sec. Litig.*,
  No. M8-85 (JGK), 2010 WL 1640188 (S.D.N.Y. Apr. 12, 2010).............................3

*Int'l Bhd. of Teamsters v. E. Conf. of Teamsters*,
  162 F.R.D. 25 (S.D.N.Y. 1995) ...........................................................................7

*Janik v. Spin Media, Inc.*,
  No. 16-cv-7308 (JGK), 2017 WL 6021644 (S.D.N.Y. Dec. 4, 2017) ...................6, 7

*KGK Jewelry LLC v. ESDNetwork*,
  No. 11-cv-9236 (LTS)(RLE), 2014 WL 1199326 (S.D.N.Y. Mar. 21, 2014)...........9

*Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*,
  No. 03-cv-5560 (RMB)(HBP), 2008 WL 4452134 (S.D.N.Y. Oct. 2, 2008)...........9

*McCutcheon v. Colgate-Palmolive Co.*,
  No. 16-cv-4170 (LGS)(KNF), 2017 WL 4776984 (S.D.N.Y. Oct. 5, 2017)............9

*Messieh v. HDR Glob. Trading Ltd.*,
  No. 20-cv-03232 (S.D.N.Y.)................................................................................4

*In re Subpoenas Served on Lloyds Banking Grp. PLC*,
  No. 21-mc-00376, 2021 WL 3037388 (S.D.N.Y. July 19, 2021) (Netburn, J.) .......8

*In re Tether & Bitfinex Crypto Asset Litigation*,
  No. 19-cv-9236 (S.D.N.Y.) (Oct. 13, 2022 text-only docket entry).......................3

*Valenti v. Dfinity USA Rsch.LLC*,
  No. 21-cv-06118 (N.D. Cal.) ...............................................................................4

*Williams v. Block.One*,
  No. 20-cv-02809 (S.D.N.Y.)................................................................................4

**Other Authorities**

Fed.R.Civ.P. 26(b)(1)..............................................................................................7

Fed. R. Civ. P. 45(b)(3)...........................................................................................8

Fed. R. Civ. P. 72(a) ..........................................................................................1, 6

Fed. R. Evid. 801(d)(2)(A), (D)-(E) .........................................................................8

Pursuant to Federal Rule of Civil Procedure 72(a), Defendant/Counterclaim-Plaintiff Jason Cyrulnik respectfully submits the following objection (the "Objection") to the September 28, 2022 Order (ECF No. 262, the "Order") issued by the Magistrate Judge, which granted, among other things, the September 22, 2022 letter motion (ECF No. 256, the "Letter Motion") filed by Plaintiff and Counterclaim-Defendants (the "Counterclaim-Defendants") seeking a pre-motion conference to quash a third-party deposition subpoena served on Christen Ager-Hanssen (the "Subpoena").

## PRELIMINARY STATEMENT

Mr. Ager-Hanssen is a disinterested, percipient fact witness who has facts bearing directly on Counterclaim-Defendants' scheme to remove Cyrulnik from the Firm that he co-founded, as well as the Tokens at the heart of this action.  In short, Mr. Ager-Hanssen has produced a document detailing a series of candid admissions Counterclaim-Defendant (and Cyrulnik's co-named partner at the time of the scheme at the heart of this lawsuit) Kyle Roche made to Mr. Ager-Hanssen.  Roche's admissions have resulted in his firm -- which he renamed "Roche Freedman" upon his breach removing Cyrulnik, and now renamed "Freedman Normand Friedland" -- being removed by Southern District of New York Judge Failla from the role of class counsel this month in a long-standing action the Firm had initiated; Roche being removed from the Firm's class action practice; and just last week Roche leaving the Firm.  Multiple other motions remain pending in cases across the country seeking to remove the Firm from their cases.

In addition to his reprehensible characterization of jurors and absent class members as "idiots" and his boasting about the Firm's relationship with Ava Labs that Judge Failla deemed "uniquely stupid," Roche also made candid admissions to Mr. Ager-Hanssen about the scheme he perpetrated together with his co-defendants in this matter to improperly remove Cyrulnik (the largest other Token holder) to try and steal back the Tokens guaranteed to Cyrulnik as part of the

Firm's founding.  Those admissions obviously bear directly on the scheme at the heart of the case and directly support Cyrulnik's core allegations in this case.

