

500 Fifth Avenue, 40th Floor   New York, NY 10110
phone: 212-257-4880 | fax: 212-202-6417
www.shapiroarato.com

Jonathan P. Bach
jbach@shapiroarato.com
Direct: 212-257-4897

December 21, 2022

**Via ECF**
The Honorable Sarah Netburn
United States Magistrate Judge
40 Foley Square, Room 430
New York, NY 10007

Re:   *Roche Freedman LLP v. Jason Cyrulnik*, No. 1:21-cv-1746 (S.D.N.Y.)

Dear Judge Netburn:

We write on behalf of Plaintiff Roche Freedman LLP (the "Firm") to request a pre-motion conference concerning Defendant Jason Cyrulnik's refusal to produce communications between his counsel and anticipated deponent Christen Ager-Hanssen.

On September 15, 2022, the Firm served Cyrulnik with a request to produce "[a]ny communications and documents exchanged with Christ[en] Ager-Hanssen." Cyrulnik's responses and objections stated he would "produce non-privileged communications and documents responsive to this Request in his possession . . ." (Ex. 1 at 5-6). To be clear, nothing in the objection expressly indicated Cyrulnik was withholding communications his lawyers or any other of his agents or representatives had with Ager-Hanssen, although Cyrulnik included a stock, generic objection the request instructions.

On December 2, Cyrulnik produced six communications between himself and Mr. Ager-Hanssen. Four days later, the Firm requested Cyrulnik to confirm he had produced all responsive documents. On December 12, Cyrulnik's counsel confirmed they had "produced *everything* in Mr. Cyrulnik's possession, custody, or control." (Ex. 2 at 1 (emphasis added).) Again, nothing indicated Cyrulnik was withholding communications between his lawyers and Ager-Hanssen.

On December 20, the parties met and conferred over discovery relating to Ager-Hanssen. In response to questions testing the sufficiency and status of Cyrulnik's production, Kevin Cyrulnik (Defendant's brother and counsel) responded that they had already produced everything "consistent with their responses and objections." After further inquiry and pressing, Kevin Cyrulnik eventually conceded that communications between his firm and Ager-Hanssen existed, but had been withheld from the production, on the ground that they are (purportedly) not within Jason Cyrulnik's care, custody, or control.  Of course, this ground was never expressly disclosed in Cyrulnik's formal responses and objections (perhaps on the theory that it would simply slip by absent further scrutiny), nor is it a viable ground in any event.

This Court has already held that the Firm is "entitled to seek document discovery" relating to Mr. Ager-Hanssen and that "such discovery was contemplated" by Judge Koeltl's ruling

permitting Mr. Ager-Hanssen's deposition. (Dkt. No. 298.) Cyrulnik's counsel's communications with Mr. Ager-Hanssen—an admitted "conflict management" specialist apparently hired to harm Mr. Roche's reputation—are plainly discoverable, as they will shed light on Ager-Hanssen's unusual role and relationships in connection this lawsuit and show his bias as a partisan on Mr. Cyrlunik's behalf, not to mention other indicia of his lack of credibility; they may also show how his account of the facts has been colored in advance of his testimony. *See Wishart v. Welkley*, 2020 WL 1891764, at *2 (W.D.N.Y. Apr. 16, 2020) ("Witness bias, and witness impeachment, are within the legitimate scope of discovery."). Admissions about the scope of his knowledge, the reasons for his "voluntary" testimony, or how closely he coordinated with Cyrulnik's counsel would all be relevant areas of inquiry.  While such discovery is permissible in the ordinary course, it is all the more warranted here given Mr. Ager-Hanssen's admitted background, the unusual events surrounding his involvement in this case, and the fact that his deposition will likely be his trial testimony.  It is unfortunate and disconcerting that Cyrulnik initially attempted to gloss over the existence of these communications, but now that their existence has been confirmed, Cyrulnik should be compelled to produce them forthwith.

Cyrulnik is not excused from producing these communications simply because his attorney (also his brother) was the one sending and receiving the emails. "Under Fed. R. Civ. P. 34, which governs the production of documents during discovery, the clear rule is that documents in the possession of a party's current or former counsel are deemed to be within that party's 'possession, custody, and control.'" *MTB Bank v. Fed. Armored Express, Inc.*, 1998 WL 43125, at *4 (S.D.N.Y. Feb. 2, 1998) (collecting cases); *see also Lifeguard Licensing Corp. v. Kozak*, 2016 WL 3144049, at *5 (S.D.N.Y. May 23, 2016) (same). Cyrulnik should, accordingly, be compelled to produce all communications with Mr. Ager-Hanssen, regardless of whether those communications were sent or received by Cyrulnik himself, by his counsel, his firm, any other agent or representative acting on his behalf, or anyone else within his care, custody, or control.

Shortly before the Firm was going to file this motion, Cyrulnik offered to produce one substantive communication between his counsel and Ager-Hanssen, but objected to providing a full record of all of his counsel's communications with Ager-Hanssen, on the basis that any additional communications purportedly concern only scheduling matters. That is not acceptable, as the full scope of cooperation and coordination between Cyrulnik and Ager-Hanssen should be subject to review and available for cross examination, especially as it stands in stark contrast to Ager-Hanssen's apparent unwillingness to communicate with Cyrulnik's opposing counsel. Nor should Cyrulnik be able to cherry pick the particular documents he finds most fitting for review.

                                        Respectfully,

                                        */s/ Jonathan P. Bach*

                                        Jonathan P. Bach

cc:      Counsel of Record (via ECF)