

Shapiro Arato Bach LLP

500 Fifth Avenue, 40th Floor   New York, NY 10110
phone: 212-257-4880 | fax: 212-202-6417
www.shapiroarato.com

Jonathan P. Bach
jbach@shapiroarato.com
Direct: 212-257-4897

February 2, 2023

**<u>Via ECF</u>**
The Honorable Sarah Netburn
United States Magistrate Judge
40 Foley Square, Room 430
New York, NY 10007

      Re:    *Roche Freedman LLP v. Jason Cyrulnik*, No. 1:21-cv-1746 (S.D.N.Y.)

Dear Judge Netburn:

    We write in regard to the Firm's assertion of privilege over certain communications with its General Counsel, Eric Rosen. Seeking to limit the matters in dispute (and without waiver), the Firm will not further contest the Court's ruling with respect to the vast majority of logged documents. The Firm has, however, identified (i) five portions of certain email communications that it respectfully submits warrant redaction in deference to the attorney-client privilege (*see* highlighted portions in Exhibit A)[1] and (ii) six iterations of a working draft settlement proposal, which are also protected by privilege. *See* Privilege Log Nos. 27.1, 28.1, 29.1, 33.1, 35.1 & 49.1.

    The communications in question, including successive revisions of the working draft, were prepared in consultation with, and reflect the input of, the Firm's General Counsel and outside counsel. As discussed below, the privilege should protect these communications for at least three reasons. *First*, Mr. Rosen's involvement as in-house general counsel, acting in a legal capacity, suffices for the privilege to apply. *Second*, and as recognized by the Court at the hearing, the advice of outside counsel is reflected in the draft settlement communications. *Third*, these documents were prepared for the purpose of sharing them with outside counsel to obtain the benefit of further legal advice; accordingly, the privilege would apply to protect those communications from disclosure even if *no* internal or external counsel participated. At all relevant times, the persons involved in the communications were considering the question of how to resolve a dispute with Jason Cyrulnik, including proposed settlement terms most likely to protect the Firm's interests and to mitigate its risks.

    **I.**    **Factual Background**

    On February 12, 2021, the Firm notified Cyrulnik of his removal for cause. Cyrulnik contested that removal and made various demands on the Firm. The Firm considered those demands, their merits, and developed a legal strategy to address them. Part of that strategy included the preparation of a confidential settlement proposal to be sent to Cyrulnik under the protection of FRE 408. The settlement proposal was designed to balance the Firm's interests and risks and to

---

[1] Exhibit A is a composite exhibit. The emails highlighted in this composite exhibit are reflected in the Firm's privilege log as Nos. 29, 31, 32, 37, and 49.

support the Firm's position in any mediation proceeding. As various iterations of this settlement proposal were prepared, the participants understood themselves to be engaged in legal work, in communication with counsel, and thereby operating under the protection of the attorney-client privilege. *See* Rosen Decl. ¶11.

Specifically, the Firm asked its General Counsel, Eric Rosen, to oversee this process and act as counsel to the Firm for its dispute with Cyrulnik. Rosen Decl. ¶ 7. Rosen was not involved in the decision to terminate Cyrulnik, was not an equity partner, had no personal financial stake in the Firm's dispute with Cyrulnik, and was not consulted on business decisions related to Cyrulnik. *Id.* ¶¶3-4, 9. He was consulted solely in his capacity as General Counsel to (i) assess the legal merits of Cyrulnik's demands, (ii) ensure any offers properly reflected risks and the Firm's legal obligations, (iii) advise on settlement strategy (including the language of the offer), (iv) help the Firm understand the legal and strategic ramifications of its actions, and (v) generally guide it through the dispute with Cyrulnik. *Id.* ¶ 8. Indeed, when the dispute eventually wound up in court, Rosen entered an appearance as counsel for the Firm. (Dkt. 4).

In the early stages of the Firm's dispute with Cyrulnik, Rosen was tasked with overseeing pre-litigation activities, including by providing input on drafts of the settlement proposal and by liaising with outside counsel. Thus, Rosen explained in one email: "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Ex. A at 5. When other Firm partners had comments on the draft, they included or addressed Rosen in the communication (*e.g.*, Ex. B (email from Freedman at 3:27 pm thanking Rosen for his "advice" and soliciting his further "thoughts"), and Rosen would propose revisions accordingly (Ex. A at 8 ("████████████████████████████████████")).

Drafts were also prepared with the expectation they would be shared with outside counsel for additional legal advice. (*See* Ex. A at 6 (email from Holcomb at 9:55 AM) ████████████████████████████████████; Ex. A at 5 (email from Friedland at 10:03AM) ████████████████████████████████████); Ex. A at 5 (email from Rosen at 11:26 AM) ████████████████████.

## II. Communications involving Rosen's review and advice in his role as General Counsel are protected by privilege

Rosen functioned solely in his role as General Counsel, providing legal advice to the Firm's partners while seeking input from outside counsel. This role is regularly recognized as one befitting application of the attorney-client privilege. *See Hertzog, Calamari & Gleason v. Prudential Ins. Co. of Am.*, 850 F. Supp. 255, 255 (S.D.N.Y. 1994) ("No principled reason appears for denying a comparable attorney-client privilege to a law partnership which elects to use a partner or associate as counsel of record in a litigated matter."); *Stock v. Schnader Harrison Segal & Lewis LLP*, 142 A.D.3d 210 (1st Dep't 2016) (recognizing privilege between law firm general counsel and firm lawyers).

