**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**ROCHE FREEDMAN LLP,**

                  **Plaintiff,**        **21-cv-1746 (JGK)**

       **- against -**            <u>**MEMORANDUM**</u>
                                         <u>**OPINION & ORDER**</u>
**JASON CYRULNIK,**

                  **Defendant.**
────────────────────────────────

**JASON CYRULNIK,**

        **Counterclaim-Plaintiff,**

       **- against -**

**ROCHE FREEDMAN LLP, ET AL.,**

        **Counterclaim-Defendants.**
────────────────────────────────

**JOHN G. KOELTL, District Judge:**

The plaintiff, Roche Freedman LLP (the "Firm") brought this action for declaratory judgment, breach of fiduciary duty, and intentional interference with contract against Jason Cyrulnik, a founding partner of the Firm.[1] Cyrulnik then brought a host of statutory and common-law counterclaims against the Firm and five of its then-attorneys -- Kyle Roche, Devin Freedman, Amos

───────────────

[1] When these motions to dismiss were briefed, this action was captioned <u>Roche Cyrulnik Freedman LLP v. Jason Cyrulnik</u>. On August 15, 2022, the Clerk of Court changed the caption to <u>Roche Freedman LLP v. Jason Cyrulnik</u>. ECF No. 201. "Roche Cyrulnik Freedman LLP" was then terminated as a party and replaced with "Roche Freedman LLP." In the interest of clarity, this Memorandum Opinion & Order will refer to the plaintiff by the name listed on the caption: Roche Freedman LLP. This naming decision is not a judicial determination that Cyrulnik is no longer a partner in the Firm; he alleges that he is still a partner. <u>See</u> Answer & Counterclaims, ECF No. 72, ¶ 106 ("Cyrulnik remains a Founding Partner and Co-Chairperson of [Roche Cyrulnik Freedman LLP].")<u>; see also</u> ECF No. 277 (November 9, 2022 letter by Cyrulnik continuing to refer to the case as <u>Roche Cyrulnik Freedman LLP v. Cyrulnik</u>).

Friedland, Nathan Holcomb, and Edward Normand (the "Individual Counterclaim-Defendants" and, with the Firm, the "Counterclaim-Defendants") -- arising from what Cyrulnik alleges was his wrongful removal from the Firm. See Answer & Counterclaims ("Counterclaims"), ECF No. 72, ¶¶ 103-174. The Individual Counterclaim-Defendants now move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Cyrulnik's counterclaims against them. ECF No. 102 (motion of Roche and Freedman); ECF No. 107 (motion of Friedland, Holcomb, and Normand). For the following reasons, the motions to dismiss are **granted in part and denied in part**.

I.

For purposes of this motion, the Court accepts as true the following allegations from Cyrulnik's Counterclaims.

In 2004, Cyrulnik graduated from law school and joined the law firm Boies Schiller Flexner LLP ("BSF"). Counterclaims ¶ 20. Over the next fifteen years, Cyrulnik became an equity partner at BSF and built a substantial client base there. Id. ¶¶ 20-22.

In summer 2019, Roche and Freedman, two more junior attorneys at BSF, left BSF to form Roche Freedman LLP, a law firm focusing on cryptocurrency and other specialized practice areas. Id. ¶¶ 3, 25. Among the Firm's early clients was a technology startup (the "Startup") that agreed to pay the Firm

for its legal services with cryptocurrency known as "Tokens."
Id. ¶¶ 33, 50-55.

Throughout summer and fall 2019, Roche Freedman LLP tried
to recruit Cyrulnik, who was also being recruited by several
national law firms. Id. ¶¶ 3, 24, 28. In exchange for Cyrulnik's
agreement to leave BSF, Roche and Freedman promised him
significant stakes in what they described as their high-upside
contingency work and in certain assets they had secured.
Id. ¶ 28. After extensive negotiations, Cyrulnik agreed to leave
BSF to form the law firm Roche Cyrulnik Freedman LLP ("RCF"), a
Florida limited liability partnership with offices in Miami,
Florida and New York City. Id. ¶¶ 11, 29. On December 27, 2019,
RCF's six founding partners -- name partners Cyrulnik, Roche,
and Freedman, together with Friedland, Holcomb, and Normand --
signed a Memorandum of Understanding to govern the partnership.
Id. ¶ 30; see also Counterclaims, Ex. A, ECF No. 72-1 (the
"MOU"). The MOU's "Compensation Model" set forth distribution
methodologies for revenue earned through hourly and contingency
matters. Counterclaims ¶ 31. Beyond compensation from these
matters, the MOU also entitled Cyrulnik to 27% of the Firm's
equity, the largest share, plus 25% of a fixed allocation of the
Tokens to be issued by the Startup. Id. ¶¶ 31, 33.

