

1140 Avenue of the Americas, 17th Floor, New York, NY 10036
phone: 212-257-4880 | fax: 212-202-6417
www.shapiroarato.com

Jonathan P. Bach
jbach@shapiroarato.com
Direct: 212-257-4897

April 18, 2023

**Via ECF**
Honorable John G. Koeltl
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Roche Freedman LLP v. Jason Cyrulnik*, No. 1:21-cv-1746 (S.D.N.Y.)

Dear Judge Koeltl:

      Plaintiff and all Counterclaim-Defendants except Holcomb (the "RF Parties") respectfully submit this letter in advance of the May 5, 2023 pre-motion conference. By way of background, the RF Parties contend Defendant Jason Cyrulnik was properly removed from the firm for cause and therefore not entitled to further compensation. Cyrulnik contends his removal breached a Memorandum of Understanding ("MOU") and that he is entitled to damages under both contract and tort law. The principal arguments in support of summary judgment include:

      1. Cyrulnik's claims fail because enforcement of the MOU and his receipt of equity in the new firm turned on his satisfaction of the express condition precedent that he execute a partnership agreement, which he never did. The MOU recognizes that "equity in Roche Freedman LLP is currently split 50/50 between Kyle Roche and Velvel Freedman," and expressly states that equity in the new firm would only be allocated "[a]fter execution of the Partnership Agreement," which was to be "negotiated" later. (Dkt. 72-1 at 1). This is a classic condition precedent that Cyrulnik indisputably never met. The law is clear that failure to meet a condition precedent precludes receipt of equity in a partnership, including when that condition precedent is the anticipated execution of a partnership agreement. *See, e.g., Baraliu v. Vinya Cap., L.P.*, 765 F. Supp. 2d 289, 299-300 (S.D.N.Y. 2011) (Where agreement provided plaintiff "would receive a 2.5% ownership stake . . . upon his execution and delivery of the Limited Partnership Agreement" and plaintiff never executed the partnership agreement, "[plaintiff] did not perform a condition precedent to receipt of his 2.5% ownership grant, so his claim . . . must fail as a matter of law").

      Put another way, Cyrulnik's failure to execute the Partnership Agreement undermines the enforceability of the MOU, which was dependent upon the formation of a new partnership for the future distributions it envisioned. This follows from the plain language of the MOU which only establishes the "intent to form a partnership," and distinguishes the prior partnership formed by Roche and Freedman in August 2019 called Roche Freedman LLP ("Old Firm") from the partnership contemplated by the MOU ("New Firm"). The MOU anticipates, for example, that the Old Firm would eventually be "merged into" the New Firm, after that New Firm was formed via a new "Partnership Agreement." Similarly, the MOU conditionally allocates equity of the New Firm, not the Old Firm. (Dkt. 72-1 at 1). Absent satisfaction of the condition precedent then, Cyrulnik remained an employee of the Old Firm, without entitlement to equity or other benefits of partnership. This requires dismissal not only of Cyrulnik's MOU-based contract

The Honorable John G. Koeltl  
April 18, 2023

Page 2

claims (Counts 4-5), but also of his claims predicated on his alleged partner status, including dissolution (Count 1), buyout (Count 2), accounting (Count 3), breach of fiduciary duty (Count 6), and conversion (Count 7).

    2. Cyrulnik's contract claims also fail because the MOU is a Type II agreement—*i.e.*, an agreement to negotiate a Partnership Agreement in good faith—not a Type I agreement that binds the parties to its terms. Under New York law, "Type I preliminary agreements [are] complete, reflecting a meeting of the minds on all the issues perceived to require negotiation." *Brown v. Cara*, 420 F.3d 148, 153 (2d Cir. 2005). By contrast, the MOU expressly required further negotiation: "the terms of this MOU are not comprehensive," and "additional terms . . . will be incorporated into a formal Partnership Agreement . . . to be negotiated." (Dkt. 72-1 at 1). Among the material terms to be negotiated were terms governing how any loss or risk of loss would be allocated among the partners. For instance, the MOU contains no provision for capital calls or contributions. Such terms are material because a partnership requires not just an agreement about how to share rewards (of the type Cyrulnik seeks), but also on how to share losses. *See, e.g.*, *Matter of Steinbeck v. Gerosa*, 4 N.Y.2d 302, 317 (1958) (A "mutual promise" to "submit to the burden of making good the losses" is an "indispensable essential" of a partnership agreement.). The MOU also lacks material terms regarding governance, decision-making authority, and voting rights with respect to important operational matters, such as general decision-making rules (*e.g.*, majority, super-majority, or unanimous vote) for all important Firm matters not assigned to committees. Cyrulnik cannot dispute that these deficits exist because the MOU *says* that additional terms regarding "areas of responsibility" (*i.e.*, decision-making authority) and "resources to be committed" (*i.e.*, capital contributions) remain to be "negotiated." He likewise cannot dispute their materiality as his own partnership agreement at Cyrulnik Fattaruso LLP contains provisions addressing these very issues. Because the MOU is a Type II agreement, Cyrulnik cannot enforce its particular provisions and his damages, if any, are limited to reliance, as opposed to expectancy damages. *See e.g.*, *CapLOC, LLC v. McCord*, 2020 WL 1036044, at *20 (S.D.N.Y. Mar. 3, 2020) (only reliance damages available for a Type II breach).

