# KASOWITZ BENSON TORRES LLP

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

Marc E. Kasowitz
Direct Dial: (212) 506-1710
Direct Fax: (212) 835-5010
MKasowitz@kasowitz.com

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

April 18, 2023

**VIA ECF**
The Honorable John G. Koeltl
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY  10007

      Re:    *Roche Freedman LLP v. Cyrulnik*, Case No. 1:21-cv-01746 (JGK)

Dear Judge Koeltl:

      We represent Counterclaim-Plaintiff, Jason Cyrulnik, and respectfully write, pursuant to Rule II.B of the Court's Individual Practices, with respect to the upcoming May 5 pre-motion conference in connection with our anticipated filing of a motion for summary judgment.

      Cyrulnik's claims in this action seek to redress the harm the RF Parties caused through their deplorable scheme to enrich themselves with Cyrulnik's assets. Two years into this case, discovery conclusively shows that a small group of partners secretly conspired to seize for themselves the consideration and rights they had given Cyrulnik 14 months earlier, when they had courted him to leave his partnership at a premier national law firm to co-found the startup litigation boutique that would bear his name. The firm and these individual partners hit the jackpot when one of the cryptocurrency assets in which they each held an interest skyrocketed in value, and the RF Parties no longer needed Cyrulnik (who had been given 25% of that cryptocurrency asset and 27% ownership of the rest of the firm's assets) to sustain their practice. The firm's two other named partners, Kyle Roche (who recently separated from the firm in the wake of his many scandalous statements about his illicit relationship with the firm client that issued the Tokens; the U.S. legal system; judges and jurors in the United States; and the intelligence of absent class members) and Velvel Freedman (who has been admonished by multiple courts for his attempts to justify Roche's statements and conduct) had been plotting for months to defraud Cyrulnik by secretly seeking to "reassign" the firm's Tokens to themselves personally and by discussing plans to "*fraudulently*" take Cyrulnik's Tokens as soon as it became apparent that the "economics of the Tokens" could be enormously attractive. Then, within days of the Tokens' exponential appreciation to approximately $250 million in February 2021 – *i.e.*, the culmination of the "economics of the Tokens" becoming enormously attractive – Roche and Freedman reached out to three select partners and invited them to participate in the secret scheme to divvy up Cyrulnik's assets by "removing" him without any notice whatsoever and in violation of the parties' express agreement, threatening that if they didn't support the plan, Roche and Freedman would "blow up" the firm.

KASOWITZ BENSON TORRES LLP

Hon. John G. Koeltl
April 18, 2023
Page 2

      The principal claims in this case can be resolved on the basis of the undisputed record, including the parties' written and signed Memorandum Of Understanding (the "Agreement") and the controlling precedent that governs it. Accordingly, Cyrulnik respectfully seeks to file a motion for summary judgment to resolve several core issues in this case with respect to which no material issues of fact exist. If granted, the motion would substantially resolve the case and leave the quantification of certain categories of damages to be decided at an inquest or trial.

      1.      <u>Return of Cyrulnik's Assets: RF's Failed "Withdrawal" Contention (Counts 4-10)</u>

      There is no material issue of fact with respect to Cyrulnik's contractual entitlement to the enumerated assets the RF Parties' agreed to give him as an inducement to leave his equity partnership and co-found the firm, including the Tokens. The plain language of the Agreement expressly grants Cyrulnik specified assets (including 25% of the Tokens) and rights that could not be taken from him ***unless he elected to "withdraw" from the firm***. There is no material issue of fact that Cyrulnik never elected to withdraw from the firm, and that the exact *opposite* occurred: the RF Parties secretly conspired to "remove" Cyrulnik without his knowledge, let alone his permission – as it turns out, without *ever* so much as *discussing* with Cyrulnik any prospect of, or grounds for, removal.

      Recognizing this dispositive flaw in their scheme, the RF Parties apparently intend to ask the Court to recharacterize ***their*** removal of Cyrulnik as an act of "involuntary withdrawal" (a self-evident oxymoron) from the firm ***by Cyrulnik***. That nonsensical contention is meritless as a matter of law. Indeed, the Agreement – like the operative Florida partnership statute, the Revised Uniform Partnership Act (FRUPA) – separately addresses partner removal and partner withdrawal (not applicable here). Not surprisingly, the few courts confronted with similar strained arguments seeking to recharacterize a termination as a withdrawal have rejected it out of hand and noted that withdrawal is "a voluntary act" unless "defined otherwise in the parties' agreement." *See, e.g., Love v. Fleetway Air Freight & Delivery Serv., L.L.C.*, 875 So. 2d 285, 289 (Ala. 2003) ("We first note that the most appropriate definition of "withdraw" contained in *Merriam–Webster's Collegiate Dictionary* (11th ed.2003) for this case is 'to remove oneself from participation.' Thus, unless defined otherwise in the parties' agreements, the act of withdrawal is usually considered to be a voluntary act. We find nothing in the member's agreement or in the operating agreement that persuades us to give the terms 'withdraw' and 'withdrawing member' anything other than their ordinary and usual meanings."). The RF Parties' attempt to justify their misappropriation of Cyrulnik's assets by appealing to the withdrawal provision of the parties' agreement fails as a matter of law.

      Resolution of that issue resolves Cyrulnik's Counts 4-10, and dismissal of the firm's Count 1, which seeks a declaration from the Court approving of the RF Parties' seizure and continued retention of Cyrulnik's assets.

