**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROCHE FREEDMAN LLP, <br><br>          Plaintiff, <br><br> v. <br><br> JASON CYRULNIK, <br><br>          Defendant. <br><br> ――――――――――――――― <br><br> JASON CYRULNIK, <br><br>          Counterclaim-Plaintiff, <br><br> v. <br><br> ROCHE FREEDMAN LLP, KYLE ROCHE, DEVIN FREEDMAN, AMOS FRIEDLAND, NATHAN HOLCOMB, and EDWARD NORMAND, <br><br>          Counterclaim-Defendants. | Case No. 1:21-cv-01746 (JGK) |

**<u>THIRD DECLARATION OF DEVIN FREEDMAN</u>**

DEVIN FREEDMAN declares pursuant to 28 U.S.C. §1746:

1.       I am a partner of the law firm Freedman Normand Friedland LLP, f/k/a Roche Freedman LLP, the Plaintiff in this action. I am also a Counterclaim-Defendant in this action. I make this declaration in response to statements Cyrulnik made in his opposition to Counter-Defendants' motion for summary judgment.

2.       The MOU does not allocate Startup equity, Roche Freedman LLP's preexisting revenue, work-in-progress, accounts receivable, or assets.  These assets were collectively worth millions of dollars.

3.      Neither Cyrulnik nor anyone else received payments in accordance with the firm's formula compensation plan before Cyrulnik's February 2021 removal.

4.      Cyrulnik received a payment reflecting a percentage of the revenue he billed or generated for the firm on April 6, 2021.

5.      Attached as Exhibit A is a true and correct copy of the operative complaint in the *Fattaruso* case.

6.      The Roche Freedman parties did not challenge Fattaruso's accounting claim as duplicative of civil discovery in connection with the motion to dismiss.

7.      Attached as Exhibit B is a true and correct copy of a letter Counter-Defendants' prior counsel, Sean Hecker, sent to counsel for Jason Cyrulnik on August 17, 2021 in connection with this matter.

Dated: July 24, 2023

Devin Freedman
_____
Devin Freedman

Signature:  *Devin Freedman*
Devin Freedman (Jul 25, 2023 17:20 EDT)

Email:  vel@fnf.law

# Exhibit A

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
COMPLEX BUSINESS LITIGATION DIVISION

| | |
|---|---|
| PAUL FATTARUSO, <br><br>        Plaintiff, <br><br>    v. <br><br> ROCHE FREEDMAN LLP <br> (f/k/a ROCHE CYRULNIK FREEDMAN LLP, <br> n/k/a FREEDMAN NORMAND FRIEDLAND LLP), <br> DEVIN FREEDMAN, AMOS FRIEDLAND, <br> NATHAN HOLCOMB, EDWARD NORMAND, and <br> KYLE ROCHE <br><br>        Defendants. | Case No. 2022-005345-CA-01 <br><br> Section CA44 <br><br> Hon Alan Fine |

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiff, Paul Fattaruso, moves pursuant to Rule 1.190 for leave to amend his complaint to add claims for fraud and negligent misrepresentation, in the alternative to his claims based on his status as an equity partner of Roche Freedman LLP (f/k/a Roche Cyrulnik Freedman LLP, n/k/a Freedman Normand Friedland LLP) ("RCF"). The proposed Third Amended Complaint is attached hereto as Exhibit A.

## INTRODUCTION

Defendants have taken the unsupportable position that Fattaruso was not an equity partner of RCF. That position flies in the face of Defendants' many express representations to Fattaruso that he would join RCF as an equity partner and that he *was, in fact*, an equity partner of RCF. Defendants' wrongful denial of Fattaruso's equity status unfortunately has required Fattaruso to bring this lawsuit to enforce his rights.

Because Defendants' after-the-fact, self-serving denial of Fattaruso's equity status was plainly inconsistent with Defendants' own prior admissions, Fattaruso sought early summary judgment resolving the issue of his equity status. Defendants, however, opposed summary

judgment by insisting that the secret terms of an MOU that they did not disclose to Fattaruso somehow operated to preclude him from becoming an equity partner of RCF. Based on Defendants' argument, the Court denied Fattaruso's summary judgment motion, finding a disputed question as to whether the events at issue meant that Fattaruso *was in fact* an equity partner or instead that Defendants secretly did not actually make Fattaruso an equity partner but had simply falsely *told* Fattaruso that he was an equity partner. Indeed, at the oral argument on Fattaruso's motion, the Court identified that the crux of the dispute was whether what happened had made Fattaruso an equity partner or instead constituted fraud or negligent misrepresentation as to what was *going* to happen.

The record is clear that Defendants induced Fattaruso to leave his successful and prosperous position as litigation counsel at a prominent national firm on the promise that he would join RCF as an equity partner, and that Defendants repeatedly, expressly confirmed that Fattaruso was an equity partner after he joined RCF. The remaining disputed question is whether Defendants' representations were true (as Fattaruso contends) or false (as Defendants contend). Given the Court's recent conclusion that a factfinder could potentially find Defendants' representations to have been false, Fattaruso seeks leave to assert fraud and negligent misrepresentation claims (in the alternative) for those potentially false representations.

Leave to amend is warranted and will not prejudice Defendants—indeed, the requested amendment is occasioned by Defendants' own insistence that they were lying to Fattaruso when they told him he was an equity partner.[1] If Defendants want to try to benefit from a "we were

---

[1] Remarkably, this is not the first time that these Defendants have tried to get to their desired outcome by insisting that they lied. Defendant Devin Freedman tried to avoid the consequences of certain damaging video-recorded statements made by Defendant Kyle Roche by claiming, "I don't have an explanation for why he [Roche] said things that are not true, but they're not true." Conner

lying" defense, it is only fair that they should face the music for their own admitted lying. The motion should be granted.

## ARGUMENT

Fattaruso should be granted leave to add claims in the alternative for fraud and negligent misrepresentation, particularly given the Court's express recognition that Defendants' litigation position, if accepted, would give rise to such claims. Leave to amend pleadings "shall be given freely when justice so requires." Fla. R. Civ. P. 1.190(a). In determining whether to grant leave to amend, "any doubts should be resolved in favor of amendment." *Overnight Success Const., Inc. v. Pavarini Const. Co.*, 955 So. 2d 658, 659 (Fla. 3d DCA 2007). Leave to amend generally "should not be denied unless the privilege has been abused, there is prejudice to the opposing party, or amendment would be futile." *N. Am. Specialty Ins. Co. v. Bergeron Land Dev., Inc.*, 745 So. 2d 359, 362 (Fla. 4th DCA 1999) (quoting *Life Gen. Sec. Ins. Co. v. Horal*, 667 So. 2d 967, 969 (Fla. 4th DCA 1996)) (reversing denial of leave to amend pleading).

Fattaruso's proposed amendment is amply warranted under the applicable standard. Fattaruso initially filed a short and plain, 18-page statement of his claims seeking enforcement of his equity rights and relief for Defendants' wrongful denial of those equity rights. Hoping to leave room for Defendants to back away from their meritless position as gracefully as possible, Fattaruso endeavored to set forth his claims in simple, restrained terms.

In response, Defendants filed motions to dismiss arguing, among other things, that Fattaruso had not pled his claims with sufficient particularity. To ease the Court's resolution of

---

Sephton, *"Uniquely Stupid": Judge Attacks Kyle Roche's comments as Law Firm Battles to Continue Bitfinex Case*, Crypto News, available at https://coinmarketcap.com/alexandria/article/uniquely-stupid-judge-attacks-kyle-roche-s-comments-as-law-firm-battles-to-continue-bitfinex-case.

Defendants' criticisms, Fattaruso amended his complaint as of right to add further particularity to his allegations while still endeavoring to provide the Court a short and plain 22-page statement of the claims.

At argument on Defendants' motions to dismiss the amended complaint, the Court (Judge Bailey, sitting in for Judge Fine) concluded that while there is "a real case here," the pleading would benefit from further-particularized allegations. Judge Bailey dismissed the amended complaint with leave to replead. Accordingly, Fattaruso filed a further particularized, 31-page second amended complaint (still endeavoring to be appropriately short and plain as Rule 1.110 contemplates).

