UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROCHE FREEDMAN LLP,<br><br> Plaintiff,<br><br>v.<br><br>JASON CYRULNIK,<br><br> Defendant.<br><br>JASON CYRULNIK,<br><br> Counterclaim-Plaintiff,<br><br>v.<br><br>ROCHE FREEDMAN LLP, KYLE ROCHE, DEVIN FREEDMAN, AMOS FRIEDLAND, NATHAN HOLCOMB, and EDWARD NORMAND,<br><br> Counterclaim-Defendants. | Case No. 1:21-cv-01746 (JGK) |

**PLAINTIFF AND COUNTERCLAIM-DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE HOLCOMB'S IMPROPER TESTIMONY AND EVIDENCE RELATING TO THE FATTARUSO LITIGATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 1

    I.    The Court should prohibit Holcomb from testifying about privileged information. .......... 1

    II.   The Court should exclude any testimony from Holcomb alleging Counterclaim-Defendant Freedman, counsel of record in this action, engaged in witness tampering. ...... 3

    III.  The Court should exclude any testimony from Holcomb that he would vote differently on Cyrulnik's removal today. ............................................................................................ 6

    IV.  The Court should exclude evidence and testimony about the Fattaruso litigation. .......... 11

CONCLUSION ............................................................................................................................... 12

**TABLE OF AUTHORITIES**

**Cases**

*Am. Home Assurance Co. v. Fremont Indem. Co.*,
   1992 WL 100499 (S.D.N.Y. May 4, 1992) ................................................................ 9

*Bass Pub. Ltd. Co. v. Promus Cos. Inc.*,
   868 F. Supp. 615 (S.D.N.Y. 1994) ............................................................................ 2

*Benzinger v. Lukoil Pan Ams., LLC*,
   2021 WL 431169 (S.D.N.Y. Feb. 8, 2021) ................................................................ 8

*Bernstein v. Vill. of Wesley Hills*,
   95 F. Supp. 3d 547 (S.D.N.Y. 2015) ......................................................................... 6

*Buckman v. Bombardier Corp.*,
   893 F. Supp. 547 (E.D.N.C. 1995) .......................................................................... 10

*Certain Underwriters at Lloyd's, London v. Sinkovich*,
   232 F.3d 200 (4th Cir. 2000) ..................................................................................... 9

*Devaney v. Chester*,
   1989 WL 52375 (S.D.N.Y. May 10, 1989) .............................................................. 10

*Emerald Invs. Ltd. P'ship v. Allmerica Fin. Life Ins. & Annuity Co.*,
   516 F.3d 612 (7th Cir. 2008) ..................................................................................... 8

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
   2020 WL 3582029 (S.D.N.Y. July 1, 2020) .............................................................. 9

*Hilburn v. Deere & Co.,*
   1990 WL 119690 (E.D. Pa. Aug. 7, 1990) .............................................................. 10

*In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*,
   902 F.2d 244 (4th Cir. 1990) ..................................................................................... 2

*In re Megan-Racine Assocs., Inc.*,
   189 B.R. 562 (Bankr. N.D.N.Y. 1995) ...................................................................... 3

*Leon v. TransAm Trucking, Inc.*,
   2020 WL 728785 (S.D.N.Y. Feb. 13, 2020) .............................................................. 6

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
   232 F. Supp. 3d 558 (S.D.N.Y. 2017) ................................................................. 1, 11

*Mohegan Lake Motors, Inc. v. Maoli*,
   559 F. Supp. 3d 323 (S.D.N.Y. 2021) ....................................................................... 4

*Sempra Energy v. Marsh USA, Inc.*,
　2008 WL 11335050 (C.D. Cal. Oct. 15, 2008) .................................................................. 9

*Shannon v. Koehler*,
　2011 WL 10483366 (N.D. Iowa Oct. 19, 2011) ................................................................ 5

*Starzynski v. Stanley Black & Decker, Inc.*,
　2022 WL 17825920 (2d Cir. Dec. 21, 2022) ..................................................................... 4

