Marc E. Kasowitz (mkasowitz@kasowitz.com)
Kevin A. Cyrulnik (kcyrulnik@kasowitz.com)
Gavin D. Schryver (gschryver@kasowitz.com)
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel.:   (212) 506-1700
Fax:   (212) 506-1800

*Attorneys for Defendant/Counterclaim-Plaintiff Jason Cyrulnik*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROCHE FREEDMAN LLP,<br><br>            Plaintiff,<br><br>    v.<br><br>JASON CYRULNIK,<br><br>            Defendant. | Case No. 1:21-cv-01746-JGK |
| JASON CYRULNIK,<br><br>            Counterclaim-Plaintiff,<br><br>    v.<br><br>ROCHE FREEDMAN LLP, KYLE ROCHE, DEVIN FREEDMAN, AMOS FRIEDLAND, NATHAN HOLCOMB, and EDWARD NORMAND,<br><br>            Counterclaim-Defendants. | |

**DEFENDANT/COUNTERCLAIM-PLAINTIFF JASON CYRULNIK'S**
**MEMORANDUM OF LAW IN SUPPORT OF HIS *DAUBERT* MOTION TO EXCLUDE**
<u>**THE OPINIONS AND TESTIMONY OF DAVID G. KEYKO**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

RELEVANT BACKGROUND ............................................................................................... 3

ARGUMENT ............................................................................................................................ 4

    I.    Legal Standard For Excluding Expert Testimony .................................................. 4

    II.    Keyko's Opinions And Testimony Would Infringe On The Role Of The Court ............................................................................................................................... 6

    III.    Keyko's Opinions And Testimony Are Not Relevant ........................................... 9

    IV.    Keyko's Factual Narrative Is Improper ................................................................ 11

    V.    Keyko's Opinions and Testimony Should Be Excluded Under Rule 403 ............ 12

CONCLUSION ....................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002)......................................................................................5, 6

*Arista Records LLC v. Lime Grp. LLC*,
   2011 WL 1674796 (S.D.N.Y. May 2, 2011) ...............................................................9

*Bernstein v. Bernstein Litowitz Berger & Grossman LLP*,
   814 F.3d 132 (2d Cir. 2016).......................................................................................7, 8

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)..........................................................................................1, 4, 9, 12

*In re Fosamax Prod. Liab. Litig.*,
   645 F. Supp. 2d 164 (S.D.N.Y. 2009)........................................................................12

*Hygh v. Jacobs*,
   961 F.2d 359 (2d Cir. 1992).......................................................................................7

*Island Intell. Prop. LLC v. Deutsche Bank AG*,
   2012 WL 526722 (S.D.N.Y. Feb. 14, 2012) ...............................................................11

*Joffe v. King & Spalding LLP*,
   2019 WL 4673554 (S.D.N.Y. Sept. 24, 2019).................................................... *passim*

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999)....................................................................................................5

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
   32 F. Supp.3d 453 (S.D.N.Y. 2014)............................................................................11

*In re M/V MSC Falminia*,
   2017 WL 3208598 (S.D.N.Y. 2017)...................................................................6, 9, 11

*Music Sales Corp. v. Morris*,
   73 F Supp. 2d 364 (S.D.N.Y. 1999)............................................................................7

*Niesig v. Team I*,
   76 N.Y.2d 363 (1990) .................................................................................................7

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005)....................................................................................6, 12

*In re Rezulin Prods. Liab. Litig.*,
    369 F. Supp. 2d 398 (S.D.N.Y. 2005) ............................................................................. 9

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) ........................................................................... 10

*S.E.C. v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013) ........................................................................... 11

*United States v. Avenatti*,
    2022 WL 103298 (S.D.N.Y. Jan. 11, 2022) ............................................................... 5, 9

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) ......................................................................................... 5

*United States v. Gatto*,
    986 F.3d 104 (2d Cir. 2021) ..................................................................................... 5, 12

*United States v. Kurland*,
    2022 WL 2669897 (E.D.N.Y. July 11, 2022) ........................................................ 7, 8, 9

