Marc E. Kasowitz (mkasowitz@kasowitz.com)
Kevin A. Cyrulnik (kcyrulnik@kasowitz.com)
Gavin D. Schryver (gschryver@kasowitz.com)
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel.:   (212) 506-1700
Fax:    (212) 506-1800

*Attorneys for Defendant/Counterclaim-Plaintiff Jason Cyrulnik*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROCHE FREEDMAN LLP, | Case No. 1:21-cv-01746-JGK |
|        Plaintiff, | |
|    v. | |
| JASON CYRULNIK, | |
|        Defendant. | |
| | |
| JASON CYRULNIK, | |
|        Counterclaim-Plaintiff, | |
|    v. | |
| ROCHE FREEDMAN LLP, KYLE ROCHE, DEVIN FREEDMAN, AMOS FRIEDLAND, NATHAN HOLCOMB, and EDWARD NORMAND, | |
|        Counterclaim-Defendants. | |

**DEFENDANT/COUNTERCLAIM-PLAINTIFF JASON CYRULNIK'S**
**MEMORANDUM OF LAW IN SUPPORT OF HIS *DAUBERT* MOTION TO EXCLUDE**
**THE OPINIONS AND TESTIMONY OF CHRISTINE PORATH, PH.D.**

### TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT BACKGROUND ................................................................................................. 3

ARGUMENT .......................................................................................................................... 5

    I.    Legal Standard For Excluding Expert Testimony ................................................. 5

    II.   Dr. Porath's Opinions Regarding Incivility Are Not Relevant............................... 6

    III.  Dr. Porath's Opinions Are Unreliable ................................................................ 11

    IV.  Dr. Porath's Opinions And Testimony Are Not Helpful For The Jury ................. 13

    V.   Dr. Porath's Factual Narrative Is Improper ....................................................... 16

    VI.  Dr. Porath's Testimony Should Be Excluded Under Rule 403 ......................... 17

CONCLUSION..................................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002)..................................................................5, 6, 11

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  2015 WL 5003528 (S.D.N.Y. Aug. 20, 2015)................................................14, 15

*Cameron v. City of New York*,
  598 F.3d 50 (2d Cir. 2010)...........................................................................13

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ............................................................................ *passim*

*In re Fosamax Prod. Liab. Litig.*,
  645 F. Supp. 2d 164 (S.D.N.Y. 2009)..............................................................16

*Highland Capital Mgmt. v. Schneider*,
  379 F. Supp. 2d 461 (S.D.N.Y. 2005)..............................................................14

*Joffe v. King & Spalding LLP*,
  2019 WL 4673554 (S.D.N.Y. Sept. 24, 2019).......................................................17

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999)......................................................................................5

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
  32 F. Supp. 3d 453 (S.D.N.Y. 2014)..................................................................16

*In re Lyondell Chem. Co.*,
  558 B.R. 661 (Bankr. S.D.N.Y. 2016) ...............................................................13

*In re M/V MSC Flaminia*,
  2017 WL 3208598 (S.D.N.Y. 2017)................................................................6, 16

*Marvel Worldwide, Inc. v. Kirby*,
  777 F. Supp. 2d 720 (S.D.N.Y. 2011)................................................................14

*Nimely v. City of N.Y.*,
  414 F.3d 381 (2d Cir. 2005)........................................................................6, 14, 17

*In re Rezulin Prod. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004).............................................................7, 14, 15

*S.E.C. v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013)..........................................................................16

*Salem v. U.S. Lines Co.*,
    370 US 31 (1962)....................................................................................................15

*United States v. Castillo*,
    924 F.2d 1227 (2d Cir. 1991)..................................................................................15

**Other Authorities**

Federal Rule of Evidence Rule 401 ............................................................ *passim*

Federal Rule of Evidence Rule 402 ....................................................1, 2, 5, 7

Federal Rule of Evidence Rule 403 ............................................................ *passim*

Federal Rule of Evidence Rule 702 ............................................................ *passim*

Defendant/Counterclaim-Plaintiff Jason Cyrulnik respectfully submits this memorandum of law in support of his motion, pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and the Federal Rules of Evidence 401, 402, 403 and 702, to exclude the opinions and testimony of Christine Porath, Ph.D ("Dr. Porath"), a putative expert witness proffered by Plaintiff/Counterclaim-Defendant Roche Freedman LLP ("RF" or the "Firm").[1]

## PRELIMINARY STATEMENT

In support of their claim that they had "cause" to remove Cyrulnik from RF, the Firm seeks to introduce the testimony of Dr. Porath, a professor of organizational psychology and management at Georgetown University.  Dr. Porath purports to be an expert on "incivility," and proposes to testify regarding the clinical definition of incivility and how incivility can cause a toxic workplace; the effects incivility and a toxic workplace can have on individuals and an organization; and whether the  cherry-picked evidence she reviewed "demonstrates that Cyrulnik demonstrated a pattern of incivility and created a toxic workplace while he was at the Firm."  Dr. Porath's testimony is irrelevant and improper, and must be excluded under Rules 401, 402, 403 and 702, for five related reasons.

