Marc E. Kasowitz (mkasowitz@kasowitz.com)
Kevin A. Cyrulnik (kcyrulnik@kasowitz.com)
Gavin D. Schryver (gschryver@kasowitz.com)
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel.:   (212) 506-1700
Fax:   (212) 506-1800

*Attorneys for Defendant/Counterclaim-Plaintiff Jason Cyrulnik*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROCHE FREEDMAN LLP,<br><br>          Plaintiff,<br><br>     v.<br><br>JASON CYRULNIK,<br><br>          Defendant.<br><hr>JASON CYRULNIK,<br><br>          Counterclaim-Plaintiff,<br><br>     v.<br><br>ROCHE FREEDMAN LLP, KYLE ROCHE,<br>DEVIN FREEDMAN, AMOS FRIEDLAND,<br>NATHAN HOLCOMB, and<br>EDWARD NORMAND,<br><br>          Counterclaim-Defendants. | Case No. 1:21-cv-01746-JGK |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT/COUNTERCLAIM-PLAINTIFF JASON CYRULNIK'S
<u>MOTION IN LIMINE TO EXCLUDE SPECULATIVE, OPINION TESTIMONY</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    Legal Standard ................................................................................................ 2

    II.    The Court Should Exclude All Testimony That Constitutes Speculation About Cyrulnik's Intent Or Motivation Under Rule 701 ........................................ 3

    III.    The Court Should Exclude All Testimony That Constitutes Witnesses' Speculation About Cyrulnik's Intent Or Motivation Under Rule 403 .................... 5

CONCLUSION ............................................................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexis v. McDonald's Restaurants*,
  67 F.3d 341 (1st Cir. 1995) ................................................................................................5

*Guida v. Inter-Continental Hotels Corp.*,
  2003 WL 1907904 (S.D.N.Y. April 16, 2003) ...................................................................2

*Hester v. BIC Corp.*,
  225 F.3d 178 (2d Cir. 2000) ............................................................................................4, 5

*Malanga v. New York University*,
  2018 WL 333831 (S.D.N.Y. Jan. 9, 2018) .......................................................................6, 7

*Orsaio v. New York State Dep't of Corr. & Cmty. Supervision*,
  2022 WL 351827 (N.D.N.Y. Jan. 14, 2022) .......................................................................7

*Ridge v. Davis*,
  2022 WL 16737299 (S.D.N.Y. Nov. 7, 2022) .....................................................................6

*United States v. Grinage*,
  390 F.3d 746 (2d Cir. 2004) ...............................................................................................2

*United States v. Quattrone*,
  441 F.3d 153 (2d Cir. 2006) ...............................................................................................6

*United States v. Ray*,
  2022 WL 558146 (S.D.N.Y. Feb. 24, 2022) .......................................................................2

*United States v. Rea*,
  958 F.2d 1206 (2d Cir. 1992) .............................................................................................2

*Vill. of Freeport v. Barrella*,
  814 F.3d 594 (2d Cir. 2016) ...............................................................................................5

**Other Authorities**

Fed. R. Evid. 403 ................................................................................................... *passim*

Fed. R. Evid. 602 ............................................................................................................1, 2

Fed. R. Evid. 701 ................................................................................................... *passim*

Defendant/Counterclaim-Plaintiff, Jason Cyrulnik, respectfully submits this memorandum of law in support his motion, pursuant Federal Rules of Evidence 403, 602 and 701, to exclude certain testimony of Counterclaim-Defendants' witnesses during the trial in the above-captioned action.[1]

## PRELIMINARY STATEMENT

During their depositions, certain witnesses deposed by Counterclaim-Defendants offered speculative testimony concerning Cyrulnik's subjective state of mind, claiming that they "believed" Cyrulnik "may have" acted with discriminatory intent during certain of his interactions with certain of the Firm's employees.  Cyrulnik anticipates that those witnesses will attempt to offer similar testimony during trial, *i.e.*, that Cyrulnik's actions were motivated by discriminatory animus.  Courts in the Second Circuit are clear that such testimony must be excluded under Rule 701(b) of the Federal Rules of Evidence because it amounts to "naked speculation concerning the motivation" for a defendant's actions, and is thus impermissible.  The law is also clear that any such testimony should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, misleading the jury and wasting time, under Rule 403.

Accordingly, Cyrulnik respectfully requests that this Court exclude all testimony regarding the motives or impetus for his alleged mistreatment of Firm employees.

