Marc E. Kasowitz (mkasowitz@kasowitz.com)
Kevin A. Cyrulnik (kcyrulnik@kasowitz.com)
Gavin D. Schryver (gschryver@kasowitz.com)
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel.:   (212) 506-1700
Fax:   (212) 506-1800

*Attorneys for Defendant/Counterclaim-Plaintiff Jason Cyrulnik*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROCHE FREEDMAN LLP,<br><br>   Plaintiff,<br><br> v.<br><br>JASON CYRULNIK,<br><br>   Defendant. | Case No. 1:21-cv-01746-JGK |
| JASON CYRULNIK,<br><br>   Counterclaim-Plaintiff,<br><br> v.<br><br>ROCHE FREEDMAN LLP, KYLE ROCHE,<br>DEVIN FREEDMAN, AMOS FRIEDLAND,<br>NATHAN HOLCOMB, and<br>EDWARD NORMAND,<br><br>   Counterclaim-Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT/COUNTERCLAIM-PLAINTIFF JASON CYRULNIK'S
## <u>MOTION FOR SPOLIATION SANCTIONS</u>

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .............................................................................................................................. 3

I.     Signal is an Encrypted, Disappearing Messaging Application That Can be Used to Automatically Destroy Evidence of Communications ....................................................... 3

II.    Counterclaim-Defendants Used Signal to Disguise Their Scheme To Deprive Cyrulnik of His Interests in the Firm ................................................................................................ 3

ARGUMENT .................................................................................................................................... 6

I.     Legal Standard ................................................................................................................... 6

II.    Counterclaim-Defendants Deliberately Failed To Preserve Relevant ESI, Prejudicing Cyrulnik and Warranting Sanctions .................................................................................. 8

       A.    Counterclaim-Defendants Were Under A Duty To Preserve No Later Than February 8, 2021 ................................................................................................... 8

       B.    Counterclaim-Defendants' Spoliation Was Deliberate And Intended To Deprive Cyrulnik Of Highly Relevant Discovery ............................................................... 10

       C.    Dismissal of Claims/Default Judgment Or An Adverse Inference Is Necessary To Cure Counterclaim-Defendants' Spoliation ........................................................ 12

       D.    Cyrulnik Is Entitled to Attorneys' Fees .............................................................. 14

CONCLUSION ............................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*,
  2016 WL 5092588 (E.D.N.Y. Sept. 19, 2016) ........................................................................13

*Barsoum, v. NYC Hous. Auth.*,
  202 F.R.D 396 (S.D.N.Y. 2001) .............................................................................................13

*CAT3, LLC v. Black Lineage, Inc.*,
  164 F. Supp. 3d 488 (S.D.N.Y. 2016)..................................................................................8, 13

*Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*,
  304 F.R.D. 178 (S.D.N.Y. 2014) ............................................................................................13

*Doubleline Cap. LP v. Odebrecht Fin., Ltd.*,
  2021 WL 1191527 (S.D.N.Y. Mar. 30, 2021) ..........................................................................7

*Fashion Exch. LLC v. Hybrid Promotions, LLC*,
  2019 WL 6838672 (S.D.N.Y. Dec. 16, 2019) ..........................................................................7

*Federal Trade Commission v. Noland*,
  2021 WL 3857413 (D. Ariz. Aug. 30, 2021), *motion to certify appeal denied*,
  2021 WL 5138280 (D. Ariz. Nov. 4, 2021).......................................................................11, 12

*Fujitsu Ltd. v. Fed. Exp. Corp.*,
  247 F.3d 423 (2d Cir. 2001).....................................................................................................8

*Herzig v. Ark. Found. for Med. Care, Inc.*,
  2019 WL 2870106 (W.D. Ark. July 3, 2019) ........................................................................12

*Jones v. Hirschbach Motor Lines, Inc.*,
  2022 WL 4354856 (D.S.D. Sept. 20, 2022)............................................................................11

*Karsch v. Blink Health Ltd.*,
  2019 WL 2708125 (S.D.N.Y. June 20, 2019) .....................................................................7, 14

