**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROCHE FREEDMAN LLP, | |
|        Plaintiff, | |
| v. | Case No. 1:21-cv-01746 (JGK) |
| JASON CYRULNIK, | |
|        Defendant. | |
| | |
| JASON CYRULNIK, | |
|        Counterclaim-Plaintiff, | |
| v. | |
| ROCHE FREEDMAN LLP, KYLE ROCHE, DEVIN FREEDMAN, AMOS FRIEDLAND, NATHAN HOLCOMB, and EDWARD NORMAND, | |
|        Counterclaim-Defendants. | |

**PLAINTIFF AND COUNTERCLAIM-DEFENDANTS' MEMORANDUM OF LAW**
**IN OPPOSITION TO CYRULNIK'S MOTION FOR SANCTIONS**
**AND IN SUPPORT OF CROSS-MOTION TO EXCLUDE SPOLIATION EVIDENCE**

## <u>TABLE OF CONTENTS</u>

ARGUMENT ....................................................................................................................... 1

I.    THE COURT SHOULD DENY CYRULNIK'S SANCTIONS MOTION. ........................... 1

   A.  Cyrulnik's Motion Does Not Comply with Local Civil Rule 37.2. .................................. 1

   B.  Cyrulnik's Motion Is Untimely ....................................................................................... 2

       1.   Discovery closed on September 30, 2022 and the parties are now on the eve of
          trial. ....................................................................................................................... 3

       2.   Cyrulnik cannot show good cause for his delay, as he has been aware of all the
          issues raised in his motion since June 2022. ....................................................... 4

   C.  Cyrulnik's Motion Is Baseless Because He Knows No Evidence Was Destroyed. ........... 5

       1.   Cyrulnik knows no Signal messages were ever sent in the February 8 group chat. ..... 6

       2.   The evidence shows Cyrulnik's removal was never discussed on Signal. ................. 11

       3.   The lack of relevant Signal communications is fatal to Cyrulnik's motion. .............. 15

II.   THE COURT SHOULD PRECLUDE CYRULNIK FROM INJECTING HIS FRIVOLOUS
     SPOLIATION ALLEGATIONS INTO THE TRIAL. ............**Error! Bookmark not defined.**

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 60 E. 80th St. Equities, Inc.*,
   218 F.3d 109 (2d Cir. 2000)...................................................20

*Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*,
   301 F.R.D. 31 (S.D.N.Y. 2014) ...............................................2, 3

*Alaimo v. Trans World Airlines, Inc.*,
   2005 WL 267558 (S.D.N.Y. Feb.3, 2005)...................................6

*Ali v. A & G Co., Inc.*,
   542 F.2d 595 (2d Cir. 1976)...................................................4

*Baez v. Delta Airlines, Inc.*,
   2013 WL 5272935 (S.D.N.Y. Sept. 18, 2013)...............................4, 17

*Bosman v. Glod*,
   564 B.R. 443 (N.D.N.Y. 2017) ...............................................4

*Craig v. UMG Recordings, Inc.*,
   380 F. Supp. 3d 324 (S.D.N.Y. 2019).......................................20

*Dilworth v. Goldberg*,
   3 F. Supp. 3d 198 (S.D.N.Y. 2014)...........................................16

*Dux S.A. v. Megasol Cosmetic GmbH*,
   2006 WL 44007 (S.D.N.Y. Jan. 9, 2006) ...................................20

*Ferrari Club of Am., Inc. v. Bourdage*,
   2017 WL 6419053 (W.D.N.Y. Apr. 20, 2017)...............................3, 4

*In re: Gen. Motors LLC Ignition Switch Litig.*,
   2015 WL 9480315 (S.D.N.Y. Dec. 29, 2015) ...............................19

*Gioia v. Forbes Media LLC*,
   2011 WL 4549607 (S.D.N.Y. Sept. 30, 2011)...............................3

*Grief v. Nassau County*,
   2022 WL 307154 (E.D.N.Y. Feb. 2, 2022)...................................17

*John St. Leasehold, LLC v. Cap. Mgmt. Res., L.P.*,
   154 F. Supp. 2d 527 (S.D.N.Y. 2001)........................................17

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    341 F.R.D. 474 (S.D.N.Y. 2022) .........................................................15

*Marceline v. Delgado*,
    2012 WL 517301 (D. Conn. Feb. 16, 2012) .........................................19

*Mazza v. Dist. Council for N.Y. & Vicinity United Bhd. of Carpenters & Joiners of Am.*,
    2008 WL 11411849 (E.D.N.Y. July 2, 2008) .......................................15

*Mazzei v. Money Store*,
    656 F. App'x 558 (2d Cir. 2016) ..........................................................15

*Meadowbrook-Richman, Inc. v. Associated Fin. Corp.*,
    253 F. Supp. 2d 666 (S.D.N.Y. 2003)......................................................2

*Mohammed v. Delta Airlines, Inc.*,
    2011 WL 5554269 (E.D.N.Y. Nov. 15, 2011)......................................2, 3

*Muhammad v. Walmart Stores East, L.P.*,
    732 F.3d 104 (2d Cir. 2013)...................................................................20

*Nin v. Liao*,
    2004 WL 2848520 (S.D.N.Y. Dec. 9, 2004) ........................................16

*Park W. Radiology v. CareCore Nat'l LLC*,
    675 F. Supp. 2d 314 (S.D.N.Y. 2009)....................................................18

