# KASOWITZ BENSON TORRES LLP

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

MARC E. KASOWITZ
DIRECT DIAL: (212) 506-1710
DIRECT FAX: (212) 835-5010
MKASOWITZ@KASOWITZ.COM

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

March 26, 2024

**VIA ECF**
The Honorable John G. Koeltl
United States District Court for the Southern District of New York
500 Pearl Street, Courtroom 14A
New York, New York 10007-1312

    Re:  <u>*Roche Freedman LLP v. Cyrulnik*, Case No. 1:21-cv-01746 (JGK)</u>

Dear Judge Koeltl:

    We write on behalf of Counterclaim-Plaintiff, Jason Cyrulnik, to respectfully request that the Court strike the unauthorized reply brief that the RF Parties improperly filed late last night in support of their untimely cross-motion in limine to exclude spoliation evidence (ECF 654, and accompanying declarations 655-660).

    This Court's December 21, 2023 Order (ECF 555) is clear that the parties were permitted to file *only* moving and response briefs – not reply briefs – for all motions in limine.  Indeed, just last week, the RF Parties requested permission to file a single reply brief in connection with a different motion in limine, which the Court permitted.  With the exception of that brief, *neither party* filed a single reply in support of their motions in limine – because the parties (including the RF Parties) knew they were not permitted to do so.  But last night, the RF Parties elected to take the law into their own hands and simply filed an unauthorized reply brief in support of an untimely motion in limine, in complete disregard of the Court's briefing schedule order.  For that reason alone, the Court should reject the RF Parties' improper reply.[1]

    The Court should also reject the RF Parties' reply (or, at a bare minimum, permit Cyrulnik to submit a short surreply) not only because it is entirely unfair for them to file in limine reply briefs when Cyrulnik filed none in support of his motions (on which the Court could imagine Cyrulnik had plenty more to say but rested on the papers the Court permitted and any oral argument the Court will hold), but also because their unauthorized submissions continue to

---

[1] Any contention that the RF Parties' motion in limine to exclude spoliation evidence at trial somehow is not a motion in limine is debunked both by the very relief they seek (exclusion of evidence at trial, the quintessential motion in limine) and by Mr. Mastro's repeated characterization in an email to this Court on March 6 that it is a "cross-motion in limine." Indeed, in that very email, Mr. Mastro requested that the Court order a specific briefing schedule on the RF Parties' cross-motion in limine, omitting any reference to, or a date-certain for, a reply brief – because none was permitted.

KASOWITZ BENSON TORRES LLP

Hon. John G. Koeltl
March 26, 2024
Page 2

misstate facts and seek to mislead the Court. In addition to the fact that the RF Parties do not address the evidence Cyrulnik submitted on March 19 (ECF 647) – conclusively demonstrating that, between February 10, 2024 and February 15, 2024, Counterclaim-Defendant Kyle Roche **actively enabled "disappearing messages" in a Signal group chat among the other Counterclaim-Defendants** who were actively engaged in perpetrating their removal scheme, and in which they exchanged an untold number of messages, which almost certainly related to those efforts to remove Cyrulnik and misappropriate his assets (the exercise in which they were actively engaged at the time and with respect to which they have not produced a shred of documentation) – the RF Parties' improper reply makes various claims about the use of Signal messaging that are simply false.

*First*, the RF Parties contend that the absence of a "clock" icon in Amos Friedland's screenshot of the "Feb 8 Meeting" chat conclusively establishes that the participating parties had *never* put in place the "disappearing messages" setting. This contention is false. The "clock" icon in a screenshot of a Signal chat shows only the *current* setting <u>at the moment the screenshot was taken</u> – which means the absence of a "clock" icon in the screenshot that the RF Parties chose to produce of the "Feb 8 Meeting" chat sheds no light whatsoever on whether that chat included the exchange of disappearing messages (it almost certainly did, but as is inevitable in cases of spoliation, the parties are now unable to present the actual evidence that has been spoliated). Indeed, to confirm that this is so, the Court need only examine the previously unproduced screenshot of the RF Parties' February 10 Signal chat, which we submitted (ECF 647, Ex. 3). That screenshot does not include a "clock" icon even though the screenshot unambiguously shows that Mr. Roche had set messages to disappear for multiple days.

*Second*, the RF Parties seek to downplay the evidence attached to Cyrulnik's brief (ECF 647) demonstrating that a new member's screenshot (like that of Friedland, who was added to the group later) does not reflect the disappearing messages functionality that existing participants in the chat had previously enabled and used before the new member was added. The RF Parties claim that there is a difference in what appears on an iPhone user's screen as compared with the screen of an Android phone. But their newest claim also plays fast and loose with the facts. Where two or more individuals (*e.g.*, Roche, Freedman, Normand) engage in secret communications and destroy their communications by putting in place the "disappearing messages" functionality that Signal offered, only to later *disable* that feature and *then* invite another user (*e.g.*, Friedland) to join the chat, the "clock" icon does *not* appear on the new member's screenshot, and the various outdated settings that had been used and then retired by the initial members of the group also does not get shared with the new iPhone user. Applied here, a participant (like Amos Friedland here) added to a Signal chat *after* disappearing messages were used and then retired will not be able to see any evidence that they had been used – only the original participants (like the other RF Parties, all of whom did not produce and/or destroyed their versions of the Signal chat) will see any evidence of the use of disappearing messages after

KASOWITZ BENSON TORRES LLP

Hon. John G. Koeltl
March 26, 2024
Page 3

that functionality is disabled.[2]  And, of course, the actual messages exchanged between the original users before adding the new user are similarly not seen by the new user, which as applied here, include any messages that may have been exchanged between Roche, Freedman, and Normand on the Feb 8 Meeting chat before Friedland was invited, and an unknown number of messages exchanged at least between February 10 and February 15, including the zoom link Roche and the other Counterclaim-Defendants now concede was likely destroyed.

      Accordingly, Cyrulnik respectfully requests that the Court strike the RF Parties' improper reply brief, or in the alternative permit Cyrulnik to submit a short surreply (to which he would attach the evidence described above), and grant such other relief as the Court deems appropriate.

Respectfully,

/s/ Marc E. Kasowitz

Marc E. Kasowitz

cc: Counsel of Record (via ECF)

---

[2]  Signal messaging changed in 2021, and now the phrase "[user] disabled disappearing messages" appears on the screen of any new member who joins at a time where there is no disappearing messages functionality enabled, irrespective of whether it had ever been used.