Marc E. Kasowitz (mkasowitz@kasowitz.com)
Kevin A. Cyrulnik (kcyrulnik@kasowitz.com)
Gavin D. Schryver (gschryver@kasowitz.com)
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel.:   (212) 506-1700
Fax:   (212) 506-1800

*Attorneys for Defendant/Counterclaim-Plaintiff Jason Cyrulnik*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROCHE FREEDMAN LLP,<br><br>        Plaintiff,<br><br>   v.<br><br>JASON CYRULNIK,<br><br>        Defendant.<br><hr>JASON CYRULNIK,<br><br>        Counterclaim-Plaintiff,<br><br>   v.<br><br>ROCHE FREEDMAN LLP, KYLE ROCHE,<br>DEVIN FREEDMAN, AMOS FRIEDLAND,<br>NATHAN HOLCOMB, and<br>EDWARD NORMAND,<br><br>        Counterclaim-Defendants. | Case No. 1:21-cv-01746-JGK |

**COUNTERCLAIM-PLAINTIFF JASON CYRULNIK'S SUR-REPLY**
**IN OPPOSITION TO COUNTERCLAIM-DEFENDANTS'**
**<u>CROSS-MOTION TO EXCLUDE SPOLIATION EVIDENCE</u>**

i

**TABLE OF CONTENTS**

**ARGUMENT** .................................................................................................................................. 1

I.  Counterclaim-Defendants Spoliated The February 10 Chat ..................................................... 1

II. Counterclaim-Defendants Continue To Deceive About The February 8 Chat ........................ 4

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Kronisch v. United States*,
　150 F.3d 112 (2d Cir. 1998)..................................................................................................2

Defendant/Counterclaim-Plaintiff Jason Cyrulnik respectfully submits this sur-reply,[1] pursuant to the Court's March 27, 2024 Order (ECF 662).[2]

## ARGUMENT

In their desperation to avoid sanctions for their now undeniable spoliation, Counterclaim-Defendants continue to peddle false, misleading and nonsensical claims about their intentional deployment of "disappearing" messages on the "Signal" secret-message platform they used as they were effectuating their improper removal scheme in February 2021. The fact remains that Counterclaim-Defendants created and used two Signal group chats that we now know of (along with an unknowable number of direct disappearing chats between subgroups of Counterclaim-Defendants) during the crucial days in which they carried out the scheme that gave rise to this litigation; intentionally deleted all the messages they exchanged through those chats; and then went the further step of concealing the very existence of one of the incriminating chats from discovery in this action. On these facts, the only remaining question for the Court is what sanction to impose, and, if that sanction is not a default judgment, what the jury should be instructed about Counterclaim-Defendants' efforts to destroy and conceal evidence in this case.

### I. Counterclaim-Defendants Spoliated The February 10 Chat

The February 10 Chat (which, incredibly, Counterclaim-Defendants *still* have not produced) establishes that Counterclaim-Defendants intentionally set their Signal communications to disappear at least as early as the very day they met to remove Cyrulnik from the firm, and continuing for the next five days, during which they effectuated the second part of their scheme and divvied up among themselves Cyrulnik's assets. Recognizing that (i) the February 10 Chat

---

[1] Submitted herewith is the Declaration of Marc E. Kasowitz ("Decl.") with exhibits ("Ex. __").

[2] *Eight hours* after the Court ordered (ECF 662) "no further briefs on this issue"—other than this sur-reply, necessitated by Counterclaim-Defendants' unauthorized reply (ECF 654) and untimely motion in limine (ECF 612)—they audaciously thumbed their nose at that Order by filing a "brief," disingenuously disguising it as a "thank-you letter" (ECF 664). The Court should not countenance their unmitigated violations of this Court's directives.

1

conclusively demonstrates that they deleted messages they exchanged while perpetrating their removal scheme, and (ii) their concealment of the February 10 Chat during discovery constitutes a brand-new discovery violation independently warranting sanctions, Counterclaim-Defendants now claim (without evidence) that they created the new chat right after they each voted to move forward with the scheme, and that any now-deleted messages exchanged on the chat must not have dealt with that removal or anything relating thereto. This is nonsense.