Desperate to find a way to avoid the highly critical, relevant testimony from Mr. Ager-Hanssen, and recognizing that Mr. Ager-Hanssen is domiciled in the UK and may be unavailable for trial, *Counterclaim-Defendants* (not Mr. Ager-Hanssen) filed the Letter Motion in which they requested that the Subpoena for Mr. Ager-Hanssen's deposition be quashed.  Without holding a pre-motion conference (or any oral argument), the Magistrate Judge granted Counterclaim-Defendants' request to quash the deposition.

The Order was clearly erroneous and contrary to law.  *First*, the Subpoena indisputably sought testimony highly relevant to this matter:  as discussed below, Cyrulnik understands that Mr. Ager-Hanssen has personal knowledge that Counterclaim-Defendant Roche admitted that Cyrulnik was "removed" as part of a pretextual scheme to take back his Tokens -- the very issue that is at the heart of this case.  *Second*, Counterclaim-Defendants lack standing to seek to quash the Subpoena *on behalf of* Mr. Ager-Hanssen, who did not move to quash and who has no legally significant relationship with Counterclaim-Defendants giving rise to any claim of privilege. *Third*, the Subpoena would not pose an undue burden:  on the contrary, Mr. Ager-Hanssen has not objected to the Subpoena, and Counterclaim-Defendants cannot possibly cite the fact that their counsel will have to attend a short remote deposition of a critical witness as a "burden," which they do not even have standing to raise.  *Finally*, the Order's statement that the Subpoena was issued for an "improper purpose" is without basis:  Cyrulnik learned that one of the Counterclaim-Defendants admitted to a third-party witness that the scheme Cyrulnik alleges in his counterclaims was true, so he promptly subpoenaed the witness for his testimony.  There is nothing "improper" about that, and Counterclaim-Defendants are free to challenge Mr. Ager-

2

Hanssen's credibility at the deposition or seek to exclude his deposition testimony prior to trial.

In the interim, Cyrulnik should be afforded the opportunity to obtain Mr. Ager-Hanssen's

testimony under oath, consistent with the Court's guidance that, "[u]nder the Federal Rules of

Civil Procedure, a party is entitled to discovery 'regarding any nonprivileged matter that is

relevant to any party's claim or defense.'" *In re Countrywide Fin. Corp. Sec. Litig.*, No. M8-85

(JGK), 2010 WL 1640188, at *1 (S.D.N.Y. Apr. 12, 2010) (quoting Fed.R.Civ.P. 26(b)(1)).

For these reasons, the Court should sustain the Objection, vacate the Order, and permit

Cyrulnik to depose Mr. Ager-Hanssen to obtain his testimony pursuant to the Subpoena.

## BACKGROUND

The claims in this case concern Counterclaim-Defendants' pretextual scheme to steal the

valuable cryptocurrency tokens (the "Tokens") that rightfully belong to Cyrulnik under the

Firm's governing agreement.  (ECF Nos. 56, 72.)  The Court entered a Scheduling Order on

March 24, 2022 (ECF No. 92), and discovery has been proceeding.

In late August 2022, a website known as "Crypto Leaks" released videos of

Counterclaim-Defendant Kyle Roche, in which Roche (among other things) made derogatory

comments about the Firm's clients (absent class members) and the jurors to whom the Firm

presents its cases; discussed the Tokens extensively; and claimed that the Firm commenced

various class action litigations for the sole purpose of advancing the interests of the client that

had paid him and the Firm the Tokens.[1]  The consequences of Roche's actions have been severe:

Southern District of New York Judge Failla removed the Firm as co-lead counsel in one major

class action;[2] motions seeking the Firm's removal or withdrawal have been filed in other

---

[1]  *See Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman*, CRYPTO LEAKS, https://cryptoleaks.info/case-no-3 (last visited Oct. 27, 2022).