For instance, Rosen oversaw and participated in the draft settlement communications at issue, which reflected the advice of outside counsel with whom he consulted on behalf of the Firm. Such drafts are classically privileged, especially when prepared for review by counsel. *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 163 (E.D.N.Y. 1994) (Draft communications

to third parties "may be considered privileged if they were prepared with the assistance of an attorney for the purpose of obtaining legal advice and/or contain information a client considered but decided not to include in the final version); *Am. C.L. Union v. Dep't of Def.*, 2017 WL 4326524, at *8 (S.D.N.Y. Sept. 27, 2017) ("Disclosing the draft inevitably would disclose the confidential facts to which the advice relates. It is therefore protected by the attorney-client privilege."); *Trudeau v. New York State Consumer Prot. Bd.*, 237 F.R.D. 325, 343 (N.D.N.Y. 2006) (upholding privilege for letter "draft intended solely for the purpose of settlement, which ostensibly is legal strategy").[2] Where an attorney's role "is 'to see if there is a legal risk' in connection with the termination" of an employee and convey that risk to the employer, it "is precisely the type of legal advice that is protected by the attorney-client privilege." *Fletcher v. ABM Bldg. Value*, 2017 WL 1536059, at *3 (S.D.N.Y. Apr. 18, 2017).

For the same reasons, the communications with Rosen *about* the draft—including the five portions of the emails which the Firm is seeking to redact—are similarly privileged. These communications were all for the purpose of facilitating and obtaining legal advice, with respect to the underlying privileged draft. *See Allied Irish Banks v. Bank of America, N.A.*, 240 F.R.D. 96, 103 (S.D.N.Y. 2019) (privilege applies to communications made "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship") (quoting *Rossi v. Blue Cross & Blue Shield*, 73 N.Y.2d 588 (1989)). Indeed, two portions of the emails now proposed for redaction expressly refer to input Rosen obtained from outside counsel or to changes Rosen proposed following consultation with outside counsel and the legal reasoning behind those changes. (Ex. A at 5 (email from Rosen at 11:26AM) ████████████ ████████████ Ex. A at 8 (email from Rosen at 3:17PM) ("████████████

In other words, Rosen was conveying legal advice internally that he had obtained from outside counsel. Indeed, at the hearing the Court acknowledged that at least one of these emails is privileged. But if communications with outside counsel about the drafts are privileged, then communications with in-house counsel about them are necessarily privileged as well. *See Bruce v. Christian*, 113 F.R.D. 554, 560 (S.D.N.Y. 1986) ("Confidences employees reveal to in-house counsel acting as attorneys are accorded the same privilege that they would be accorded if they were revealed to outside counsel.").

The portions of the emails now proposed for redaction that aren't from Rosen include communications in which Rosen was included as a recipient, so that he could review the drafts, provide additional advice, and be in a better position to consult with outside counsel. (Ex. A at 5–6 & 11). In most instances, members of the Firm expressly conveyed requests for legal advice from outside counsel to Rosen, who would relay those requests to outside counsel on behalf of the

---

[2] As these cases make clear, the draft settlement proposals would also qualify for protection under the attorney-work product doctrine, which serves as yet another basis to withhold these documents. *See also In re Actos Antitrust Litig.*, 2022 WL 4282294, at *10 (S.D.N.Y. Sept. 16, 2022) (upholding privilege for, among other things, "draft settlement agreements"); *Roc Nation LLC v. HCC Int'l Ins. Co., PLC*, 2020 WL 1970697, at *4 (S.D.N.Y. Apr. 24, 2020) (upholding privilege for communications with attorney discussing "settlement strategy"); *A & E Television Networks, LLC v. Pivot Point Ent., LLC*, 2011 WL 6778469, at *3 n.3 (S.D.N.Y. Dec. 20, 2011) (draft settlement agreements "are protected by both the attorney-client privilege and the work product doctrine"); *Organon v. Elan Pharms., Inc.*, 2000 WL 1576875, at *1 (S.D.N.Y. Oct. 23, 2000) (draft "settlement agreements are not discoverable because they are protected by the attorney-client and work-product privileges").

Firm, and report back with that advice. (*See* Ex. A at 6 (email from Holcomb at 9:55 AM) ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); Ex. A at 5 (email from Friedland at 10:03AM) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."); Ex. A at 5 (email from Rosen at 11:26 AM) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The privilege also attaches to communications that presented information without an express request for Rosen or outside counsel's advice, because such a request was clearly implied: "Courts have held that communications constitute implicit requests for legal advice where an attorney is copied on the communications and the communications implicate specific legal issues." *Greater New York Taxi Ass'n v. City of New York*, 2017 WL 4012051, at *12 (S.D.N.Y. Sept. 11, 2017).