Two provisions of the MOU governed the departure of a
Founding Partner from the Firm. Id. ¶ 35. Under the first

3

section, "Withdrawal from Firm," a Founding Partner who withdrew from the Firm within 18 months of the Firm's formation would be entitled only to compensation under the Firm's Compensation Model and would be required to return his equity "to the balance of the firm's equity partners pro-rata." MOU § VI(C) (the "Withdrawal Provision"); see also Counterclaims ¶ 35. The second section, "Partner Removal," provided that a "Founding Partner cannot be removed without cause" and that, even if cause arose to remove a Founding Partner, that removal would require a two-thirds vote of the Firm's equity partners. Counterclaims ¶ 36; MOU § VI(G) (the "Removal Provision"). In contrast to the Withdrawal Provision, the Removal Provision did not expressly provide that an involuntary removal would result in the forfeiture of any compensation, interests, or assets owed or allocated to a partner under the MOU. Counterclaims ¶ 36; MOU § VI(G).

A week after signing the MOU, on January 4, 2020, Roche, Cyrulnik, and Freedman entered into a separate agreement. Counterclaims ¶ 37; Counterclaims, Ex. B, ECF No. 72-2 (the "Side Letter").[2] In the Side Letter, Roche allegedly agreed to

---

[2] The top of the Side Letter reads "Memorandum of Understanding January 4, 2019," but the year appears to have been a typo. Cyrulnik alleges that the Side Letter was signed "in January 2020," Counterclaims ¶ 37, the body of the Side Letter states that it "is dated and made effective as of 1/4/20," and the signatures of Roche, Freedman, and Cyrulnik are dated January 27, 2020, January 21, 2020, and January 22, 2020, respectively, see Side Letter.

pay Cyrulnik $850,000 for the right to be listed as the first named partner at RCF. Counterclaims ¶ 37; Side Letter. The Side Letter also provided that Cyrulnik would receive a 25% interest in the Firm's anticipated recovery in a major contingency matter not included in RCF's Compensation Model. Counterclaims ¶ 37; Side Letter.

Cyrulnik's clients followed him from BSF to RCF, and he continued to grow his business in 2020. Counterclaims ¶ 40. That year, Cyrulnik allegedly generated more than 60% of the Firm's revenue and about 70% of its profits. Id. Throughout 2020 and into January 2021, the name partners generally worked well together, although Cyrulnik raised concerns about Roche's attitude toward client billings and Roche's obligations as class counsel, as well as Freedman's alleged efforts to exploit the Firm's Compensation Model through referral fees and discounts. Id. ¶¶ 45-48, 60.

Then, in early 2021, the Tokens issued by the Startup increased more than 15 times in value. Id. ¶ 66. The value of the Firm's Token rights increased to about $250 million, with Cyrulnik's share peaking at over $60 million. Id. ¶¶ 66, 68. At this point, Cyrulnik alleges, his partners no longer needed the revenue from his client base to fund the Firm's operations, and they schemed to remove him. See id. ¶¶ 5-6, 69. On February 10, 2021, Roche, Freedman, Normand, Holcomb, and Friedland convened

a "secret meeting," to which Cyrulnik and the Firm's seventh equity partner, Paul Fattaruso -- allegedly the only partner at the Firm who worked regularly with Cyrulnik on the Firm's core matters -- were not invited. Id. ¶¶ 70, 71.

Two days later, on February 12, 2021, Roche advised Cyrulnik by email that Roche and the other Founding Partners had "voted to remove you for cause from the firm's partnership." ECF No. 106-3 (the "Removal Email") at 1; see also Counterclaims ¶ 73.[3] Among the charges were that Cyrulnik "breached the 2019 MOU" by "failing to work together and co-operate in good faith and to fully participate to develop the Firm," and that Cyrulnik had "engaged in a pattern of conduct that has made it not reasonably practicable to carry on the firm and its operations with your involvement." Removal Email at 1. Cyrulnik's co-Founding Partners asserted that he verbally abused them, exercised "unilateral control over" staffing, created "unsustainable environments for associates," sought to "undermine the intent of the MOU and marginalize other founding partners," and refused to "participate in firm-related discussions in good faith." Id. The Removal Email advised that

---

[3] The Court may consider the Removal Email on these motions to dismiss because it was incorporated by reference in, and is integral to, the Counterclaims, and because there are no "material disputed issues of fact regarding [its] relevance." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

Cyrulnik would retain "access to your email and client files until at least February 25, 2021," but that if Cyrulnik did not write back by February 15, 2021, "we will suspend your firm accounts under the assumption that you have refused to work with us in good faith and for a peaceful transition." Id. at 2. All five Individual Counterclaim-Defendants signed the Removal Email. Id. Cyrulnik alleges that he "had never before had any complaints lodged against him for any improper interactions with any colleague," and that the Individual Counterclaim-Defendants "had no substance upon which to base their pretextual removal for cause." Counterclaims ¶ 75.