    Additionally, Cyrulnik cannot enforce the MOU because he breached it. It is undisputed that, despite an express requirement in the MOU (Dkt. 72-1 at IV(A)), Cyrulnik failed to seek Firm approval before opening a new matter. It is hornbook law that no claim for breach of contract will lie where a claimant has failed to perform. (Cyrulnik's undisputed failure to seek approval was also a manifestation of his refusal to abide by basic norms and insistence he could do as he pleased, which attitude and actions contributed to the insuperable resentments between the parties, part of the cause for his removal. *See* Point 3 below.).

    3. The RF Parties are entitled to summary judgment on their claim for a declaratory judgment (Count I) and Cyrulnik's Counterclaims concerning any entitlement to compensation following his removal because there is no meaningful dispute that the RF Parties had cause to remove Cyrulnik. Cyrulnik has failed to come forward with evidence that would permit any rational factfinder to conclude, as he alleges, that his removal was the result of some nefarious scheme to deprive him of cryptocurrency Tokens. In any event, the Court need not reach that question, because it is undisputed that, by the time he was removed, the working relationship between Cyrulnik and other attorneys at RF was broken. For instance, it is undisputed that five different associates complained about working with Cyrulnik, including because they believed he

The Honorable John G. Koeltl  
April 18, 2023

Page 3

created a "toxic" and "unsustainable" environment and discriminated on the basis of race and gender; that at least three of the Firm's associates told partners they would leave the Firm if they had to continue working with Cyrulnik; and that three of the Firm's partners similarly indicated an intent to leave if Cyrulnik remained or his abuse continued. Cyrulnik also engaged in improper practices and unethical conduct, such as failing to obtain engagement letters from many of his clients, a fact which is also undisputed. Cyrulnik may contest whether the multiplying resentments against him were justified, but he cannot contest that his continued presence at the Firm had become a major lightning rod, threatened an exodus of lawyers and thus the viability of the nascent Firm, and created numerous difficulties for those who had to deal with the many complaints that had arisen. That constitutes cause. As a matter of common sense and caselaw, an "inability to get along with supervisors and co-workers" is a "legitimate" basis for removal, especially when it so alienates other workers as to prompt them to consider leaving their jobs. *Rikhy v. AMC Comput. Corp.*, 2003 WL 1618529, at *4 (S.D.N.Y. Mar. 28, 2003); *see also Orellana v. Reiss Wholesale Hardware Co., Inc.*, 2016 WL 4480720, at *7 (E.D.N.Y. June 8, 2016) (same, collecting cases).

4. To the extent that the MOU is enforceable, its Withdrawal Provision (Dkt. 72-1 at 7) precludes Cyrulnik from recovering the compensation he seeks. Under that provision, a partner who "withdraws from the firm within 18 months from the firm's formation," must return equity received and (certain items aside) forfeit "any additional compensation." Cyrulnik contends this provision applies only to *voluntary* withdrawals, but his argument lacks both legal and factual support. The MOU does not distinguish between "voluntary" and "involuntary" withdrawals, nor does Florida partnership law. *See, e.g.*, Fla. Stat. §§ 620.8601, 620.8603, 620.8701. Any contrary interpretation of the MOU would have the absurd effect of rewarding bad actors (who would keep significant compensation) over voluntary departees (who would lose everything).

5. The RF Parties are entitled to dismissal of Cyrulnik's claims that the MOU and Side Letter entitle him to post-termination compensation because that would require construing those agreements to violate both New York and Florida's Rules of Professional Conduct, which prohibit fee-sharing agreements under such circumstances.

6. Cyrulnik's conversion claim concerning the cryptocurrency Tokens fails for the additional reason that Cyrulnik had—at best—"contingent, contractual rights" in the Tokens, and those "do not suffice to establish a present possessory interest for the purposes of a conversion claim." *Charles Schwab & Co. v. Retrophin, Inc.*, 2015 WL 5729498, at *14 (S.D.N.Y. Sept. 30, 2015) (collecting cases); *see also Selinger Enterprises, Inc. v. Cassuto*, 50 A.D.3d 766, 768 (2d Dep't 2008) ("The mere right to payment cannot be the basis for a cause of action alleging conversion."). Moreover, the Tokens were not the property of any partnership. They were the property of Roche and Freedman personally (as established by documents dated months before Cyrulink joined the firm, tax filings, and the Token platform's 30(b)(6) deposition testimony). Roche and Freedman could not convert their own assets. Cyrulnik's fiduciary duty claim concerning the Tokens fails on similar grounds.

7. Cyrulnik's tort and quasi-contractual claims should also be dismissed because they are barred by the parties' written contracts, as explained in the RF Parties' prior letter, Dkt. 366. *See also Mayaguez S.A. v. Citibank, N.A.*, 2022 WL 901627, at *37 (S.D.N.Y. Mar. 25, 2022).

The Honorable John G. Koeltl  
April 18, 2023

Page 4

    Respectfully,

| */s/ Jonathan P. Bach* | */s/ Matt Leto* |
|---|---|
| Jonathan P. Bach | Matt Leto |
| | |
| *Counsel for Plaintiff Roche Freedman LLP and Counter-Defendants Devin Freedman, Edward Normand, and Amos Friedland* | *Counsel for Plaintiff Roche Freedman LLP and Counter-Defendants Devin Freedman, Edward Normand, Amos Friedland, and Kyle Roche* |