Kasowitz Benson Torres LLP

Hon. John G. Koeltl
April 18, 2023
Page 3

        2.        <u>Removal Without Cause (Count 1 (Dissolution); Counts 4-10 (Side Letter & Additional Grounds for Summary Judgment on Compensation Under the Agreement))</u>

Before Cyrulnik agreed to relinquish his long-standing equity partnership and co-found the startup firm, he (along with others who were not giving up equity partnerships to co-found the firm) negotiated certain basic and definitive rights, including that as a "Founding Partner" he "cannot be removed without cause." Agreement § G. "As understood by the Florida Supreme Court and other courts, 'misconduct' or 'termination for cause' refers to illegal activity, ethical breaches, or utter abandonment or dereliction of a job." *Comprehensive Care Corp. v. Katzman*, 2010 WL 3190136, at *6 (M.D. Fla. July 30, 2010) (citing *State ex rel. Hathaway v. Smith*, 160 Fla. 485 (1948)).

In the face of the Agreement's blanket prohibition against removing Cyrulnik without cause, the RF Parties have contorted themselves to fabricate supposed "cause" for their deplorable actions – but their justifications fail as a matter of law under the controlling standard. The RF Parties' removal letter claims "cause" for removal primarily based on Cyrulnik's having raised his voice during *two* of the *thousands* of conversations he had with his partners over the course of more than a year (and in the case of some of the RF Parties, over the course of *more than a decade* working together). Setting aside the undisputed facts surrounding those two conversations (Cyrulnik was tasked with addressing instances of dishonest conduct on the part of certain partners at the firm) – that is obviously not cause for removing a founding partner under Florida law. Recognizing the absurdity of their position, Messrs. Freedman and Roche set out on a quest to devise *post-hac* (and plainly pretextual) grounds to which they could somehow pivot in defending their blatant misconduct after the fact. Their efforts to change the purported grounds for their illegal "removal" actions after the fact fail as a matter of law for multiple reasons. *First*, the law does not permit defendants to justify breaches by rewriting history and pretending that they acted on grounds different from the ones they in fact purported to rely on when they effectuated their actions. *Second*, even if they had timely devised their new justifications, unsurprisingly, discovery has confirmed that none of these new excuses has any basis in reality and that there is no material issue of fact with respect to the RF Parties' reprehensible and reckless use of buzz words like racial and gender discrimination here.

In addition to providing an additional ground for resolution of the portions of Counts 4-10 concerning compensation owed under the Agreement, this issue would also resolve the portions of Counts 4-10 concerning Roche's and Freedman's breaches of the Side Letter and conversion of assets belonging to Cyrulnik thereunder, and Count 1 seeking dissolution pursuant to Florida Statute §§ 620.8801 and 620.8405.

        3.        <u>Accounting (Count 3) and Buyout (Count 2)</u>

Cyrulnik is plainly entitled to an accounting as a matter of law. As the firm's largest equity partner, Cyrulnik is entitled to access to the firm's books and records including under Florida

KASOWITZ BENSON TORRES LLP

Hon. John G. Koeltl
April 18, 2023
Page 4

Statutes §§ 620.8403 (requiring a limited liability partnership to provide its current and former partners access to the firm's records and the right to inspect and copy "records maintained by the limited liability partnership regarding the limited partnership's activities and financial condition"). The RF Parties have indisputably violated these statutory requirements, in addition to the express contractual provisions that grant Cyrulnik full access to all of these records and firm finances. No material issue of fact exists with respect to Cyrulnik's entitlement to an accounting or the RF Parties' violations of those rights.[1]

Like their incredible "withdrawal" defense, the RF Parties' defense to these claims is not to be believed: their half-hearted contention that Cyrulnik – named partner who was expressly given the largest equity stake in the firm (27%) in the Agreement and whose equity stake was ubiquitously and incessantly acknowledged by the Counterclaim Defendants in dozens of letters, government filings, and firm records – was actually just an independent contractor who was working for the firm under the misimpression that he was an equity partner.

4. <u>The RF Parties' Amended Claims</u>

In their amended pleading, the RF Parties strategically sought to insert two (empirically false) affirmative claims to transform their anticipatory declaratory relief complaint into a claim seeking relief. The RF Parties predicated those two claims on the baseless and counterintuitive speculation that Cyrulnik somehow induced clients *not* to pay invoices for the work he and his team performed.

The claims are nonsensical on their face because the monies the RF Parties would collect from such payments would be remitted ***almost entirely to Cyrulnik*** (several million dollars that the RF Parties still have not paid him). But in any event, discovery has now confirmed that the RF Parties had no basis for their fictitious allegations. The undisputed record shows that Cyrulnik **never once** advised a **single client** not to pay their invoices, that in the aftermath of the RF Parties' scheme, some clients paid invoices the RF Parties issued and others did not, including because of the RF Parties' mistreatment of those clients in the wake of their decision to have Cyrulnik continue to lead their cases. To make matters worse, the RF Parties' then "strategically" and intentionally decided *not* to pursue collections from those clients because Mr. Freedman thought that it would be better for the RF Parties' case against Cyrulnik (and because most of the money would be remitted to Cyrulnik or another partner who worked at the firm and who left in the wake of the RF Parties' 2021 scheme and actions). Such claims do not withstand even the slightest of scrutiny.

Accordingly, Cyrulnik respectfully requests permission to file a motion for summary judgment to be briefed on the schedule set by the Court at the April 4, 2023 conference.

---

[1] Florida Statutes § 620.8701 entitles Cyrulnik to a buyout in the event judicial dissolution is found inappropriate or inequitable.

K ASOWITZ  B ENSON  T ORRES  LLP

Hon. John G. Koeltl
April 18, 2023
Page 5

      We thank the Court for its attention to this matter.

      Respectfully,

      /s/ Marc E. Kasowitz

      Marc E. Kasowitz

cc.:  All Counsel of Record (via ECF)