Fattaruso also filed a motion for early partial summary judgment based on the clear, documented, and indisputable factual record showing that Defendants had repeatedly and expressly acknowledged (and never previously denied) Fattaruso's equity-partner status throughout the term of his partnership at RCF. Among other examples:

- On January 28, 2020, named partner Roche wrote to Fattaruso and the other equity partners: "**As equity partners**, your draws will be set up as direct deposits and will not go through payroll." Dkt. 31, SJ Ex. 3.

- On January 31, 2020, named partner Freedman wrote to Fattaruso and the other equity partners: "When you log into ADP you will notice that **because you are equity partners**, the firm is fronting 100% of the cost of your healthcare." Dkt. 31, SJ Ex. 4.

- On December 16, 2020, RCF's Director of Operations, William Tracy, responded to Fattaruso's inquiry about year-end 401k issues: "**Since you're an owner (K1)**, we don't know how much you can contribute until year end." Dkt. 31, SJ Ex. 6.

In response to Fattaruso's summary judgment motion, Defendants argued that their express representations of Fattaruso's equity status were actually false, and that the secret, undisclosed terms of an MOU that the individual defendants had entered *among themselves* had somehow

operated to preclude Fattaruso's equity partnership.[2] Fattaruso responded that Defendants' position was plainly wrong and, if accepted, would amount to fraud:

> Indeed, reduced to its simplest form, Defendants' argument is that despite outwardly agreeing for Fattaruso to join as an equity partner, the terms of their undisclosed MOU secretly prevented that from happening, but they did not tell Fattaruso that, and instead allowed him to proceed on the understanding that he was an equity partner. ***If true, that would be fraud, compounding Defendants' wrongdoing***.[3]

At oral argument on the summary judgment motion, the Court agreed with this analysis, identifying the crux of the dispute as whether the events at issue had made Fattaruso an equity partner or instead constituted fraud or negligent misrepresentation on Defendants' part as to something that was *going* to happen.[4] But the Court was not prepared to rule conclusively, based on the undisputed facts presented on the motion, that Fattaruso had in fact been an equity partner of RCF. Put differently, the Court was not prepared to rule out, based on the available record, a possible finding that Defendants had reached a secret arrangement that had somehow prevented Fattaruso from becoming an equity partner—and meanwhile had been misrepresenting to Fattaruso first that he would join RCF as an equity partner and later that he was in fact an equity partner of RCF.

---

[2] *See, e.g.*, Dkt. 69, SJ Opp'n Ex. 2, Freedman Decl. ¶ 5 ("Under the MOU, Firm equity could <u>only</u> be issued by a unanimous vote of the 'Equity Committee,' which consisted of myself, Kyle Roche, Ted Normand, and Jason Cyrulnik at the time. A vote never occurred and equity was not issued to Mr. Fattaruso pursuant to the MOU."), ¶ 7 ("During Mr. Fattaruso's tenure at the law firm, we did include him in certain discussions identifying him as an 'equity' partner only because what was what we intended at some point in the future.").

[3] Dkt. 69, SJ Reply at 9 (emphasis added).

[4] Hr'g Tr. 5:23-6:5, Nov. 15, 2022 (THE COURT: "The question really is does what happened here on the undisputed facts make him an equity partner or is it a different cause of action. For example, fraud in the inducement to leaving or, you know, negligent misrepresentation about what was going to happen. I mean this is a situation where he was promised something.").

Prior to the Court's summary judgment ruling, Fattaruso had pled his claims based on the premise that Defendants' many representations that he was an equity partner were truthful and that it was only Defendants' after-the-fact, self-serving denial of Fattaruso's equity rights that was false. But the Court's guidance on the summary judgment motion allows for the alternative possibility (however remote) that a factfinder might ultimately conclude that Defendants' original representations to Fattaruso were false. That possibility necessitates claims in the alternative for fraud and negligent misrepresentation.

Adding those claims will come as no surprise to Defendants and works no prejudice—Defendants are well aware that their prior representations to Fattaruso are flatly inconsistent with their current, self-serving litigation position denying Fattaruso's equity rights. And Fattaruso made clear in his summary judgment reply that Defendants' theory, if accepted, "would be fraud, compounding Defendants' wrongdoing." Indeed, Fattaruso made this point in opposition to Defendants' motions to dismiss as well:

> On these facts, the notion that Defendants had agreed with Fattaruso that he would be a 2% partner and proceeded to act in accordance with that agreement for more than a year, but meanwhile secretly believed they were somehow withholding such equity, would (if credited) merely add a further claim against Defendants for fraud, in addition to their other wrongdoing.[5]

Well aware of this, Defendants have continued to ask the Court to credit their theory that they were somehow secretly withholding Fattaruso's equity. In their desperation to deny Fattaurso's equity rights, Defendants themselves have asked the Court to accept the premise that Defendants were lying to Fattaruso when they told him he would join RCF as an equity partner and were lying again when they told him repeatedly after he joined that he was an equity partner.

---

[5] Dkt. 45, MTD Opp'n at 6.

Having obtained forbearance from summary judgment based on this dubious theory, Defendants must now face the natural consequences of their position: If Defendants were in fact lying to Fattaruso about his status as an equity partner as they now contend, that is clear-cut fraud, and they should face the consequences of that wrongdoing.

Fattaruso tried his best to give Defendants the benefit of the doubt that they had been telling him the truth in 2019, 2020, and 2021 when they said again and again that Fattaruso would join RCF as an equity partner, and later that he *had* joined RCF as an equity partner. Defendants have resoundingly *declined* that benefit of the doubt, and the Court has ruled that it is willing to entertain—at least for now on the current record—the possibility that a factfinder could conclude that Defendants' representations to Fattaruso in 2019, 2020, and 2021 were all false. That possibility compels Fattaruso's assertion of claims for fraud and negligent misrepresentation.

Under the applicable standards for granting leave to amend, Fattaruso's proposed amendment to add these claims is well warranted and should be permitted.

## CONCLUSION

For these reasons, Fattaruso respectfully requests that the Court grant his motion for leave to amend the complaint.

Dated: December 29, 2022

Respectfully submitted,

**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP**
Miami Tower
100 SE 2nd Street, 36th Floor
Miami, FL 33131
Telephone: (305) 403.8788
Facsimile: (305) 403.8789

By:   _/s/_Victoria J. Wilson
Jeffrey C. Schneider
Florida Bar No. 933244
Email: jcs@lklsg.com
Secondary: ams@lklsg.com
Victoria J. Wilson
Florida Bar No. 92157
Email: vjw@lklsg.com
Secondary: cf@lklsg.com

*Counsel for Plaintiff, Paul Fattaruso*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on December 29, 2022 a true and correct copy of the foregoing

was filed with the Court using the Florida Courts e-filing portal system and served via email to

counsel of record on the service list below.

By: */s/ Victoria J. Wilson*

<u>**SERVICE LIST**</u>

MATTHEW P. LETO
Florida Bar No.: 014504
LETO LAW FIRM
201 S. Biscayne Blvd.
Suite 2700
Miami, Florida 33131
Tel.    305-341-3155
Fax:    305-397-1168
mleto@letolawfirm.com
kzelaya@letolawfirm.com
pleadings@letolawfirm.com

Collen L. Smeryage
ROCHE FREEDMAN LLP
1 SE 3rd AVENUE
Suite 1240
Miami, Florida 33131
csmeryage@rochefreedman.com
ECF_Notifications@rochefreedman.com
akaradjas@rochefreedman.com
*Counsel for Defendants*

# EXHIBIT A

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
COMPLEX BUSINESS LITIGATION DIVISION

PAUL FATTARUSO,

        Plaintiff,

    v.

ROCHE FREEDMAN LLP
(f/k/a ROCHE CYRULNIK FREEDMAN LLP,
n/k/a FREEDMAN NORMAND FRIEDLAND LLP),
DEVIN FREEDMAN, AMOS FRIEDLAND,
NATHAN HOLCOMB, EDWARD NORMAND, and
KYLE ROCHE

        Defendants.