*TiVo Research & Analytics, Inc. v. TNS Media Research LLC*,
　2017 WL 213804 (S.D.N.Y. Jan. 18, 2017) ..................................................................... 10

United States v. Connolly,
　2018 WL 5023785 (S.D.N.Y. Oct. 1, 2018) ...................................................................... 8

United States v. Cuti,
　720 F.3d 453 (2d Cir. 2013) ............................................................................................ 10

United States v. Gonzalez,
　669 F.3d 974 (9th Cir. 2012) ............................................................................................ 3

United States v. Grinage,
　390 F.3d 746 (2d Cir. 2004) .............................................................................................. 6

United States v. Hatfield,
　2009 WL 3806300 (E.D.N.Y. Nov. 13, 2009) ................................................................... 2

United States v. King,
　134 F.3d 1173 (2d Cir. 1998) .......................................................................................... 10

United States v. King,
　1997 WL 666778 (S.D.N.Y. Oct. 24, 1997) .................................................................... 10

United States v. Rea,
　958 F.2d 1206 (2d Cir. 1992) ............................................................................................ 6

United States v. Weissman,
　1996 WL 737042 (S.D.N.Y. Dec. 26, 1996) ..................................................................... 2

*Washington v. Dep't of Transp.*,
　8 F.3d 296 (5th Cir. 1993) ................................................................................................. 9

*Wilson v. Bradlees of New England, Inc.*,
　250 F.3d 10 (1st Cir. 2001) ................................................................................................ 9

**Other Authorities**

Fed. R. Evid. 402 ....................................................................................................................... 7

Fed. R. Evid. 403 ............................................................................................................... 5, 7

Fed. R. Evid. 602 .................................................................................................................. 9

Fed. R. Evid. 701 ............................................................................................................... 5, 9

Fed. R. Evid. 802 .................................................................................................................. 4

## INTRODUCTION

Cyrulnik intends to muddy the waters of this case and confuse the jury by introducing sensational testimony from a former partner (and former Counterclaim-Defendant), Nathan Holcomb, as well as testimony about litigation brought by another former partner, Paul Fattaruso. As explained below, the Court should preclude this testimony.

Holcomb was a firm partner who voted to remove Cyrulnik for cause. As a Counterclaim-Defendant, Holcomb participated in privileged defense strategy, helped draft the firm's complaint against Cyrulnik, and even testified at his deposition that the firm had cause to remove Cyrulnik. Following the close of discovery, however, Holcomb changed his tune and settled with Cyrulnik—providing Cyrulnik a 43-page declaration in exchange for a release. That 43-page declaration is rife with improper testimony about privileged information, made-up hearsay accusations of witness tampering, and confusing and irrelevant testimony about what Holcomb supposedly would have done in a reality that he admits never existed. Among other reasons, this evidence should be excluded as privileged, irrelevant, unduly prejudicial, and confusing.

The same result is appropriate with respect to the prejudicial testimony that Cyrulnik intends to introduce about Fattaruso's litigation against the firm. Indeed, evidence of prior litigations involving the parties is "routinely" excluded where, as here, "the merits of those prior litigations would 'become inextricably intertwined with the case at bar.'" *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 568 (S.D.N.Y. 2017) (quoting *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007)).

## ARGUMENT

**I.    The Court should prohibit Holcomb from testifying about privileged information.**

Based on his declaration (ECF No. 506-3), Holcomb intends to testify as to conversations with Counterclaim-Defendants or Counterclaim-Defendants' counsel about this litigation,

1

including litigation strategy and the contents of attorney work product. Holcomb only had access to this information, however, because he was within the joint defense group and was represented by the same counsel who represented the firm and other individual Counterclaim-Defendants. Because common-interest privilege as to this information was never waived, Holcomb's testimony is plainly improper and should be excluded.