*Villa v. Heilmann*,
    162 Vt. 543 (1994) ......................................................................................................... 9

## Other Authorities

Fed. R. Evid. 401 ................................................................................................................ *passim*

Fed. R. Evid. 402 ................................................................................................... 1, 2, 4, 10

Fed. R. Evid. 403 ................................................................................................................ *passim*

Fed. R. Evid. 702 ................................................................................................................ *passim*

Defendant/Counterclaim-Plaintiff, Jason Cyrulnik, respectfully submits this memorandum of law in support of his motion, pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and Federal Rules of Evidence 401, 402, 403 and 702, to exclude the opinions and testimony of David G. Keyko, a putative expert witness proffered by Plaintiff/Counterclaim-Defendant Roche Freedman LLP ("RF" or the "Firm") and Counterclaim-Defendants Kyle Roche, Devin Freedman, Amos Friedland, and Edward Normand (together with the Firm, "Counterclaim-Defendants").[1]

## PRELIMINARY STATEMENT

In support of their claim that they had "cause" to remove Cyrulnik, the Firm seeks to introduce the testimony of David Keyko, a partner at Pillsbury Winthrop Shaw Pittman LLP, to opine on the New York Rules of Professional Conduct (the "NY RPCs").  Keyko states in his declaration (the "Keyko Declaration") that he has been asked to "opine on the conduct of [Cyrulnik] in connection with his prior employment as a partner of the Firm and also in connection with certain positions he has taken in this litigation."  Specifically, Keyko intends to opine that Cyrulnik supposedly NY RPCs and applicable court rules governing letters of engagement; Cyrulnik violated his ethical obligations by engaging in unlawful discriminatory conduct, abusive behavior, and by making material misrepresentations; and that Cyrulnik's position that he is entitled to 25% of certain cryptocurrency tokens ("Tokens") pursuant to the parties' binding Memorandum of Understanding ("MOU") would result in a violation of both the

---

[1] Citations to "Ex. __" refer to exhibits attached to the February 27, 2024 Omnibus Declaration of Marc E. Kasowitz in Support of Cyrulnik's February 27, 2024 Motions (the "Kasowitz Declaration").  Unless otherwise noted, all emphasis is supplied and internal citations and quotations are omitted.

NY RPCs and the Florida Rules of Professional Conduct (the "FL RPCs"). Keyko's opinions and testimony should be excluded pursuant to Rules 401, 402, 403 and 702 for four reasons.

*First*, courts in the Second Circuit routinely preclude legal ethics experts from offering precisely the type of opinions and testimony regarding the Rules of Professional Conduct that Keyko intends to offer here because such testimony involves legal issues and improperly usurps the Court's role of advising the jury on what the law is.

*Second*, Keyko's opinions are not relevant to any issue in this litigation. Whether any alleged violations of the NY RPCs occurred has no bearing on whether Cyrulnik was removed from the Firm for "cause." Indeed, Counterclaim-Defendants have never cited any authority holding or suggesting that the purported violations of the NY RPCs would constitute "cause" for Cyrulnik's removal, nor does Keyko even opine that they would (nor did they cite any such violations as grounds for their actions in the Removal Email). Accordingly, Keyko's opinions have no relevance to issues of fact in this litigation and his testimony should be excluded under Rules 401, 402 and 702.

*Third*, the vast majority of Keyko's Declaration consists of summaries regurgitating Counterclaim-Defendants' (false) allegations against Cyrulnik. Keyko should be precluded from providing any testimony that provides a mere summary of disputed facts, because it is improper under Rule 702 for an expert to act as a narrator of facts with respect to which he has no first-hand knowledge.

*Fourth*, if the Court were to conclude that Keyko's opinions and testimony have any relevance at all, his testimony should be excluded under Rule 403 because the limited probative value is substantially outweighed by the danger of unfair prejudice.

For these reasons, and as more specifically set forth therein, Keyko's opinions and testimony should be excluded.