*First*, Dr. Porath's opinions are not relevant to any issue in this litigation.  Whether Cyrulnik engaged in any "uncivil" conduct has no bearing on whether Cyrulnik was removed from the Firm for "cause," and indeed Dr. Porath disclaims any opinion on whether acting uncivilly would constitute "cause" for termination, or whether the Firm was justified in removing Cyrulnik.  Further, Dr. Porath testified that incivility is in the "eyes of the beholder"—meaning it is entirely subjective—and the best way to determine if conduct was perceived to be uncivil and

---

[1]  Citations to "Ex. __" refer to exhibits attached to the February 27, 2024 Omnibus Declaration of Marc E. Kasowitz in Support of Cyrulnik's February 27, 2024 Motions (the "Kasowitz Declaration").  Unless otherwise noted, all emphasis is supplied and internal citations and quotations are omitted.

the consequences of that conduct is to ask the people to whom the conduct was directed—
something the jury can do for itself, without the aid of Dr. Porath.  Because Dr. Porath's
proffered opinions have no relevance to issues of fact in this litigation, her testimony should be
excluded under Rules 401, 402 and 702.

*Second*, Dr. Porath's opinions should be excluded under Rule 702 because they are not
based on a reliable methodology and are impermissibly speculative.  Indeed, while Dr. Porath
states that the first step of her "methodology" is to "identify whether and what type of incivility
has occurred," she expressly states in her report and testified at deposition that she is offering no
opinion on whether Cyrulnik actually engaged in any uncivil conduct, meaning she did not even
follow the methodology she claims to have applied.  Furthermore, that Dr. Porath's
"methodology" is improperly and impermissibly speculative is apparent from Dr. Porath's own
description of her supposed "methodology" as merely assessing what effects specific uncivil
conduct "can have" on people and organizations.  Relatedly, to the extent Dr. Porath were to
offer an opinion as to whether Cyrulnik actually engaged in any uncivil conduct or whether that
conduct had any consequences on the Firm, any such opinion would be inadmissible because it
would require Dr. Porath to impermissibly opine on the credibility of fact witnesses, and/or
testify as to the state of mind and perceptions of the individuals who actually interacted with
Cyrulnik.

*Third*, Dr. Porath's testimony should be excluded because it will not be helpful to the
jury, which will be made up of individuals who have spent their lives interacting with other
people, including in the workplace.  The jurors in this case will be perfectly capable of
determining whether Cyrulnik's alleged conduct was "uncivil," and/or what affect any such
conduct had on the Firm.  Accordingly, because Dr. Porath's testimony is not helpful for the jury

to understand what "uncivil" behavior is and will not assist the jury with determining a fact in issue, Dr. Porath's testimony should be excluded under Rule 702.

*Fourth*, much of Dr. Porath's report consists of summaries regurgitating Counterclaim-Defendants' (false) allegations against Cyrulnik. Dr. Porath should be precluded from providing any testimony that provides a mere summary of disputed facts, because it is improper under Rule 702 for an expert to act as a narrator of facts with respect to which she has no first-hand knowledge.

*Fifth*, if the Court were to conclude that Dr. Porath's opinions and testimony have any relevance at all, her testimony should be excluded under Rule 403 because the limited probative value is substantially outweighed by the danger of unfair prejudice.

For these reasons, and as more specifically set forth below, Dr. Porath's opinions and testimony should be excluded.