---

[1]  Citations to "Ex. __" refer to exhibits attached to the February 27, 2024 Omnibus Declaration of Marc E. Kasowitz in Support of Cyrulnik's February 27, 2024 Motions (the "Kasowitz Declaration").  Unless otherwise noted, all emphasis is supplied and internal citations and quotations are omitted.

**ARGUMENT**

**I.     Legal Standard**

Rule 701 of the Federal Rules of Evidence provides that a witness not testifying as an expert may offer testimony in the form of opinion, only if that opinion is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.  The Second Circuit has made clear that the "burden is on the party wishing to introduce lay opinion testimony to establish the proper foundation." *See United States v. Grinage*, 390 F.3d 746, 749 (2d Cir. 2004).

Rule 701(b)'s requirement that a lay witness's opinion be "rationally based" implicates Rule 602, which provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602; *see United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992) (noting that the rational-basis requirement draws on the general limitation embodied in Federal Rule of Evidence 602 that in order to testify on a subject a witness must have "personal knowledge of the matter.").

Additionally, Rule 403 provides that testimony should be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Evidence with "minimal probative value" should be excluded under Rule 403 where the "distraction" and "risk of confusing and misleading the jury" outweighs its probative value or where "introduction of the evidence would lead to a lengthy sideshow that would needlessly delay the case and waste time." *United States v. Ray*, 2022 WL 558146, at *8 (S.D.N.Y. Feb. 24, 2022); *see also Guida v. Inter-Continental Hotels Corp.*, 2003 WL 1907904, at *1-2 (S.D.N.Y. April 16, 2003) (excluding evidence under Rule 403 that was

2

only "marginally relevant" because the "likelihood of jury confusion is great" and introduction of evidence would lead to "wasting significant trial time and diverting much of the jury's attention").

## II. The Court Should Exclude All Testimony That Constitutes Speculation About Cyrulnik's Intent Or Motivation Under Rule 701

During their depositions, Counterclaim-Defendants' witnesses Jordana Haviv speculated[2] that Cyrulnik allegedly treated her differently (interacted with her through the partner running his case rather than directly) *because* of her gender, and Kelvin Goode speculated that Cyrulnik allegedly treated him differently (not sending him a "welcome" email or not interacting with him directly at a firm social-distanced get-together during the pandemic summer) because of his race. (Ex. 17 (Haviv Dep.) 34:6-9 (Firm associate Jordana Haviv testifying that she "was being treated differently based on [her gender]"); Ex. 18 (Goode Dep.) 30:6-14; 70:11-15; 135:14-19 (Firm associate Kelvin Goode testifying that he was "concerned that [Cyrulnik] may be racist" because Cyrulnik was "more friendly" with white male associates and would "be like okay, thanks, next" whenever Goode would raise issues during team calls).) Haviv and Goode both ultimately conceded that their testimony about Cyrulnik's motivations was pure conjecture, and that they had no actual knowledge of whether Cyrulnik acted with any discriminatory intent whatsoever. (*See* Ex. 17 (Haviv Dep.) 56:22-58:11 ("At first, I didn't know if it was gender, obviously, but, you know, as the months went by *it started to feel that way*"); Ex. 18 (Goode Dep.) 45:10-47:2;

---

[2] It bears mention that such testimony followed Counterclaim-Defendant Freedman's efforts to influence her testimony prior to her deposition by meeting with her to pressure her to say certain things against Cyrulnik. (Ex. 20 (Holcomb Declaration) ¶ 49.) Haviv was named partner by the Firm at the partner's meeting following the initiation of this litigation. (Ex. 17 (Haviv Dep.) 11:7-12.)

3

52:12-57:21 ("I just *felt like*, this guy just doesn't like me. . . . I'm just going by what I *felt* . . . I don't know what Jason was thinking at the time.").)[3]

Counterclaim-Defendants' witness Richard Cipolla (Roche's close confidant) also protected the party line[4] by speculating at deposition that he "believed" Cyrulnik was sexist in his interactions with Haviv (Ex. 19 (Cipolla Dep.) 50:12-51:18), but when asked whether he had personal knowledge as to how [Cyrulnik] treated [Haviv], he responded: "Yeah. I never saw him interact with her directly to comment on that." (Ex. 19 (Cipolla Dep.) 51:13-18.)