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
  2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ........................................................................14

*Micron Tech., Inc. v. Rambus, Inc.*,
  645 F.3d 1311 (Fed. Cir. 2011).................................................................................................9

*Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*,
  2021 WL 2788432 (E.D.N.Y. July 2, 2021) ............................................................................11

*Oil Equip. Co. v. Modern Welding Co.*,
  661 F. App'x 646 (11th Cir. 2016) ........................................................................................13

*Ottoson v. SMBC Leasing & Fin., Inc.*,
  268 F.Supp.3d 570 (S.D.N.Y. 2017) ..........................................................................7, 11, 13

*Pable v. Chicago Transit Auth.*,
  2023 WL 2333414 (N.D. Ill. Mar. 2, 2023) ...........................................................................13

*Regul. Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*,
  2014 WL 3844796 (S.D.N.Y. Aug. 5, 2014) .........................................................................13

*Reilly v. Natwest Mkts. Grp. Inc.*,
  181 F.3d 253 (2d Cir. 1999) .....................................................................................................7

*Zubulake v. UBS Warburg LLC*,
  220 F.R.D. 212 (S.D.N.Y. 2003) .............................................................................................9

**Other Authorities**

Fed. R. Civ. P. 37 ................................................................................................................ *passim*

N.Y.S. R.P.C. 1.1 ........................................................................................................................12

Sedona Conference, *Primer on Social Media, Second Edition*, 20 Sedona Conf. J.
  1 (2019) ....................................................................................................................................8

Defendant/Counterclaim-Plaintiff, Jason Cyrulnik, respectfully submits this memorandum of law in support of his motion for spoliation sanctions against Counterclaim-Defendants.[1]

## PRELIMINARY STATEMENT

Counterclaim-Defendants engaged in a deliberate campaign to destroy documents and electronically stored information ("ESI") in order to conceal from discovery their pretextual scheme to remove Cyrulnik from the Firm and steal for themselves his assets being held at the Firm.

As Counterclaim-Defendants' documents and testimony confirm, Counterclaim-Defendants intentionally conducted their discussions over a messaging application called "Signal" that allowed them to select a "disappearing messages" setting that they used to destroy the evidence of their secret communications relating to the February 8 and February 10, 2021 meetings at which they discussed and then voted on removing Cyrulnik from the Firm, so that Cyrulnik would never be able to obtain it in discovery. Their intentional configuration and use of this "auto-delete" option for *all* messages they were about to exchange about their improper scheme, which "auto-delete" feature they had enabled and did not disable until at least ***eight days*** after those critical events—only after all of their communications were permanently deleted—is genuinely shocking. The result of Counterclaim-Defendants' intentional spoliation is the elimination of *any* paper trail documenting their improper actions—indeed, with the exception of travel records from one of the Firm's partners and the empty shell of one of their "Signal" chats

---

[1] Citations to "Ex. __" refer to exhibits attached to the February 27, 2024 Omnibus Declaration of Marc E. Kasowitz in Support of Cyrulnik's February 27, 2024 Motions (the "Kasowitz Declaration"). Unless otherwise noted, all emphasis is supplied and internal citations and quotations are omitted.

created for the very purpose of concealing their impending improper actions and fittingly titled "Feb 8 Meeting," Counterclaim-Defendants have not produced a single shred of paper relating to the crucial meetings and vote at the heart of this case. Indeed, Signal, as one court has held, is "designed to disguise and destroy communications," and this is exactly what happened here.

In other words, just as they intended all along, Counterclaim-Defendants' scheme has resulted in the destruction or loss of key evidence relevant to supporting Cyrulnik's claims in this action, and deprived Cyrulnik of his ability to obtain discovery of critical evidence to support his claim that Counterclaim-Defendants' removal of him from the firm he co-founded was pretextual and baseless. As a result, Cyrulnik has been forced to litigate against Counterclaim-Defendants without access to documents and communications that go to the heart of RF's surreptitious and deliberate actions against him.