*In re Pfizer Inc. Secs. Litig.*,
    288 F.R.D. 297 (S.D.N.Y. 2013) ........................................................6, 15

*Pierre v. Air Serv Sec.*,
    2016 WL 5136256 (E.D.N.Y. Sept. 21, 2016) ......................................17

*Ring's End Inc. v. Black & Decker (U.S.), Inc.*,
    2017 WL 3698491 (D. Conn. Aug. 25, 2017) ......................................19

*Rock v. Enfants Riches Deprimes, LLC*,
    2020 WL 468904 (S.D.N.Y. Jan. 29, 2020) .........................................20

*Scott v. Chipotle Mexican Grill, Inc.*,
    300 F.R.D. 193 (S.D.N.Y. 2014) ..........................................................18

*Separzadeh v. Iconix Brand Grp., Inc.*,
    2016 WL 6126386 (S.D.N.Y. Oct. 19, 2016) .......................................18

*Tortora v. City of New York*,
    2019 WL 9100369 (E.D.N.Y. Mar. 30, 2019) ........................................3

*Tri–Cnty. Motors, Inc. v. Am. Suzuki Motor Corp.*,
  494 F. Supp. 2d 161 (E.D.N.Y. 2007) ....................................................................3, 6, 16, 17

*Tri-Star Pictures, Inc. v. Unger*,
  171 F.R.D. 94 (S.D.N.Y. 1997) ...................................................................................................2

*Williams v. City of New York*,
  2017 WL 4382283 (S.D.N.Y. Sept. 29, 2017).................................................................1, 17

*Williams v. Rosenblatt Secs. Inc.*,
  2016 WL 590232 (S.D.N.Y. Feb. 11, 2016) ...........................................................................1

**Other Authorities**

Local Civil Rule 37.2...........................................................................................................................1

Defendant-Counterclaimant Jason Cyrulnik, lacking any evidence for his position, now resorts to making it up and alleging that evidence in his favor must have been spoliated. His belated sanctions claim not only reeks of desperation; it is itself sanctionable for being so spurious. This Court should therefore summarily deny his spoliation sanctions motion as a matter of fact and law for three independent reasons: (1) he failed to comply with the prerequisite requirements of Local Civil Rule 37.2 before filing his motion; (2) his motion is untimely, as there is no good cause for waiting until 1.5 years after the close of discovery and on the eve of trial to file this motion; and (3) he has failed to identify any relevant evidence that was actually destroyed because no such evidence was, in fact, destroyed.

## ARGUMENT

## I.    THE COURT SHOULD DENY CYRULNIK'S SANCTIONS MOTION.

### A.    Cyrulnik's Motion Does Not Comply with Local Civil Rule 37.2.

Local Civil Rule 37.2 provides that "[n]o motion under Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure shall be heard unless counsel . . . has first requested an informal conference with the Court by letter-motion for a pre-motion discovery conference." *Id*.

Cyrulnik's motion falls directly under this Rule as he seeks sanctions pursuant to "Rule 37(e)." ECF No. 588 at 6-8. But in violation of Local Rule 37.2, he never requested an informal conference by letter motion. As this Court has repeatedly held in other cases, this failure "requires" denying Cyrulnik's motion for sanctions. *See, e.g.*, *Williams v. Rosenblatt Secs. Inc.*, 2016 WL 590232, at *3 (S.D.N.Y. Feb. 11, 2016) (Koeltl, J.) ("The plaintiff's failure to request such a conference requires that his Rule 37 motion be denied.") (denying motion for sanctions); *Williams v. City of New York*, 2017 WL 4382283, at *1 n.1 (S.D.N.Y. Sept. 29, 2017) (Koeltl, J.) ("The plaintiff's motion for sanctions under Rule 37 should also be denied because the plaintiff failed to comply with Local Rule 37.2 [by requesting a pre-motion discovery conference].").

Although Cyrulnik alternatively seeks a jury instruction, that does not convert his motion into something other than a discovery motion subject to Local Civil Rule 37.2. In *Meadowbrook-Richman, Inc. v. Associated Financial Corp.*, a defendant sought summary judgment on the grounds that plaintiff had failed to provide complete interrogatory responses. 253 F. Supp. 2d 666, 680 (S.D.N.Y. 2003) (Koeltl, J.). This Court denied the motion, holding it was "either a discovery dispute or a motion for sanctions" requiring a discovery conference under Local Rule 37.2, and that "[t]he failure to request such a conference requires that any motion based on the alleged failure to provide interrogatory answers be denied." *Id.*

In sum, Cyrulnik's motion "violates the meet-and-confer requirements of the Federal Rules of Civil Procedure, the Local Rules, and this Court's Individual Rules," and "should be denied" accordingly. *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 100 (S.D.N.Y. 1997).

### B.   Cyrulnik's Motion Is Untimely.

The Court should deny Cyrulnik's motion for the independent reason that it is a *discovery* motion that should have been filed 1.5 years ago—and Cyrulnik makes no attempt to establish the requisite good cause for filing it now.