*First*, the evidence suggests the chat was created *before* February 10, and that Freedman merely *renamed* the group (to "Remaining Founding Partners") on that date. (ECF 647-3 at 1.) We do not know its original name, when it was created, or what messages were exchanged (and destroyed) prior to February 10—because the RF Parties did not produce *any* of that information.

*Second*, there is no evidence to support Counterclaim-Defendants' contention that they did not discuss Cyrulnik's removal on the chat, and the Court should not take the word of spoliators, particularly considering we now know they concealed the very *existence* of the February 10 Chat from Cyrulnik and the Court. (*See* ECF 646 at 5-6 & n.4 (citing cases); ECF 588 at 11; ECF 595-7 at 229:6-13.) Indeed, common sense dictates that Counterclaim-Defendants are not being honest—do they really expect the Court to believe that they intentionally created and used a secret, disappearing-message group Signal chat during the exact same time they were secretly voting to remove a founding partner, negotiating an amended MOU and drafting a removal email, for the sole purpose of discussing mundane firm matters, sports or current events? *See, e.g.*, *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) ("The evidentiary rationale derives from the common sense notion that a party's destruction of evidence which it has reason to believe may be used against it in litigation suggests that the evidence was harmful to the party responsible for its destruction.").

*Third*, the deliberate and careful phrasing Counterclaim-Defendants use to defend their actions—that they did not use the chat to "discuss Cyrulnik's *removal*"—speaks volumes. Even if the Court accepted the incredible notion that Counterclaim-Defendants used their secret chat to

2

discuss only things other than Cyrulnik's *removal*, what about discussions concerning the Tokens; the amended MOU they were entering; their scheme to divvy up Cyrulnik's assets; or any of the other relevant issues in this case with respect to which they were required to produce all communications? Even their unauthorized reply papers do not dispute that they destroyed communications related to these topics.

*Fourth*, they flat-out lied: When asked whether "there was a signal chat among the partners who attended that meeting on February 10th, 2021," Freedman unequivocally testified under oath on behalf of the firm: "***There was no chat amongst all the partners that were at that [February 10] meeting***." (ECF 595-7 at 229:6-13.) The February 10 Chat, which was not produced or logged, proves that testimony was a blatant lie.

*Finally*, Counterclaim-Defendants' contention that the February 10 Chat is "either non-responsive and/or privileged"—they don't specify which—is demonstrably false. The responsiveness of the February 10 Chat is *indisputable*—that Counterclaim-Defendants were using Signal, *and* that they had deployed its functionality to destroy their communications during this critical time is plainly responsive (and unquestionably relevant). (*See* Decl. ¶ 2(a)-(h)). Indeed, even the **renaming** of this Signal chat to "Remaining Founding Partners" is itself responsive to Cyrulnik's request for "All Documents and Communications concerning any actual, purported, proposed, threatened, or contemplated removal, withdrawal, or departure of any Partner from RCF, including but not limited to the Purported Removal." (*Id*. ¶ 2(a).) Critically, after Cyrulnik raised Counterclaim-Defendants' failure to produce *any* communications during this critical period, the Court ordered them to produce documents from their "personal messaging apps" (including Signal) for a "ten-day consecutive period" to be selected by Cyrulnik. (ECF 169 at 1.) Cyrulnik selected February 3-12, 2021. (Ex. 1.) Remarkably, they still did not produce this February 10 Chat, even though it fell squarely within the Court-ordered period for production of all personal messaging apps—in direct violation of the Court's Order.

There is similarly no basis for Counterclaim-Defendants' untimely and conclusory

3

assertion of privilege—**Counterclaim-Defendants did <u>not</u> include the February 10 Chat on their privilege log**, including the itemized log the Court specifically required Counterclaim-Defendants to produce for the precise period covered by the February 10 Chat.  (ECF 299 ¶ 8; ECF 595-10.)  Indeed, to the extent the February 10 Chat were privileged, the subject of the "privileged" conversation almost certainly would have related to the strategy for misappropriating Cyrulnik's Tokens—what else could they have been seeking secret legal advice about over Signal?—further confirming the relevance of the document.  Yet Counterclaim-Defendants did not log it, because they never planned on telling Cyrulnik or the Court about it.