[2]  *See In re Tether & Bitfinex Crypto Asset Litigation*, No. 19-cv-9236 (S.D.N.Y.) (Oct. 13, 2022 text-only docket entry); *see also* Justin Wise, *Roche Firm Booted From Tether Action After Crypto Leaks Post (1)*, BLOOMBERG LAW

actions;[3] and Roche has left (or been removed) from the Firm,[4] as has another founding partner, Nathan Holcomb.[5]

After the videos were released two months ago, Cyrulnik came to learn that one of the individuals to whom Roche made his statements was an individual named Christen Ager-Hanssen, with whom Roche had extensive meetings earlier this year to discuss his and the Firm's practices and various dealings with the Tokens. Mr. Ager-Hanssen reached out to Cyrulnik to inform him that, during the meetings depicted on the videos (and other meetings that took place at or around the same time), Roche told Mr. Ager-Hanssen that the pretextual removal scheme he and some of his partners at the time had orchestrated to take back Cyrulnik's Tokens alleged in Cyrulnik's counterclaims was absolutely true. Specifically, Mr. Ager-Hanssen subsequently stated in a written statement:

> When the discussion turned to Roche's relationship with his Roche Freedman partners, he vented his frustration and emphasised the "headaches" caused by certain partners who had become greedy upon the appreciation of the AVAX tokens despite "contributing little" to Ava Labs-related issues and to the firm's class action practice more generally. He singled out two "annoying" partners, one of whom he identified as a named founding partner, and commented that it had been necessary to find ways to "kick out" the named partner from the firm because he 'didn't deserve' the tokens. He deplored the need to spend millions of USD to placate the remaining partners and expressed his hope that a settlement with the expelled named partner could be achieved.

---

(Oct. 13, 2022, 2:53 PM), https://news.bloomberglaw.com/business-and-practice/roche-firm-booted-from-tether-action-after-crypto-leaks-post (last visited Oct. 27, 2022).

[3] *See, e.g.*, *Clifford v. Tron Foundation*, No. 20-cv-02804 (S.D.N.Y.), Dkt. Nos. 88-99; *Messieh v. HDR Glob. Trading Ltd.*, No. 20-cv-03232 (S.D.N.Y.), Dkt. Nos. 105-109; *Valenti v. Dfinity USA Rsch.LLC*, No. 21-cv-06118 (N.D. Cal.), Dkt. Nos. 72-76; *Williams v. Block.One*, No. 20-cv-02809 (S.D.N.Y.), Dkt. Nos. 154-164.

[4] *See* Sara Merken, *Crypto Law Firm Roche Freedman Parts Ways with Founder after Video Leak*, REUTERS (Oct. 19, 2022, 4:28 PM), https://www.reuters.com/legal/legalindustry/crypto-law-firm-roche-freedman-parts-ways-with-founder-after-video-leak-2022-10-19/ (last visited Oct. 27, 2022).

[5] *See* NATHAN A. HOLCOMB ESQ., PC, https://www.holcombpc.com/PublicSite.aspx (lasts visited Oct. 27, 2022).

(Ex. A at 15.)

Roche's admissions are plainly critical to this case.  Because Counterclaim-Defendants

carried out their scheme to remove Cyrulnik through a "disappearing message" platform they

had set up, there are virtually no contemporaneous written communications or other documents

concerning Cyrulnik's removal from the Firm -- no documents documenting (or even scheduling

or discussing) the meeting at a country club to plan the removal, or the meeting two days later at

which he was purportedly voted out of the Firm, and no communications discussing the reasons

for the alleged removal or whether they were remotely sufficient to warrant his removal (much

less provide cause to do so).  Although the absence of such documents alone is practically

dispositive -- as it evidences the lack of any legitimate cause to remove Cyrulnik from the Firm

-- and it is corroborated by deposition testimony from numerous Firm employees who

acknowledged that no investigation was performed into any alleged complaints about Cyrulnik's

work at the Firm, Roche's admission (through Mr. Ager-Hanssen's testimony) will extinguish

any doubt that the Court or jury may have about the merit of Cyrulnik's claims.

Recognizing the importance of Mr. Ager-Hanssen's testimony, and relying on a July 14,

2022 order from the Magistrate Judge stating that the Court "will not otherwise limit either party

in its selection of deponents" (ECF No. 169), on September 15, 2022, Cyrulnik served

Counterclaim-Defendants with a notice of the Subpoena, which Mr. Ager-Hanssen agreed to

accept service by email on September 19, 2022.  (Ex. B.)  The Subpoena called for Mr. Ager-

Hanssen's remote deposition on October 6, 2022.