### III.   The draft settlement communications contain the advice of outside counsel

At the hearing, the Court acknowledged that the Firm should not be compelled to reveal communications from Rosen that reveal advice received from outside counsel. As explained above, however, Rosen edited the draft settlement proposal to reflect the advice he received from outside counsel. (Ex. A at 5 (email from Rosen at 11:26AM) ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, disclosure of these draft communications would necessarily reveal the advice Rosen received from outside counsel for the Firm. *Am. C.L. Union*, 2017 WL 4326524, at *8. Consequently, both the emails and the associated drafts should be protected from disclosure.

### IV.   Communications prepared for the benefit of outside counsel's review and advice are protected by privilege

A further layer of the same privilege attaches by virtue of the fact the drafts of the settlement proposal were prepared for review by outside counsel, for the purpose of obtaining additional legal advice. As explained below, these communications would be privileged *even if no lawyer was on them*.

To answer a question the Court asked at the conference, it is not necessary that outside counsel participate directly in such communications for the privilege to attach. Internal client communications are privileged where they are for the purpose of, or relate to the process of, obtaining outside legal advice. Following the reasoning in *Upjohn Co. v. United States*, 449 U.S. 383 (1981), courts in this Circuit routinely recognize that "when the client is a corporation, privilege can exist between employees when they communicate in order to aid counsel." *People's United Bank v. PeoplesBank*, 2009 WL 10689492, at *2 (D. Conn. Dec. 28, 2009) (collecting cases); *see also Robinson v. De Niro*, 2022 WL 704922, at *5 (S.D.N.Y. Mar. 9, 2022) ("Courts…have applied the privilege to communications among non-lawyer employees of a corporation where the purpose of the communication was to provide information to counsel or aid counsel in providing legal advice," citing, *inter alia*, *Upjohn*); *accord Eutectic Corp. v. Metco, Inc.*, 61 F.R.D. 35, 39 (E.D.N.Y. 1973) ("the fact that the communication, at its inception, is within the corporate structure rather than directly with the attorney does not automatically defeat the privilege"). This reflects the reality that "[o]rganizational clients and business entities often are personified by a number of employees. In preparation for, or in the midst of, consultations with an attorney, employees of the client will often consult one another to ensure that the attorney's advice is based on full knowledge of all relevant facts." *Williams v. Sprint/United Mgmt. Co.*, 2006 WL 266599, at *3 (D. Kan. Feb. 1, 2006), *clarified on denial of reconsideration*, 2006 WL 3694862 (D. Kan. Dec. 13, 2006).

That is precisely what happened here. Indeed, another court in this district upheld application of the privilege in circumstances similar to those here. There, the plaintiff challenged the assertion of privilege over communications between and among both lawyers and non-lawyers concerning the appropriate way for the company to respond to the plaintiff's resignation letter, including communications concerning the preparation of a "draft letter seeking input and legal advice on appropriate language." *Robinson*, 2022 WL 704922, at *9. The court concluded that the communications were privileged. *Id.* Here, too, the Firm was preparing a draft response for review and advice both by its in-house General Counsel, and also its outside counsel.

### V.     Analysis Of Particular Communications

In accordance with the authorities cited above, the Firm submits that the redactions proposed in Exhibit A and the six iterations of the draft settlement proposal all qualify for privileged treatment and should be withheld. For convenience, we list each document and proposed redaction below, as well as the basis for upholding the privilege designation:

- **Ex. A at 6—Email at 9:55 a.m.** (*see also* **Ex. A at 9 & 12 containing same**): Highlighted text is a communication soliciting legal advice from outside counsel ("[redacted]"), with respect to draft legal document (the settlement proposal). Rosen is among the recipients intended to provide feedback and advice.

- **Ex. A at 5—Email at 10:03 a.m.** (*see also* **Ex. A at 8 & 12 containing same**): Highlighted text raises additional legal concerns, and expressly anticipates the communication of these issues to outside counsel to obtain legal advice. Rosen is again among the recipients.

- **Ex. A at 5—Email at 11:26 a.m.** (*see also* **Ex. A at 11 containing same**): Highlighted text conveys Rosen's communications with outside counsel and his advice concerning the proposed next steps regarding same.

- **Ex. A at 8—Email at 3:17 p.m.:** Highlighted text responds to proposed revisions intended for review by outside counsel. This email was sent by Rosen and reflects his edits to the draft settlement proposal, and the legal reasoning for them.

- **Ex. A at 11—Email at 4:58 pm:** Highlighted text discusses revisions to the draft settlement proposal and related legal dispute. Rosen is among the recipients expected to provide feedback and advice, and to liaise with outside counsel about the issues raised.

- **Draft Settlement Proposals Logged at 27.1, 28.1, 29.1, 33.1, 35.1, and 49.1:** *See* discussion *supra* concerning privilege that applies to draft legal documents and settlement communications, especially those intended for review by and reflecting input from counsel.

\* \* \*

For the foregoing reasons, the Firm seeks to withhold these limited materials.

Respectfully,

/s/ Jonathan P. Bach

Jonathan P. Bach

cc:     Counsel of Record (via ECF)