Cyrulnik asked the Individual Counterclaim-Defendants to retract the Removal Letter or else be held "liable for any resulting damage to Mr. Cyrulnik or his clients." Id. ¶ 80. Cyrulnik alleges that the Individual Counterclaim-Defendants then tried to pressure him to sign a confidential mediation and binding arbitration agreement to facilitate an "amicable" re-division of his assets and rights under the MOU. Id. ¶ 86. On February 19, 2021, Roche allegedly proposed that Cyrulnik give the Individual Counterclaim-Defendants 75% of Cyrulnik's share of the Firm's allocation of the Tokens. Id. ¶ 87. Cyrulnik responded that if the Individual Counterclaim-Defendants did not commit to providing Cyrulnik everything to which he was entitled

under the MOU and the Side Letter, including his 25% full share of the Tokens, he would sue them. Id.

A week later, on February 27, 2021, the Firm brought this action against Cyrulnik. See Compl., ECF No. 1. The original complaint sought a declaration that Cyrulnik had been properly removed for cause, that any distributions to him "are to be governed by the withdrawal provisions" of the MOU, and that he is "not entitled to any further compensation or interests as contemplated in the MOU." Id. ¶¶ 74, 76, 79(c).

Cyrulnik responded on March 9, 2021 by suing the Firm and the remaining Founding Partners in Florida state court, alleging that he had been wrongly removed without cause and was entitled to what he was allegedly promised in the MOU. See Cyrulnik v. Roche, No. 2021-5837-CA-01 (Fla. 11th Cir. Ct. filed Mar. 9, 2021). A month later, the Counterclaim-Defendants sent Cyrulnik an unspecified "portion of the amounts owed" to him, but allegedly "withheld the rest of Cyrulnik's assets" as well as "basic information about the Firm's accounts and revenues." Counterclaims ¶ 102. Cyrulnik alleges that, despite having been removed, he has not been paid "the rest of his formula compensation or any of the equity distributions owed to him," as well as "the other assets given to him under the MOU, including his Tokens and his 25% interest" in the major contingency matter, which had resulted in a $100 million jury award. Id.

On July 2, 2021, the Firm amended its complaint, adding claims against Cyrulnik for breach of fiduciary duty and intentional interference with contract. ECF No. 31, ¶¶ 90-108. Cyrulnik unsuccessfully moved to dismiss the amended complaint for lack of subject matter jurisdiction or to have this Court abstain in favor of the Florida action. See Roche Cyrulnik Freedman LLP v. Cyrulnik, 582 F. Supp. 3d 180, 184 (S.D.N.Y. 2022). Cyrulnik then filed these counterclaims on March 2, 2022 against the Firm and the other Founding Partners. See ECF No. 72. Cyrulnik asserts counterclaims for (1) dissolution pursuant to Florida Statutes § 620.8801; (2) in the alternative, a buyout under Florida Statutes § 620.8701; (3) an accounting pursuant to Florida Statutes §§ 620.1407 and 620.8403; (4) breach of contract (against the Individual Counterclaim-Defendants); (5) breach of the implied covenant of good faith and fair dealing (against the Individual Counterclaim-Defendants); (6) breach of fiduciary duty (against the Individual Counterclaim-Defendants); (7) conversion; (8) unjust enrichment; (9) promissory estoppel (against the Individual Counterclaim-Defendants); and (10) civil conspiracy (against the Individual Counterclaim-Defendants). Id. ¶¶ 103-174. As in the Florida action, Cyrulnik's main contention in this Court is that he was removed without cause in violation of the MOU and that, even if he had been removed for cause, he would not forfeit his share of the

9

Firm equity and his interests in the Tokens and the major contingency matter. See id. ¶¶ 74, 81.

Now before the Court are two motions by the Individual Counterclaim-Defendants to dismiss Cyrulnik's counterclaims: one filed by Holcomb, Normand, and Friedland, and the other filed by Roche and Freedman. ECF Nos. 102, 107. The Individual Counterclaim-Defendants argue that Cyrulnik can bring his statutory counterclaims for an accounting, buyout, and dissolution only against the Firm and that the Court should dismiss Cyrulnik's common-law counterclaims because, for each, Cyrulnik fails to plead either damages to him or a benefit to the Individual Counterclaim-Defendants. The Firm has not moved to dismiss the Counterclaims against it.