Case No. 2022-005345-CA-01

## **VERIFIED THIRD AMENDED COMPLAINT**

Plaintiff, Paul Fattaruso, for his Verified Third Amended Complaint against

Defendants, Roche Freedman LLP (f/k/a Roche Cyrulnik Freedman LLP, n/k/a

Freedman Normand Friedland LLP) ("RCF"), Devin Freedman, Amos Friedland,

Nathan Holcomb, Edward Normand, and Kyle Roche, alleges upon knowledge,

information, and belief as follows:

## **INTRODUCTION**

1.    This action arises from the wrongful actions of a group of law firm

partners who excluded one of their fellow partners, refused to honor his rights as an

equity partner, failed to pay him the compensation and equity value they owed him,

refused to provide him with the firm's books and records, treated the firm's assets as

their own, and squandered and usurped the firm's value, all in violation of their

fiduciary duties.

2.      Accordingly, Fattaruso brings this action seeking, among other things, prompt production of the firm's information, payment of his outstanding unpaid compensation, payment for the value of his equity interest, and damages for his partners' egregious breaches of their fiduciary duties.

## PARTIES

3.      Plaintiff, Paul Fattaruso, is a citizen of New York and an equity partner of RCF.

4.      Defendant RCF is a Florida limited liability partnership, with offices in Florida and New York.

5.      Defendant Devin Freedman is a citizen of Florida and equity partner of RCF.

6.      Defendant Amos Friedland is a citizen of New York and equity partner of RCF.

7.      Defendant Nathan Holcomb is a citizen of New York and former equity partner of RCF.

8.      Defendant Edward Normand is a citizen of New York and equity partner of RCF.

9.      Defendant Kyle Roche is a citizen of Florida and former equity partner of RCF.

## JURISDICTION

10.     This is an action for equitable relief and damages.

2

26.     Fattaruso worked extensively with another of the firm's equity partners, Jason Cyrulnik, on a portfolio of legal matters that formed most of the firm's billable work and an even greater proportion of the firm's profit margin.

27.     Under the firm's formula compensation structure, Fattaruso was entitled to nearly $1 million for his work in 2020 (of which over $325,000 remains unpaid, in addition to his unpaid compensation for 2021), separate and apart from any payment on his equity.

28.     Fattaruso continued to work diligently with the firm in early 2021.

## C. In Early 2021, Prompted by the Soaring Value of a Firm Client's Cryptocurrency Payments, the Individual Defendants Launch a Scheme To Benefit Themselves, in Derogation of Fattaruso's Rights

29.     In January and early February of 2021, the cryptocurrency tokens the firm had been accepting as payment from a certain client suddenly skyrocketed in value, up to an estimated $250 million–plus. Most of that increase occurred in the five days between February 6 and 10, 2021.

30.     Fattaruso, as an equity partner, was entitled to a percentage of the firm's cryptocurrency payments—and the firm's other assets and profits—as a function of his equity rights. The individual defendants, however, had not informed Fattaruso that the firm was accepting cryptocurrency tokens as payment for its work for a substantial firm client, much less accounted to Fattaruso for those tokens. Indeed, the individual defendants had not even informed Fattaruso of the work the firm was performing for that firm client.

7

11.    This Court has personal jurisdiction over Defendants because Defendant RCF is a Florida limited liability partnership, registered in Florida and with an office in Florida. The individual defendants are current or former equity partners of RCF. This dispute arises out of the internal affairs of a Florida limited liability partnership, of which the individual defendants are current or former equity partners. And defendants Freedman and Roche reside in Miami-Dade County.

12.    Venue is proper pursuant to Chapter 47 of the Florida Statutes because RCF is a Florida limited liability partnership that is registered in Florida with an address in Miami-Dade County; its principal place of business is in Miami-Dade County; and defendants Freedman and Roche reside in Miami-Dade County.

## FACTS

### A. Fattaruso Agrees to Leave a Successful and Prosperous Position To Join RCF as an Equity Partner

13.    At the beginning of 2020, Fattaruso left a successful and prosperous position at a prominent law firm, Boies Schiller Flexner LLP, to launch the litigation boutique RCF.

14.    Defendant Roche approached Fattaruso in December 2019 about the prospect of joining Roche and the other equity partners to launch RCF. In their initial meeting, Roche said to Fattaruso that he and the other partners were proposing that Fattaruso join the new firm as an equity partner. From that discussion onward, Fattaruso's status as an equity partner in the new firm was always a core term of the parties' discussions, and no one ever suggested that Fattaruso would join the new firm in any other capacity.

15.   Fattaruso had known Defendant Roche for several years, as the two had worked together in the same law office before Roche departed in the summer of 2019, when he was a third-year associate, to start his own two-lawyer (later three-lawyer) firm together with Freedman, another young lawyer.

16.   Fattaruso took confidence in RCF's prospects for success based in part on the involvement of other, more senior, experienced, and proven attorneys, including attorneys with strong and stable client bases, and with whom Fattaruso had worked for many years.

17.   Fattaruso was also drawn to RCF based on the attractive terms Defendants offered. Among their other enticements to induce Fattaruso to join RCF, Defendants offered Fattaruso 2% equity partnership in the firm and a lucrative compensation formula.

18.   Fattaruso had numerous conversations with defendants Roche, Normand, Holcomb, and Friedland, as well as founding partner Jason Cyrulnik, in December 2019 about the prospect of joining RCF. Those conversations consistently included discussion of the fact that Fattaruso would join the firm as an equity partner.

19.   On December 24, 2019, Fattaruso emailed Cyrulnik and Normand to discuss the specifics of his equity before giving notice at Boies Schiller Flexner. The three spoke by phone that afternoon, and Cyrulnik and Normand—speaking on behalf of themselves and Freedman, Friedland, Holcomb, and Roche—offered Fattaruso a 1% equity interest in RCF. Fattaruso responded that he wanted a larger

percentage. Cyrulnik and Normand said they would confer with the other partners. They came back with an offer of 2% equity in RCF, on behalf of themselves and Freedman, Friedland, Holcomb, and Roche. Each of the individual defendants authorized Cyrulnik and Normand to speak on their behalf, and Cyrulnik and Normand were acting with actual and apparent authority on behalf all of the individual defendants.

20.     Fattaruso accepted Defendants' offer.

21.     Fattaruso agreed to enter the RCF partnership, under which the partners would be compensated according to a set formula and the equity partners would share the firm's profits according to their pro rata equity shares. The partnership was governed by applicable partnership law (which addresses numerous partnership matters including, among other things, the sharing of losses).

## B. RCF Launches with Fattaruso as an Equity Partner, and the Individual Defendants Repeatedly Acknowledge Fattaruso's Status as an Equity Partner

22.     RCF launched in January 2020, with Fattaruso as a partner.

23.     On January 15, 2020, RCF issued a press release announcing its launch and listing Fattaruso's among the firm's partners.

24.     Fattaruso capably and diligently performed his duties as partner throughout 2020 and was a major contributor to the firm's financial performance.

25.     Throughout 2020, the other RCF partners consistently recognized and treated Fattaruso as an equity partner, including for purposes of tax withholding and

benefits, participation in equity partner meetings, and voting on matters that required a vote of the equity partnership. For instance:

- On January 3, 2020, RCF held an initial firm meeting at which the individual defendants recognized and acknowledged Fattaruso's equity-partner status, and Fattaruso voted together with the other equity partners to promote an associate, among other firm business.

- On January 13, 2020, shortly after joining the firm, Fattaruso voted together with the other equity partners on the hiring of a non-equity partner of the firm (who would conditionally be paid "the equivalent of 2 equity points," among other terms).

- On January 28, 2020, named partner Roche wrote to Fattaruso and the other equity partners: "**As equity partners**, your draws will be set up as direct deposits and will not go through payroll."

- On January 31, 2020, named partner Freedman wrote to Fattaruso and the other equity partners: "When you log into ADP you will notice that **because you are equity partners**, the firm is fronting 100% of the cost of your healthcare."