Unlike other types of privilege, "[a] joint defense privilege cannot be waived without the consent of *all* parties to the privilege." *United States v. Weissman*, 1996 WL 737042, at *26 (S.D.N.Y. Dec. 26, 1996) (emphasis added); *see also Bass Pub. Ltd. Co. v. Promus Cos. Inc.*, 868 F. Supp. 615, 621 (S.D.N.Y. 1994) ("An exception to this general rule is embodied in the joint defense privilege, which requires the consent of all parties who share the privilege before waiver can occur."); *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 248 (4th Cir. 1990) ("[A] joint defense privilege cannot be waived without the consent of all parties who share the privilege.").

As a result, members of a joint defense group—like Holcomb—"cannot disclose privileged information received from other joint defense agreement members." *United States v. Hatfield*, 2009 WL 3806300, at *12 (E.D.N.Y. Nov. 13, 2009). Yet that is precisely what Holcomb intends to do here. His declaration purports to relay privileged communications, litigation strategy discussions, and attorney work product that occurred after the lawsuit was filed; he even references the firm's case file for the litigation as a source. *See* ECF No. 506-3 ("Holcomb Decl.") ¶¶ 44 (describing discussions of litigation strategy), 46 (describing discussions of litigation strategy), 48-49 (describing how Holcomb obtained information for his declaration by reviewing the firm's case file for this litigation), 56 (referencing discussions with outside counsel and citing to an exhibit consisting of privileged emails with counsel), 59 (referencing discussion with outside

2

counsel), 63-64 (citing to exhibits consisting of privileged emails with counsel), 98 (describing discussions of litigation strategy and how Holcomb obtained information for his declaration by reviewing the firm's case file for this litigation), 108 (describing firm's collection of documents in discovery and conversations with the firm's outside counsel).[1]

The Court should exclude all of this testimony. No other Counterclaim-Defendant has consented to waiver of privilege as to the information that Holcomb intends to disclose. Holcomb's testimony is therefore plainly improper. *See, e.g.*, *United States v. Gonzalez*, 669 F.3d 974, 982 (9th Cir. 2012) ("Moreover, the case law is clear that one party to a [joint defense agreement] cannot unilaterally waive the privilege for other holders."); *In re Megan-Racine Assocs., Inc.*, 189 B.R. 562, 572 (Bankr. N.D.N.Y. 1995) ("The joint-defense privilege cannot be waived unless all the parties consent or where the parties become adverse litigants.").

## II. The Court should exclude any testimony from Holcomb alleging Counterclaim-Defendant Freedman, counsel of record in this action, engaged in witness tampering.

As the public docket makes clear, while the firm retained outside counsel in this litigation, the firm—represented by Counterclaim-Defendant Freedman and others—has also acted as counsel of record from the inception of this case. In that capacity, Freedman was copied on the majority of communications between counsel, attended meet and confers, defended a deposition, and filed a notice of appearance. ECF No. 263. In that capacity, Freedman also attended deposition preparation sessions for a variety of firm witnesses—as fact witnesses testified to at their depositions.

---

[1] Counterclaim-Defendants do not concede that Holcomb has accurately portrayed these conversations. That said, he should not be allowed to tell the jury anything he claims comes from these privilege sources.

3

Apparently desperate to obtain a release from Cyrulnik, in his declaration, Holcomb asserts: "I believed that Freedman was trying to influence witness' testimony and that this was improper." Holcomb Decl. ¶ 49. Presumably to avoid committing clear perjury, Holcomb only stated it was his "belief," and then stated that his belief was based on just two facts: (1) that Freedman (acting as counsel to the firm) assisted with deposition preparation in conjunction with outside counsel; and (2) that an unnamed attorney at the firm approached him and "expressed concern that Freedman was trying to influence that attorney's testimony to support his discrimination accusations, and was uncomfortable as well." *Id.*

The Court should exclude any such testimony as inadmissible hearsay, improper opinion testimony, more prejudicial than probative, and irrelevant.