## RELEVANT BACKGROUND

This case concerns an egregious scheme orchestrated by Counterclaim-Defendants to improperly take for themselves the extremely valuable assets to which Cyrulnik is entitled under the parties' Memorandum of Understanding ("MOU").  On February 12, 2021, with no notice whatsoever, Counterclaim-Defendants sent an email to Cyrulnik (the "Removal Email") "informing" him that "pursuant to" the MOU, he had been "removed" from and from RF, the firm he co-founded and built.

In the Removal Email, Counterclaim-Defendants claimed they had "cause" to remove Cyrulnik because he allegedly engaged in "unprofessional, unhealthy, and extended verbal abuse to other partners," "creating unsustainable environments for associates," and numerous efforts to exercise "unilateral control" over aspects of the firm, both to monopolize firm resources and "to undermine the intent of the MOU."  (Ex. 12 (Removal Email) at 1.)  During the course of this litigation, Counterclaim-Defendants have concocted new "justifications" for their spurious claim that they had "cause" to remove Cyrulnik—claiming for the first time that, among other things, he allegedly engaged in gender and racial discrimination or violated ethical obligations by allegedly failing to obtain signed engagement agreements from certain firm clients.  (*E.g.*, Dkt. 513 (Counterclaim-Defendants' SJ Brief) at 27-33.)

Apparently in support of their argument that these allegations—none of which are true—gave them "cause" to perpetrate their removal scheme, Counterclaim-Defendants have identified a purported expert on the NY RPCs that Counterclaim-Defendants wish to call as a witness in this case.  That witness, David G. Keyko, has summarized his opinions as follows:

3

      a. *First,* Cyrulnik's failure to memorialize the terms of engagement through either a written letter of engagement or a retainer agreement with the clients for which he was responsible as a partner of the Firm violated the NY RPCs as well as the applicable court rules governing letters of engagement. This failure not only left the Firm vulnerable to accusations of misconduct but also exposed the Firm to significant risk by materially limiting the Firm's ability to set the scope of its representation of Firm clients and to collect its fees.

      b. *Second,* Cyrulnik's unlawful discriminatory conduct towards Firm employees violated his ethical obligations and exposed the Firm to significant risk.

      c. *Third,* Cyrulnik's abusive behavior towards his fellow partners and opposing counsel similarly violated his ethical obligations and exposed the Firm to significant risk.

      d. *Fourth,* Cyrulnik's proposed reading of the Memorandum of Understanding at issue in this litigation, under which he claims he is entitled to 25% of certain cryptocurrency tokens to be paid by a Firm client, would result in a violation of the applicable ethics rules.

      e. *Fifth,* Cyrulnik violated the NY RPCs when he made material misrepresentations during his negotiations over his employment with the Firm.

(Ex. 27 (Keyko Decl.) ¶ 4.)

      As set forth herein, Keyko's opinions and testimony should be excluded because they are improper, irrelevant, and would be unfairly prejudicial.

## ARGUMENT

### I. Legal Standard For Excluding Expert Testimony

      The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. In *Daubert v. Merrell Dow Pharms.*, the Supreme Court established a two-part test for the admissibility of expert testimony: the expert opinion must be (1) relevant and (2) reliable. 509 U.S. 579, 589-91 (1993). "Relevant evidence" is defined as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence." *Daubert*, 509 U.S. at 587 (citing Fed. R. Evid. 401). "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

The trial court is the "gatekeeper" to exclude expert testimony that is irrelevant (like Keyko's proposed testimony here) or unreliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002). Expert testimony is relevant if it will "help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702. Expert testimony is reliable if it is "based upon sufficient facts or data," is "the product of reliable principles and methods," and the expert "applies the principles and methods reliably to the facts of the case." *Id*.