## <u>RELEVANT BACKGROUND</u>

This case concerns an egregious scheme orchestrated by Counterclaim-Defendants to improperly take for themselves the extremely valuable assets to which Cyrulnik is entitled under the parties' Memorandum of Understanding ("MOU"). On February 12, 2021, with no notice whatsoever, Counterclaim-Defendants sent an email to Cyrulnik (the "Removal Email") "informing" him that "pursuant to" the MOU, he had been "removed" from RF, the firm he co-founded and built. In the Removal Email, Counterclaim-Defendants claimed they had "cause" to remove Cyrulnik because he allegedly engaged in "'repeated instances of unprofessional, unhealthy, and extended verbal abuse to other partners,' 'creating unsustainable environments for associates,' and numerous efforts to exercise 'unilateral control' over aspects of the firm, both to monopolize firm resources and "to undermine the intent of the MOU.'" (Ex. 12 (Removal Email) at 1.) During the course of this litigation, Counterclaim-Defendants have

argued that they also had "cause" to remove Cyrulnik because, among other things, he allegedly

engaged in gender and racial discrimination that they had never mentioned to him before, never

cited in their Removal Email, and that is wholly unsupported by the evidence. (*E.g.*, Dkt. 513

(Counterclaim-Defendants' SJ Brief) at 27-33.)

Apparently in support of their argument that these allegations—none of which are true—

gave rise to "cause" for Cyrulnik's removal, the Firm has identified a purported expert on

"civility" that the Firm wishes to call as a witness in this case.  That witness, Christine Porath,

Ph.D., a professor of organizational psychology and management at Georgetown University,

explains in her report that she has been asked to testify about:

> (1) the clinical definition of incivility and how incivility can cause
> the creation of a toxic workplace, (2) the effects incivility and the
> creation of a toxic workplace can have on individuals and an
> organization, and (3) whether the evidence that I reviewed
> demonstrates that Defendant Jason Cyrulnik demonstrated a pattern
> of incivility and created a toxic workplace while he was at the Firm.

(Ex. 25 (Porath Rep.) ¶ 9.)  Based on her review of deposition testimony and deposition exhibits,

Dr. Porath intends to testify that:

> [t]he evidence I reviewed is consistent with patterns of incivility I
> am familiar with in the social science literature.  Co-workers
> reported and reacted to numerous instances of perceived incivility
> on the part of Jason Cyrulnik.  In an organizational setting (and
> particularly within a new organization), such conduct and
> perceptions of conduct need to be carefully monitored and reacted
> to in order to minimize the potentially devastating effect they can
> have, not only on individuals within the organization, but on the
> organization as a whole.  While I have no opinion as to whether
> Mr. Cyrulnik did or did not engage in the conduct attributed to him,
> I can opine that the perception of such conduct is in itself an [sic]
> significant issue and a strong sign that an individual's behavior is
> giving rise to a toxic environment.

(*Id.* ¶ 40.)  Dr. Porath further opines in her report that:

> the reported accounts are typical of a pattern of uncivil behavior that
> can have devastating consequences for a workplace culture.

4

> Widespread accounts of uncivil behavior, when reported by numerous individuals, indicate a situation that calls out for a remedy. Research shows that failure to eliminate even a perceived situation or pattern can lead to a toxic culture.

(*Id.* ¶ 56.)

As set forth below, Dr. Porath's opinions and related testimony regarding "incivility" and its potential effects on an organization are irrelevant and improper, and should be excluded it their entirety.[2]

## ARGUMENT

### I.   Legal Standard For Excluding Expert Testimony

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence.  In *Daubert v. Merrell Dow Pharms.*, the Supreme Court established a two-part test for the admissibility of expert testimony:  the expert opinion must be (1) relevant and (2) reliable.  509 U.S. 579, 590-91 (1993).  "Relevant evidence" is defined as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Daubert*, 509 U.S. at 587 (citing Rule 401).  "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

The trial court is the "gatekeeper" to exclude expert testimony that is irrelevant or unreliable (or, like here, both irrelevant and unreliable). *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002).  Expert testimony is relevant if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  Expert testimony is reliable if it is "based on

---

[2]   Taking to its logical conclusion, Dr. Porath's testimony is that as long as you can find any individual who is willing to testify that they "perceived" conduct as uncivil—without ever even discussing the conduct with the actor—a group of partners could seize for themselves tens of millions of dollars from their partner under the guise of removal.

sufficient facts or data," is "the product of reliable principles and methods," and the expert's opinion "reflects a reliable application of the principles and methods to the facts of the case." *Id.*

Even if the court concludes that an expert's testimony is admissible under Rule 702, the court must also conduct a Rule 403 balancing analysis to determine whether the expert's testimony would be unduly prejudicial. *See United States v. Gatto,* 986 F.3d 104, 117 (2d Cir. 2021) (the court "must also determine whether the proffered evidence is relevant . . . and, if so, whether its probative value is substantially outweighed by the danger of unfair prejudice"); *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005) (explaining that the Rule 403 analysis is "uniquely important . . . given the unique weight [expert] evidence may have in a jury's deliberations").