None of these witnesses have personal knowledge of Cyrulnik's motivations—nor could they. They have no basis for speculating that Cyrulnik was *ever* motivated by alleged (but, in reality, non-existent) discriminatory intent in any way. Instead, the witnesses' testimony consisted solely of their subjective speculation and conclusory allegations completely devoid of any firsthand knowledge or any other foundation. Such testimony is categorically inadmissible under Rule 701. As the Second Circuit explained in *Hester v. BIC Corp.*:

> Rule 701(b) is designed to provide assurances against the admission of opinions which would *merely tell the jury what result to reach*. Thus if attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by Rule 701(b). . . . Rule 701(b) bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision. Witnesses are free to testify fully as to their own observations of the defendant's interactions with the plaintiff or with other employees, but the witness's opinion as to the defendant's ultimate motivations will often not be helpful within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant was motivated by an impermissible animus. . . . But [the witnesses'] speculative lay opinion that this differential is attributable to

---

[3] Counterclaim-Defendants appear to believe that this testimony is admissible, and intend to elicit it at trial in this matter, as evidenced by the fact that they included it in their Statement of Material Facts in connection with summary judgment motions. (Dkt. No. 515 (Counterclaim-Defendants' SUF) ¶¶ 45, 56, 62.) Cyrulnik reserves the right to challenge the admissibility of all such testimony on other grounds, including because Mr. Freedman apparently tampered with these witnesses' testimony. (Ex. 20 (Holcomb Declaration) ¶ 49.)
[4] Cipolla was made partner just months before trial in this action. (Ex. 32.)

4

race rather than anything else, is not helpful in this case because it merely tells the jury what result to reach.

225 F.3d 178, 181, 185 (2d Cir. 2000) (vacating and remanding for new trial where trial court wrongly permitted co-workers to offer lay opinions that the defendant's conduct was racially motivated); *see also Vill. of Freeport v. Barrella*, 814 F.3d 594, 611 (2d Cir. 2016) ("Rule 701(b) bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision.  Although witnesses may testify regarding their own observations of the defendant's interactions with the plaintiff or with other employees, they may not opine as to the motives, racial or otherwise, underlying those interactions."); *Alexis v. McDonald's Restaurants*, 67 F.3d 341 (1st Cir. 1995) (deponent's observations that defendant was "unfriendly," reacted "angrily" toward plaintiff and with a "negative tone in her voice," was insufficient to support an inference of "racial animus," because "[a]lthough these observations may be entirely compatible with a race-based animus, there simply is no foundation for an inference that [defendant] harbored a racial animus toward [plaintiff] or anyone else, absent some probative evidence that [defendant's] petulance stemmed from something other than a race-neutral reaction to the stressful encounter.").

The Court should preclude Haviv, Goode, Cipolla (and any other witness who intends to offer similar testimony) from testifying about Cyrulnik's intent or motivations, including their naked and unsubstantiated allegations of "discrimination."

### III. The Court Should Exclude All Testimony That Constitutes Witnesses' Speculation About Cyrulnik's Intent Or Motivation Under Rule 403

Even if these witnesses could offer lay opinion testimony about Cyrulnik's subjective state of mind under FRE 701 (they cannot), Counterclaim-Defendants' anticipated testimony concerning Mr. Cyrulnik's motivations would in any event be unfairly prejudicial, mislead the

5

jury and constitute a waste of time under Rule 403.  "In making a Rule 403 determination, courts should ask whether the evidence's proper value is more than matched by the possibility that it will divert the jury from the facts which should control their verdict."  *Ridge v. Davis*, 2022 WL 16737299, at *2 (S.D.N.Y. Nov. 7, 2022).

Whatever little probative value the personal, speculative opinions of these witnesses could have concerning Cyrulnik's motivations (which value is in reality non-existent) is significantly outweighed by the substantial unfair prejudice it would cause, as well as the likelihood of misleading the jury and otherwise wasting time.  Evidence is prejudicial, for the purposes of Rule 403, when it "tends to have some adverse effect upon a [party] beyond tending to prove the fact or issue that justified its admission into evidence."  *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006).  To justify exclusion, "the prejudice must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to [render a decision] on the basis of conduct not at issue in the trial." *Id*.