Given the scope and seriousness of Counterclaim-Defendants' intentional destruction of relevant evidence, coupled with the critical nature of that same evidence in proving Cyrulnik's claims, Cyrulnik faces substantial prejudice. In light of the substantial prejudice inflicted by Counterclaim-Defendants, Cyrulnik respectfully submits that the law supports the remedy of dismissing RF's claims and granting Cyrulnik a default judgment on his claims. At a minimum, however, the Court should grant Cyrulnik an appropriate adverse inference in his favor to partially cure the prejudice he has suffered. In addition to having the salutary effect of substantially narrowing the remaining issues in dispute, such a sanction is proper given Counterclaim-Defendants' improper conduct.

# BACKGROUND

**I.     Signal is an Encrypted, Disappearing Messaging Application
That Can be Used to Automatically Destroy Evidence of Communications**

Signal is an encrypted messaging application that "uses end-to-end encryption, which means each message is scrambled so that it can only be deciphered by the sender and the intended recipient." (Ex. 1.) Signal messages are stored only locally on individual devices and are not part of any cloud or other central backup. (Ex. 2.) Signal has numerous security settings that severely limit access to Signal communications. (*Id.*)

In addition to these features, Signal allows any user—sender or recipient—to adjust settings to automatically destroy messages (either sent or received) forever after a specified period of time (hours, days, or weeks). (Ex. 3.) Signal also allows the sender of a communication to **delete the message from the recipient's device** hours after being sent. (Ex. 4.) As commentators have noted, Signal allows users to "make use of ephemeral messaging in engaging in criminal and civil misconduct, with the benefit to the users being that there is no documentary trail to later be produced in litigation that can be used against them." (Ex. 5.)

**II.    Counterclaim-Defendants Used Signal to Disguise Their Scheme
To Deprive Cyrulnik of His Interests in the Firm**

Because Signal first conceals and then destroys communications, it is clear that Counterclaim-Defendants intentionally chose to use the application as their exclusive platform for communicating about their scheme to remove Cyrulnik. (*See* Ex. 6 (Freedman Dep.) 57:16-24 (testifying that one of the benefits of Signal is that that the messages disappear after a certain amount of time); Ex. 7 (RF 30(b)(6) Dep.) 227:18-230:12 (testifying that Signal chats relating to the Counterclaim-Defendants' February 10, 2021 Zoom meeting were deleted because "the firm's common practice was to use signal at that time and the firm's common practice was that signal message is deleted in eight hours").) Indeed, Counterclaim-Defendants had to proactively

3

take steps to enable and set the "auto-delete" function, which they did—and then undid only after they perpetrated their untoward actions.

On Monday, February 8, 2021—after a weekend during which the Tokens at issue in this case had skyrocketed in value by approximately 75%—Freedman created a new Signal chat entitled "Feb 8 Meeting," to which he added four of the six other equity partners who would become part of their conspiracy to oust Cyrulnik, excluding both Cyrulnik and Fattaruso. (Ex. 8.)  What they did then is largely a mystery, because Roche, Freedman and the other Counterclaim-Defendants set up their communications on that secret chat to "self-destruct."[2] Nor have they produced other chat communications relating to their secret communications, actions, and meeting(s), and at deposition largely claimed not to remember details of their communications.  (Ex. 6 (Freedman Dep.) 82:12-83:10; Ex. 7 (RF 30(b)(6) Dep.) 228:18-230:4.)

Indeed, **not a single Signal communication from Counterclaim-Defendants relating to Cyrulnik's removal or their meetings in connection therewith has been produced in this litigation**.  And we know that Counterclaim-Defendants did use Signal to communicate about those events.  *First*, Counterclaim-Defendants have produced no other form of written communication, such as text or email.  It is inconceivable that they coordinated the two meetings and pulled off the entire scheme solely over the telephone—indeed, as just one example, Counterclaim-Defendants acknowledged that the February 10 email was held over Zoom (Ex. 7 (RF 30(b)(6) Dep.) 227:18-21)—another convenient way for them to ensure there was no paper trail of their discussions and negotiations of a written Amended MOU that Freedman was using to secure control benefits for himself as a supposed condition for his agreeing to vote in favor of the

---

[2] One feature of Signal is that the opening of a new Signal chat will not itself be deleted through the auto-destruction process; only the substantive messages will be deleted.  That is why the Signal record of the chat being opened still exists, but the messages are gone forever.