Because a "party must show good cause" where it "seeks to make a discovery motion after the close of discovery," courts in this Circuit routinely deny spoliation motions as untimely where they are filed after the close of the discovery and no good cause is shown.  *Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 31, 43-44 (S.D.N.Y.) (denying sanctions motion as "grossly untimely" because it was "not made until 11 months after the close of discovery" and the party "does not rely on information first produced after the close of discovery"), *objections overruled,* 301 F.R.D. 47 (S.D.N.Y. 2014); *Mohammed v. Delta Airlines, Inc.*, 2011 WL 5554269,

at *3 (E.D.N.Y. Nov. 15, 2011) ("Plaintiff's motion for sanctions is untimely because it should have been raised during the discovery stage of plaintiff's state court case.").

Courts consider various factors when determining whether a spoliation motion is untimely, including (1) how long after the close of discovery the motion was brought, (2) whether the motion is made on the eve of trial, (3) whether there was a deadline in the Rule 16(b) scheduling order, and (4) any explanation for the delay. *Ferrari Club of Am., Inc. v. Bourdage*, 2017 WL 6419053, at *2 (W.D.N.Y. Apr. 20, 2017) (citing *Goodman v. Praxair Servs. Inc.*, 632 F. Supp. 2d 494 (D. Md. 2009) (collecting cases)). All four factors here establish that Cyrulnik's motion should be denied as untimely and that Cyrulnik has nothing close to "good cause" for his 1.5-year delay.

### 1. Discovery closed on September 30, 2022 and the parties are now on the eve of trial.

Discovery closed 1.5 years ago, on September 30, 2022. ECF No. 169. Dispositive motions, as Cyrulnik's motion purports to be, were due over tenth months ago. ECF No. 378 at 1 ("Any dispositive motions are due **May 26, 2023**."). Summary judgment briefing concluded over seven months ago. ECF Nos. 414, 455. The Court decided summary judgment more than three months ago. ECF No. 539 (Nov. 24, 2023).

Courts routinely deny far less tardy spoliation motions as untimely. *See Advanced Analytics, Inc.*, 301 F.R.D. at 43-44 (denying sanctions motion filed 11 months after close of discovery as untimely); *Gioia v. Forbes Media LLC*, 2011 WL 4549607, at *3 n.2 (S.D.N.Y. Sept. 30, 2011) (denying sanctions motion raised "for the first time in . . . opposition to Defendants' summary judgment motion" as untimely); *Tortora v. City of New York*, 2019 WL 9100369, at *8 n.16 (E.D.N.Y. Mar. 30, 2019) (denying sanctions motion first raised at summary judgment as untimely); *Mohammed*, 2011 WL 5554269, at *3 (denying sanctions motion as "untimely because it should have been raised during the discovery stage"); *Tri–Cnty. Motors, Inc. v. Am. Suzuki Motor*

*Corp.*, 494 F. Supp. 2d 161, 178 (E.D.N.Y. 2007) (denying sanctions motion first made at summary judgment as untimely); *Bosman v. Glod*, 564 B.R. 443, 447 (N.D.N.Y. 2017) (affirming denial of sanctions motion as untimely when first raised in pre-trial statements); *accord Baez v. Delta Airlines, Inc.*, 2013 WL 5272935, at *9 n.15 (S.D.N.Y. Sept. 18, 2013) ("While the Court need not reach whether the motion is timely, it notes that these issues should have been raised promptly during discovery, and not in a motion for spoliation after discovery has closed.").

Cyrulnik's motion—brought 1.5 *years* after the close of discovery, ten months after the Court's deadline for dispositive motions, and three months after this Court's ruling on summary judgment—is patently untimely. This is especially so because Cyrulnik has "placed the court in an intolerable position" by waiting until an eleventh-hour pre-trial submission to file a spoliation motion for the first time. *Ali v. A & G Co., Inc.*, 542 F.2d 595, 596 (2d Cir. 1976) (affirming order under Rule 37 because party waited until three weeks after the close of discovery, and on the eve of trial, to raise discovery motion); *Ferrari Club of Am., Inc.*, 2017 WL 6419053, at *2 (denying motion for sanctions filed on "eve of trial" as untimely). The motion should be denied.

### 2. Cyrulnik cannot show good cause for his delay, as he has been aware of all the issues raised in his motion since June 2022.

Cyrulnik does not even attempt to proffer good cause for his 1.5-year delay because there is none. Given that Cyrulnik himself used Signal's disappearing message feature, he has been aware of the issues raised in his motion since the inception of this case. In fact, in June 2022, three months *before* discovery closed, Cyrulnik informed the Court that he intended "to seek appropriate relief regarding the spoliation of evidence" based on the exact same purported issue with Signal's autodeletion feature that he raises now. ECF No. 142, at 2 n.1 (June 21, 2022 letter). Then, in July 2022—still two months before the close of discovery—Cyrulnik told the Court he was "going to

have to address this [supposed destruction of Signal messages] in a spoliation setting pretty soon." ECF No. 185, July 5, 2022, Hrg. Tr. 21:13-18. He never did.[1]

Instead, months *after* discovery closed, Cyrulnik moved to compel the production of so-called "Signal Spoliation Documents," *i.e.,* "screenshots showing that changes to Signal settings were instituted on . . . February 16, 2021 to disable the auto-deletion setting." ECF No. 288 at 3 (Nov. 18, 2022). Magistrate Judge Netburn denied that motion. ECF No. 299 at 2 (Dec. 9, 2022) ("The Court has previously ruled that no further discovery is warranted and stands by that ruling."). Yet Cyrulnik never appealed that ruling nor did he file his promised spoliation sanctions motion.