**II.  Counterclaim-Defendants Continue To Deceive About The February 8 Chat**

Counterclaim-Defendants continue to make false claims about the February 8 Chat, too.  *First*, Counterclaim-Defendants contend that the absence of a "clock" icon in Amos Friedland's screenshot of the "Feb 8 Meeting" chat establishes that they had *never* utilized the "disappearing messages" functionality (and that Counterclaim-Defendants did not exchange a single communication through the group).  This contention is demonstrably false.  The "clock" icon in a screenshot of a Signal chat shows only the setting **at the moment the screenshot was taken** (ECF 595-3 at 2 (noting that "clock" icon (referred to as "timer icon") appears in chat header when disappearing messages are actively functioning, and does *not* appear when turned off))—which means the absence of a "clock" icon in their screenshot merely means that **at the time Friedland took his screen shot** (during discovery a year later, in 2022) disappearing messages were no longer enabled.  No matter how hard they try to mislead the Court, Counterclaim-Defendants' "clock" icon observation sheds *no* light on whether messages were set to disappear at the time they were actually exchanged in February 2021.  Indeed, to confirm that this is so, the Court need only examine the screenshot of the other secret chat that has now been exposed—the February 10 Chat (ECF 647, Ex. 3)—which does not include a "clock" icon even though it is now undisputed that **Roche had set messages to disappear, for multiple (critical) days**. (Decl. ¶¶ 7-8.)

4

*Second*, Counterclaim-Defendants' contention (ECF 613 at 9) that "the ***absence of any notation that disappearing messages or auto-deletion had been enabled***, can mean only one thing: ***no messages were ever sent in this group chat***" is objectively false.  Where two or more individuals engage in secret communications and destroy their communications using the "disappearing messages" functionality, only to later *disable* that feature and *then* invite another user to join the chat, the settings that were previously used by the initial members of the group ***do not get shared with the <u>new</u> user***.  (Decl. ¶ 4.)  Applied here, a participant (Friedland) added to a Signal chat *after* disappearing messages were deployed and then disabled will *not* see that prior communications among members of the group had been actively destroyed—only the original participants will see evidence of the use of disappearing messages, and none of the original participants here have produced their versions of the Signal chat, presumably because they spoliated them.³  Counterclaim-Defendants' three "tests" (ECF 660-4) are thus worthless efforts to mislead—in *all three* the third user saw the settings that applied to the chat *at the time she was added*.  To finally put an end to these repeated misrepresentations, Cyrulnik's counsel created a "Hiding Evidence Test" chat on Signal, in which the group creator enabled disappearing messages and then exchanged a message with the second member of the chat which stated: "Let's turn on disappearing messages to hide evidence from our adversary and the Court."  (Decl. ¶ 5; Ex. 2.)  The group creator then disabled disappearing messages and invited a third member to the group (all three were iPhone users, in response to Counterclaim-Defendants' attempt to differentiate Androids).  As the third member's screenshot shows, he *does not see* the prior text exchanges, and *does not see any indication that disappearing messages were previously enabled*.  (*Id.* ¶ 6; Ex. 3.)

---

³  Counterclaim-Defendants' contention (ECF 654 at n.1) that they produced only a single, partial screenshot of the February 8 Chat because they "de-duplicated" is incredible.  Screenshots from different custodians' phones are not "duplicates"—they are entirely different documents, and their admission that they used their subjective determinations to deduplicate documents raises serious concerns—as does their continued failure to produce screenshots of the February 8 Chat from *any* other custodians (and their failure to produce any screenshots of the February 10 Chat at all).

5

**CONCLUSION**

The Court should grant Cyrulnik's motion and deny the cross-motion.

Dated: New York, New York
April 4, 2024

KASOWITZ BENSON TORRES LLP

By: /s/ Marc E. Kasowitz
Marc E. Kasowitz
Kevin A. Cyrulnik
Gavin D. Schryver
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700
Fax: (212) 506-1800
Email: mkasowitz@kasowitz.com
kcyrulnik@kasowitz.com
gschryver@kasowitz.com

*Attorneys for Counterclaim-Defendant Jason Cyrulnik*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this sur-reply brief (exclusive of the cover page, tables and certificate of compliance) complies with the five-page limit set by the Court in its March 27, 2024 Order (ECF 662).

Dated: New York, New York
April 4, 2024

/s/ Marc E. Kasowitz
Marc E. Kasowitz