In direct contravention of the Magistrate Judge's Rule II.C. -- which expressly requires a

party wishing to raise a discovery dispute to "first confer in good faith with the opposing party,

in person or by telephone, in an effort to resolve the dispute," and to "include evidence that the

meet-and-confer process occurred" -- Counterclaim-Defendants did not raise any objections to

the Subpoena with Cyrulnik or even request to meet and confer.  Instead, on September 22, 2022,

Counterclaim-Defendants filed their Letter Motion requesting a pre-motion conference to either

(a) quash the Subpoena due to alleged burden, delays prejudice and a lack of probative value, or

(b) compel Mr. Ager-Hanssen to respond to a document subpoena that Counterclaim-Defendants

claimed they would serve if Mr. Ager-Hanssen's deposition was to proceed.  (ECF No. 256.)  On

September 27, 2022, Cyrulnik filed a response to the Letter Motion.  (ECF No. 259.)

On the very next day, September 28, 2022, the Magistrate Judge issued the Order,

quashing the Subpoena together with a ruling on motions to quash properly filed by two non-

party witnesses Counterclaim-Defendants had served.  (ECF No. 262.)[6]  Ignoring the fact that the

Letter Motion merely requested a pre-motion conference, the Magistrate Judge quashed the

Subpoena, grouping it together with the other two subpoenas and stating, without differentiating

the subpoenas or witnesses, that all three subpoenas are "burdensome, seek information not

likely to be relevant or admissible at trial, and appear to have been issued for improper

purposes."  (*Id.*)  On October 3, 2022, Cyrulnik filed a letter seeking reconsideration, which the

Magistrate Judge denied on October 13, 2022 (the "Reconsideration Order") (but granted a 14-

day extension from that date to file objections).  (ECF Nos. 264, 269, 271.)

## ARGUMENT

I.      **The Legal Standard**

Under FRCP 72(a), "[o]bjections to a magistrate judge's ruling should be sustained only

if the ruling was clearly erroneous or contrary to law."  *Janik v. Spin Media, Inc.*, No. 16-cv-

---

[6] Cyrulnik agrees with, and does not challenge, that portion of the Order quashing the subpoenas to those non-
parties (Jeroen van Kwawegen and Mark Richardson), who are adversary counsel to Cyrulnik in ongoing matters,
and from whom Counterclaim-Defendants appear to seek inadmissible character testimony concerning Cyrulnik's
conduct completely unrelated to his removal from the Firm or the allegations of this case.

7308 (JGK), 2017 WL 6021644, at *1 (S.D.N.Y. Dec. 4, 2017) (citing Fed. R. Civ. P. 72(a)).  An

order is "clearly erroneous" where "the reviewing court on the entire evidence is left with the

definite and firm conviction that a mistake has been committed" and "contrary to law" where the

order "fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Id.*

## II.      The Order is Clearly Erroneous and Contrary to Law

The Order is clearly erroneous and contrary to law because the Subpoena seeks highly

relevant and necessary testimony from Mr. Ager-Hanssen, Counterclaim-Defendants have no

standing to move to quash the Subpoena, the Subpoena poses no burden (much less an undue

burden) to Counterclaim-Defendants (or even, for that matter, to Mr. Ager-Hanssen), and the

Subpoena was issued for the patently proper purpose of gathering admissible and relevant

evidence in support of Cyrulnik's counterclaims (and in opposition to the Firm's own claims).

*First*, the Magistrate Judge's finding that the Subpoena "seek[s] information not likely to

be relevant or admissible at trial" (ECF No. 262) is clearly erroneous.  *See, e.g.*, *Int'l Bhd. of

Teamsters v. E. Conf. of Teamsters*, 162 F.R.D. 25, 29 (S.D.N.Y. 1995) ("Rule 26(b)(1)

provides, in part, that '[p]arties may obtain discovery regarding any matter, not privileged, which

is relevant to the subject matter involved in the pending action,' and '[t]he information sought

need not be admissible at the trial if the information sought appears reasonably calculated to lead

to the discovery of admissible evidence.'  Thus, parties are entitled to discovery concerning 'any

matter that bears on, or that reasonably could lead to other matter that could bear on, any issue

that is or may be in the case.'").  Here, according to Mr. Ager-Hanssen, Roche -- a named