**II.**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the counterclaims are accepted as true, and all reasonable inferences must be drawn in the pleader's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the [counterclaims are] legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the counterclaims if the pleader has stated "enough facts to state a claim to relief that

10

is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [pleader] pleads factual content that allows the court to draw the reasonable inference that the [opponent] is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). But while the Court should construe the factual allegations in the light most favorable to the proponent, "the tenet that a court must accept as true all of the allegations contained in [the counterclaims] is inapplicable to legal conclusions." Id.[4]

### III.

The Individual Counterclaim-Defendants move to dismiss Counts 1 through 3 of the Counterclaims to the extent they seek to hold the Individual Counterclaim-Defendants individually liable. Count 1 seeks a dissolution of the Firm in view of the Individual Counterclaim-Defendants' "improper removal of Cyrulnik." Counterclaims ¶¶ 106, 108-110. Count 2 seeks, in the alternative, a determination that the "actions to expel Cyrulnik from RCF entitle him to a buyout" as a dissociating partner. Id. ¶ 117. In Count 3, Cyrulnik alleges that he was denied access to the Firm's books and records, and he seeks an

---

[4] Unless otherwise noted, this Memorandum Opinion & Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

accounting of the Firm. Id. ¶¶ 121, 125. The parties agree that the Florida Revised Uniform Partnership Act ("FRUPA" or the "Act") governs these counterclaims. The Individual Counterclaim-Defendants argue that, under FRUPA, Cyrulnik may bring his statutory counterclaims only against the Firm.

The parties point to no authority addressing whether a partner in a Florida LLP may maintain a suit against the LLP's other partners individually for an accounting, buyout, or dissolution. As a federal court sitting in diversity and deciding matters of state law, the Court therefore must "seek to predict how the state's highest court," here the Florida Supreme Court, "would resolve the issues," Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC, 22 F.4th 103, 120 (2d Cir. 2021), taking into account any "reliable data," including the statutory language and scheme, legislative history, state decisional law and federal cases construing the statute, and scholarly works, Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994). In making this assessment, the Court must "giv[e] proper regard to relevant rulings of the state's lower courts." Travelers Ins. Co. v. Carpenter, 411 F.3d 323, 329 (2d Cir. 2005); see also Schwab, 22 F.4th at 120.

Cyrulnik argues that Section 620.8405(2) of FRUPA entitles him to sue the Individual Counterclaim-Defendants for an accounting, buyout, and dissolution. That section provides:

(2) A partner may maintain an action against the partnership or another partner for legal or equitable relief, with or without an accounting as to partnership business, to:

(a) Enforce such partner's rights under the partnership agreement;

(b) Enforce such partner's rights under this act [i.e., FRUPA], including:

1. Such partner's rights under s. 620.8401, s. 620.8403, or s. 620.8404;

2. Such partner's right upon dissociation to have the partner's interest in the partnership purchased pursuant to s. 620.8701 or enforce any other right under ss. 620.8601-620.8705; or

3. Such partner's right to compel a dissolution and winding up of the partnership business under s. 620.8801 or enforce any other right under ss. 620.8801-620.8807.

Fla. Stat. § 620.8405(2).

Section 620.8403 is FRUPA's accounting provision; Section 620.8701 is the Act's dissociation and buyout provision; and Section 620.8801 is its dissolution provision. Cyrulnik thus argues that he may bring his statutory counterclaims against the Individual Counterclaim-Defendants because they are actions "against . . . []other partner[s] for legal or equitable relief" to "[e]nforce [his] rights" under FRUPA's accounting, dissociation, and dissolution provisions. See id. § 620.8405(2).[5]

---

[5] In addition to seeking an accounting under Fla. Stat. § 620.8403, a provision of Florida's Revised Uniform Partnership Act, Cyrulnik also sought an accounting under Fla. Stat. § 620.1407, a provision of Florida's Revised Uniform Limited Partnership Act. See