- On November 7, 2020, Freedman wrote to RCF's Director of Operations, William Tracy, copying the equity partnership including Fattaruso: "Can you please circulate **to the equity partners** the total cost of each health plan Insperity is offering so everyone can understand the cost?" Tracy promptly circulated the requested information to the equity partners, including Fattaruso.

- On December 16, 2020, Director of Operations Tracy responded to Fattaruso's inquiry about year-end 401k issues: "Since **you're an owner (K1)**, we won't know how much you can contribute until year end."

- RCF's agenda for its year-end Equity Partners Meeting on December 27, 2020, lists Fattaruso among the firm's "**OWNERSHIP**."

31.    On February 10, 2021, unbeknownst to Fattaruso, Defendants Roche, Freedman, Friedland, Holcomb, and Normand held a secret meeting at which they voted to remove fellow equity partner Cyrulnik from the firm, purportedly "for cause."

32.    On February 12, 2021, Defendants Roche, Freedman, Friedland, Holcomb, and Normand informed Fattaruso of what they had done. Fattaruso was stunned. At no prior point had anyone discussed with Fattaruso even the possibility of removing Cyrulnik from the firm, nor had anyone indicated to Fattaruso that Cyrulnik had engaged in any activity that could possibly justify removing him from the firm.

33.    The purported termination of Cyrulnik was outside the ordinary course of business of the partnership and could be undertaken only with the consent of all the partners. *See* Fla. Stat. § 620.8401(10).

34.    Defendants' exclusion of Fattaruso from their decision to purportedly remove Cyrulnik from the firm was a departure from the partnership's previously consistent practice of including Fattaruso in discussions and votes on the material decisions of the partnership.

35.    Fattaruso has since learned that in connection with their scheme to remove Cyrulnik, the individual defendants executed among themselves an "Amended" Memorandum of Understanding (MOU) on February 10, 2021 (the day of their vote).[1] The Amended MOU purported to increase each of the remaining

---

[1] According to Defendants, in December 2019, before Fattaruso joined RCF, the firm's other equity partners—Defendants Freedman, Friedland, Holcomb,

partners' equity percentages—and recognized (and increased) Fattaruso's 2% equity interest:

> **II.   EQUITY IN THE FIRM**
>
> The equity division in the Firm will be the following:
>
> Velvel Freedman –
> Amos Friedland –
> Nathan Holcomb –
> Edward Normand –
> Kyle Roche –
> Paul Fattaruso – 2.719%

36.     The Amended MOU also purported to grant Defendants Freedman and Roche "sole authority to distribute" the key firm client's valuable cryptocurrency payments, provided that the other three individual defendants be entitled to "at least" a minimum percentage of future tranches of token payments and provided further that each of the individual defendants agree to pledge a certain number of tokens to "fund the firm's operations."

37.     This arrangement is telling: Before the tokens soared in value, the firm depended on Cyrulnik's significant base of core billable firm clients to fund its

---

Normand, and Roche, together with Jason Cyrulnik—had entered an MOU among each other. Fattaruso was not a party to the MOU and never agreed to the MOU's terms. He did not receive a copy of the MOU when he joined RCF (or at any time in 2019 or 2020). Whatever effect the MOU may have with respect to the signatories' rights and obligations *among each other*, Fattaruso is not a party to the contract, and it is not binding on him or his equity partnership rights. In addition, none of the firm's cryptocurrency token payments were distributed before the third quarter of 2020, *after* Fattaruso joined the firm.

operations, while the other partners focused largely on pursuing potentially hugely lucrative contingency suits (plus a number of smaller and less profitable billable matters). This blended portfolio of matters provided sound and much-needed diversification of risk, with stable firm clients providing a strong profit base and enabling the firm to pursue longer-term, higher-risk but much-higher-reward contingency cases.

38.    With the newly valuable tokens, the individual defendants saw an opportunity to jettison Cyrulnik's profitable client base and use their newly found riches to tide the firm over until the portfolio of highly profitable contingency matters started paying out—at which point the individual defendants could take a greater share of those riches as well.

39.    In short, the individual defendants decided to remove Cyrulnik in February 2021 because they could afford to do so by funding the firm's expenses with a portion of their newfound cryptocurrency riches, and then would stand to gain a greater share of the firm's long-term upside interest in major contingency cases, in addition to divvying up the valuable tokens among a smaller subset of individuals.

40.    The individual defendants disclosed none of this to Fattaruso at the time—instead, they continued to conceal the cryptocurrency tokens from him and told him that they wanted him to stay with RCF and manage the workflow of the firm's continuing work on the many matters Cyrulnik had originated.

41.   Those matters constituted the bulk of the firm's core client matters. They were numerous, complex, and demanding, and required substantial attorney resources.

42.   Upon learning what the Defendants had done, all the firm clients Cyrulnik had originated chose to stay with Cyrulnik.

43.   In the weeks that followed, Fattaruso worked long and difficult hours to ensure that those clients continued to receive the highest level of legal representation through their transition. Others at the firm worked at cross-purposes to Fattaruso's efforts, including by depriving those matters of the appropriate resources and staffing.

44.   On Saturday, February 27, 2021, again unbeknownst to Fattaruso, Defendants filed a federal lawsuit in the firm's name for declaratory judgment against Cyrulnik.

45.   On Sunday, February 28, 2021, yet again unbeknownst to Fattaruso, Defendants held an all-firm meeting—excluding Fattaruso—to discuss the lawsuit they had caused the firm to file without full partnership approval.

46.   On March 1, 2021, Defendant Roche finally informed Fattaruso that the firm had filed suit against Cyrulnik.

47.   Fattaruso immediately expressed concerns about the potential repercussions of doing so.

48.   Fattaruso also immediately expressed to Roche that the firm would need to give serious thought to how it would communicate this development to the rest of

the firm (counsel, associates, paralegals, etc.). In response, Roche oddly suggested that they should hold a "town hall" meeting in which Fattaruso would attest to his longstanding friendship with Roche, apparently to signal to the rest of the firm that Fattaruso was aligned with the other partners against Cyrulnik. Fattaruso was baffled by that proposal, which did not strike him as the sort of firm-wide message that was called for under the circumstances. Roche concealed from Fattaruso that the firm had in fact held a meeting with everyone at the firm *except* Fattaruso just the day before. Fattaruso later learned that fact only because he was inadvertently included in a follow-up email about that meeting.

49.    Fattaruso's concerns greatly deepened once he had a chance to review the federal complaint, which contained deceptive, baseless allegations that were plainly designed to harm Cyrulnik's reputation.

50.    Fattaruso could not see any valid reason for the firm to have filed this federal complaint, and he directly told the other partners so.

51.    When asked, the other partners could not give Fattaruso any satisfactory explanation for why it was necessary or appropriate to file the deceptive federal complaint.

52.    The federal complaint, which was plainly designed to harm and malign Cyrulnik and grievously mislead the legal community, was an act of exceptionally bad judgment that reflected at least as poorly on the firm and its partners for making such scurrilous and unsupportable public allegations. It was also outside the ordinary course of business of the partnership and could be undertaken only with the consent

12

of all the partners. *See* Fla. Stat. § 620.8401(10). Yet Defendants had filed it without Fattaruso's knowledge, much less his consent.

53.     During this time, Defendants urged Fattaruso to remain at the firm. Among their other efforts to entice Fattaruso to remain, Defendant Roche stated that Cyrulnik's removal would cause Fattaruso's equity interest in the firm to increase pro rata along with the other remaining equity partners' interests, and that Fattaruso would receive payment of the "origination credits" under the firm's compensation formula for all work on Cyrulnik-originated matters going forward after Cyrulnik's removal. In addition, Defendant Roche offered Fattaruso a personal, "man-to-man" offer of a $300,000, over and above his formula compensation and equity payments, if Fattaruso stayed on for another 12 months.

54.     At the same time, however, the remaining partners continued to engage in troubling behavior and exercise poor judgment in their aggressive attacks against Cyrulnik, including by interfering with Fattaruso's ability to provide firm clients with effective representation through their transition away from the firm (with Defendant Freedman candidly admitting that he regarded those clients as mere extensions of Cyrulnik).