Holcomb's statement that an unnamed attorney expressed concerns to him about improper influence is classic hearsay that must be excluded. *See* Fed. R. Evid. 802. Cyrulnik would be offering the anonymous out-of-court statement about concerns over influencing testimony to prove the truth of the matter asserted, namely that Freedman improperly influenced witness testimony. *See Starzynski v. Stanley Black & Decker, Inc.*, 2022 WL 17825920, at *2 (2d Cir. Dec. 21, 2022) (excluding testimony as inadmissible hearsay because it "conveyed information that other employees told the three deponents"); *Mohegan Lake Motors, Inc. v. Maoli*, 559 F. Supp. 3d 323, 347 (S.D.N.Y. 2021) (excluding testimony from summary judgment consideration where a witness "has merely stated his own belief" supported only by inadmissible hearsay).

Without this inadmissible hearsay, Holcomb's allegation that Freedman improperly influenced witness testimony would thus be based entirely on the fact that Freedman—who acts as counsel to the firm and has appeared in this case—helped prepare firm witnesses for their depositions. Simply put, there is nothing improper about this, and allowing Holcomb—an

4

attorney—to suggest otherwise would be highly prejudicial and misleading to the jury. Fed. R. Evid. 403. Any probative value in allowing Holcomb to impugn the credibility of Counterclaim-Defendants and their witnesses is "substantially outweighed" by these dangers, and accordingly any such testimony should be excluded. *Id.*; *see also Shannon v. Koehler*, 2011 WL 10483366, at *6-8 (N.D. Iowa Oct. 19, 2011) (excluding testimony about alleged witness tampering under Rule 403).

In *Shannon*, the court held that the probative value of testimony about alleged witness tampering was "ambiguous at best," but that such testimony was "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial,' because it creates the appearance that [the party] has used improper and deceitful means in securing evidence for trial." 2011 WL 10483366, at *6-8 (citation omitted). On these grounds, the court excluded testimony about alleged witness tampering under Rule 403. *Id.* Here, exclusion is especially appropriate because the risks are heightened by the fact that Holcomb is an attorney, a former Counterclaim-Defendant, and may accordingly be viewed by the jury as speaking with greater credibility and authority as an officer of the court.

Moreover, Holcomb's "belief" about what happened is irrelevant and must be excluded under Rule 402. The only relevant inquiry here is what happened, not what Holcomb is willing to testify he "believed"—a fact no one can dispute because the belief occurred in his head alone.

Furthermore, to the extent Cyrulnik claims Holcomb's "belief" is a lay opinion, it must be excluded. A lay opinion must be "(a) rationally based on the witness's perception," and "(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701. Holcomb's "belief" is neither.

5

As to the first prong, Holcomb's purported knowledge is based on (inadmissible) hearsay and the (privileged) litigation file and is thus secondhand. Holcomb Decl. ¶ 49; *see Leon v. TransAm Trucking, Inc.*, 2020 WL 728785, at *3 (S.D.N.Y. Feb. 13, 2020) (excluding testimony as improper lay opinion where the witness's testimony was based on "no firsthand knowledge" and instead, went "beyond his personal perceptions"); *Bernstein v. Vill. of Wesley Hills*, 95 F. Supp. 3d 547, 559 (S.D.N.Y. 2015) ("While the Court does not doubt that [declarant] is *aware* of at least some of the assertions in his Affirmation, they remain inadmissible if not based on personal knowledge." (emphasis in original)).

As to the second prong, Holcomb's testimony will not be "helpful." Witnesses that Freedman helped prepare will presumably testify about their firsthand knowledge on cross-examination, so there is no need for Holcomb to speculate about their perceptions. *See United States v. Grinage*, 390 F.3d 746, 749 (2d Cir. 2004) (holding that summary testimony based on a review of the evidence was improper lay testimony because allowing it would "usurp[] the function of the jury to decide what to infer from the content of the [evidence]"). In addition, Holcomb's opinion has no admissible bases because, as shown above, he may not testify about the alleged facts underlying that opinion. As a result, his opinion testimony would simply "tell[]" the jury "in conclusory fashion what it should find." *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992).