Furthermore, where an expert intends to opine on issues of law, such testimony should be precluded because it improperly usurps the role of the court to instruct the jury on such issues and is not helpful to the jury. *See United States v. Bilzerian,* 926 F.2d 1285, 1294-95 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is inadmissible."); *United States v. Avenatti*, 2022 WL 103298, at *2 (S.D.N.Y. Jan. 11, 2022) ("It is well established that it is not for witnesses to instruct the jury as to applicable principles of law, but for the judge."); *Joffe v. King & Spalding LLP,* 2019 WL 4673554, at *3 (S.D.N.Y. Sept. 24, 2019) ("An expert's opinion must be precluded if it undertakes to tell the jury what result to reach and attempts to substitute the expert's judgment for the jury's.") (citing *Nimely v. City of New York,* 414 F.3d 381, 397 (2d Cir. 2005)).

Even if the court determines that a putative expert's testimony is admissible under Rule 702, the court must also conduct a Rule 403 balancing analysis to determine whether the expert's testimony would be unduly prejudicial. *See United States v. Gatto,* 986 F.3d 104, 117 (2d Cir. 2021) (the court "must also determine whether the proffered evidence is relevant, and, if so,

5

whether its probative value is substantially outweighed by the danger of unfair prejudice"); *Nimely,* 414 F.3d at 397 (explaining that Rule 403 analysis is "uniquely important . . . given the unique weight [expert] evidence may have in a jury's deliberations").

The proponent of the expert testimony has the burden of establishing its admissibility by a preponderance of the evidence. Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendments). The Second Circuit has urged courts to "undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand" when determining whether to admit expert testimony. *Amorgianos*, 303 F.3d at 267.

For the reasons set forth below, the Firm cannot meet its burden, and Keyko's testimony should be excluded.

## II. Keyko's Opinions And Testimony Would Infringe On The Role Of The Court

Keyko proposes to testify regarding the duties imposed by specific NY RPCs, New York court rules, and the Florida Rules of Professional Conduct ("FL RPCs")[2], and he further intends to opine as to whether Cyrulnik violated any duties or if remittance of his Tokens pursuant to the MOU would somehow run afoul of these rules. (Ex. 27 (Keyko Decl.) at 2-3.) Keyko's

---

[2] Keyko does not have a license to practice law in Florida, nor has he been admitted to practice in any court in Florida. (*See* Ex. 27 (Keyko Decl.) at Ex. A (Keyko Biography), p.7.) While Keyko may be qualified to opine on the NY RPCs, he has no basis to opine on the FL RPCs. *See Nimely.,* 414 F.3d at 399 n.13 (While a witness may "qualif[y] as an expert within certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields."); *In re M/V MSC Falminia*, 2017 WL 3208598 (S.D.N.Y. 2017) at *4 ("An individual with expertise in one field may not offer opinions in another: the expertise and area of proffered opinions should be closely related."). Accordingly, to the extent the Court permits Keyko to testify at all, he should not be permitted to offer any opinions or testimony regarding the FL RPCs.

testimony must be excluded because such testimony improperly usurps the role of the court in instructing the jury on the law and is therefore not helpful to the jury.

It is well-settled in the Second Circuit that legal ethics experts are permitted to testify only "as to the ordinary practices of those engaged in the business of law, legal studies, or law-related fields, or as to trade customs and usages of those so employed." *Music Sales Corp. v. Morris*, 73 F Supp. 2d 364, 381 (S.D.N.Y. 1999). This is due to the "longstanding rule that expert testimony on issues of domestic law is not to be considered." *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 144 (2d Cir. 2016); *see Morris*, 73 F. Supp. 2d at 381 ("This Court has repeatedly held that the testimony of an expert on matters of domestic law is inadmissible for any purpose.") (citing *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion ....")). This rule applies to bar testimony about RPCs even though they are not technically law:

> While it is true that the disciplinary rules themselves do not have the force of law, their interpretation is nevertheless governed by judicial precedent. *See Niesig v. Team I*, 76 N.Y.2d 363, 369 (1990) ("The code does not have the force of law.... We are not constrained to read the rules literally or effectuate the intent of the drafters, but look to the rules as guidelines to be applied with due regard for the broad range of interests at stake.... When we find an area of uncertainty, however, we must use our judicial process to make our own decision in the interests of justice to all concerned."). As a result, an expert opinion as to the meaning of the RPC must be consistent with controlling caselaw for it to be valid—and yet, if the testimony were to be premised on the expert's interpretation of judicial precedent, the testimony would impinge on the Court's obligation to instruct the jury on the law.