The proponent of the expert testimony has the burden of establishing that the foregoing admissibility requirements are met by a preponderance of the evidence. Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendments). The Second Circuit has urged courts to "undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand" when determining whether to admit expert testimony. *Amorgianos*, 303 F.3d at 267.

For the reasons set forth below, the Firm cannot meet its burden, and Dr. Porath's testimony should be excluded.

## II.    Dr. Porath's Opinions Regarding Incivility Are Not Relevant

Under the relevance prong of *Daubert*, expert witnesses can assist the trier of fact with complex and technical matters. *In re M/V MSC Flaminia*, 2017 WL 3208598, at *3 (S.D.N.Y. 2017). Expert testimony will only be admitted if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine *a fact*

*in issue*." Fed. R. Evid. 702(a); *see also* Fed. R. Evid. 401.  Where expert testimony is not relevant to the issues in a litigation, it does not "assist the fact-finder in determining any factual dispute," and therefore is inadmissible.  *In re Rezulin Prod. Liab. Litig.,* 309 F. Supp. 2d 531, 544 (S.D.N.Y. 2004).

As set forth in her report, Dr. Porath intends "to testify on (1) the clinical definition of incivility and how incivility can cause the creation of a toxic workplace, (2) the effects incivility and the creation of a toxic workplace can have on individuals and an organization, and (3) whether the evidence that [she] reviewed demonstrates that Defendant Jason Cyrulnik demonstrated a pattern of incivility and created a toxic workplace while he was at the Firm." (Ex. 25 ¶ 9.)  Dr. Porath's anticipated testimony is simply not relevant, and it should be excluded pursuant to Rules 401, 402 and 702.

*First*, whether Cyrulnik engaged in any conduct that can be described as "uncivil" is simply not relevant to any question at issue in this case—including the question of whether Cyrulnik was removed from the Firm for "cause."  Indeed, Dr. Porath herself disclaims any opinion on whether acting uncivilly would constitute "cause" for termination, or whether the Firm was justified in removing Cyrulnik.  (*See* Ex. 26 (Porath Dep.) 34:6-35:9, 173:22-174:10.) As Dr. Porath stated in a Harvard Business Review article, and confirmed during her deposition, incivility (which she defines as "rudeness, disrespect, or insensitive behavior" (Ex. 25 ¶ 3)) is extremely prevalent in the workplace, and is experienced at least once a month by nearly *80% of people*.  (*See* Ex. 26 68:24-69:13.)  If employees could be terminated from their jobs for "cause" solely by acting in a way that someone else claims to perceive as "uncivil," there would be no limit to a for-cause termination.  This is especially true because, as even Dr. Porath acknowledges, most people acting uncivilly do not actually intend to do so—meaning that

Cyrulnik's intentions, or his awareness of how others perceived his alleged conduct, are totally irrelevant to Dr. Porath (but plainly not irrelevant to whether there was "cause" to terminate Cyrulnik).  (*See* Ex. 26 (Porath Dep.) 27:9-14.[3])  Accordingly, and given the nebulous and uncertain definition that Dr. Porath gives to "incivility," equating "incivility" to "cause" to terminate Cyrulnik under the MOU obviously would be erroneous; and since "incivility" is not relevant to "cause," Dr. Porath's opinions on incivility necessarily are irrelevant as well.

*Second*, as Dr. Porath acknowledged during her deposition, incivility is in the "eyes of the beholder"—meaning that whether something is uncivil is totally subjective to the person who was on the receiving end of the conduct:

> Q.  I guess what I'm trying to understand is let's just say there is an interaction between two people.  How would one determine whether one of the people had acted uncivilly?  Is there a test?  Is there some sort of metric?  What would you do?
>
> A.  *I would ask them.*  And so, that's what we've done in the studies that I included in the summary.  *It is a perception* around whether they felt belittled or disrespected or demeaned.  And so, it is possible that one person will report they experienced it and one person will say I didn't intend it to land that way.
>
> Q.  So, in terms of whether someone acted with incivility, *it's all in the eyes of the beholder and whether that person felt disrespected?*
>
> A.  It is, yes.