Here, opinions from lay witnesses (highly motivated to advance their own interests by helping their close friends or partners by speculating in ways that could help perpetuate the slanderous false impressions that the wrongdoers behind the scheme at issue in this litigation hoped to spread) regarding Cyrulnik's alleged discriminatory intent will unduly inflame the passion of the jury and turn them toward events that are not relevant to a finding of whether he is entitled to a buyout of his interests in the Firm.  Indeed, the jury may give greater weight to the testimony of these individuals out of sympathy or indignation, without regard to whether the individuals have a proper evidentiary basis for opining on Cyrulnik's alleged motivations.  Courts routinely guard against such outcomes.  For example, in *Malanga v. New York University*,

the court excluded witness statements offered in support of defendant's claim that plaintiff was terminated for "unprofessional and offensive conduct," not improper retaliation. 2018 WL 333831, at *4-5 (S.D.N.Y. Jan. 9, 2018). The court concluded that introducing these statements, "which characterize [plaintiff] in a negative light," for the purpose of considering whether there was a "legitimate reason" to terminate plaintiff would "confuse the jury and unfairly prejudice" plaintiff. *Id.*; *see also Orsaio v. New York State Dep't of Corr. & Cmty. Supervision*, 2022 WL 351827, at *4 (N.D.N.Y. Jan. 14, 2022), *aff'd* 2023 WL 3410554 (2d Cir. May 12, 2023) (evidence to corroborate dismissed discrimination claims "likely inadmissible on the ground that any minimal probative value is substantially outweighed by the danger of confusing discrimination, which need not be proved, with retaliation, the claim at issue").

Similarly here, any testimony that Counterclaim-Defendants' witnesses wish to offer that Cyrulnik acted with discriminatory intent would be unfairly prejudicial, particularly given that: (i) these witnesses ultimately conceded that they were merely speculating about Cyrulnik's motivations, and did not know whether he acted with discriminatory intent (*see* Ex. 17 (Haviv Dep.) 56:22-58:11; Ex. 18 (Goode Dep.) 45:10-47:2; 52:12-57:21); (ii) the evidence shows that Firm lawyers provided negative views of Goode's performance (and the Firm has never alleged that these other lawyers harbored discriminatory intent—only Cyrulnik, which makes no sense) and the Firm deemed Goode to be "not in good standing," considered hiring a writing coach for him, and ultimately counseled him out of the Firm as a result of his subpar performance (*see* Ex. 21 (RF_0422141 at RF_0422143) ("Kelvin's work was problematic, something I understand was not limited to his work on this case. From my discussions with the rest of the partnership group, I understand that he currently is not an associate in good standing at the firm."); Ex. 22 (RF_0256694) ("Kelvin isn't an option for this alone. You need someone . . . who is competent

7

in appeals.  We can't have the work be shoddy[.]")); Ex. 6 (Freedman Dep.) 497:20-498:5 (noting discussion about hiring writing coach for Goode); Ex. 20 (Holcomb Dec.) ¶¶ 99-100) (noting that Counterclaim-Defendants counseled Goode to leave the firm as a result of his work performance)); (iii) Haviv herself admitted that her complaints about Cyrulnik's incorporation of her views and involvement of her on cases mirrored his treatment of a similarly-situated *male* associate (same level of seniority) who she said Cyrulnik treated in an identical fashion to the way he allegedly treated her, directly undercutting the speculative notion that he treated her differently due to her gender (*see* Ex. 17 (Haviv Dep.) 44:10-45:16.); and (iv) Cipolla conceded that he never once saw Cyrulnik interact with Haviv (Ex. 19 (Cipolla Dep.) 51:13-18.)

Thus, any probative value from testimony concerning Cyrulnik's alleged discriminatory animus is substantially outweighed by the danger that such testimony would confuse the jury and unfairly prejudice Cyrulnik, compelling exclusion under Rule 403.

## **CONCLUSION**

For all these reasons, this Court should exclude any testimony concerning Cyrulnik's alleged discriminatory intent at the trial of the above-captioned action.

Dated: February 27, 2024
      New York, New York

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By: */s/ Marc E. Kasowitz*
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Kevin A. Cyrulnik (kcyrulnik@kasowitz.com)
Gavin D. Schryver (gschryver@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel.:   (212) 506-1700
Fax:   (212) 506-1800

*Attorneys for Defendant/Counterclaim-Plaintiff Jason Cyrulnik*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that according to the word count feature of the word processing program used to prepare this brief, the brief contains 2,441 words (exclusive of the cover page, certificate of compliance, table of contents, and table of authorities), and complies with Local Civil Rule 11.1 of the Southern District of New York, as well as with this Court's Individual Practice Rule 2.D.

Dated: February 27, 2024
       New York, New York

                                           */s/ Marc E. Kasowitz*
                                           Marc E. Kasowitz