4

removal—yet they have not produced a single document in which even the Zoom link was exchanged.  *Second*, there is a record of a "Feb 8 Meeting" chat being created (Signal does not destroy the evidence of the creation of the chat, just the communications themselves), demonstrating that the Counterclaim-Defendants used Signal to discuss the meeting to remove Cyrulnik.  *Third*, and most damning of all, Counterclaim-Defendants admitted as such:  multiple Counterclaim-Defendants admitted at deposition that they used Signal at least to coordinate those meetings.  (*See* Ex. 7 (RF 30(b)(6) Dep.) 227:18-230:12 (testifying that Signal chats relating to the Counterclaim-Defendants' February 10, 2021 Zoom meeting were deleted); Ex. 6 (Freedman Dep.) 82:3-22 (testifying that "there was probably some" Signal messages between him and Roche from February 8 and February 16, 2021, and that "[t]here might have been some [Signal] communications on February 8").

Counterclaim-Defendants also conceded at their depositions that they contemplated the prospect of litigation at least as early as February 8, 2021.  For example, Holcomb testified that he was asked by the other Counterclaim-Defendants to perform "legal research" and "analysis" regarding cause and to provide his conclusions to the other partners (Ex. 9 (Holcomb Dep.) 224:15-228:13) and then claimed privilege over that February 8 work on the grounds that it was prepared in connection with prospective litigation.  (Ex. 9 (Holcomb Dep.) 225:13-228:13.)  Further, multiple entries on Counterclaim-Defendants' privilege log confirm that they anticipated litigation as a result of their unjustified removal of Cyrulnik from RF no later than February 11, when they were in the midst of communicating with outside counsel regarding "legal advice re Cyrulnik's for cause removal and ***work product prepared in anticipation of litigation over the same***."[3]  (Ex. 10

---

[3]  Counterclaim-Defendants' categorical privilege log includes ***619*** documents dated February 11 through February 26, 2021, all of which are claimed to be "[c]ommunications with counsel providing, requesting, or reflecting legal advice re Cyrulnik's for cause removal and work

5

(RF Parties' Dec. 13, 2022 Privilege Log) at 2.) Cyrulnik was not even informed of the Counterclaim-Defendants' actions until February 12, so if they anticipated litigation on February 11, they anticipated on February 10 and February 8, and the days in which they hatched the scheme—because nothing changed. And, on February 12, 2021, each of the Counterclaim-Defendants signed and sent Cyrulnik the Removal Email, in which they expressly asked Cyrulnik to enter into an "***agreement to confidentially arbitrate any dispute*** that may arise among you, us, and/or the firm," belying any notion that they did not anticipate at least the possibility of litigation. (Ex. 12.)

Nevertheless, Counterclaim-Defendants concede that they continued to auto-delete all of those communications and did not take any steps to preserve any evidence, including Signal chats, until at least February 16, 2021, *eight days* after their February 8 meeting. (Ex. 6 (Freedman Dep.) 59:2-10; Ex. 13 (Roche Dep.) 193:7-21.) By then, it was far too late, and all the Signal messages they exchanged in connection with Cyrulnik's removal were irretrievably destroyed.