Cyrulnik thus cannot possibly establish good cause for his 1.5-year delay.  He (1) has known about Signal's disappearing message feature since this case began; (2) raised this very issue to the Court at least three months before the close of discovery; (3) knew he would need to seek relief "pretty soon"; and (4) over one year ago lost a discovery motion on this exact issue—and yet, he *still* dawdled, drawing out the clock for over one more year before filing this motion close to trial. If Cyrulnik could not be bothered to seek relief 1.5 years ago, the Court should not be bothered to grant such relief now.

### C.  Cyrulnik's Motion Is Baseless Because He Knows No Evidence Was Destroyed.

A third reason for denying Cyrulnik's motion is that it is patently meritless; as Cyrulnik knows well, he cannot show that any relevant evidence *ever* existed (because it never did).

"The Second Circuit has identified three factors necessary to make out a claim for spoliation: 1) that the party with control over the evidence had a duty to preserve it when it was

---

[1] To be sure, Cyrulnik made this false accusation about spoliation to the Court multiple other times as well. *See, e.g.*, ECF Nos. 150 at 7-8 (June 28, 2022); 162 at 4 n.3 (July 12, 2022). Yet even on those occasions, too, Cyrulnik failed to file the instant motion.

lost or destroyed; 2) that the evidence was lost or destroyed with a 'culpable state of mind'; and 3) that the evidence was relevant." *Tri-Cnty. Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 176-77 (E.D.N.Y. 2007) (citations omitted), *aff'd,* 301 F. App'x 11 (2d Cir. 2008). "The party moving for sanctions bears the burden of establishing all three of these elements." *Id.* at 177.

As this Court has explained, however, "[t]here is no basis to sanction a party for non-production or spoliation when those documents never existed in the first instance." *In re Pfizer Inc. Secs. Litig.*, 288 F.R.D. 297, 328 (S.D.N.Y. 2013) (Koeltl, J.). Here, Cyrulnik cannot even get to any of the spoliation factors because he has not shown that the supposedly spoliated evidence actually existed at one point. His bare "speculative assertions as to the existence of documents do not suffice to sustain a motion for spoliation of evidence." *Alaimo v. Trans World Airlines, Inc.*, 2005 WL 267558, at *3 (S.D.N.Y. Feb. 3, 2005) ("Since plaintiff has not establish[ed] that the records and documents she sought ever existed, there can be no finding of spoliation of evidence.").

### 1.   Cyrulnik knows no Signal messages were ever sent in the February 8 group chat.

The keystone of Cyrulnik's motion is a Signal group chat titled "Feb 8 Meeting" that contains no messages. ECF No. 588 at 4; ECF No. 595-8. Cyrulnik leads the Court to believe that messages were sent in this chat and subsequently erased by Signal's auto-deletion function. ECF No. 588 at 4 ("What they did then is largely a mystery, because Roche, Freedman and the other Counterclaim-Defendants set up their communications on that secret chat to 'self-destruct.'")

But that is a blatant and demonstrable lie: No messages were ever sent to that group.

Cyrulnik fails to inform the Court that (i) Signal chats reflect *the enabling* (and disabling) of the disappearing-messages function, and (ii) Signal chats *never* delete changes to the autodeletion setting. So if someone had, in fact, ever enabled the disappearing-messages function

or set up auto-deletion of chats from the "Feb 8 Meeting" group chat, those changes would have been reflected in the group chat itself.

Cyrulnik is obviously aware of these features because he regularly utilized the disappearing-messages feature himself:



Declaration of Randy M. Mastro ("Mastro Decl.") Ex. 1 (RF__0425538, Signal Chat with Freedman) (highlighted to show change in disappearing-message setting).



Mastro Decl. Ex. 2 (RF__0426873, Signal Chat with Normand) (highlighted to show change in disappearing-message setting).

In glaring contrast, Cyrulnik's purported smoking gun, the Feb 8 Meeting chat, demonstrates that disappearing messages or auto-deletion were **_never_** enabled on the chat, ever:



Mastro Decl. Ex. 3 (RF__0425682, Signal Chat titled "Feb 8 Meeting).

The absence of any messages in the group chat, and the absence of any notation that disappearing messages or auto-deletion had been enabled, can mean only one thing: no messages were ever sent in this group chat. That reality was confirmed by Freedman's deposition testimony:

Q.   Do you recall a Signal chat being set up between you and the other partners, equity partners other than Jason and Paul Fattaruso on or about February 8, 2021?

A.   Yes.

…

Q.   **Were there any messages in that chat?**

A.   **No.**

Q.   **Zero?**

A.   **Zero.**

Q.   Was there another Signal chat that was set up other than that on or about February 8th?

9

> A.    Not that I am aware.

Mastro Decl. Ex. 4 ("Freedman Dep. Tr.") 81:4-20 (emphases added). As explained below, the reason why there were no chats in the Feb. 8 Meeting group chat was that Counterclaim-Defendants elected to discuss Cyrulnik's potential removal only by phone, not in writing.