Counterclaim-Defendant and former named partner of the Firm -- ***admitted Cyrulnik's core***

***allegations in this case***.  Indeed, it is difficult to envision evidence that would be *more* relevant

than Mr. Ager-Hanssen's testimony.  The testimony also is likely to lead to admissible evidence:

Roche's admission is plainly admissible against Roche himself as a statement by a party-

opponent (FRE 801(d)(2)(A)); against the Firm since Roche was a named partner and agent of the Firm at the time (FRE 801(d)(2)(D)); and against the other individual Counterclaim-Defendants as statements by a co-conspirator in furtherance of the conspiracy (FRE 801(d)(2)(E)).  And Mr. Ager-Hanssen's deposition testimony will itself likely be admissible because Mr. Ager-Hanssen does not fall within the subpoena power of the Court and likely will be unavailable for trial, given that he is domiciled in the UK.  *See* Fed. R. Civ. P. 45(b)(3). Given the obvious relevance (and admissibility) of Mr. Ager-Hanssen's anticipated testimony, one would expect Counterclaim-Defendants in their Letter Motion (and the Magistrate Judge in the Order) to explain in detail why they believed the testimony would *not* be relevant.  Instead, both the Letter Motion and Order (and the Reconsideration Order) discuss relevance and admissibility in conclusory fashion -- a deficiency that the Magistrate Judge compounded by ruling without a prejudgment conference at which the anticipated relevance of Mr. Ager-Hanssen's testimony could have been fully explored.

*Second*, Counterclaim-Defendants lack standing to seek to quash the Subpoena.  Unlike the other non-parties addressed by the Court's Order -- Mr. van Kwawegen and Mr. Richardson -- who *themselves* moved, had a full and fair opportunity to brief their respective motions, and successfully quashed the subpoenas *they* received from Counterclaim-Defendants, Mr. Ager-Hanssen has never objected to the Subpoena and did *not* move to quash.  (ECF No. 264.)  The law is clear that, except in rare cases, a party lacks standing to object to a non-party subpoena on the grounds of relevancy or burden.  *See In re Subpoenas Served on Lloyds Banking Grp. PLC*, No. 21-mc-00376, 2021 WL 3037388, at *2 (S.D.N.Y. July 19, 2021) (Netburn, J.) (stating that where, like here, "[i]n the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness" and that "[a] party lacks standing to

challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden")

(quoting *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) and

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-cv-1590 (LTS)(HBP), 2013 WL 57892, at \*5

(S.D.N.Y. Jan. 4, 2013)); *McCutcheon v. Colgate-Palmolive Co.*, No. 16-cv-4170 (LGS)(KNF),

2017 WL 4776984, at \*3 (S.D.N.Y. Oct. 5, 2017) (same).[7]  By ignoring the relevant facts and

misapplying the law, the Order erroneously granted the Letter Motion in contravention of well-

established caselaw.

        *Third*, the Order's statement that the Subpoena is "burdensome" also was clearly

erroneous.  As noted above, there can be no burden on Mr. Ager-Hanssen, since he has already

agreed to sit for the deposition.  And any burden on the Counterclaim-Defendants from a short

remote deposition is minimal and routine in litigation -- indeed, since Cyrulnik forewent another

(longer) deposition that he had intended to take (of another Firm partner) in order to notice

Mr. Ager-Hanssen's deposition within the 15-deposition limit set by the Court (ECF No. 169),

the burden posed by the Subpoena was actually less than what Counterclaim-Defendants would

have faced had Cyrulnik not served the Subpoena at all.  And Counterclaim-Defendants'

argument (ECF No. 256 at 1, 4) that the Subpoena poses a burden because they would be

required to seek document discovery from Mr. Ager-Hanssen is a complete red herring:  (i) the