13

Cyrulnik's interpretations of FRUPA's dissolution and accounting provisions are well supported. As to the dissolution counterclaim, Florida courts have recognized that a dissolution may be ordered in a case in which one partner in a partnership has sued another partner. See, e.g., Fernandez v. Yates, 145 So.3d 141, 144-45 (Fla. Dist. Ct. App. 2014); Shephard v. Ouellete, 854 So.2d 251, 252-53 (Fla. Dist. Ct. App. 2003). The Individual Counterclaim-Defendants argue that Cyrulnik improperly seeks "an award of money through his claim for dissolution pursuant to Fla. Stat. § 620.8801," Holcomb Memo., ECF No. 108, at 7, but Cyrulnik's request for relief on his dissolution counterclaim seeks only a judgment dissolving the Firm, directing that the Firm "wind up its activities in accordance with Florida Statutes §§ 620.8801-8807," directing that "Cyrulnik shall participate in the winding up of RCF's

---

Counterclaims ¶ 112. The rights of partners in a Florida LLP are governed by the Partnership Act, not the Limited Partnership Act. See Florida Pleading & Practice Forms: Registered Limited Liability Partnerships, 9 Fla. Pl. & Pr. Forms § 70:126 n.3 (2022) (explaining that the provisions governing LLPs are "scattered throughout the Florida Revised Uniform Partnership Act"). Because Cyrulnik does not respond to the Individual Counterclaim-Defendants' contention that Section 620.1407 therefore does not apply, see Holcomb Memo. at 7 n.5, Cyrulnik has waived any argument that he is entitled to an accounting under Fla. Stat. § 620.1407. See Wang v. Cloopen Grp. Holding Ltd., -- F. Supp. 3d --, 2023 WL 2534599, at *11 n.6 (S.D.N.Y. Mar. 16, 2023) (collecting cases where courts in this Circuit treated an argument or claim as waived or forfeited because the plaintiff failed to address the relevant argument or claim in response to a motion to dismiss). Accordingly, Count 3 of the Counterclaims is **dismissed** against the Individual Counterclaim-Defendants to the extent it seeks an accounting under Fla. Stat. § 620.1407.

activities," and "ordering judicial supervision of the winding up, including the appointment of a receiver to wind up RCF's activities and settle the accounts of RCF." Counterclaims, Request for Relief at (a). The Individual Counterclaim-Defendants do not challenge the propriety of these requests for relief.  Cyrulnik's first Counterclaim is proper as against the Individual Counterclaim-Defendants.

Cyrulnik's counterclaim against the Individual Counterclaim-Defendants for an accounting is also proper. FRUPA requires "[e]ach partner and the partnership" to provide information to co-partners, including, "[w]ithout demand, any information concerning the partnership's business and affairs reasonably required" for the exercise of the requesting partner's rights and duties, and, "[u]pon demand, any other information concerning the partnership's business and affairs," unless such a demand would be unreasonable or improper. Fla. Stat. § 620.8403(3) (emphasis added). And, again, Section 620.8405 allows an individual partner to enforce the partner's Section 620.8403 rights "against the partnership or another partner." Id. § 620.8405(2)(b)1. (emphasis added). Given the plain language of FRUPA, it is likely that the Florida Supreme Court would conclude that Cyrulnik's demands for the "Counterclaim-Defendants to account to [him] for the income, expenses, assets, and liabilities of RCF from inception" and to

15

"find and determine the amount due to Cyrulnik from RCF" are cognizable against the Individual Counterclaim-Defendants as well as against the Firm. Counterclaims ¶ 125; id., Request for Relief at (c); see also Chien v. Future Fintech Grp. Inc., 801 F. App'x 5, 8 (2d Cir. 2020) (explaining that, especially where "neither a federal nor . . . state court has addressed the issue presented," "[s]tatutory analysis necessarily begins with the plain meaning of a law's text").[6]

Cyrulnik's statutory buyout counterclaim against the Individual Counterclaim-Defendants, however, is another matter. Section 620.8701 of FRUPA provides that "[i]f a partner is dissociated from a partnership without resulting in a dissolution and winding up of the partnership business under s. 620.8801, the partnership shall cause the dissociated partner's interest in the partnership to be purchased for a buyout price," and "[a] dissociated partner may maintain an action against the partnership, pursuant to s. 620.8405(2)(b)2., to determine the buyout price of that partner's interest." Fla. Stat.

---

[6] In his accounting counterclaim, Cyrulnik also seeks "a judgment or decree in favor of Cyrulnik" against the Counterclaim-Defendants, including the Individual Counterclaim-Defendants, "for [Cyrulnik's] compensatory damages, prejudgment interest, cost, and" other relief. Counterclaims ¶ 125. Cyrulnik does not respond to the Individual Counterclaim-Defendants' argument that Section 620.8403 of FRUPA does not allow for compensatory damages. See Holcomb Reply, ECF No. 129, at 3. Cyrulnik therefore concedes the point. See, e.g., Wang, 2023 WL 2534599, at *11 n.6.