55.     Nor could the remaining partners provide any legitimate, coherent, and persuasive explanation for their actions.

## D. Fattaruso Leaves RCF in March 2021, and Defendants Ignore His Repeated Requests to Address His Equity Rights

56.     Fattaruso concluded that it was untenable to remain at the firm given the individual defendants' conduct.

57.     On March 22, 2021, Fattaruso wrote to Defendants Roche, Freedman, Normand, Friedland, and Holcomb to notify them that he was leaving the firm that day.

58.     Fattaruso ended his message: "I look forward to working out the details for winding up our partnership relationship, including prompt payment for my outstanding compensation and my equity interest, and am generally available to work cooperatively on logistics etc. as appropriate."

59.     Several of the Defendants responded with parting sentiments. No one responded with any dispute or disagreement that Fattaruso was entitled to payment for his outstanding compensation and equity interest.

60.     Instead, Defendants proceeded to ignore and deflect Fattaruso's requests for months. For instance:

- On May 3, 2021, Fattaruso reminded the individual defendants of his "outstanding separation issues, including payment for my substantial remaining unpaid compensation and equity interest." Defendants' response did not deny that Fattaruso had an equity interest but avoided the issue.

- On May 6, 2021, Fattaruso wrote, "I have asked you what your proposal is for paying out my equity. You have done nothing to address this issue since my departure and still won't give me an answer on this important question."

- After receiving no response for weeks, Fattaruso wrote on May 21, 2021, "Please let me know when I can expect a response on the open issues below."

- After receiving no response for more than a month after that, Fattaruso wrote on June 28, 2021, "All – I have not received any response for well over a month. Please respond by the end of the week."

14

61.    Following these repeated efforts by Fattaruso to get Defendants to engage, Defendant Freedman cryptically responded on June 28, 2021: "You are not owed any equity-related payment." He provided no explanation for that position.

62.    Defendants had never before asserted that Fattaruso was not owed any equity-related payment—and still did not deny Fattaruso's equity-partner status.

63.    Fattaruso responded: "Please promptly explain the basis for your contention that I am not owed any equity-related payment."

64.    Once again, Fattaruso received no response for weeks, despite his follow-up efforts. Defendant Freedman finally responded on July 19, 2021, with yet more evasion, stating, "If you truly believe you are entitled to an equity related payment (you are not), please provide the basis for that belief."

**E. Defendants Wrongfully Disavow Fattaruso's Equity Rights**

65.    On July 27, 2021, Fattaruso notified Defendants that given their protracted refusal to engage, he was compelled to demand information regarding the state of the activities and financial condition of the firm for the period of Fattaruso's partnership, pursuant to Florida statute.

66.    On August 6, 2021, unwilling to share the firm's information and in an attempt to deny Fattaruso his rightful value in the firm, Defendants responded through their lawyer, rejecting Fattaruso's demand and shockingly asserting—for the first time—that Fattaruso had not actually been an equity partner of the firm at all.

67.    Defendants' pretextual arguments denying Fattaruso's equity partnership status were patently meritless and relied on frivolous theories that the December 2019 MOU—which Fattaruso had never signed or agreed to—somehow

15

precluded Fattaruso's equity rights. In other words, Defendants claimed that even though they had told Fattaruso he would join RCF as an equity partner, and even though they had regularly acknowledged him as an equity partner throughout his time at RCF, they had entered an undisclosed, contrary agreement among themselves and had been deceiving Fattaruso all along about his equity-partner status. If accepted as true, that is fraud.

68.     Instead, Defendants' position was a knowingly false, bad-faith argument raised as a delay tactic to continue dishonoring Fattaruso's rights. Defendants' attempt to use the MOU to deprive Fattaruso of his rights runs contrary to fundamental principles of contract law: "It goes without saying that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). The individual defendants are lawyers and know that their argument lacks merit and runs contrary to their agreement with Fattaruso.

69.     In addition to refusing to honor Fattaruso's equity rights, Defendants continue to withhold Fattaruso's unpaid compensation for 2020 and 2021.

70.     In response to Fattaruso's repeated requests for information about his unpaid compensation, Defendants have vaguely implied that the firm still has not collected on invoices related to Fattaruso's work. But following Fattaruso's direct question on January 13, 2022—"Are you representing that the firm has not obtained any payment in connection with any of the matters on which I still have not received proper compensation for my work?"—Defendants have refused to respond to this day.

16

## F. Defendants Double-Down on Their Lie by Issuing and Filing False Tax Forms

71.     Defendants have faced a significant obstacle in their wrongful scheme to re-write history and deny Fattaruso's equity-partner status. Because everyone had understood and agreed that Fattaruso was an equity partner entitled to a K-1, Defendants had consistently treated Fattaruso as an equity partner for tax purposes: He had no W2, no income-tax withholding, no employer-provided health insurance. Indeed, Defendants' frivolous after-the-fact claims that "Fattaruso's relationship with the firm was limited to that of an employee and employer" (RCF MTD at 3, Filing # 153658104) is refuted by these clear facts showing that they did not treat Fattaruso as an "employee" in any way.

72.     These facts placed Defendants in a conundrum: Should they file truthful tax forms, acknowledging Fattaruso as an equity partner at the risk of undermining their frivolous excuse for denying his equity rights, or should they compound their wrongdoing by filing false forms with the IRS, even though they had not treated Fattaruso as an employee in any way throughout all of 2020?

73.     After delaying the issuance of Fattaruso's 2020 tax forms for many months, Defendants finally issued Fattaruso's form on October 6, 2021, just days before the *extended* filing deadline for 2020 taxes. The extremely belated timing of this tax form was wrongful and prejudicial in and of itself. Worse, Defendants revealed that had decided to retroactively re-classify Fattaruso as a supposed "independent contractor" with a Form 1099, misrepresenting Fattaruso's status to the tax authorities.

74.    This phony "independent contractor" classification is also inconsistent with Defendants' equally false attempts to characterize "Fattaruso's relationship with the firm" as "that of an employee and employer."

75.    Defendants made matters worse still for tax year 2021, delaying issuance of Fattaruso's tax form until after 8 PM on Sunday, October 16, 2022, the night before the extended filing deadline for 2021. Defendants again falsely issued a Form 1099, misrepresenting Fattaruso as an independent contractor, and inexplicably substantially underreporting Fattaruso's 2021 compensation.

## G. The Firm Continues to Unravel

76.    By March of 2022, Fattaruso was left with no other option but to file this suit to hold his partners to the duties and obligations they refuse to honor.

77.    Since then, in the midst of further turmoil, Defendant Roche has left (or been removed from) the firm, and Defendant Holcomb have left as well. The firm has now been restyled as Freedman Normand Friedland LLP.

78.    On information and belief, the individual defendants are causing the firm to distribute its assets to the individual defendants for their own personal benefit and in derogation of Fattaruso's equity rights.

79.    All conditions precedent to bringing this action have occurred or been waived.

## COUNT 1
### Buyout (Florida Statutes § 620.8701)

80.    Fattaruso repeats and realleges paragraphs 1-79 as if fully set forth here.

18

81.   RCF is a limited liability partnership, as defined under Florida law.

82.   Fattaruso is an equity partner of RCF and entitled to a buyout pursuant to Florida Statutes Section 620.8701.

83.   Fattaruso is entitled to recover reasonable attorney's fees and the fees and expenses of appraisers or other experts.

84.   WHEREFORE, Fattaruso respectfully requests that the Court determine and enter judgment awarding Fattaruso the value of his interest in RCF, pursuant to Florida Statutes Section 620.8701, together with accrued interest, costs and reasonable attorney's fees, and such other relief in law or equity as the Court finds just and proper.

## COUNT 2
### Accounting (Florida Statutes § 620.8403)

85.   Fattaruso repeats and realleges paragraphs 1-79 as if fully set forth here.

86.   Defendants have refused to provide Fattaruso access to the firm's books and records, have failed to account for the firm's revenues and expenses, and have otherwise wrongfully denied Fattaruso access to information relevant to his partnership rights and interests.