**III.    The Court should exclude any testimony from Holcomb that he would vote differently on Cyrulnik's removal today.**

As part of Holcomb's declaration, he claims that "[i]f I had known everything then that I know today, I would not have voted to remove Cyrulnik from the firm." Holcomb Decl. ¶ 24; *see also id.* ¶ 38 ("If I had known everything then that I know today, including these facts, I would not have voted to remove Cyrulnik from the firm."). Holcomb added: "if I had not voted to remove Cyrulnik, then there would not have been the two-thirds majority required to remove

6

Cyrulnik from the firm, and the vote to remove him would have failed." *Id*. at ¶ 38. Such testimony should be excluded because it is entirely irrelevant and poses a substantial risk of confusing the issues and misleading the jury. Fed. R. Evid. 402, 403.

The principal questions for the jury in this case are whether there was cause to remove Cyrulnik, and what damages—if any—Cyrulnik might be entitled to as a result of his removal. Holcomb does not state in his declaration that the firm lacked cause to remove Cyrulnik or that the vote to remove him was a breach of contract or fiduciary duty; nor does he deny that the firm was going to fail if Cyrulnik remained. In fact, in his declaration, Holcomb maintains that issues relating to Cyrulnik presented "an existential threat to the firm" and that it was "necessary for the sake of the firm's survival" for Holcomb to "vote in favor of Cyrulnik's removal." Holcomb Decl. ¶¶ 33, 38. Similarly, at his deposition, Holcomb testified that he *continues* to believe that there was "cause" to remove Cyrulnik and that Cyrulnik's removal was appropriate:

> Q. Is it your testimony that that December call, that Jason's actions on that December call constituted cause for removal?
>
> A. It is my testimony that Jason's actions combined on that call, combined with an ongoing set of behaviors had brought firm to the point that we could not practically operate as a business with Jason as a partner. So I did not in, at the time or now sort of parse out the individual, the individual pieces as to whether each individual piece would hypothetically constitute cause in the absence of the others. What I thought about was how those pieces added up to a situation in which the firm was in crises and in which its ability to operate as a business was at great risk.
>
> Q. Was it your understanding that at the time in or around December, January or February '20 and 2021 was it your understanding that cause is defined as reasonably practical to carry on the business of the firm?
>
> A. My understanding at the time was that that was a standard that would inform the interpretation of cause as an undefined term in the MOU.
>
> Q. Did that understanding ever change?
>
> A. No.

7

Declaration of Randy M. Mastro ("Mastro Decl."), Ex. 1 (Holcomb Dep. Tr.) 223:18-225:3; *see also id.* at 21:17-25 ("I think it is very upsetting that we had to remove Jason. I was never upset that we made the decision to remove Jason under the circumstances that we were presented with."), 238:13-239:4 ("I by the end of the day on February 8th, was firmly of the view that there was cause to remove Jason and thought that that would be the likeliest outcome.").

But notwithstanding this unambiguous testimony, Holcomb now intends to testify that he later came to believe that Roche and Freedman also were not good people, and that for this reason, he would not have voted to remove Cyrulnik in retrospect. Holcomb Decl. ¶¶ 24, 38. Whether Holcomb would have voted differently in an alternative and hypothetical universe, however, simply has no bearing on any of the claims or issues in this case. Because "there is virtually no probative value in testimony about what 'may' have happened (as opposed to what actually did happen), the balance falls heavily in favor of disallowing the testimony." *United States v. Connolly*, 2018 WL 5023785, at *4 (S.D.N.Y. Oct. 1, 2018); *see also, e.g., Benzinger v. Lukoil Pan Ams., LLC*, 2021 WL 431169, at *8 (S.D.N.Y. Feb. 8, 2021) (excluding irrelevant "hypothetical estimates" under Rule 403 because "they would carry a serious risk of confusing the jury as to their relevance, and/or misleading the jury to conclude" that defendant "was liable and owed such amounts"). Indeed, as Judge Posner memorably put it, this kind of what-would-have-happened testimony is "worthless" because "there is no way in which such testimony could be tested." *Emerald Invs. Ltd. P'ship v. Allmerica Fin. Life Ins. & Annuity Co.*, 516 F.3d 612, 618 (7th Cir. 2008).