*Joffe v. King & Spaulding LLP*, 2019 WL 4673554, *17 (Sept. 24, 2019 S.D.N.Y.); *see also United States v. Kurland*, 2022 WL 2669897, at *13-14 (E.D.N.Y. July 11, 2022) ("Though the rules of professional conduct are not law, courts in this circuit have recognized that, as

7

distinguished from ethics standards in other professions, the legal professional rules are inextricably bound up with the law. . . . Consequently, these types of expert opinions encroach on the trial court's role of instructing the jury as to the applicable law. In accordance with this understanding, courts in this circuit have routinely precluded expert testimony that purports to interpret a state's legal ethics rules.").

The discussion in *Joffe* is particularly instructive. There, a litigation associate was allegedly terminated in retaliation for raising ethical concerns about the conduct of two partners. *See* 2019 WL 4673554 at *1. The defendant law firm sought to introduce the testimony of an indisputably qualified ethics expert to "opine that [defendant] did not commit an ethics violation and that, as a result, Plaintiff had no reporting obligation under the Rules of Professional Conduct and was unreasonable in believing that he had such an obligation." *Id.* at *2. The court excluded the expert's testimony under Rule 702:

> [The expert's] interpretation of the RPC is not helpful to the jury because it is not based on his assessment of ordinary legal custom or practice. Instead, he seeks to testify as to the contents of the RPC, a topic on which the Court can capably instruct the jury. . . . [B]ecause [the expert's] opinion rests entirely on his interpretation of the text of the RPC, it is not admissible. . . . While [the expert] could have been an admissible expert, had he rested his opinion on whether [the parties'] actions were consistent with ordinary and custom legal practice, he did not do so. Thus, [the expert's] opinion is excluded as unhelpful to the jury because it invades the province of the Court to charge the jury on the scope of New York's Rules of Professional Conduct.

*Id.* at *17.

Consistent with the above, ethics experts are routinely precluded from testifying as to the meaning of the RPCs, applying the RPCs to the facts of the case, or opining as to whether any violations of the RPCs occurred. *See*, *e.g.*, *Bernstein*, 814 F.3d at 144 (excluding ethics expert's testimony regarding whether information in a complaint was "confidential" under the NY RPC);

8

*Kurland*, 2022 WL 2669897, at *14-15 (precluding ethics expert from "testify[ing] about the obligations imposed under several New York Rules of Professional Conduct" because such testimony is "routinely precluded" for "encroaching on the trial court's role of instructing the jury as to the applicable law")[3]; *United States v. Avenatti*, 2022 WL 103298, at *2 (S.D.N.Y. Jan. 11, 2022) (excluding legal ethics expert because "[t]o the extent that legal ethics rules generally or California's rules of professional conduct specifically are relevant to the jury's consideration of the charges against Defendant in this case, the proper course is for the Court to give appropriate instructions to the jury, not for an expert to testify").

Because Keyko improperly intends to opine on issues of law (including the RPCs), his testimony would improperly usurp the Court's role and would not be helpful to the jury, and it should be excluded pursuant to Rule 702.

### III. Keyko's Opinions And Testimony Are Not Relevant

Under the relevance prong of *Daubert*, expert witnesses can assist the trier of fact with complex and technical matters. *See In re M/V MSC Flaminia*, 2017 WL 3208598 at *3 (S.D.N.Y. 2017). Expert testimony will be admitted only if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact ***in issue***." Fed. R. Evid. 702(a) (emphasis added); *see also* Fed. R. Evid. 401. "This inquiry

---

[3] The court in *Kurland* noted that "State courts, too, have consistently recognized that the interpretation and application of legal ethics rules is a question of law and have thus limited this kind of expert testimony." 2022 WL 2669897, at *14 n.9 (citing, *e.g.*, *Villa v. Heilmann*, 162 Vt. 543, 551 (1994) ("Plaintiff also argues that the court erred by excluding testimony from a law professor who would have explained why the prohibition against the splitting of fees by unassociated attorneys . . . did not apply. . . . The court did not err in excluding expert testimony on this question of law.")). The *Villa* case cited by *Kurland* is particularly relevant, as the CC Defendants intend to have Keyko opine regarding precisely the same issue, *i.e.*, the NY RPCs' and FL RPCs' prohibition on fee sharing between unassociated attorneys. (Ex. 27 (Keyko Decl.) ¶¶ 41-55.)