---

[3]   Likely for that reason, as Porath admits, "the vast majority of employees who will behave rudely can improve their behavior," and the best practice for organizations upon an allegation of incivility is not to terminate the alleged uncivil person, but to provide feedback so they know that they have been perceived to be uncivil, and training to ensure they have an opportunity to correct their allegedly uncivil behavior.  (Ex. 26 (Porath Dep.) 103:2-5, 108:20-23, 110:8-15, 111:3-112:7.)  It is undisputed in this case that Counterclaim-Defendants never gave *any feedback whatsoever* to Cyrulnik, much less informed him that he was purportedly alleged to have acted uncivilly (since he never actually did—this was all made up as a pretext to steal his assets).

> ***Q.  And so, it's fair to say that … whether something was uncivil is subjective to the person who was on the receiving end of the conduct?***
>
> ***A.  Yes, it is in the perceptions.***

(Ex. 26 (Porath Dep.) 78:6-79:4; *see also id.* 95:7-10 (agreeing that "what's uncivil to one person may be absolutely fine to another").)

The same is true for the alleged *consequences* of uncivil conduct—the only way to determine the consequences of uncivil conduct is to ask the person what they felt the consequences were:

> Q.  And I understand that you're focused on the consequences of incivility.
>
> I guess what I'm trying to get at is to determine whether there would be any consequences at all and/or how severe those consequences would be, what do you need -- how do you measure that?  How do you predict how severe the consequences would be?
>
> Is it based on how many interactions there were?  Is it the decibels in the voice?  What do you need to input to figure out this is going to likely have -- lead somebody to leave, this is going to be water off a duck's back, or whatever the correct phrase is, for that in particular employee?
>
> …
>
> A.  I think the -- okay.
>
> ***I think the biggest or the most efficient route is to ask the person, right?***  So, for example, with this particular firm, if you have associates or partners speaking up about the fact that they may leave because they can't take it, then that's a red flag.  To me, that says that's an individual that's on the edge, right?  Like, that's an individual that we could say with a high degree of predicting that it is likely that they might leave.
>
> Whether they leave, I mean, I don't have a crystal ball.  I can't predict that, per se.  But you also look at what are the other stressors that they have.  How long has this been going on?  Does the -- do the leaders know about it and have they acted or not?  Things like that.

> ***So I mean, I think the most direct route, which you got at before in your questions, is to ask them.*** Short of that, I think you're basing it based on science. And so -- but there isn't an algorithm. There isn't, you know, X percent will definitely do this.
>
> I can tell you, for example -- and this is included in the summary -- but, like, one of our first studies included 800 managers and employees, you know, those that experienced -- so they would write a couple of sentences about treated -- being treated rudely or insensitively -- you know, 48 percent of them said that they intentionally cut back work efforts. 80 percent said that they lost time worrying about the incident.
>
> Now, we didn't have electrodes strapped to them and knew exactly what they were thinking, and how much it pulled them off track and so forth. So we were relying on them reporting to the best of their ability did this happen, did it not, how much, things like that.

(Ex. 26 (Porath Dep.) 88:22-90:25.)

In other words, according to Dr. Porath, if an RF employee *subjectively believed* that Cyrulnik did something that employee perceived to be "uncivil," then he must have done so— period. And if an RF employee *subjectively believed* that Cyrulnik's behavior had negative consequences, then those consequences occurred—period. A view of incivility that is purely subjective, leaving no room for any objective interpretation (nor any role for the jury), cannot possibly be the standard that governs whether a person's actions gave rise to "cause" under a partnership agreement. But aside from being absurd, Dr. Porath's view of incivility also renders her own testimony irrelevant: she admits she cannot actually offer any opinion as to whether Cyrulnik acted uncivilly, or whether his alleged incivility had negative consequences to the Firm or its employees—instead, all she says is that the jury has to ask the individuals who interacted with Cyrulnik what they felt. Viewed from this lens, it is clear that Dr. Porath is not actually offering any opinion at all and not assisting the factfinder in any cognizable way.

Indeed, Dr. Porath essentially admits that she has no relevant and admissible testimony to offer in this matter: Dr. Porath not only has "no opinion as to whether Mr. Cyrulnik did or did

not engage in the conduct attributed to him" (Ex. 25 (Porath Rep.) ¶ 40), but is "not offering any opinion that any conduct alleged by Mr. Cyrulnik was uncivil or civil." (Ex. 26 (Porath Dep.) 173:17-20.)  And while Dr. Porath in her report alludes to various consequences of incivility, she necessarily offers no opinion as to whether any effects actually occurred here—merely on what effects incivility *can theoretically* have on a company.  (Ex. 25 (Porath Rep.) ¶ 56 ("Based on my review of depositions, the reported accounts are *typical of* a pattern of uncivil behavior that *can have* devastating consequences for a workplace culture."); Ex. 26 (Porath Dep.) 34:19-21 ("I'm here to speak to the *potential effects* on people in the organization.").)  As her testimony regarding *potential* incivility and its *potential* negative consequences have no relevance to the question of whether the Firm *actually* had "cause" to remove Cyrulnik pursuant to the MOU, it should be excluded.