## ARGUMENT

### I. Legal Standard

Rule 37(e) authorizes spoliation sanctions where (i) "electronically stored information that should have been preserved in the anticipation or conduct of litigation" (ii) "is lost because a

---

product prepared in anticipation of litigation over the same." (Ex. 11 (RF Parties' Aug. 16, 2022 Privilege Log) at 2.) Although Counterclaim-Defendants produced an itemized log of certain of those 619 documents four months later in which they self-servingly omitted the reference to "work product prepared in anticipation of litigation" after depositions had concluded and Counterclaim-Defendants' intentional spoliation of messages was uncovered, their initial admission stands, and in any event, even the itemized communications, beginning as early as February 11, 2021, are still cloaked with privilege as "[e]mail[s] with counsel for purposes of obtaining legal advice in connection with Cyrulnik's for cause removal." (Ex. 10 (RF Parties' Dec. 13, 2022 Privilege Log) at 3-29.)

6

party failed to take reasonable steps to preserve it," and (iii) "it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).  The party seeking spoliation sanctions "has the burden of establishing the elements of a spoliation claim by a preponderance of the evidence." *Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, 2021 WL 1191527, at *5 (S.D.N.Y. Mar. 30, 2021).

A broad range of measures is available to cure the prejudice to the non-spoliating party, including dismissal of the spoliator's complaint, a default judgment, presumption that the information lost was unfavorable to the spoliator, and an instruction to the jury that it may or must presume the information was unfavorable to the spoliating party.  Fed. R. Civ. P. 37(e)(2). The imposition of spoliation sanctions is within the Court's discretion, and is designed to ensure that spoliators do not benefit from their wrongdoing, place the risk of erroneous judgment on the spoliator who created such risk, and restore the prejudiced party to the same position it would have had but for the spoliation.  *See Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999); *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F.Supp.3d 570, 580 (S.D.N.Y. 2017).

Movants are entitled to a default judgment or adverse inference under Rule 37(e)(2) where spoliation was intentional.  "An intent to deprive can be found either from a conscious act of destruction or a conscious dereliction of a known duty to preserve electronic data." *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 2019 WL 6838672, at *5 (S.D.N.Y. Dec. 16, 2019). Notably, the movant "need not establish that a smoking gun" message once existed and was irretrievably destroyed.  *Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *21 (S.D.N.Y. June 20, 2019).

Even if the Court does not find the requisite intent to deprive, the non-spoliating party is still entitled to relief under Rule 37(e)(1) where they were prejudiced by the non-deliberate

7

spoliation. *See CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 502 (S.D.N.Y. 2016) (sanctions available under Rule 37(e)(1) for prejudice arising from creation of substitute emails).

**II.     Counterclaim-Defendants Deliberately Failed To Preserve Relevant ESI, Prejudicing Cyrulnik and Warranting Sanctions**

   **A.     Counterclaim-Defendants Were Under A Duty To Preserve No Later Than February 8, 2021**

The record is clear that Counterclaim-Defendants had a duty to preserve evidence at a bare minimum as of February 8, 2021, when they created a Signal chat group relating to a secret meeting they were planning to orchestrate the removal of a founding equity partner of their law firm without notice. The notion that Counterclaim-Defendants, all of whom are professional litigators, did not anticipate litigation when they were secretly meeting to discuss removing and splitting the extremely valuable assets of their firm's co-founder and largest equity holder would be utterly absurd. And their admission that they conducted legal research and analysis as they implemented their contemplated removal scheme is the proverbial nail in Counterclaim-Defendants' coffin: Counterclaim-Defendants must have reasonably foreseen litigation (or, alternatively, and at a bare minimum, should have reasonably foreseen litigation by any objective standard). Further, the particular risks associated with the use of Signal and similar applications have been known and discussed in the legal profession for years (and well before Cyrulnik's removal). *See* The Sedona Conference, *Primer on Social Media, Second Edition*, 20 SEDONA CONF. J. 1, 90 (2019) ("A client's use of ephemeral messaging for relevant communications after a duty to preserve has arisen may be particularly problematic, as it would have the potential to deprive adversaries and the court of relevant evidence.").