There can be no question that Cyrulnik's attempt to mislead the Court about this evidence was purposeful. He knows full well that disappearing messages were never enabled on this chat given (i) he is an avid Signal user, that used the autodeletion feature even after being told it's "at once a silly and good idea," Ex. 2; (ii) he knows about the autodeletion annotations, as he previously moved to compel production of these very Signal setting changes, ECF No. 288 at 3; and (iii) he has already been told in open court that disappearing messages were never enabled on the "Feb 8 Meeting" Signal chat.  *See* ECF No. 185, July 5, 2022 Hrg. Tr. 24:12-25:1.

Indeed, the last time that Cyrulnik made this same spurious accusation, the RF Parties' counsel was forced to explain to Cyrulnik and the Court that disappearing messages simply were not enabled on this "Feb 8 Meeting" chat:

> I just want to say one thing about the Signal thing, because it's surprising that they've led with this, given that it's quite clear that Mr. Cyrulnik also knowingly embraced the use of Signal, and we sent examples where he himself set the settings to auto-delete . . . As it happens, the chain that they're talking about and raising spoliation arguments -- which are totally unfounded, we have the full chat. **Anytime someone sets the deletion setting, it's recorded in the chain, so you can see it.** So if it was ever set to delete, you know that -- **the chain he's talking about**, which was set up as a group for the partners who were potentially going to discuss this issue, **never had any disappearing message setting applied to it. There were no communications on Signal among that group, period, full stop. It's a null set.**

ECF No. 185, July 5, 2022 Hrg. Tr. 24:12-25:1 (emphases added). It is therefore clear that, unable to make the necessary showing that evidence was destroyed, Cyrulnik has resorted to lying about its existence.

## 2. The evidence shows Cyrulnik's removal was never discussed on Signal.

Not only were there no Signal messages in the "Feb 8 Meeting" group chat, but the evidence shows that there were never any Signal messages discussing Cyrulnik's removal—in *any* chat. Instead, as explained by Counterclaim-Defendants at their depositions (and in supplemental declarations attached herewith), *all* substantive communications about Cyrulnik's removal occurred (1) over the phone, (2) in person at the February 8 meeting, or (3) on a February 10 Zoom call.

Friedland testified that Counterclaim-Defendants did not use Signal **_at all_** for discussing Cyrulnik's removal. Mastro Decl. Ex. 5 ("Friedland Dep. Tr.") 309:24-310:7 ("Q. [D]id you and/or the other founding partners use Signal leading up to the February 8, 2021, meeting . . . for discussing Mr. Cyrulnik's potential removal? A. No, I did not. I did not and I did not receive any Signals in that regard as best I can recall."). In fact, Friedland testified that there were no "writings, documents, emails, Signal messages, [or] texts exchanged regarding the meeting" and that he knew about the meeting only from a "telephone call." *Id.* at 217:11-22 ("Q. Were there any writings, documents, e-mails, Signal messages, texts, exchanged regarding that meeting? A. I don't believe so. Q. How did you know to attend that meeting? A. Telephone call.")

Roche and Normand had the same recollection.[2] Roche specifically remembers that he chose not to, and did not have any communications about Cyrulnik's removal, the logistics around it, or anything related to it, with anyone over Signal – including with Freedman. Declaration of Kyle Roche ("Roche Decl.") ¶ 2. Normand has also testified he had no Signal communications with anyone about Cyrulnik's removal. Declaration of Edward Normand ("Normand Decl.") ¶ 2;

---

[2] Cyrulnik never asked Roche or Normand about their use of Signal.  For the sake of completeness, the RF Parties have submitted declarations along with this opposition providing their sworn testimony about their use of Signal.

*see* Mastro Decl. Ex. 6 (Normand Dep. Tr.) 322:3-14 (testifying that he first discussed removal in a January phone call with Roche/Friedland), 404:7-405:12 (testifying he never spoke to Freedman about Cyrulnik's removal before February 8).

Holcomb's testimony is in direct accord. He learned about the February 8 meetings because he "received a *call* from Amos [Friedland]." Mastro Decl. Ex. 7 (Holcomb Dep. Tr.) 120:6-19 (emphasis added). Holcomb also testified that, at that time, Friedland told him that "he had *conversations* with Kyle [Roche] and that Kyle [Roche] had . . . *conversations* with Vel [Freedman]." *Id.* at 121:6-16 (emphases added).

At Roche Freedman LLP's 30(b)(6) deposition, Freedman similarly testified that the February 8 meeting was coordinated over the phone, Mastro Decl. Ex. 8 ("RF Dep. Tr.") 144:25-145:16 ("Q. Was this all done -- was this all done over the phone? A. Yes."), and that he found out about the meeting when "Roche *called* me and told me that the meeting was going on on the 8th," *id.* at 238:17-239:5 (emphasis added).

At Freedman's personal deposition, he likewise confirmed the absence of any written communications about Cyrulnik's removal. He testified that "sitting here now *I don't recall any communications about Jason.* I can't swear under oath there weren't any. I can't swear under oath that there were any. *My best recollection there were not, but I don't remember.*" Freedman Dep. Tr." 82:23-83:10 (emphases added). He further testified, however, that to the extent there were any messages about Cyrulnik, they would have been limited to "logistics where to meet and what the address was. I don't remember for sure. Generally, we didn't really [use] Signal or e-mail about the issue with Jason." *Id.* at 82:12-22.[3] Thus, Freedman was the only witness to even *permit* the

---

[3] RF Dep. Tr. 147:7-11 ("Q: were any Signal messages exchanged relating to the meeting? A. *Not that I recall*, but it's possible there was a conversation about logistics that took place over Signal.").

possibility that Signal messages about logistics might have been exchanged, but his "best recollection" was that none were. Moreover, each of the other Counterclaim-Defendants have testified that no Signal messages were exchanged – thus confirming Freedman's "best recollection" that none were.