---

[7]  While Cyrulnik sought to quash, and the Magistrate Judge in fact quashed, subpoenas to other third-parties earlier in this case (ECF No. 123, 125), those subpoenas were directed to Cyrulnik's clients, with whom he had and has an ongoing relationship that would be damaged if the subpoenas were allowed to proceed.  By contrast, Counterclaim-Defendants have *no* relationship with Mr. Ager-Hanssen, other than having met with him a handful of times, and the justification for quashing subpoenas that on their face appeared designed to harass Cyrulnik's clients does not apply to a subpoena seeking highly relevant testimony from a third-party witness who is willing to testify and has no relationship with any party to this case.  *See, e.g.*, *KGK Jewelry LLC v. ESDNetwork*, No. 11-cv-9236 (LTS)(RLE), 2014 WL 1199326, at \*6 (S.D.N.Y. Mar. 21, 2014) (subpoenas issued to opposing party's customers that had the "potential to . . . disrupt [the opposing party's] affiliates' business relationships" were "issued to either harass or . . . to delay" and were therefore improper); *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03-cv-5560 (RMB)(HBP), 2008 WL 4452134, at \*3 n.3 (S.D.N.Y. Oct. 2, 2008) (party had "standing to challenge the subpoena because he has asserted that the requested documents are privileged").

burden of taking document discovery does not outweigh the need for relevant evidence, and

Counterclaim-Defendants' desire to obtain documents -- which they admit will be solely for

impeachment, and not actually relevant to the case -- cannot prevent Cyrulnik from obtaining the

evidence he needs to prove his case; (ii) Roche has known of Mr. Ager-Hanssen (and of his

admissions to Mr. Ager-Hanssen) since at least January 2022, yet not only did ***Roche and his***

***fellow Counterclaim-Defendants fail to disclose Mr. Ager-Hanssen in their initial disclosures***,

they chose not to seek any discovery from him until his deposition was noticed, and cannot

complain of the "burden" caused by their own decisions; and (iii) since it is of course possible

that Mr. Ager-Hanssen could still agree to voluntarily attend trial (and provide the same damning

testimony that Cyrulnik expects to obtain through deposition), Counterclaim-Defendants'

assertion that they need to take discovery *only* if he is deposed makes no sense.

  *Fourth*, the Magistrate Judge's conclusion that the Subpoena was issued for an "improper

purpose" is clearly erroneous -- particularly because the Magistrate Judge declined, both in the

Order and the Reconsideration Order, to identify what the "improper purpose" was that should

prevent Cyrulnik from taking highly relevant discovery.  There is nothing improper about

Cyrulnik seeking critical information from the only percipient, non-party witness who can testify

concerning damning admissions made by a named party.  Counterclaim-Defendants are of course

free to cross-examine Mr. Ager-Hanssen to pursue their contention that *Mr. Ager-Hanssen* has

some (undisclosed) ulterior motive, but there is absolutely no support for Counterclaim-

Defendants' contention, or the Magistrate Judge's conclusory holding, that the Subpoena itself

was "issued for an improper purpose."  Accordingly, the Order's contrary finding was clearly

erroneous.

*  *  *

10

Rather than engage in discovery in good faith, and attempt to rebut deposition testimony they do not like through cross-examination (or, if they feel they have the grounds for it, exclude it through a motion in limine), Counterclaim-Defendants are trying everything they can think of to suppress that testimony before it is even taken -- almost certainly because they understand that the testimony will be fatal to their position, that it will prove the falsity of their entire position in this case, and that it is critical to, and likely dispositive of, the parties' claims and defenses.  By allowing the Order to stand and deny Mr. Ager-Hanssen's deposition, the Court will be rewarding Counterclaim-Defendants for their gamesmanship, and Cyrulnik will be severely prejudiced.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, we respectfully submit that the Objection should be sustained, the Order should be vacated, and Cyrulnik should be allowed to depose Mr. Ager-Hanssen to obtain his testimony pursuant to the Subpoena.

Dated:  October 27, 2022
       New York, New York        Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By: */s/ Kevin A. Cyrulnik*
    Marc E. Kasowitz (mkasowitz@kasowitz.com)
    Kevin A. Cyrulnik (kcyrulnik@kasowitz.com)
    Gavin D. Schryver (gschryver@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel.:   (212) 506-1700
Fax:   (212) 506-1800

*Attorneys for Defendant/Counterclaim-Plaintiff*
*Jason Cyrulnik*

11