§ 620.8701(1), (9) (emphases added). After briefing on these motions to dismiss concluded, Florida's Third District Court of Appeal interpreted Section 620.8701 to conclude that FRUPA "require[s] [a partner], upon dissociation, to bring a buyout claim against the partnership, not against [another partner] personally." Bedoyan v. Samra, 352 So.3d 361, 366-67 (Fla. Dist. Ct. App. 2022). The plaintiff in Bedoyan dissociated from a two-person oral partnership and brought an action against his ex-partner, asserting breach of their oral partnership, breach of fiduciary duties, an equitable claim for an accounting, and a statutory claim demanding a buyout of his partnership interest under Section 620.8405. Id. at 363-64. After a bench trial, the trial court awarded the plaintiff judgment for breach of the parties' partnership agreement but, among other things, denied the statutory buyout claim, reasoning that the plaintiff was "not entitled to the partnership interest buyout from [the defendant] under section 620.8701" because "the plain meaning of the statute expressed the intent of the Legislature not to allow a resigning partner to look to the personal assets of other partners to recover the value of their partnership interest." Id. at 364. The trial court further reasoned that "only the partnership entity itself has a statutory obligation to pay a dissociating partner the buyout price." Id. at 364, 367 (summarizing the trial court's position).

17

The appellate court affirmed. As relevant, the court upheld the trial court's denial of the plaintiff's statutory buyout claim under sections 620.8405(2)(b)2. and 620.8701. Id. at 366-67. The court also upheld the trial court's conclusion that "there was no difference between what [the plaintiff] was entitled to recover for breach of the partnership agreement and what he would have been entitled to recover for a statutory buyout of his half of the partnership assets." Id. at 367.

In predicting how a state's highest court would resolve an uncertain question of state law, a federal court "is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." V.S. v. Muhammad, 595 F.3d 426, 432 (2d Cir. 2010). Bedoyan serves as substantial guidance to suggest that the Florida Supreme Court would conclude that FRUPA does not allow a partner in a Florida LLP to sue another partner personally for a buyout of the partnership interest. Although Bedoyan involved an ordinary partnership, rather than an LLP, the case squarely interpreted Sections 620.8405 and 620.8701, the provisions on which Cyrulnik bases his buyout claim. And although Cyrulnik notes that Bedoyan "affirmed the trial court's multi-million-dollar judgment against the individual partner in that case for breach of the parties' oral partnership agreement," Def.'s Suppl. Ltr., ECF

No. 277, at 1, that observation does not show that <u>Bedoyan</u> is inapplicable. The determination that Cyrulnik may proceed only against the Firm on his statutory buyout claim does not preclude Cyrulnik from claiming that the Individual Counterclaim-Defendants individually breached their contractual and fiduciary duties to him.

Accordingly, the Individual Counterclaim-Defendants' motions to dismiss the accounting and dissolution counterclaims against them are **denied**, but the Individual Counterclaim-Defendants' motions to dismiss the buyout counterclaim against them are **granted**, and Count 2 is **dismissed** against the Individual Counterclaim-Defendants.

**IV.**

The Individual Counterclaim-Defendants also move to dismiss Cyrulnik's common-law counterclaims for breach of contract, breach of the implied duty of good faith and fair dealing, breach of fiduciary duty, conversion, unjust enrichment, promissory estoppel, and civil conspiracy, to the extent those claims are asserted against them individually. The parties agree that each of these claims has as an essential element either (1) damages to the plaintiff or (2) the defendant's taking some benefit from the plaintiff. <u>See</u> Holcomb Memo. at 10-11

19

(collecting cases).[7] The Individual Counterclaim-Defendants argue that Cyrulnik fails to allege that they either caused him damages or benefited at his expense. See, e.g., id. at 10, 12. These arguments are without merit.

Cyrulnik alleges that the Individual Counterclaim-Defendants conspired and then voted to remove him from the Firm without cause in order to deprive him of compensation to which he was entitled under the MOU and the Side Letter. See Counterclaims ¶¶ 1, 69, 78. He alleges that the Individual Counterclaim-Defendants then pressured him to facilitate an "amicable" re-division of his assets and rights under the MOU. Id. ¶ 86. And he alleges that although he was paid an unspecified portion of the amounts he says were owed to him in April 2021, the Individual Counterclaim-Defendants continue to withhold the rest of the assets to which he claims he is entitled, namely, the value of his equity interest in the Firm, his share of the Tokens as contemplated in the MOU, and his stake in the major contingency matter. Id. ¶ 102; id., Request

---

[7] The parties agree that either New York law or Florida law could apply to Cyrulnik's common-law counterclaims. Because Cyrulnik adequately alleges his common-law counterclaims under the laws of both jurisdictions, it is unnecessary to conduct a choice of law analysis at this stage. See, e.g., Bristol-Myers Squibb Co. v. Matrix Labs. Ltd., 655 F. App'x 9, 13 (2d Cir. 2016) (observing that "choice-of-law determinations are fact-intensive inquiries that would be premature to resolve at the motion-to-dismiss stage").

for Relief at (d).[8] These allegations plainly permit the reasonable inference that Cyrulnik has suffered damages resulting from his allegedly wrongful removal from the Firm.