87.   WHEREFORE, Fattaruso respectfully requests that the Court enter judgment requiring Defendants to account to Fattaruso for the income, expenses, assets, and liabilities of RCF from inception through the present; find and determine the amount due to Fattaruso from RCF; and enter a judgment or decree in favor of

Fattaruso for his compensatory damages, prejudgment interest, costs, and such further relief as the Court deems just and proper.

## COUNT 3
### Demand for Books and Records (Florida Statutes § 620.1407)

88.     Fattaruso repeats and realleges paragraphs 1-79 as if fully set forth here.

89.     Fattaruso is a partner of RCF.

90.     Fattaruso has demanded records maintained by RCF regarding its activities and financial condition, consistent with Florida Statutes Section 620.1407.

91.     The information Fattaruso seeks pertains to the period of his partnership, and he seeks the information in good faith for purposes of calculating his unpaid compensation and the value of his equity rights.

92.     RCF has wrongfully refused to provide Fattaruso with any information regarding RCF's activities and financial condition.

93.     WHEREFORE, Fattaruso respectfully requests that the Court enter judgment requiring Defendants to provide Fattaruso with access to the information and records regarding RCF's activities and financial condition and granting such further relief as the Court deems just and proper.

## COUNT 4
### Breach of Contract

94.     Fattaruso repeats and realleges paragraphs 1-79 as if fully set forth here.

95.     Defendants Freedman, Friedland, Holcomb, Normand, and Roche entered a valid and binding agreement with Fattaruso, under which Defendants and Fattaruso agreed that Fattaruso would join the limited liability partnership of RCF and devote his professional time and energy to the partnership's business in exchange for a 2% equity interest, compensation pursuant to a set formula, and other benefits. The parties' agreement included an implied covenant of good faith and fair dealing.

96.     Fattaruso fully performed and was ready, willing, and able to continue to perform his obligations under the parties' agreement.

97.     Defendants Freedman, Friedland, Holcomb, Normand, and Roche breached their obligations under the agreement, including by individually and collectively refusing to recognize and honor Fattaruso's equity interest, by individually and collectively causing the partnership not to pay Fattaruso hundreds of thousands of dollars of formula compensation, and by individually and collectively causing the firm to distribute its assets to the individual defendants for their own personal benefit and in derogation of Fattaruso's equity rights.

98.     Defendants Freedman, Friedland, Holcomb, Normand, and Roche further breached their obligations—including their covenant of good faith and fair dealing—by making Fattaruso's continued participation in the partnership untenable. They individually and collectively made drastic decisions to remove and sue fellow equity partner Cyrulnik, purportedly on behalf of the partnership, without consulting or even notifying Fattaruso until after the fact. Nor did they conduct that lawsuit with any sensible restraint, but instead filed a deliberately incendiary

complaint with deplorable mischaracterizations intended to harm Cyrulnik's reputation—again, without consulting or even notifying Fattaruso until after the fact. They mistreated firm clients originated by Cyrulnik—including by diverting resources and threatening to precipitously withdraw as counsel without providing clients fair notice or reasonable transition time and planning. Beyond badly impairing the firm's reputation and integrity, these decisions, together with Defendants' other individual and collective acts marginalizing Fattaruso, made it impracticable for him to continue with the partnership, harming Fattaruso's financial interests and livelihood.

99.     WHEREFORE, Fattaruso respectfully requests that the Court enter judgment against Defendants Freedman, Friedland, Holcomb, Normand, and Roche, jointly and severally, and award Fattaruso damages in an amount to be determined at trial, including the value of his equity interest in the firm (including his equity interest in the cryptocurrency tokens) and unpaid compensation, as well as interest, costs, and attorney's fees, and such other and further relief that the Court deems just and proper.

## COUNT 5
## Promissory Estoppel

100.    Fattaruso repeats and realleges paragraphs 1-79 as if fully set forth here.

101.    Defendants Freedman, Friedland, Holcomb, Normand, and Roche promised Fattaruso that they would work together with Fattaruso in a duly organized

law-firm partnership, and that Fattaruso would receive a 2% equity interest in RCF and payment of substantial compensation for his work.

102.    By making these promises, they reasonably expected Fattaruso to leave his successful and prosperous position at a prominent law firm to launch RCF and devote his professional time and energy to the partnership's business.

103.    Defendants' promises did, in fact, induce Fattaruso to leave his position and launch the firm as Defendants' partner.

104.    Injustice can be avoided only by enforcement of Defendants' promises.

105.    WHEREFORE, Fattaruso respectfully requests that the Court enter judgment against Defendants Freedman, Friedland, Holcomb, Normand, and Roche, jointly and severally, and award Fattaruso damages in an amount to be determined at trial, including the value of his equity interest in the firm (including his equity interest in the cryptocurrency tokens) and unpaid compensation, as well as interest, costs, and attorney's fees, and such other and further relief that the Court deems just and proper. Fattaruso will seek leave at the appropriate time to claim punitive damages pursuant to Florida Statutes § 768.72(1).

## COUNT 6
### Breach of Fiduciary Duty

106.    Fattaruso repeats and realleges paragraphs 1-79 as if fully set forth here.

107.    As partners in a professional service limited liability partnership, Defendants Freedman, Friedland, Holcomb, Normand, and Roche at all relevant

times owed, and still owe, fiduciary duties to Fattaruso, including the duties of care and loyalty.

108.    Defendants breached their fiduciary duties to Fattaruso by, among other things, (i) withholding material information from Fattaruso about the firm, its plans, and its finances; (ii) excluding Fattaruso from material decisions about the firm; (iii) putting their personal interests—including their interest in valuable contingency litigation and cryptocurrency tokens—ahead of the interests of the partnership and ahead of Fattaruso's partnership interests in particular; (iv) marginalizing and isolating Fattaruso, including by excluding him from whole-firm meetings; (v) denying Fattaruso's equity interest in the firm; and (vi) individually and collectively causing the firm to distribute its assets to the individual defendants for their own personal benefit and in derogation of Fattaruso's equity rights. Such conduct constitutes breach of the duty of loyalty, intentional misconduct, and a knowing violation of the law.

109.    The material information Defendants withheld from Fattaruso includes their secret side-agreement purporting to exclude payments received from certain firm clients (including the cryptocurrency tokens) from equity distribution to the full equity partnership and instead to divide those payments solely among a subset of the partnership, excluding Fattaruso—an egregious attempted breach of the duty of loyalty.

110.    Defendants have also refused to disclose information about collections from clients, while using unsubstantiated claims of non-collection as an excuse to

withhold payments owed to Fattaruso under the firm's formula compensation system. Defendants also did not disclose to Fattaruso that they were even considering removing fellow partner Cyrulnik from the firm—a decision that had enormous economic, structural, and legal implications for the firm and its clients.

111.   The material decisions from which Defendants excluded Fattaruso include the decision to purportedly remove Cyrulnik—a decision that disproportionately affected Fattaruso, both because Fattaruso worked extensively with Cyrulnik's clients while the other partners did not and because Fattaruso was the only partner excluded from Defendants' secret side-agreement to carve up a firm client's cryptocurrency token payments among themselves. The Defendants had just become multi-millionaires many times over through the skyrocketing value of their cryptocurrency tokens and therefore could easily afford to oust Cyrulnik even if that decision was to the firm's detriment. The upside of potentially carving Cyrulnik's share of the firm's equity and cryptocurrency tokens among themselves would far outstrip the downside to the firm from the loss of business generated by Cyrulnik. Fattaruso was the lone partner of the firm who was differently situated and differently affected.

112.   Defendants also excluded Fattaruso from the decision to file an incendiary complaint against Cyrulnik containing deplorably misleading allegations. While that complaint was designed to harm Cyrulnik and his reputation, its disingenuous allegations reflected poorly on *RCF's* character and integrity— particularly once Cyrulnik had an opportunity to tell his side of the story. Again, as

newly minted mega-millionaires, Defendants could easily afford the cost and negativity of an ugly court battle, particularly if it would enable them to carve up Cyrulnik's cryptocurrency tokens among themselves. Defendants are wasting and usurping RCF's resources and assets in the pursuit of their meritless legal battle, all with the self-serving goal of increasing their own personal wealth, uniquely harming Fattaruso.