On the other side of the Rule 403 scale, it would only confuse the issues and mislead the jury to allow Cyrulnik to elicit testimony that Holcomb would have voted differently in a hypothetical, alternative universe. Indeed, the issue in this case is whether Counterclaim-Defendants had "cause" to remove Cyrulnik and Holcomb has clearly testified that they did. Given this testimony, it would make

8

it utterly mystifying for him to even be talking about a counterfactual world in which "if [Holcomb] had not voted to remove Cyrulnik, then there would not have been the two-thirds majority required to remove Cyrulnik from the firm, and the vote to remove him would have failed." Holcomb Decl. ¶ 38. Testimony like this is highly likely to confuse or mislead the jury by suggesting that Holcomb's speculation about how he would have voted under different circumstances is relevant or might somehow render the removal vote invalid.

In addition, any such counterfactual testimony should also be excluded because it constitutes an improper lay opinion that is not "rationally based" on Holcomb's "perception." Fed. R. Evid. 701 (opinion testimony by lay witnesses); *see also* Fed. R. Evid. 602 (personal knowledge requirement).

Simply put, as explained further below, "hypothetical questions are inappropriate for fact witnesses." *Am. Home Assurance Co. v. Fremont Indem. Co.*, 1992 WL 100499, at *1 (S.D.N.Y. May 4, 1992); *see also Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 2020 WL 3582029, at *5 (S.D.N.Y. July 1, 2020) ("That Rule 701 testimony must be 'rationally based on the witness's perception' remains an important limitation. For example, 'lay witnesses generally are not entitled to express opinions based on hypothetical questions.'" (quoting 4 Weinstein's Federal Evidence § 701.03 (2020))).

Rule 701 requires lay opinion testimony to be "rationally based on the witness's perception." Fed. R. Evid. 701(a). "Given this requirement, an individual testifying as a lay witness generally cannot answer hypothetical questions because speculative testimony about what 'might have happened' or what a witness 'would have done under different circumstances cannot possibly be based on the witness's perception.'" *Sempra Energy v. Marsh USA, Inc.*, 2008 WL 11335050, at *13 (C.D. Cal. Oct. 15, 2008) (quoting *Evanston Bank v. Brink's Inc.*, 853 F.2d 512, 515 (7th Cir. 1988)); *see also Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993) (affirming

9

exclusion of testimony about what a witness "would have done" because it was not based on his perception); *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 15 n.8 (1st Cir. 2001) (same); *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 204 (4th Cir. 2000) (holding district court erred in admitting hypothetical testimony by lay witness). Accordingly, "[v]ague, self-serving speculative testimony concerning what a party would have done under different circumstances is generally not admissible." *Devaney v. Chester*, 1989 WL 52375, at *5 (S.D.N.Y. May 10, 1989) (quoting *Bridgen v. Scott*, 456 F. Supp. 1048, 1063 (S.D. Tex. 1978)).[2]

      This Court should do what courts routinely do and exclude such hypothetical testimony by a lay witness. Where, as here, "a lay witness cannot establish that personal knowledge forms the basis of his or her opinion, the testimony is inadmissible." *TiVo Research & Analytics, Inc. v. TNS Media Research LLC*, 2017 WL 213804, at *5, 8 (S.D.N.Y. Jan. 18, 2017) (excluding testimony that was not "grounded in personal knowledge"); *see also United States v. King*, 1997 WL 666778, at *11 (S.D.N.Y. Oct. 24, 1997) (excluding testimony because "[s]ince a lay witness' opinion must be based on personal knowledge, 'unlike an expert, a lay witness may not answer hypothetical questions'") (quoting 4 Weinstein's Federal Evidence, § 701.03, at 701–9 (rev.2d ed.1997)), *rev'd on other grounds,* 134 F.3d 1173 (2d Cir. 1998); *Buckman v. Bombardier Corp.*, 893 F. Supp. 547, 561 (E.D.N.C. 1995) (granting motion in limine to exclude hypothetical testimony); *Hilburn v. Deere & Co.,* 1990 WL 119690, at *3 (E.D. Pa. Aug. 7, 1990) (holding objection to hypothetical questions for lay witness was properly sustained).