9

essentially looks to whether the testimony is relevant." *Arista Records LLC v. Lime Grp. LLC*, 2011 WL 1674796, at *4 (S.D.N.Y. May 2, 2011); *see also In re Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d 398, 420 (S.D.N.Y. 2005) ("The *Daubert* decision recognized that this consideration, which has been described as one of fit, goes primarily to relevance."). Where expert testimony is not relevant to the issues in a litigation, it does not "assist the fact-finder in determining any factual dispute," and therefore is inadmissible. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 544 (S.D.N.Y. 2004).

Here, as set forth in Keyko's Declaration, ostensibly in support of Counterclaim-Defendants' argument that they had "cause" to remove Cyrulnik from the Firm, Keyko intends to testify that alleged conduct violated the NY RPCs. However, Counterclaim-Defendants have never cited a single case or authority holding or even suggesting that whether conduct violates a legal ethics rule determines whether that conduct constitutes cause for terminating an attorney's employment, let alone cause to remove a partner from a law firm he co-founded. Indeed, during his deposition, Keyko conceded that certain NY RPC "rule[s] [are] not enforced, and there are a lot of major law firms that actually [violate them]." (Ex. 28 (Keyko Dep.) 16:18-19:2.) Of course, if certain NY RPCs are "not enforced" and "a lot of major law firms" are operating in violation of the NY RPCs, it is patently ridiculous to equate a violation of the RPCs to "cause" to remove Cyrulnik from the Firm.

Furthermore, Keyko testified that, over the course of his forty-six-year legal career, he could only recall two instances where an attorney was terminated for an ethical violation without being given an opportunity to cure or remedy the attorney's behavior—the first involved an attorney stealing from his firm, and the second involved an attorney stealing from his firm and

the firm's clients, and falsifying tax records. (*See* Ex. 28 (Keyko Dep.) 64:9-66:14.) Cyrulnik, of course, has not been accused of theft.

Accordingly, because Cyrulnik's alleged violation of the RPCs is not relevant to whether Counterclaim-Defendants had cause for removal, Keyko's opinions and testimony should be excluded pursuant to Rules 401, 402, and 702.

## IV. Keyko's Factual Narrative Is Improper

Substantial portions of Keyko's declaration set forth what Keyko terms "Assumed Facts," and multiple other paragraphs consist of purportedly factual recitations of Cyrulnik's conduct in the form of citations to select deposition testimony and documents in the record. (*See* Ex. 27 (Keyko Decl.) ¶¶ 6-22, 28, 35, 36, 39, 42.)

Expert witnesses are not percipient witnesses, and it is inappropriate for them to provide a factual narration. *See In re M/V MSC Flaminia*, 2017 WL 3208598 at *4 (S.D.N.Y. 2017) (Expert witnesses "may not supplant the role of the factfinder by reciting factual narratives or by weighing the evidence to reach factual determinations."); *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 32 F. Supp.3d 453, 460 (S.D.N.Y. 2014) ("[A]n expert may not offer testimony that simply regurgitates what a party has told him or constructs a factual narrative based on record evidence."). It is well-established that "[a]cting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology," and that "[m]ere narration thus fails to fulfill Daubert's most basic requirements." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013); *see also Island Intell. Prop. LLC v. Deutsche Bank AG,* 2012 WL 526722, at *2 (S.D.N.Y. Feb. 14, 2012) (permitting expert witness to provide factual narratives "would inappropriately transform an expert, without firsthand knowledge, into a quasi-fact witness"); *In re Longtop Fin. Techs.*, 32 F. Supp. 3d at 460 (precluding expert from "summarizing facts and documents in the record that the

11

jury is capable of understanding on its own"); *In re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (excluding expert's narrative detailing the factual basis for her opinions, including summaries of deposition testimony).