### III.   Dr. Porath's Opinions Are Unreliable

Even if the Court were to determine that Porath's opinions were relevant (they are not), her purported opinions should be excluded in their entirety pursuant to FRE 702 because they are not speculative and not based on a reliable methodology.  Even qualified experts must base their opinions on reliable data and a valid methodology.  *Daubert.* 509 U.S. at 592-93.  In the absence of either, the expert's opinions are unreliable and should not be allowed.  *Id.*; *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) ("[When expert testimony is] based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony.").

Porath describes her "methodology" as follows:

> In the first step, I identify whether and what type of incivility has occurred in a certain circumstance.  In the second step, I assess, with reference to well-understood and accepted peer-reviewed research, the effects that this type of incivility can have on people in an organization.  In the third step, I assess (using the same criteria) the effect that this type of incivility can have on an organization as a whole.

(Ex. 25 (Porath Rep.) ¶ 17.)

However, Dr. Porath expressly concedes that she has not followed the first step of her supposed "methodology"—"identify whether and what type of incivility has occurred" (*id.*)—because she offers "no opinion as to whether Mr. Cyrulnik did or did not engage in the conduct attributed to him" (Ex. 25 (Porath Rep.) ¶ 40), and is "not offering any opinion that any conduct alleged by Mr. Cyrulnik was uncivil or civil" (Ex. 26 (Porath Dep.) 173:17-20).  And even if she had any opinion on whether Cyrulnik engaged in any uncivil conduct, Dr. Porath's opinion would be based entirely on the purported ***perceptions*** of Counterclaim-Defendants' witnesses.  Merely asking Counterclaim-Defendants' witnesses about their subjective perceptions of various interactions is simply not a valid or reliable methodology upon which to base an expert opinion (even if Dr. Porath followed it, which she admittedly did not).  Furthermore, Dr. Porath's own description of the second and third steps in her "methodology" confirms that they are entirely speculative, as she merely claims to have assessed the effects the (unidentified) incivility "***can have***" on people and organizations.  (Ex. 25 (Porath Rep.) ¶ 17; Ex. 26 (Porath Dep.) 34:19-21 ("I'm here to speak to the ***potential effects*** on people in the organization.").)  As Dr. Porath offers no opinion as to whether any of these ***potential*** effects actually occurred, her opinions are improperly speculative and should be excluded.  *See Daubert*, 509 U.S. at 590 ("An opinion that is speculative or conjectural is not based on a reliable methodology and fails to comply with the standards in Rule 702.").

Of course, to the extent Dr. Porath attempts to change her mind, and purports to offer any opinion on whether Cyrulnik engaged in "uncivil" conduct, or whether his alleged incivility had "consequences" on the Firm, that opinion would be inadmissible as well (in addition to being excluded based on the limitations she placed on her opinions in her report and at deposition).  As

she has acknowledged, the sole methodology for determining whether someone acted uncivilly is to simply ask the person with whom they interacted.  Accordingly, any attempt by Dr. Porath to testify as to the civility or incivility of Cyrulnik's behavior towards other individuals at RF would require Dr. Porath to (i) opine on the credibility of the testimony of those individuals as to their subjective feelings regarding Cyrulnik's behavior, and/or (ii) testify as to the state of mind and perceptions of those individuals.  Expert witnesses are not permitted to opine on such matters.  *Cameron v. City of New York*, 598 F.3d 50, 61 (2d Cir. 2010) (citing *United States v. Forrester*, 60 F.3d 52, 63 (2d Cir. 1995) ("As a matter of law, the credibility of witnesses is exclusively for the determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at the trial."); *In re Lyondell Chem. Co.*, 558 B.R. 661, 667 (Bankr. S.D.N.Y. 2016) ("[N]o expert may opine on parties' states of mind or intent.").  The same is true as to the *consequences* of supposed incivility—Porath admitted that the "biggest or most direct route" would be to simply ask people what they felt the consequences were.  And while she vaguely referred to studies that she had done of the consequences of uncivil conduct, she also acknowledged that "there isn't an algorithm.  There isn't, you know, X percent will definitely do this."  (Ex. 26 (Porath Dep.) 88:22-90:25.)  Accordingly, she offers no reliable methodology for measuring the consequences of incivility—other than simply asking Counterclaim-Defendants' witnesses how they felt, which (to the extent they conform to the rules of evidence) Counterclaim-Defendants' lawyers and the jury can do without help from Porath.