As Counterclaim Defendants undoubtedly know, the duty to preserve "arises when the party has notice that the evidence is relevant to litigation or when a party *should have known* that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Exp. Corp.,* 247 F.3d 423,

8

436 (2d Cir. 2001). The reasonable foreseeability of litigation "is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011). This is a "flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Id.* (citing *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)). Indeed, courts in this district have found that anticipation of litigation ***necessarily*** occurs when an internal email calls for potential termination. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216-17 (S.D.N.Y. 2003) (holding that "the relevant people at UBS anticipated litigation" in light of "an e-mail authored by [plaintiff's] co-worker . . . essentially call[ing] for [plaintiff's] termination," and that the "duty to preserve attached at th[at] time."). Here, where each of the Counterclaim-Defendants planned and attended multiple, hours-long meetings to discuss and ultimately vote on their plan to terminate Cyrulnik and split among themselves his tens of millions of dollars in assets, it is *a fortiori* that they anticipated the possibility of litigation, and their duty to preserve attached no later than when they planned the February 8, 2021, meeting (and of course no later than February 8, 2021).[4]

---

[4] Notably, Counterclaim-Defendants actually began to discuss a secret scheme to remove Cyrulnik weeks before February 8, 2021. Holcomb testified that "a few weeks before the February 8th meeting" was the first time he heard that some of the Counterclaim-Defendants were scheming to remove Cyrulnik, and that Holcomb's reaction was to tell Friedland "something to the effect of well the issue is going to be the tokens." (*See* Ex. 9 (Holcomb Dep.) 120:6-121:22). Normand also testified that he secretly discussed the prospect of removing Cyrulnik for cause with Roche "somewhere in the middle or two thirds into [January 2021]" (Ex. 14 (Normand Dep.) 322:3-326:14), and that he had "[a]t least two or three" conversations "in the second half of January [2021]" about possibly removing Cyrulnik, including specifically having chats with Friedland and Holcomb on the subject (*id.* at 404:7-408:8). Given these discussions, Counterclaim-Defendants had a duty to preserve their communications (and disable the auto-delete setting in Signal) significantly earlier than February 8.

9

Having reasonably foreseen litigation by any metric—but especially because each of the Counterclaim-Defendants litigates for a living and regularly advises clients on their duty to preserve relevant documents and information—Counterclaim-Defendants would have been well-aware that their duty to preserve evidence extended to ESI, including disappearing or ephemeral messages.

Even if the Court finds that the prospect of litigation somehow was not foreseeable on February 8, 2021, there can be no question that it was expressly anticipated by February 11, 2021, when Counterclaim-Defendants engaged outside counsel and obtained, in their own words, "work product prepared in anticipation of litigation over" "Cyrulnik's for cause removal." (Ex. 10 (RF Parties' Dec. 13, 2022 Privilege Log) at 2.)[5] And they certainly anticipated litigation the next day, February 12, when they invited Cyrulnik to litigate (through confidential arbitration) any dispute over his improper removal. (Ex. 12.)

### B. Counterclaim-Defendants' Spoliation Was Deliberate And Intended To Deprive Cyrulnik Of Highly Relevant Discovery

Counterclaim-Defendants' intentions regarding their use of Signal are clear: they intentionally sought to use a clandestine messaging application to avoid creating a discoverable paper trail that they would have to turn over to Cyrulnik in future litigation over Cyrulnik's wrongful removal from the firm.

---

[5] As noted above, their amended itemized privilege log similarly asserts privilege over **dozens** of documents, starting on February 11, 2021, all of which are identified as "e]mail[s] with counsel for purposes of obtaining legal advice in connection with Cyrulnik's for cause removal." (Ex. 15 (RF Parties' Dec. 13, 2022 Privilege Log) at 3-29); *see supra* note 3. Because they never shared any of their discussions with Cyrulnik until February 12, nothing could have changed their anticipation of litigation between February 8 and February 11—the date to which the dozens of logged communications date back.