It bears emphasizing that the lack of written communications was not the product of some grand conspiracy, as Cyrulnik will certainly claim, but was simply a function of the nature of the issue. As both Freedman and Friedland explained, these were sensitive and nuanced issues that were best and most efficiently discussed over the phone, in person, and over Zoom meetings. Freedman testified:

> It's a sensitive issue; it's something you talk to somebody about. There are certain things in life and in the world that you talk to people about and you don't put in written communication; this was one of them . . . it's not [that] we didn't want to put it in writing; it's just not the conversation you have in writing.  We're talking removing a named partner of the firm for cause for misconduct; he was a person that many of us were friends with for a long time. This was not a joyous occasion, Mr. Schryver; it was not something we relished doing; this was hard emotionally on a lot of us, and this was not something anyone was inclined to write e-mails about.

RF Dep. Tr. 146:2-148:13. Friedland's testimony was similar:

> Q.   Were there any Signal messages exchanged between February 10, 2021, and February 12, 2021, relating to Mr. Cyrulnik's removal?
> A.   I'm not aware of any messages . . . I think we were not using Signal for messages on that at that time.
> Q.   Why not?
> A.   I think we were together or on calls, and I think we all wanted to be on the calls that involved -- together on all of those decisions."

Friedland Dep. Tr. 309:7-17. Thus, contrary to Cyrulnik's claim, he has no Signal messages about Cyrulnik's removal not because they were destroyed, but because none were ever created.

The *only* message that it appears *may* have been lost is a single Signal message from Roche to each of the other Counterclaim-Defendants on February 10, 2021—two days after the February 8 Meeting on which Cyrulnik focuses—containing a Zoom link and request to join the meeting.

But the testimony on this message was, at best, inconclusive. For example, Freedman testified that Zoom links for the February 10 meeting <u>may</u> have been sent to each of the Counterclaim-Defendants in separate messages:

> Q.    And how did they log onto this Zoom? Did you -- was a link circulated?
> A.    I am sure a link was provided; I don't recall how.
>
> Q.    Are there any documents that reflect this link being provided?
> A.    No.
>
> Q.    Why not?
> A.    I don't know. It could have been that it was shared via signal, I don't know, or it could have been -- yeah, it was probably shared via signal
> ….
>
> Q.·   How did they get the link?
> A.·   Again, I don't know, I don't recall, but since there are no documents about it, I would assume that they were sent a link individually.
>
> Q.    But one on one?
> A.    Yeah, there was no group to discuss it.
>
> Q.    So there was five separate signal chats, all of which are gone?
> A.    Yeah. I mean, the firm's common practice was to use signal at that time and the firm's common practice was that signal message is deleted in eight hours.

RF Dep. Tr. 228:18-230:6; 230:22-231:3 (testifying that firm would typically send out Signal that said "here's a link, please join this meeting")

The other Counterclaim-Defendants similarly acknowledged they may have received the Zoom link via Signal, but could not remember, and thought it also could have been sent through Zoom directly. Friedland Dep. Tr. 219:16-25 ("How did I get the link? I don't remember how I got the link. It may have been sent as a Zoom -- from Zoom itself. It may have been a Signal message. I don't recall."); Roche Decl. ¶ 3 (Believes he sent a Zoom link for the February 10 meeting to partners individually over Signal, but it contained nothing more than a request to join a Zoom link).

It is at least possible that the invites were sent directly from Zoom, and thus there was no evidence of it to preserve. None of the witnesses remember with any certainty. But even if the

Zoom link had been provided via Signal, this would be evidence only that the February 10 Zoom

meeting occurred, a fact which is undisputed. In other words, any evidence that Zoom links were

distributed would be wholly redundant. This alone would render an adverse inference sanction

improper. *See Mazzei v. Money Store*, 656 F. App'x 558, 559 (2d Cir. 2016) (affirming where this

"district court declined to grant additional relief in the form of an adverse inference charge because

the court found that the [allegedly spoliated evidence] contained only 'tangential information' as

to the" movant's claim).[4]

### 3. The lack of relevant Signal communications is fatal to Cyrulnik's motion.

For such a minor and administrative message to have been sufficiently relevant to support

sanctions, Cyrulnik would have to demonstrate prejudice by showing the lost information "was

not only probative, but that it would affirmatively support [his] claim." *In re Keurig Green*

*Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 497 (S.D.N.Y. 2022) (quoting

*Ungar v. City of New York*, 329 F.R.D. 8, 15 (E.D.N.Y. 2018)). "In short, 'sanctions are not

warranted unless there is proof that some information of significance has actually been lost.'" *Id.*

(quoting *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 431 (S.D.N.Y. 2010)).