The Individual Counterclaim-Defendants respond by misconstruing Cyrulnik's allegations. The Counterclaims advance two principal arguments: first, that there was no "cause" to remove Cyrulnik under the MOU, id. ¶ 74; and second, that even if there were, "such a removal would not impact Cyrulnik's core compensation rights under the MOU," and Cyrulnik would still be entitled to his full compensation as contemplated in the MOU, id. ¶ 81. Seizing on the second allegation, the Individual Counterclaim-Defendants argue that "Cyrulnik himself alleges that the vote to remove him alone did not cause him any financial harm." Holcomb Memo. at 1. But under either of Cyrulnik's theories, he has suffered damages. By alleging that his core compensation under the MOU would not have been impacted even if his removal had been for cause, Cyrulnik merely offers an alternative basis for his continued entitlement to what he was allegedly promised under the MOU and failed to receive. This

---

[8] Cyrulnik also asserts a breach of contract claim directly against Roche under the Side Letter for Roche's alleged failure to pay Cyrulnik installment payments owed under the $850,000 payment provision in the Side Letter. Counterclaims ¶ 132. Roche has not moved to dismiss this claim.

allegation bolsters, rather than undermines, his claim for damages for the loss of those interests.

Holcomb, Friedland, and Normand also argue that Cyrulnik has not alleged adequately that they benefited from his removal. But Cyrulnik alleges that these three participated in the scheme to "take for themselves Cyrulnik's rightful share of the Firm, including" the Tokens. Counterclaims ¶ 1; see also id. ¶ 69 ("Roche and Freedman devised a covert and unlawful operation to conspire with certain partners against Cyrulnik . . . . With a perceived $60 million pot to buy votes to oust Cyrulnik, as well as 27% of the Firm's other assets at play, it did not require much substance, truth, or deliberation."); id. ¶ 70 ("Roche and Freedman, along with Friedland, Holcomb and Normand, convened a secret meeting . . . to concoct the pretext for his removal."). Taking these allegations as true, Cyrulnik plausibly alleges that the Individual Counterclaim-Defendants, including Holcomb, Friedland, and Normand, benefited financially from Cyrulnik's removal. Indeed, as the Individual Counterclaim-Defendants acknowledge, "if Cyrulnik were removed as an equity partner, then the equity percentages of all the remaining equity partners would necessarily increase, because those percentages must total 100%." Holcomb Memo. at 12.[9]

---

[9] Because Cyrulnik plausibly alleges that Holcomb, Friedland, and Normand benefited from Cyrulnik's removal, it is unnecessary to

Finally, the Individual Counterclaim-Defendants argue that Cyrulnik cannot recover from the Individual Counterclaim-Defendants because, under the MOU, the distribution of compensation to the partners is an "obligation[] of the Firm" for which the Individual Counterclaim-Defendants cannot be held individually liable. See Holcomb Memo. at 14; see also Fla. Stat. § 620.8306(3) ("An obligation of a partnership incurred while the partnership is a limited liability partnership, whether arising in contract, tort, or otherwise, is solely the obligation of the partnership. A person is not personally liable, directly or indirectly, . . . for such an obligation solely by reason of being or so acting as a partner.").

But Section 620.8306 "does not bar claims against individual partners based on a partner's individual conduct or wrongdoing." West Acquisitions & Invs. Grp., Inc. v. Zimmer Gunsul Frasca Architects, LLP, No. 08-cv-60420, 2008 WL 11331815, at *3 (S.D. Fla. Aug. 13, 2008) (allowing an unjust enrichment claim to proceed against individual partners in a Florida LLP); see also Unif. Partnership Act § 405, cmt. 2 (1997) ("[A] partner may bring a direct suit against the partnership or another partner for almost any cause of action arising out of the conduct of the partnership business."). In

---

consider the additional evidence that Cyrulnik presented after briefing on these motions concluded. See ECF No. 171.

this case, Cyrulnik alleges that the Individual Counterclaim-Defendants conspired, voted, and engaged in other improper efforts to deprive him improperly of his assets. Section 620.8306 does not bar Cyrulnik's claims arising from these alleged breaches of the Individual Counterclaim-Defendants' duties to him.