113.    Having repeatedly put their own self-interests ahead of Fattaruso's interest in breach of their duty of loyalty, Defendants made it impossible for Fattaruso to remain at RCF.

114.    Defendants then compounded their disloyalty by disavowing Fattaruso's clear equity interest, a position they did not have the temerity to articulate until Fattaruso had tried unsuccessfully for months to resolve his outstanding right to payment for his equity. Defendants only denied Fattaruso's equity interest when taking that position became their only available excuse for continuing to block Fattaruso from access to the firm's books and records.

115.    Defendants' disloyal denial of Fattaruso's equity rights is remarkable on many levels, including because Defendant Roche expressly represented to Fattaruso that his equity percentage had proportionally *increased* (pro rata with the other partners) upon Cyrulnik's purported removal from the firm.

116.    WHEREFORE, Fattaruso respectfully requests that the Court enter judgment against Defendants Freedman, Friedland, Holcomb, Normand, and Roche, jointly and severally, and award Fattaruso damages in an amount to be determined

at trial, including the value of his equity interest in the firm (including his equity interest in the cryptocurrency tokens) and unpaid compensation, as well as interest, costs, and attorney's fees, and such other and further relief that the Court deems just and proper. Fattaruso will seek leave at the appropriate time to claim punitive damages pursuant to Florida Statutes § 768.72(1).

### COUNT 7
### Conversion

117.   Fattaruso repeats and realleges paragraphs 1-79 as if fully set forth here.

118.   Defendants Freedman, Friedland, Holcomb, Normand, and Roche knowingly and intentionally converted Fattaruso's equity interest in RCF and its assets, as well as Fattaruso's share, under the firm's formula compensation structure, of payments received by RCF. The converted assets are specific, identifiable, and belong solely to Fattaruso, and Defendants converted those assets without Fattaruso's consent and without compensation to Fattaruso.

119.   Defendants, without authority, deprived Fattaruso of his equity interest and formula compensation share for their own use.

120.   Defendants' deprivation of Fattaruso's equity interest and formula compensation share is adverse and inconsistent with Fattaruso's rights and ownership interest in RCF.

121.   Defendants have refused Fattaruso's demand that they pay him for his equity interest and formula compensation share, and at this point, further demand and refusal are unnecessary because they would be futile.

122.    As a direct and proximate result of Defendants' conversion, Fattaruso has suffered damages.

123.    WHEREFORE, Fattaruso respectfully requests that the Court enter judgment against Defendants Freedman, Friedland, Holcomb, Normand, and Roche, jointly and severally, and award Fattaruso damages in an amount to be determined at trial, including the value of his equity interest in the firm (including his equity interest in the cryptocurrency tokens) and unpaid compensation, as well as interest, costs, and attorney's fees, and such other and further relief that the Court deems just and proper. Fattaruso will seek leave at the appropriate time to claim punitive damages pursuant to Florida Statutes § 768.72(1).

## COUNT 8
## Civil Conspiracy

124.    Fattaruso repeats and realleges paragraphs 1-79, 106-123, and 130-156 as if fully set forth here.

125.    Defendants Freedman, Friedland, Holcomb, Normand, and Roche are parties to a civil conspiracy.

126.    Defendants conspired to commit unlawful acts by unlawful means, including (i) withholding material information from Fattaruso about the firm, its plans, and its finances; (ii) excluding Fattaruso from material decisions about the firm; (iii) putting their personal interests—including their interest in valuable contingency litigation and cryptocurrency tokens—ahead of the interests of the partnership and ahead of Fattaruso's partnership interests in particular; (iv) marginalizing and isolating Fattaruso, including by excluding him from whole-

firm meetings; (v) denying Fattaruso's equity interest in the firm. These acts constitute breach of fiduciary duty, conversion, and (if Defendants' meritless denial of Fattaruso's equity is accepted) fraud.

127.   Each of the Defendants committed an overt act in furtherance of their conspiracy, including to exclude Fattaruso from their vote to remove Cyrulnik as a firm partner and their decision to sue Cyrulnik in federal court and, on information and belief, their votes to deny Fattaruso's equity interest in the firm and to misstate and mischaracterize Fattaruso's role with the firm as that of an independent contractor in the firm's representations to state and federal tax authorities. Further, the individual defendants have, on information and belief, divided among themselves cryptocurrency token payments to which Fattaruso was entitled to an equity share.

128.   As a direct and proximate result of Defendants' civil conspiracy, Fattaruso has suffered damages.

129.   WHEREFORE, Fattaruso respectfully requests that the Court enter judgment against Defendants Freedman, Friedland, Holcomb, Normand, and Roche, jointly and severally, and award Fattaruso damages in an amount to be determined at trial, including the value of his equity interest in the firm (including his equity interest in the cryptocurrency tokens) and unpaid compensation, as well as interest, costs, and attorney's fees, and such other and further relief that the Court deems just and proper. Fattaruso will seek leave at the appropriate time to claim punitive damages pursuant to Florida Statutes § 768.72(1).

## COUNT 9
## Fraud (in the alternative)

130.   Fattaruso repeats and realleges paragraphs 1-89 as if fully set forth here.

131.   Fattaruso contends that he joined RCF as a 2% equity partner.

132.   Defendants, however, have denied that Fattaruso was ever an equity partner of RCF.

133.   Defendants' bad-faith denial of Fattaruso's equity status is baseless and wrong.

134.   However, to the extent it is found that Fattaruso was not made an equity partner of RCF, then the individual defendants committed fraud against Fattaruso, first by falsely representing to him that he would join RCF as an equity partner, and later by falsely representing to him that he had joined RCF as an equity partner.

135.   If Defendants' bad-faith denial of Fattaruso's equity status is accepted as true, then Defendants' false statements to Fattaruso included at least the following:

- On December 3, 2019, at the Lexington Café in Mount Kisco, New York, Defendant Kyle Roche, with actual and apparent authority to speak on behalf of the other individual defendants, asked Fattaruso to join RCF and represented that Fattaruso would join RCF as an equity partner.

- On December 4, 2019, Jason Cyrulnik and Defendant Ted Normand, with actual and apparent authority to speak on behalf of the other individual defendants, asked Fattaruso to join RCF and represented that Fattaruso would join RCF as an equity partner.

- On December 24, 2019, Jason Cyrulnik and Defendant Ted Normand, with actual and apparent authority to speak on behalf of the other

30

individual defendants, negotiated and agreed with Fattaruso that Fattaruso would join RCF as a 2% equity partner.

136. Defendants intended that their statements would induce Fattaruso to leave his successful and prosperous position at Boies Schiller. And in reliance on those statements, Fattaruso left his position at Boies Schiller to join RCF as an equity partner.

137. In light of the position the individual defendants have since taken, claiming that Fattaruso was not an equity partner in RCF after all, the individual defendants' statements that Fattaruso would join RCF as an equity partner were knowingly false.

138. Further, to the extent they now maintain that Fattaruso was not in fact an equity partner of RCF, the individual defendants fraudulently concealed that material information from Fattaruso.

139. After Fattaruso joined RCF, Defendants continued to represent that Fattaruso was an equity partner of RCF and continued to fraudulently conceal their position that Fattaruso was not an equity partner of RCF, intending that their fraudulent statements and fraudulent concealment would induce Fattaruso to devote substantial time, labor, and personal capital to the firm's success. And Fattaruso did in fact devote substantial time, labor, and personal capital to the firm's success in reliance on Defendants' representations that Fattaruso was an equity partner and their fraudulent concealment of the notion that he was not in fact an equity partner. Defendants' fraudulent statements and omissions to Fattaruso after he joined RCF included at least the following:

- On January 3, 2020, RCF held an initial firm meeting at which the individual defendants recognized and acknowledged Fattaruso's equity-partner status.

- On January 28, 2020, Defendant Kyle Roche wrote to Fattaruso and the other equity partners: "**As equity partners**, your draws will be set up as direct deposits and will not go through payroll."

- On January 31, 2020, Defendant Devin Freedman wrote to Fattaruso and the other equity partners: "When you log into ADP you will notice that **because you are equity partners**, the firm is fronting 100% of the cost of your healthcare."