---

[2] The speculative nature of Holcomb's testimony distinguishes it from the testimony at issue in *United States v. Cuti*, where the "witnesses' reasoning" regarding how they would have acted in a hypothetical situation was "based on undisputed accounting rules," leaving "little room for the witnesses to engage in speculation." 720 F.3d 453, 458-59 (2d Cir. 2013).

For these reasons, pursuant to Rules 402, 403, 602, and 701, the Court should preclude Cyrulnik from posing hypothetical questions about how Holcomb would have voted.

## IV. The Court should exclude evidence and testimony about the Fattaruso litigation.

After Cyrulnik was removed from the firm, his right-hand man, Paul Fattaruso joined him and established Cyrulnik Fattaruso LLP (Cyrulnik's current firm). Fattaruso then sued the firm and Counterclaim-Defendants in Florida state court over a dispute regarding, *inter alia*, his equity partner status. Notably, Fattaruso was not a signatory to the MOU, the operative agreement in this case. Fattaruso's case eventually settled. Cyrulnik should not be permitted to introduce evidence about that lawsuit or its settlement under Rule 403, as it has limited probative value and is highly likely to confuse the jury.

"Courts routinely exclude 'evidence relating to previous litigation involving one or both of the same parties' where the merits of those prior litigations would 'become inextricably intertwined with the case at bar.'" *MF Glob. Holdings*, 232 F. Supp. 3d at 568 (quoting *Arlio*, 474 F.3d at 53). That is precisely the situation here. Like Cyrulnik, Fattaruso alleged he was an equity partner in the firm and that he was entitled to compensation following his departure. "The jury could easily confuse any evidence regarding the merits of" Fattaruso's claims "with the merits of this case, causing undue prejudice to" Counterclaim-Defendants. *Id.* In addition, the fact the Fattaruso litigation settled should "carry little evidentiary weight because" it is "'too tightly bound to the incentive to avoid litigation to cast much light on the underlying merits of the case.'" *Id.* (quoting *Sanders v. Madison Square Garden, L.P.*, 525 F. Supp. 2d 364, 369 (S.D.N.Y. 2007)). Thus, the Court should exclude any evidence about Fattaruso's prior and unrelated lawsuit.

## **CONCLUSION**

For the foregoing reasons, Holcomb's testimony about privileged information, witness tampering, and what he would have done in an alternate universe, should be excluded. Moreover, evidence relating to the Fattaruso litigation should likewise be excluded.

Dated: February 27, 2024
       New York, NY

Respectfully submitted,

*/s/ Randy M. Mastro*
Randy M. Mastro
Lauren K. Myers
King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Tel.: (212) 827-4019
Email: RMastro@kslaw.com
          LMyers@kslaw.com

*Counsel for Plaintiff and Counterclaim-Defendant Roche Freedman LLP, and Counterclaim-Defendants Kyle Roche, Devin Freedman, Amos Friedland, and Edward Normand*

**CERTIFICATE OF COMPLIANCE**

      I hereby certify that according to the word count feature of the word processing program used to prepare this brief, the brief contains 3,573 words (exclusive of the cover page, certificate of compliance, table of contents, and table of authorities), and complies with Local Civil Rule 11.1 of the Southern District of New York, as well as with this Court's Individual Practice Rule 2.D.

                                                                          */s/ Randy M. Mastro*
                                                                         Randy M. Mastro