Accordingly, to the extent permitted to testify in an expert capacity and to the extent Keyko intends to offer, or RF intends to elicit, testimony that purports to summarize or describe Cyrulnik's alleged conduct, such testimony should be excluded because it is not based on Keyko's personal knowledge and is simply an attempt to convey a factual narrative under the guise of expert testimony, which is prohibited.

V.     **Keyko's Opinions and Testimony Should Be Excluded Under Rule 403**

Even if the Court were to determine that Keyko's testimony is relevant under Rule 401 and otherwise admissible under Rule 702 (it is not), the Court must still assess whether the probative value of his testimony is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see Gatto*, 986 F.3d at 117-18; *Nimely,* 414 F.3d at 397-98.  As the Supreme Court held in *Daubert*, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." 509 U.S. at 595.

The Court should preclude Keyko from testifying about the NY RPCs and any alleged violations thereof by Cyrulnik because the limited probative value of his testimony would be substantially outweighed by the danger of unfair prejudice resulting from confusing the jury and distracting them from the actual issues in this case.  As the court in *Joffe* explained when it excluded an ethics expert's testimony regarding the NY RPCs pursuant to Rule 403:

12

> [The expert's] testimony risks creating a mini-trial on the minutia of bar association ethics opinions and [the expert's] theories of legal ethics, none of which is controlling on the Court's eventual instructions as to the correct interpretation and usage of the RPC. The ethics minitrial is also likely to create a sideshow that distracts the jury from the main question —whether Plaintiff had a good faith and reasonable belief that he was obligated to raise an ethics concern, whether he actually communicated that concern to K&S before the adverse employment actions took place, and whether the adverse employment actions were taken in retaliation for his doing so.
>
> In sum, because [the expert's] opinion in this case is only minimally probative and likely to be highly distracting and confusing to the jury, it is excluded pursuant to Rule 403.

2019 WL 4673554, at *17-18. Keyko's proposed testimony should be excluded for precisely the same reasons. If Keyko's testimony is relevant at all (it is not), because there is no clear correlation between a violation of the RPCs and the existence of "cause" to remove Cyrulnik, it would be only marginally probative to the issue of "cause." Yet, permitting Keyko to testify would result in a "mini-trial" regarding the scope of the NY RPCs that is likely to distract and confuse the jury from the actual issue, which is not whether Cyrulnik violated any of the NY RPCs, but rather whether Counterclaim-Defendants had "cause" to remove Cyrulnik from the Firm. Accordingly, Keyko's testimony should be excluded pursuant to Rule 403.

## CONCLUSION

For the reasons set forth above, the Court should grant Cyrulnik's motion and exclude Keyko's testimony.

Dated: New York, New York
February 27, 2024

                              KASOWITZ BENSON TORRES LLP

                              By: */s/ Marc E. Kasowitz*
                                  Marc E. Kasowitz
                                  Kevin A. Cyrulnik
                                  Gavin D. Schryver
                              1633 Broadway
                              New York, New York 10019
                              Tel.: (212) 506-1700
                              Fax: (212) 506-1800
                              Email: mkasowitz@kasowitz.com
                                        kcyrulnik@kasowitz.com
                                        gschryver@kasowitz.com

                              *Attorneys for Counterclaim-Defendant Jason Cyrulnik*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that according to the word count feature of the word processing program used to prepare this brief, the brief contains 3,914 words (exclusive of the cover page, certificate of compliance, table of contents, and table of authorities), and complies with Local Civil Rule 11.1 of the Southern District of New York, as well as with this Court's Individual Practice Rule 2.D.

Dated: New York, New York
February 27, 2024

*/s/ Marc E. Kasowitz*
Marc E. Kasowitz