## IV.   Dr. Porath's Opinions And Testimony Are Not Helpful For The Jury

"One of the fundamental requirements of Rule 702 is that the proposed testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'  This helpfulness requirement is 'akin to the relevance requirement of Rule 401, which is applicable to all

proffered evidence, but goes beyond mere relevance because ***it also requires expert testimony to have a valid connection to the pertinent inquiry***.'"   *In re Rezulin,* 309 F. Supp. 2d at 540 (cleaned up); *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005) ("***Even after*** determining that a witness is 'qualified as an expert' to testify as to a particular matter, Fed.R.Evid. 702, and that the opinion is based upon reliable data and methodology, ***Rule 702 requires the district court to make a third inquiry: whether the expert's testimony (as to a particular matter) will 'assist the trier of fact***.'").

   "Expert testimony is not 'helpful' to a jury if the jury is 'as capable of comprehending the primary facts and of drawing correct conclusions from them' as an expert."   *Anderson News, L.L.C. v. Am. Media, Inc.*, 2015 WL 5003528, at *2 (S.D.N.Y. Aug. 20, 2015), *aff'd*, 899 F.3d 87 (2d Cir. 2018) (quoting *Salem v. U.S. Lines Co.*, 370 US 31, 35 (1962)).   Courts should not "admit [expert witness] testimony that is 'directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help.'"   *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 729 (S.D.N.Y. 2011), *aff'd in part, vacated in part sub nom. Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013); *Highland Capital Mgmt. v. Schneider*, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005) ("expert testimony is inadmissible [on relevance grounds] when it addresses 'lay matters which a jury is capable of understanding and deciding without the expert's help'") (quoting *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989)).

   Here, even if "incivility" were relevant to any issues in this case (it is not), even if Dr. Porath offered any opinion as to whether uncivil conduct occurred and/or what effects such incivility purportedly had (she did not), and even if Dr. Porath followed any cognizable methodology in doing so (she did not), the jury does not need an expert to tell them whether actions are "uncivil."   Like all people, the jurors in this case will have had interactions during the

14

course of their lives in which they believed someone acted uncivilly, and can make their own

determination as to whether Cyrulnik or others acted uncivilly as well.  Indeed, the vast majority,

if not the entirety, of the jury will have their own experiences dealing with individuals *in the*

*workplace* that they believed to be "uncivil," and can assess for themselves whether Cyrulnik's

alleged conduct was uncivil, and had or was likely to have any negative effects on the Firm or its

employees.

       Accordingly, because the jury is perfectly capable of evaluating the evidence at trial from

the witnesses with direct knowledge of the subject matter in issue and ultimately rendering a

decision, the jury does need Dr. Porath's assistance to weigh the evidence or understand it, and

her testimony should be excluded.  *See Anderson News, LLC*, 2015 WL 5003528, at *2

(excluding expert testimony regarding negotiations where there was "ample, firsthand evidence

of how the parties viewed [a] statement [during the course of negotiations], expressed orally and

in writing, which reflects the parties' contemporaneous understanding of what [party] said and

their reactions"); *see also Salem*, 370 U.S. at 36 (excluding expert testimony where jury was

capable of determining for itself whether "some railing or hand hold in addition to the structures

present was reasonably necessary for the protection of a seaman"); *United States v. Castillo*, 924

F.2d 1227, 1233 (2d Cir. 1991) (excluding expert testimony concerning "such elementary issues

as the function of a scale or index card in a drug deal" where "the jury was capable of

understanding the evidence and determine the facts in issue without [the expert's] testimony");

*In re Rezulin,* 309 F. Supp. 2d at 546 (excluding expert testimony repeating facts and drawing

simple inferences from documents produced in discovery because it described "lay matters

which a jury is capable of understanding . . . without the expert's help").