Because spoliators rarely admit that they intentionally destroyed relevant evidence, courts do not require an admission for a finding of intent to spoliate evidence. *See Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*, 2021 WL 2788432, at *12 (E.D.N.Y. July 2, 2021) ("A court may infer that a party acted with an intent to deprive on the basis of circumstantial evidence."); *Ottoson*, 268 F. Supp. 3d at 582 (noting direct and circumstantial evidence, including plaintiff's failure to take "any reasonable steps to preserve . . . communications," as sufficient to establish intent); *see also Jones v. Hirschbach Motor Lines, Inc.*, 2022 WL 4354856, at *4 (D.S.D. Sept. 20, 2022) ("Since intent is rarely proved by direct evidence, the court has 'substantial leeway' to determine intent through consideration of circumstantial evidence, witness credibility, motives of witnesses, and other factors.").

Here, Counterclaim-Defendants' purposeful scheme to destroy evidence and make it undiscoverable through the use of Signal constitutes intentional spoliation of evidence under Rule 37. This conclusion is particularly appropriate where, as here, the spoliators are sophisticated litigation attorneys who are well-aware of their duty to preserve evidence and communications. Indeed, courts have even found spoliation sanctions are warranted against lay parties who engage in similar conduct, and concluded that a party's use of Signal when under a duty to preserve documents ***in and of itself*** amounts to spoliation.

For instance, in *Federal Trade Commission v. Noland*, 2021 WL 3857413 (D. Ariz. Aug. 30, 2021), *motion to certify appeal denied*, 2021 WL 5138280 (D. Ariz. Nov. 4, 2021), the court granted the FTC's motion for spoliation sanctions where the defendants began using Signal and ProtonMail, an encrypted email service, as a medium for discussing sensitive matters. *Id.* at *14-15. Likewise, another court found that the defendants' use of Signal, which the court described as a "communication application designed to disguise and destroy communications," was the

11

cornerstone of the court's conclusion that the defendants' actions constituted "intentional, bad-faith spoliation of evidence" and an "abuse of the judicial process." *Herzig v. Ark. Found. for Med. Care, Inc.*, 2019 WL 2870106, at *5 (W.D. Ark. July 3, 2019).

This Court should reach the same conclusion as the courts in *Noland* and *Herzig*. Particularly in this case, where the spoliation parties are highly sophisticated and together have decades of professional litigation experience that involved electronic discovery, there can be no question that their use of Signal (and configuration of its auto-deletion option) was deliberate and calculated to avoid eventual production of discoverable information. After all, in their professional capacities, individual Counterclaim-Defendants are ***required*** to know the risks of using various technologies, such as ephemeral messaging. In fact, the New York State Bar Association has expressly identified "keep[ing] abreast of the benefits and risks associated with technology the lawyer uses to provide services to clients or to store or transmit confidential information" as part of every attorney's duty of competency. N.Y.S. R.P.C. Rule 1.1 cmt. 8. And as shown above, the risks associated with ephemeral messaging have been discussed within the legal community at least since 2019—years before Counterclaim-Defendants perpetrated their spoliation. *See* Sedona Conference, *supra*, at 90. Accordingly, the only reasonable conclusion is that Counterclaim-Defendants intentionally spoliated evidence through their use and configuration of Signal. Counterclaim-Defendants' spoliation of their communications has deprived Cyrulnik of highly relevant (and likely highly incriminating), discoverable evidence.

**C.     Dismissal of Claims/Default Judgment Or An Adverse Inference Is Necessary To Cure Counterclaim-Defendants' Spoliation**

Where, as here, the spoliator intentionally destroyed information to prevent its use in litigation, this Court is authorized under Rule 37(e)(2) to use "severe measures to address or deter failures to preserve electronically stored information." Fed. R. Civ. P. 37(e)(2) & 2015

12

advisory comm. note.  Those measures include dismissal of claims/default judgment.  *See Pable v. Chicago Transit Auth.*, 2023 WL 2333414, at *47 (N.D. Ill. Mar. 2, 2023) (recommending dismissal of complaint with prejudice where Plaintiff intentionally used Signal "disappearing messages" setting after duty to preserve arose during active litigation); *see also Oil Equip. Co. v. Modern Welding Co.*, 661 F. App'x 646, 654 (11th Cir. 2016) (affirming dismissal where spoliation "deprived the opposing party of an opportunity to put on a complete defense"); *Regul. Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*, 2014 WL 3844796, at *15-16 (S.D.N.Y. Aug. 5, 2014) (sanctioning intentional destruction by terminating action and entering judgment for plaintiff).  Alternatively, the Court may provide an adverse inference instruction to the jury.[6]  *See Ottoson*, 268 F. Supp. at 584 (ordering adverse inference due to willful or bad faith destruction); *Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 185 (S.D.N.Y. 2014) (ordering mandatory adverse inference instruction).