Because Cyrulnik of course cannot show there is any significance for such a *de minimis*,

non-substantive communication, his request for sanctions must be denied. *See, e.g.*, *Pfizer*, 288

F.R.D. at 324-25 (Koeltl, J.) ("Plaintiffs are not entitled to sanctions based on Pfizer's failure to

produce documents" because "[e]ven assuming that these documents would weigh in Plaintiffs'

favor, there is simply no prejudice to Plaintiffs" where allegedly spoliated evidence was

duplicative, and thus "Plaintiffs [had] failed to demonstrate the relevance of the spoliated

---

[4] The same would be true of any "logistical" messages. While the testimony demonstrates that none were sent, any such messages would just be about the location and time of the February 8 meeting, facts no one denies.

evidence."); *Mazza v. Dist. Council for N.Y. & Vicinity United Bhd. of Carpenters & Joiners of Am.*, 2008 WL 11411849, at *5 (E.D.N.Y. July 2, 2008) (denying sanctions motion where plaintiff could not "establish that the supposedly missing payroll records would be favorable to his position").

Indeed, precisely this kind of ambiguous evidence coupled with rank speculation is regularly found insufficient to establish a spoliation claim. *See, e.g.*, *Nin v. Liao*, 2004 WL 2848520, at *6 (S.D.N.Y. Dec. 9, 2004). In *Nin*, there was an extant x-ray in the record, but a second x-ray had allegedly been spoliated. *Id.* The record as to the existence of that second x-ray, however, was disputed, as one witness testified that it "should" have existed, but subsequently "answered unequivocally" that the second x-ray was not even ordered. *Id.* The court held that this conflicting testimony rendered the existence of a second x-ray "a disputed issue of fact," and thus "it [was] impossible to say that spoliation occurred." *Id.*

Unlike in *Nin*, the record evidence here is clear that no Signal messages existed beyond a possible Zoom invite link. Not only has every percipient witness unequivocally denied the use of Signal to discuss Cyrulnik's removal, but the undisputed features of Signal make clear that no such messages ever existed. Even if Cyrulnik's motion could charitably be viewed as premised on ambiguity and speculation (it cannot), it still would need to be denied. *See Dilworth v. Goldberg*, 3 F. Supp. 3d 198, 202 (S.D.N.Y. 2014) ("The only evidence proffered in support of this claim consists of ambiguous statements" and a "speculative expert opinion" and thus "plaintiffs' motion for spoliation sanctions rests on pure speculation about the existence of [the evidence].").

To sum up, Cyrulnik "has not proffered a scintilla of evidence that the alleged missing" Signal messages ever existed in the first place. *Tri-Cnty. Motors, Inc.*, 494 F. Supp. 2d at 177. Cyrulnik "simply speculates that they *may have* existed given" that Counterclaim-Defendants had

16

a "pattern" of using disappearing messages on Signal (as of course, did Cyrulnik). *Id.* "Such speculative assertions as to the existence of documents do not suffice to sustain a motion for spoliation of evidence." *Id.*; *see also Williams*, 2017 WL 4382283, at *2 (Koeltl, J.) ("With respect to his claim for spoliation, the plaintiff has not provided any evidence—beyond his own mere speculation and conjecture—that the City Defendants or any of their lawyers destroyed any documents relating to this case with the intent to delay the identification of the Doe defendants."); *Pierre v. Air Serv Sec.*, 2016 WL 5136256, at *11 (E.D.N.Y. Sept. 21, 2016) ("Because Plaintiff's spoliation motion is not supported by any evidence, the Court denies his motion.")

Cyrulnik obviously failed to find the damning evidence he'd hoped for in discovery (because it never existed). But "evidence merely being missing is not enough to reflect either bad faith, the intentional destruction of evidence, or gross negligence." *Grief v. Nassau County*, 2022 WL 307154, at *6 (E.D.N.Y. Feb. 2, 2022) (citation and quotation marks omitted). And "[t]he fact that" Cyrulnik's "claims are not ultimately borne out by the evidence developed in discovery does not . . . warrant the imposition of spoliation sanctions as some sort of consolation prize." *Baez v. Delta Airlines, Inc.*, 2013 WL 5272935, at *9 n.15 (S.D.N.Y. Sept. 18, 2013).

Because Cyrulnik "has not shown any misconduct or the destruction of any documents," he "has failed to show a basis for any sanctions." *John St. Leasehold, LLC v. Cap. Mgmt. Res., L.P.*, 154 F. Supp. 2d 527, 541 n.3 (S.D.N.Y. 2001) (Koeltl, J.), *aff'd,* 283 F.3d 73 (2d Cir. 2002).

## II.   THE COURT SHOULD PRECLUDE CYRULNIK FROM INJECTING HIS FRIVOLOUS SPOLIATION ALLEGATIONS INTO THE TRIAL

Given that Cyrulnik continues to press demonstrably false allegations of spoliation, Counterclaim-Defendants are forced to cross-move to preclude him from doing so at trial.  The Court should grant this motion for the same reasons it should deny Cyrulnik's motion.

While the Court's deadline for pretrial motions has passed, there is good cause to consider Counterclaim-Defendants' cross-motion in limine to prohibit Cyrulnik from injecting his spurious spoliation allegations into the trial. Simply put, Counterclaim-Defendants thought this was a dead issue, given that Cyrulnik had failed to file a timely sanctions motion over a year ago. Clearly, they were wrong, and Cyrulnik has every intention of telling the jury that Counterclaim-Defendants destroyed critical evidence that would have vindicated Cyrulnik's version of events. Counterclaim-Defendants should not be prejudiced for assuming that Cyrulnik would abstain from filing a frivolous and untimely sanctions motion, and that he would not resume pressing an issue he abandoned over a year ago. Accordingly, there is good cause for filing this out-of-time motion. *See*, *e.g.*, *Separzadeh v. Iconix Brand Grp., Inc.*, 2016 WL 6126386, at *3 (S.D.N.Y. Oct. 19, 2016) (finding good cause under Rule 16 where party filed pre-trial motion shortly after "receiv[ing] new information" necessitating the motion); *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 198 (S.D.N.Y. 2014) (finding good cause because "the Court will not penalize plaintiffs for failing to [file their motion] prematurely" just in case it would be necessary).