Accordingly, the Individual Counterclaim-Defendants' motions to dismiss Counts 4 through 10 of the Counterclaims against them are **denied.**

**V.**

Holcomb, Normand, and Friedland ask that, if their motion to dismiss is denied, the Court at least order Cyrulnik to make a more definite statement of the Counterclaims. The Counterclaims contain 174 allegations and 10 counts.

"A party may move for a more definite statement of a pleading" that is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). But "[a] Rule 12(e) motion is not granted lightly," and "motions under Rule 12(e) are generally disfavored because of their dilatory effect." Joya v. Verizon N.Y., Inc., No. 08-cv-5328, 2008 WL 4667987, at *1 (S.D.N.Y. Oct. 20, 2008). "For a more definite statement to be warranted, the complaint must be so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." Akridge v.

24

<u>Whole Foods Mkt. Grp., Inc.</u>, No. 20-cv-10900, 2022 WL 955945, at *4 (S.D.N.Y. Mar. 30, 2022). "The rule is designed to remedy unintelligible pleadings, not to correct for lack of detail." <u>Id.</u>

There is no basis to require Cyrulnik to provide a more definite statement. The Counterclaims clearly lay out Cyrulnik's theory of the Individual Counterclaim-Defendants' alleged wrongdoing. The Individual Counterclaim-Defendants may dispute Cyrulnik's allegations and legal theories, but there is nothing vague, ambiguous, or unintelligible about them. The Individual Counterclaim-Defendants may seek further particulars during discovery. <u>See, e.g.</u>, <u>Lee v. Karaoke City</u>, No. 18-cv-3895, 2020 WL 5105176, at *10 (S.D.N.Y. Aug. 31, 2020) ("The tools of discovery, rather than compelling a more definite statement from [the plaintiff], are the proper avenue for defendants to flesh out [the plaintiff's] contentions.").

The Individual Counterclaim-Defendants' motion for a more definite statement therefore is **denied.**

VI.

For his part, Cyrulnik asks the Court to strike Roche and Freedman's motion to dismiss, which he argues contains factual assertions that were "plainly made for the industry press that has been following this case" and that "violate established law requiring parties to restrict briefs to material germane to

25

their arguments." Cyrulnik Opp., ECF No. 126, at 9-10. Cyrulnik seeks sanctions against Roche and Freedman, and their lawyers, for filing their motion to dismiss.

Cyrulnik's motion to strike Roche and Freedman's brief is as baseless as the request for a more definite statement from him. According to Cyrulnik, the brief provides prohibited "superfluous information from outside the pleadings." Cyrulnik Opp. at 10. But when presented with a motion to dismiss counterclaims under Rule 12(b)(6), a court may consider not only information contained within the pleadings, but also documents referenced in the counterclaims and documents that the pleader relied on in bringing suit and that are in the pleader's possession or that the pleader knew of when bringing suit. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Cyrulnik's Counterclaims included only the first eight pages of the Firm's MOU. Roche and Freedman's motion attaches other remaining pages, including two of the MOU's exhibits. See ECF No. 106-2. Roche and Freedman's brief also included discussion of agreements that Cyrulnik partially attached to the Counterclaims, discussions of communications Cyrulnik referenced in the Counterclaims, and records from the New York Department of State. See ECF No. 106-3 to -5. These are all properly raised in a motion to dismiss. See, e.g., Condit v. Dunne, 317 F. Supp. 2d 344, 356 (S.D.N.Y. 2004) ("When a plaintiff chooses not to

attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may also take that document into consideration in deciding the defendants' motion to dismiss."); Patterson v. Morgan Stanley, No. 16-cv-6568, 2019 WL 4934834, at *4 (S.D.N.Y. Oct. 7, 2019) (denying motion to strike allegations in motion to dismiss because they were all taken from "documents . . . referenced in the Complaint, documents Plaintiffs relied on in bringing suit . . . , or matters of which judicial notice may be taken").

Because there is no basis to strike Roche and Freedman's motion to dismiss, there is likewise no basis for sanctions.

**CONCLUSION**

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the Individual Counterclaim-Defendants' motions to dismiss are **granted in part and denied in part.** The Clerk of Court is respectfully directed to close ECF Nos. 102 and 107.

**SO ORDERED.**

Dated:    **New York, New York**
          **March 28, 2023**

                                        _____
                                          **John G. Koeltl**
                                    **United States District Judge**