- On November 7, 2020, Defendant Freedman wrote to RCF's Director of Operations, William Tracy, copying the equity partnership including Fattaruso: "Can you please circulate **to the equity partners** the total cost of each health plan Insperity is offering so everyone can understand the cost?" Tracy promptly circulated the requested information to the equity partners, including Fattaruso.

- On December 16, 2020, Director of Operations Tracy, with actual and apparent authority to speak on behalf of Defendants, responded to Fattaruso's inquiry about year-end 401k issues: "Since **you're an owner (K1)**, we won't know how much you can contribute until year end."

- RCF's agenda for its year-end Equity Partners Meeting on December 27, 2020, lists Fattaruso among the firm's "**OWNERSHIP**." None of the Defendants took issue with Fattaruso's status as among the firm's ownership.

140.   Even as Defendants knew that Fattaruso was considering leaving the firm as a result of Defendants' troubling actions in February and March of 2021, Defendants continued to represent that Fattaruso was an equity partner and fraudulently conceal their position that Fattaruso was not an equity partner of RCF.

141. For example, Defendant Roche expressly represented to Fattaruso that his equity percentage had proportionally *increased* (pro rata with the other partners) upon Cyrulnik's purported removal from the firm.

142. In addition, in their failed attempts to justify their decision to exclude Fattaruso's from the vote to remove Cyrulnik for cause and their decision to file suit against Cyrulnik, Defendants *never* suggested that they had excluded Fattaruso from those decisions on the theory that he was not an equity partner.

143. On March 21, 2021, Fattaruso spoke to Defendant Roche on the phone, informed Roche of his decision to leave the firm, and expressly noted that his departure would require further discussions to arrange for payment of Fattaruso's equity. Defendant Roche did not dispute Fattaruso's equity status, again fraudulently concealing the position that Fattaruso was not an equity partner.

144. On March 22, 2021, Fattaruso wrote to Defendants Freedman, Normand, Friedland, and Holcomb to notify them that he was leaving the firm that day. Fattaruso ended his message: "I look forward to working out the details for winding up our partnership relationship, including prompt payment for my outstanding compensation and my equity interest, and am generally available to work cooperatively on logistics etc. as appropriate." All of the individual defendants continued to fraudulently conceal—for months more—their position that Fattaruso was not an equity partner, finally disclosing that meritless position for the first time through their counsel on August 6, 2021. Indeed, Defendant Freedman insisted on May 5, 2021, that Fattaruso continued to owe defendants a "fiduciary duty."

33

145.   Defendants' fraudulent misrepresentations and concealment were intended to induce, and did induce, Fattaruso to leave the firm with the understanding that his equity would be paid in due course. In addition, Defendants' fraudulent misrepresentations and concealment were intended to delay and prejudice Fattaruso's ability to challenge and obtain relief for Defendants' meritless denial of his equity rights.

146.   Fattaruso reasonably and justifiably relied on Defendants' statements and material omissions.

147.   As a direct and proximate result of Fattaruso's reliance on Defendants' statements and material omissions, Fattaruso has suffered damages.

148.   WHEREFORE, Fattaruso respectfully requests that the Court enter judgment against Defendants Freedman, Friedland, Holcomb, Normand, and Roche, jointly and severally, and award Fattaruso damages in an amount to be determined at trial, including the value of his represented equity interest in the firm (including his equity interest in the cryptocurrency tokens) and unpaid compensation, as well as interest, costs, and attorney's fees, and such other and further relief that the Court deems just and proper. Fattaruso will seek leave at the appropriate time to claim punitive damages pursuant to Florida Statutes § 768.72(1).

### COUNT 10
### Negligent Misrepresentation (in the alternative)

149.   Fattaruso repeats and realleges paragraphs 1-89 and 141-59 as if fully set forth here.

150.   Defendants were aware of, and consented to, the misrepresentations and omissions described above.

151.   Defendants knew, or acted in reckless disregard, that the misrepresentations, omissions, and concealment of the truth were false or materially misleading at the time they were made.

152.   Regarding the commissions and omissions described above, Defendants were negligent in not disclosing all material facts to Fattaruso.

153.   Defendants owed Fattaruso a duty to be truthful and deal honestly and fairly with him.

154.   As described above, Defendants negligently breached these duties.

155.   As a direct and proximate result of Defendants' negligent breaches of these duties, Fattaruso has suffered damages.

156.   WHEREFORE, Fattaruso respectfully requests that the Court enter judgment against Defendants Freedman, Friedland, Holcomb, Normand, and Roche, jointly and severally, and award Fattaruso damages in an amount to be determined at trial, including the value of his represented equity interest in the firm (including his equity interest in the cryptocurrency tokens) and unpaid compensation, as well as interest, costs, and attorney's fees, and such other and further relief that the Court deems just and proper.

## REQUEST FOR RELIEF

WHEREFORE, Fattaruso respectfully requests judgment against Defendants:

a. Establishing a constructive trust over RCF's assets and the assets that the individual defendants have wrongfully taken from RCF for their own benefit in derogation of Fattaruso's rights.

b. Awarding Fattaruso the value of his interest in RCF (including the cryptocurrency tokens), pursuant to Florida Statutes § 620.8701

c. Requiring Defendants to account to Fattaruso for the income, expenses, assets, and liabilities of RCF from inception through present, as well as the amount due to Fattaruso

d. Requiring Defendants to provide access to the information and records regarding RCF's activities and financial condition

e. Against Defendants, jointly and severally, awarding Fattaruso damages in an amount to be determined at trial, including the value of his equity interest in the firm (including his equity interest in the cryptocurrency tokens) and unpaid compensation

f. Awarding pre-judgment and post-judgment interest at the maximum possible rate

g. Awarding Fattaruso's costs in the prosecution of this action, including reasonable attorney's fees

h. Awarding such other and further relief as is just and proper.

# Exhibit B

# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE  |  SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883  |  FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL       212.763.0889
DIRECT EMAIL    shecker@kaplanhecker.com

August 17, 2021

**PRIVILEGED & CONFIDENTIAL**

**BY EMAIL/MAIL**

Mr. Marc E. Kasowitz
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019

> *Re:*  *Roche Cyrulnik Freedom LLP v. Cyrulnik, Case No. 1:21-cv-01746 (JGK)*

Dear Mr. Kasowitz,

  On ▮▮▮▮▮▮ Roche Freedman LLP received ▮▮▮▮ AVAX as payment for legal services it performed for Ava Labs ("Received Tokens"). The Firm would have received these tokens earlier, but Mr. Cyrulnik's breach of fiduciary duty in publicly disclosing the firm's representation and fee arrangement with Ava Labs delayed the Firm's receipt of these tokens. The Firm hopes to continue to receive some AVAX as payment for legal services in the months to come, but due to Mr. Cyrulnik's breach, the schedule and amount of those AVAX payments remain uncertain.

  The Firm disputes the claim Mr. Cyrulnik has asserted to a right to 25% of the Firm's AVAX. That said, because your client has asserted a claim to 25% of the Firm's AVAX, the Firm will, within reason, allow Mr. Cyrulnik to manage 25% of the Received Tokens until the Court or a jury denies his claim. In particular, the firm will allow him to decide whether, for 25% of the Received Tokens, the Firm should hold that portion of tokens as AVAX or liquidate some or all of these tokens and hold the proceeds as cash. If your client fails to make an election, the Firm will liquidate the full 25% of the Received Tokens and hold those funds as cash until the resolution of his claim. Please let us know by August 20, 2021 whether Mr. Cyrulnik elects to have the Firm hold or sell some or all of this portion of the Received Tokens.

KAPLAN HECKER & FINK LLP                                    2

      Our decision to give Mr. Cyrulnik the opportunity to manage 25% of the Receive Tokens reflects no concession with respect to the merits of any of Mr. Cyrulnik's claims.  To the contrary, the Firm disputes your client's claims and reserves all rights.  This offer is being made simply as a means of avoiding unnecessary expense over additional disputes.

                                         Sincerely

                                         Sean Hecker

Cc: Eric Rosen, Esq.