## V.      Dr. Porath's Factual Narrative Is Improper

Substantial portions of Dr. Porath's report are a transparent attempt to misuse a purported expert as a mechanism for narrating cherry-picked snippets of other witnesses' testimony under the guise of purported "summaries" of "Cyrulnik's Interactions with Associates" and "Cyrulnik's Interactions with other Partners."  (*See* Ex. 25 (Porath Rep.) ¶¶ 41-55.)  Expert witnesses are not percipient witnesses and it is inappropriate for them to provide a factual narration.  *See In re M/V MSC Flaminia*, 2017 WL 3208598, at *3-4 (S.D.N.Y. 2017) ("[expert witnesses] may not supplant the role of the factfinder by reciting factual narratives or by weighing the evidence to reach factual determinations."); *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 32 F. Supp. 3d 453, 460 (S.D.N.Y. 2014) ("[A]n expert may not offer testimony that simply regurgitates what a party has told him or constructs a factual narrative based on record evidence.").  It is well-established that "[a]cting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology," and that "[m]ere narration thus fails to fulfill *Daubert's* most basic requirements."  *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013); *see also Island Intellectual*, 2012 WL 526722, at *2 (permitting expert witness to provide factual narratives "would inappropriately transform an expert, without firsthand knowledge, into a quasi-fact witness"); *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 32 F. Supp. 3d at 462 (precluding expert from "summarizing facts and documents in the record that the jury is capable of understanding on its own"); *In re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (excluding expert's narrative detailing the factual basis for her opinions, including summaries of deposition testimony).  Accordingly, to the extent that Dr. Porath intends to offer, or RF intends to elicit, testimony that purports to summarize or describe Cyrulnik's alleged conduct, such testimony should be excluded because it

16

is not based on Dr. Porath's personal knowledge and is simply an attempt to convey a factual narrative under the guise of expert testimony.

**VI.**   **Dr. Porath's Testimony Should Be Excluded Under Rule 403**

Even if the Court were to determine that Dr. Porath's testimony is relevant under Rule 401 and otherwise admissible under Rule 702 (it is not), the Court must still assess whether the probative value of her testimony is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021); *Nimely v. City of New York,* 414 F.3d 381, 397 (2d Cir. 2005). As the Supreme Court made clear said in *Daubert*, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." 509 U.S. at 595.

Here, the Court should preclude Dr. Porath from testifying regarding "incivility" and its potential effects because the limited probative value of her testimony would be substantially outweighed by the danger of unfair prejudice resulting from confusing and distracting the jury from the actual issues in this case.  As the court in *Joffe v. King & Spalding LLP* explained when it excluded an expert's testimony pursuant to Rule 403, the expert's "marginally probative" testimony "risk[ed] creating a mini-trial" on non-controlling issues, which "minitrial is also likely to create a sideshow that distracts the jury from the main question[.]"  2019 WL 4673554, at *17 (S.D.N.Y. Sept. 24, 2019).  Because the proffered testimony was "only minimally probative and likely to be highly distracting and confusing to the jury, it [was] excluded pursuant to Rule 403."  *Id.* at *18.

Dr. Porath's proposed testimony should be excluded for precisely the same reasons.

Even if her proposed testimony were relevant at all (it is not), given that there is no clear correlation between "uncivil" behavior and the existence of "cause" to remove Cyrulnik, it would only be marginally probative on the issue of "cause."  Yet, permitting Dr. Porath to testify would result in a "mini-trial" regarding the whether Cyrulnik engaged in any "uncivil" conduct that is likely to district and confuse the jury from the actual issue, which is not whether Cyrulnik engaged in "uncivil" conduct, but rather whether Counterclaim-Defendants had "cause" to remove Cyrulnik from the Firm.  Accordingly, Dr. Porath's testimony should be excluded pursuant to Rule 403 as well.

## **CONCLUSION**

For the reasons set forth above, the Court should grant Cyrulnik's motion and exclude Dr. Porath's testimony.

Dated: New York, New York
       February 27, 2024

KASOWITZ BENSON TORRES LLP

By: */s/ Marc E. Kasowitz*
      Marc E. Kasowitz
      Kevin A. Cyrulnik
      Gavin D. Schryver
   1633 Broadway
   New York, New York 10019
   Tel.: (212) 506-1700
   Fax: (212) 506-1800
   Email: mkasowitz@kasowitz.com
          kcyrulnik@kasowitz.com
          gschryver@kasowitz.com

*Attorneys for Counterclaim-Defendant*
*Jason Cyrulnik*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that according to the word count feature of the word processing program used to prepare this brief, the brief contains 5,885 words (exclusive of the cover page, certificate of compliance, table of contents, and table of authorities), and complies with Local Civil Rule 11.1 of the Southern District of New York, as well as with this Court's Individual Practice Rule 2.D.

Dated: New York, New York
      February 27, 2024

                           */s/ Marc E. Kasowitz*
                           Marc E. Kasowitz