Even if the Court concludes that Counterclaim-Defendants' spoliation was ***not*** intentional (and it was), sanctions would still be warranted here.  Rule 37(e)(1) does not limit the imposition of serious sanctions—including an order precluding Counterclaim-Defendants from putting on proof—to a finding of intent.  Courts can impose such sanctions where they are necessary to "cure the prejudice" suffered by non-spoliating parties like Cyrulnik.  *See* Fed. R. Civ. P. 37(e)(1) & 2015 advisory comm. note (noting that appropriate sanctions include "forbidding the party that failed to preserve information from putting on certain evidence"); *see also CAT3*, 164 F. Supp. 3d at 502 (same); *Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, 2016 WL 5092588, at *20 (E.D.N.Y. Sept. 19, 2016) (same); *Barsoum, v. NYC Hous. Auth.*, 202 F.R.D

---

[6]  For example, given the dearth of information about the February 8 and 10 meetings, an adverse inference that the purpose of the meeting and the vote to remove Cyrulnik was pretextual would be appropriate.

13

396, 401 (S.D.N.Y. 2001) (precluding certain evidence). Based on the centrality of the spoliated evidence to the claims in this case, the sanctions capable of curing Cyrulnik's prejudice are dismissal of RF's claims and Counterclaim-Defendants' defenses to Cyrulnik's claims, and, at the very least, an adverse inference as discussed above.

### D. Cyrulnik Is Entitled to Attorneys' Fees

In additional to either dismissal of claims/default judgment or an adverse inference, Cyrulnik is also entitled to attorneys' fees. "Rule 37(e)(1) authorizes an award of attorneys' fees and costs to the moving party, to the extent reasonably necessary to address any prejudice caused by the spoliation." *Karsch*, 2019 WL 2708125, at *26. Cyrulnik should be reimbursed for all fees and costs he has incurred in (1) raising the issue of destroyed Signal information with Counterclaim-Defendants and with the Court, including the preparation of this motion for sanctions, and (2) seeking substitute discovery, via deposition or otherwise. *See, e.g.*, *Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055, at *17 (S.D.N.Y. Mar. 12, 2018).

## CONCLUSION

For the foregoing reasons, Cyrulnik respectfully requests that the Court enter an Order granting his motion for spoliation sanctions and dismissing Counterclaim-Defendants' claims and granting a default judgment to Cyrulnik, or, in the alternative, directing the jury to find a mandatory, non-rebuttable adverse-inference instruction from the fact of RF's spoliation of Signal messages. Cyrulnik further respectfully requests that the Court grant an award of attorneys' fees and costs.

Dated: February 27, 2024
      New York, New York

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By: */s/ Marc E. Kasowitz*
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Kevin A. Cyrulnik (kcyrulnik@kasowitz.com)
Gavin D. Schryver (gschryver@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel.:   (212) 506-1700
Fax:   (212) 506-1800

*Attorneys for Defendant/Counterclaim-Plaintiff Jason Cyrulnik*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that according to the word count feature of the word processing program used to prepare this brief, the brief contains 4,328 words (exclusive of the cover page, certificate of compliance, table of contents, and table of authorities), and complies with Local Civil Rule 11.1 of the Southern District of New York, as well as with this Court's Individual Practice Rule 2.D.

Dated:  February 27, 2024
        New York, New York

                                                    */s/ Marc E. Kasowitz*
                                                    Marc E. Kasowitz