On the merits, the Court should grant this cross-motion for substantively the same reasons as Cyrulnik's own motion should be denied.  As an initial matter, Cyrulnik should be precluded from offering any testimony alleging Counterclaim-Defendants spoliated evidence because he failed to file a timely motion for sanctions. Permitting him to make the same accusations in front of a jury would also be untimely, and thus the motion in limine should be granted. *See Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 335 (S.D.N.Y. 2009) ("Because Plaintiffs have not previously made any spoliation claim, despite ample opportunity to do so during or after discovery, the Court concludes that raising any such claim at trial for the first time would be

untimely. Defendants' motion to exclude evidence alleging that Defendants have spoliated evidence is thus GRANTED.").

Moreover, "[i]t follows" from the fact that Cyrulnik's motions for sanctions must be denied on the merits "that any evidence or argument suggesting that [Counterclaim-Defendants] destroyed" Signal messages "and any evidence or argument that [the messages], if preserved, would have yielded favorable evidence to [Cyrulnik] must be . . . precluded." *In re: Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 9480315, at *5 (S.D.N.Y. Dec. 29, 2015). Courts routinely grant motions in limine to exclude purported spoliation evidence in these circumstances. *See id.* (granting motion in limine to exclude evidence and arguments about spoliation); *Ring's End Inc. v. Black & Decker (U.S.), Inc.*, 2017 WL 3698491, at *3 (D. Conn. Aug. 25, 2017) (granting motion in limine to exclude spoliation arguments where motion for sanctions was denied); *Marceline v. Delgado*, 2012 WL 517301, at *3 (D. Conn. Feb. 16, 2012) (same).

Indeed, allowing such evidence at trial would itself be an unwarranted "form of spoliation sanction." *Gen. Motors LLC*, 2015 WL 9480315 at *5 (emphasis removed). Cyrulnik's spoliation accusations simply have no probative value because he has no evidence to support them. And without any grounding in reality, "the probative value of any such evidence or argument would be substantially outweighed by the dangers of, among other things, unfair prejudice to [Counterclaim-Defendants] and juror confusion" under Rule 403. *Id.* Indeed, "the suggestion that any [Signal message] evidence existed could indeed confuse the jury, and cause the jury to speculate as to why they are not shown" the messages "and to unfairly attribute improper motives to the" Counterclaim-Defendants. *Ring's End*, 2017 WL 3698491, at *3 (excluding such evidence under Rule 403).

*          *          *

19

Cyrulnik's motion is itself sanctionable for being so spurious. *See, e.g.*, *Dux S.A. v. Megasol Cosmetic GmbH*, 2006 WL 44007, at *2, *4 (S.D.N.Y. Jan. 9, 2006) (Owen, J.) (awarding sanctions for filing motion that lacked "factual justification" and for "troubl[ing]" failure to bring "highly relevant" information to the court's attention); *Rock v. Enfants Riches Deprimes, LLC*, 2020 WL 468904, at *4 (S.D.N.Y. Jan. 29, 2020) (Carter, J.) (awarding sanctions for "misleading the Court [and] making meritless arguments"); *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 338-39 (S.D.N.Y. 2019) (Oetken, J.) (imposing sanctions for filing "entirely meritless" motion with "full knowledge" that it lacked factual basis, where attorney "omit[ted]" factual details that "were fatal to [the] motion"); *see also Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 108 (2d Cir. 2013) (authorizing courts to impose sanctions *sua sponte* "upon a finding of subjective bad faith"); *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116-17 (2d Cir. 2000) (affirming sanctions for filing papers with "clear lack of merit" of which attorney "was well aware before he filed" them).

At minimum, therefore, the motion should be denied, and the Court should stop Cyrulnik from continuing to press his spurious spoliation allegations at trial.

## **CONCLUSION**

The Court should deny Cyrulnik's sanctions motion in full and grant Counterclaim-Defendants' cross-motion for preclusion of any alleged spoliation evidence.

Dated: March 5, 2024
      New York, New York

Respectfully submitted,

*/s/ Randy M. Mastro*
Randy M. Mastro
Lauren K. Myers
King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Tel.: (212) 827-4019
Email: RMastro@kslaw.com
       LMyers@kslaw.com

*Counsel for Plaintiff and Counterclaim-Defendant Roche Freedman LLP, and Counterclaim-Defendants Kyle Roche, Devin Freedman, Amos Friedland, and Edward Normand*

## CERTIFICATE OF COMPLIANCE

I hereby certify that according to the word count feature of the word processing program used to prepare this brief, the brief contains 5,856 words (exclusive of the cover page, certificate of compliance, table of contents, and table of authorities), and complies with Local Civil Rule 11.1 of the Southern District of New York, as well as with this Court's Individual Practice Rule 2.D.

*/s/ Randy M. Mastro*
Randy M. Mastro