UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

FREEDMAN NORMAND FRIEDLAND LLP,

                        Plaintiff,

          - against -

JASON CYRULNIK,

                    Defendant.
————————————————————————————

JASON CYRULNIK,

          Counterclaim-Plaintiff,

          - against -

FREEDMAN NORMAND FRIEDLAND, ET AL.,

          Counterclaim-Defendants.
————————————————————————————

21-cv-1746 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, DISTRICT JUDGE:

    The plaintiff, Freedman Normand Friedland LLP (the "Firm"),
and the counterclaim-defendants -- Freedman Normand Friedland
LLP, Kyle Roche, Devin Freedman, Amos Friedland, and Edward
Normand (the "Counterclaim-Defendants") -- have filed several
motions in limine to exclude the defendant Jason Cyrulnik's
("Cyrulnik's") witnesses from testifying, including the
plaintiff's and the Counterclaim-Defendants' motions (1) to
exclude Eric Jenkins ("Jenkins") from testifying as an expert
witness regarding the value of Cyrulnik's interest in several of
the Firm's contingency matters, see ECF No. 579; (2) to preclude
Cyrulnik from offering lay testimony on damages from his removal

from the Firm, <u>see</u> ECF No. 603; (3) to strike the expert testimony of Vikram Kapoor, who purports to offer testimony about the value of the "Tokens," <u>see</u> ECF No. 592, and (4) to preclude Cyrulnik from testifying as an expert witness, <u>see</u> ECF No 676-1.[1]

For his part, Cyrulnik moves (5) to preclude the testimony Harold L. Deiters III ("Deiters"), whose expert opinion and testimony is offered to rebut the opinions and testimony of Vikram Kapoor. <u>See</u> ECF No. 571.

The Court will address each motion in turn. "Because a ruling on a motion in limine is subject to change as the case unfolds, the ruling constitutes a preliminary determination in preparation for trial." <u>United States v. Adelekan</u>, 2021 WL 4839065, at *2 (S.D.N.Y. Oct. 15, 2021).[2]

---

[1] The Court assumes familiarity with the November 24, 2023 Memorandum Opinion & Order denying in part and granting in part the parties' cross motions for summary judgment, including the Court's extensive description of the facts of this case. <u>See</u> <u>Roche Freedman, LLP v. Cyrulnik</u>, -- F. Supp. 3d. -- 2023 WL 8167154, at *3-4 (S.D.N.Y. Nov. 24, 2023). As discussed in that Memorandum Opinion & Order, among the Firm's early clients was a technology startup, Ava Labs, that agreed to pay the Firm for its legal services with cryptocurrency known as "Tokens." <u>See</u> ECF No. 509-2.

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

**A.**

Pursuant to Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 570, 597 (1993), the trial court must perform a gatekeeping function with respect to expert scientific evidence. Before admitting proffered expert scientific testimony, the trial court must first determine that it is both reliable or trustworthy and relevant. Id. at 589-92 & n. 9; see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999) (applying Daubert to all expert testimony). The Federal Rules of Evidence were amended in 2002 in response to Daubert. Federal Rule of Evidence 702 now provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The proponent of the evidence must establish admissibility under Rule 104(a) by a preponderance of the evidence. See Bourjaily v. United States, 483 U.S. 171, 175-76 (1987); see also Colon ex rel. Molina v. BIC USA, Inc., 199 F. Supp. 2d 53, 69 (S.D.N.Y. 2001).

To be admissible, an "expert opinion requires some explanation as to how the expert came to his conclusion and what

methodologies or evidence substantiate that conclusion." <u>Riegel v. Medtronic, Inc.</u>, 451 F.3d 104, 127 (2d Cir. 2006). Conclusory opinions, often referred to as "<u>ipse dixit</u>," fail to provide a methodology that would allow a court to assess reliability. <u>See</u> <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 146 (1997) ("[N]othing in either <u>Daubert</u> or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by <u>ipse dixit</u> of the expert."); <u>Major League Baseball Properties, Inc. v. Salvino, Inc.</u>, 542 F.3d 290, 311 (2d Cir. 2008). <u>Ipse dixit</u> opinions are therefore excludable on that basis. <u>See, e.g.</u>, <u>Nimely v. City of New York</u>, 414 F.3d 381, 396-97 (2d Cir. 2005).

## 1.

Regarding the testimony of Eric Jenkins, Jenkins purports to testify as to the valuation of four contingent litigations, which include the following:

- <u>Apothio, LLC v. Kern County</u>, No. 20-cv-522 (E.D. Cal. Filed April 10, 2020) ("<u>Apothio</u>");
- <u>In re Tether & Bitfinex Crypto Asset Litigation</u>, 19-cv-9236 (S.D.N.Y. filed October 6, 2019) ("<u>Tether</u>");
- <u>Scurtis v. 6th Avenue Buildings, Ltd.</u>, No. 2014-031805-CA-01 (Fla. 11th Cir. Ct. filed Dec. 17, 2024) ("<u>Scurtis</u>");
- <u>Kleiman v. Wright</u>, No. 18-cv-80176-BB (S.D. Fla. Filed 2018) ("<u>Kleiman</u>").

The Firm and the Counterclaim-Defendants argue that Jenkins is not qualified to testify as an expert witness pursuant to Federal Rule of Evidence 702 and <u>Daubert</u>, with

4

respect to the valuations in the <u>Apothio</u>, <u>Tether</u>, <u>Scurtis</u>, and
<u>Kleiman</u> litigations. <u>See</u> Pls.' Mem. of Law at 6, ECF No. 583.
The Firm and Counterclaim-Defendants contend that Jenkins'
opinions are unreliable and would not be helpful to the jury.
<u>Id.</u> at 6-7.

    The Firm and the Counterclaim-Defendants are correct that
Jenkins should not be permitted to testify on these specific
valuations for the reasons that follow.

**a.**

    Jenkins has extensive credentials in finance, accounting,
and the valuation of companies. <u>See</u> Mastro Decl., ECF No. 589-2
("Jenkins Report") at ¶¶ 1-2. But, Jenkins lacks any legal
training and has never placed a valuation on a lawsuit. <u>See</u>
Mastro Decl., ECF No. 589-1, at 10-12. This lack of experience
might not disqualify Jenkins from rendering an opinion if his
valuation expertise could be reliably applied to the valuation
of lawsuits, but his expert report demonstrates that he has
failed to do that. <u>See</u> Jenkins Report ¶¶ 39-121. This Court
addressed a similar circumstance in <u>Portus Singapore PTE LTD v.</u>
<u>Kenyon & Kenyon LLP</u>. <u>See</u> 449 F. Supp. 3d 402, 419-410 (S.D.N.Y.
2020), <u>aff'd</u>, 943 F. App'x 398 (2d Cir. 2021). In that case, the
Court excluded testimony from a purported expert, who claimed to
calculate damages related to a law firm's prosecution of a
patent application, in the context of a lawsuit alleging legal

5

malpractice. See id. at 419. As is true of Jenkins, the purported expert in Portus was "not a lawyer, let alone a [specialized] lawyer," but rather possessed unrelated expertise that rendered him unqualified to opine on a fundamental premise of his damages report. See 449 F. Supp. 3d at 420.

In this case, Jenkins based his valuation methodology on a ten-factor test for evaluating a group of contingency matters. See Jenkins Report ¶ 54. He then conceded that he lacked sufficient information to make a determination of all of the contingency matters handled by the Firm. Id. ¶ 55. He therefore came up with his own test for evaluating individual contingency matters for which he cites no support. Id. ¶ 57. Jenkins' test is highly specific to the individual litigations and depends on an analysis of the probable damages in each case and the probability of success, id., but Jenkins provides no basis for his alleged expertise in determining the accuracy of these assumptions. Instead, Jenkins' assumptions, and the inputs upon which he relies, come down to his own "ipse dixit" for which he offers no support. See Nimely, 414 F.3d at 396-97.

**b.**

The lack of helpfulness to the jury of Jenkins' opinions is demonstrated by the fact that his opinions are contradicted by the actual results or status of the litigations.

Jenkins estimated that the damages in the Apothio contingency matter was $1 billion dollars based on the complaint in the case and a memorandum from a litigation funder, although there is no indication that any litigation funder is funding the case. See Jenkins Report ¶¶ 62-63. Jenkins also estimates that the chance of recovery is 20%. Id. ¶ 64. Ultimately, Jenkins determined that the defendant's prospective share of the recovery in this case would be $2,207,000. Id. ¶ 61. But there is no indication that Jenkins has any expertise to evaluate the merits of the case or the actual chance of recovery.

Regarding the Tether case, Jenkins estimated that the damages were $850,000,000, id. ¶ 77, but this was based on newspaper accounts without any indication of the reliability of those accounts, and he estimated the chances of recovery to be 50%, id. ¶ 80. Jenkins lacked the expertise to make that assessment. Eventually he claimed that the defendant would be entitled to $3,298,000 as his share of the recovery from this case. See id. ¶ 76. But the plaintiff was removed as class counsel in this case, is no longer involved in the litigation of this matter, and has collected no contingency fee at all in this case. See Pl.'s Mem. of Law at 8, ECF No. 583.

In the Scurtis case, Jenkins estimated that the claimed damages were $50,000,000, see Jenkins Report ¶ 91, and the chance of success was 50%, id. ¶¶ 91, 93-94. There is no

7

persuasive basis for Jenkins' estimate of the damages or the chance for success, but Jenkins estimates that the defendant's share of the proceeds of the litigation would be $740,000. <u>Id.</u> ¶ 91. In fact, the litigation was settled without any payment and the plaintiff recovered no contingency fee at all. <u>See</u> Pls.' Mem. of Law at 8, ECF No. 583.

As for the <u>Kleiman</u> litigation, that case was settled for $250 million, which required no expert to calculate. <u>See</u> Jenkins Report ¶ 105. But the settlement has not been paid, and the plaintiff has not recovered any payment on that litigation, and Jenkins has not explained how his expertise is useful in determining whether that settlement will ever be paid.

In short, Jenkins lacks the expertise to make the conclusions he reaches. His opinions are not helpful to the jury and are not supported by the evidence. The Court has an obligation to assure that expert testimony that is not helpful to the jury is excluded. <u>See</u> <u>Boucher v. U.S. Suzuki Motor Corp.</u>, 73 F.3d 18, 21-22 (2d Cir. 1996). Because these opinions by Jenkins are not helpful, they are therefore excluded.

Finally, Kyle Roche, Velvel Freedman and Jason Cyrulnik executed the "Side Letter," which gave Cyrulnik 25% of any recovery from the <u>Kleiman</u> litigation. <u>See</u> Kasowitz Decl., ECF No. 643-11 ("Side Letter"). The Firm and the Counterclaim-Defendants have not objected to Jenkins' conclusions with

respect to the amounts allegedly owed to Cyrulnik pursuant to
the Side Letter.

## 2.

The Firm and the Counterclaim-Defendants next move to
preclude Cyrulnik from offering allegedly impermissible damages
testimony. See ECF No. 603. The Firm and the Counterclaim-
Defendants contend that any testimony from Cyrulnik about the
value of the Firm would be impermissible expert testimony, and
that Cyrulnik cannot provide such testimony under the guise of
lay testimony under Federal Rule of Evidence 701. See Pl.'s Mem.
of Law at 1-2, ECF No. 604. But, the Advisory Committee Note to
Rule 701 with respect to lay witness testimony notes that most
courts have permitted the owner or officer of a business to
testify to the value or projected profits of the business
without the necessity of qualifying the witness as an
accountant, appraiser, or similar expert. See Fed. R. Evid. 701,
advisory committee's note (2000).

The Firm and the Counterclaim-Defendants object that the
business in this case was too new for Cyrulnik to have a
reliable basis to testify as to the value of the business and
its cases. See Pls.' Mem. of Law at 2-3, ECF No. 604. But,
Cyrulnik plausibly argues that he was involved in long
discussions over the creation of the new partnership, and was
thereafter on all of the relevant committees of the Firm with

9

the responsibility to continue to monitor the business and to make judgments about the contingency cases that the Firm should accept. See Def.'s Mem. of Law at 4-5, ECF No. 628. This would plainly provide Cyrulnik with the necessary personal knowledge to testify as a lay witness about the value of the business and its contingency cases. See Jo v. JPMC Specialty Mortg., LLC, 369 F. Supp. 3d 511, 518 (W.D.N.Y. 2019) ("It is well-established that attorneys may testify as fact witnesses regarding their personal knowledge of the events in question."), aff'd, 818 F. App'x 103 (2d Cir. 2020). Therefore, the motion to preclude Cyrulnik from testifying about the value of the business is **denied.** Of course, the Firm and Counterclaim-Defendants can object to specific testimony as to which there is a good faith basis to object on the grounds of lack of personal knowledge.

**3.**

The Firm and the Counterclaim-Defendants next move to preclude Cyrulnik from testifying as his own expert witness. See ECF No. 676-1. The Firm's letter motion is **denied as moot**, in light of the Court's conclusion that Cyrulnik can testify as a lay witness pursuant to Federal Rule of Evidence 701. Cyrulnik maintains that the only reason he served the disclosure of his expert testimony was in response to the motion by the Firm and the Counterclaim-Defendants to preclude Cyrulnik from testifying as a lay witness. See ECF No. 690 at 2. Because the Court has

determined that Cyrulnik may testify as a lay witness on subjects based on his personal knowledge, he need not testify as an expert witness.[3]

**4.**

The Firm and the Counterclaim-Defendants move to strike most of the testimony of Vikram Kapoor ("Kapoor") as an expert witness. See ECF No. 592. Kapoor purports to testify regarding the value of the Tokens that Cyrulnik alleges were wrongfully denied to him. See Mastro Decl., ECF No. 596-1 ("Kapoor Report").[4]

The parties agree that the Tokens can be analyzed according to the following categories: (a) the "2019 Vested Tokens" of which Cyrulnik claims 135,000 Tokens; (b) the "Vested and Unrestricted Remaining Tokens" of which Cyrulnik claims 33,750 Tokens; (c) the "Vested and Restricted Remaining Tokens" of which Cyrulnik claims 99,900 Tokens; and (d) the "Unvested Remaining Tokens" of which Cyrulnik claims 371,250. See ECF 624 at 3-4; ECF No. 593 at 1-2.

---

[3] If the subject of the valuation of damages was not the subject of Cyrulnik's deposition, the Firm and the Counterclaim-Defendants may apply to the Court for a supplemental deposition.
[4] The Firm and the Counterclaim-Defendants seek to preclude Kapoor from testifying about prejudgment interest. See ECF No. 593 at 15. The parties agree that this is a matter for the Court, see ECF No. 624 at 19, and therefore, that this testimony should not be included in any testimony before the jury.

**a.**

The Firm and the Counterclaim-Defendants argue that
Kapoor's valuation of the 2019 Vested Tokens should be excluded
because the Tokens must be valued as of October 27, 2020, when
Kyle Roche and Devin Freedman first received the Tokens and did
not distribute them to Cyrulnik, because that was the date of
the breach and therefore, that is the relevant date for a claim
of breach of contract. See ECF No. 593 at 3, 4-8. By contrast,
Kapoor valued the Tokens as of February 12, 2021 -- the date
that Cyrulnik was removed from the Firm -- and November 21, 2021
-- the date on which the Tokens reached the highest intermediate
value during a reasonable period following Cyrulnik's August
2021 discovery of the Counterclaim-Defendant's breach. See
Kapoor Report ¶¶ 8(a), 17.

The reasons offered by the Firm and the Counterclaim-
Defendants to exclude these opinions by Kapoor are not a basis
for exclusion. The Firm and the Counterclaim-Defendants argue
persuasively that contract damages should be measured at the
time of the breach. See Lucente v. Int'l Bus. Machines Corp.,
310 F.3d 243, 262 (2d Cir. 2002). However, that is not a basis
for excluding these opinions by Kapoor. The relevant breach of
contract in this case is the alleged breach of the MOU that
occurred when Cyrulnik was removed, allegedly without cause, on
February 12, 2021, see ECF No. 62 ¶¶ 73, 80, not when Roche and

Freedman failed to give Cyrulnik the Tokens at the time they were issued to the Firm, see Kapoor Report ¶ 16.

The Firm and the Counterclaim-Defendants also argue that the highest intermediate value during a reasonable period following the commission of the tort is not a valid measure of contract damages. See ECF No. 593 at 7 (citing Lucente, 310 F.3d at 262). But, the Firm does not argue that this measure of damages is not a correct measure for other claims in the case, including the buyout claim, or that it is irrelevant to the claim for punitive damages. Moreover, the Court dismissed the conversion claim because the Firm and the Counterclaim-Defendants successfully argued that it was duplicative of the breach of contract claim. See Roche Freedman, 2023 WL 8167154, at *13. The Firm and the Counterclaim-Defendants now argue that issues such as damages measured from the time of discovery of the tort and the use of the highest intermediate value are not appropriate for the claim of breach of contract, but do not argue that those measures of damages are not appropriate for a claim of conversion. See ECF No. 593 at 7. Therefore, Kapoor's testimony with respect to that measure of damages is appropriate for a claim of conversion. The parties may brief why that claim should not be reinstated, in view of the apparent position of the Firm and the Counterclaim-Defendants that the claim of conversion is not duplicative of the claim for breach of

13

contract because the measure of damages is different. Cf. Roche Freedman, 2023 WL 8167154, at *13.

The Firm and the Counterclaim-Defendants next argue that Kapoor's testimony must be excluded because it consists of "basic arithmetic" and therefore is not the proper subject of expert testimony. See ECF No. 593 at 9. This argument is simply wrong because, among other reasons, the calculations involve assumptions about why it was appropriate to use the high and low price of the Tokens on each valuation date, rather than the average of the opening and closing prices on the relevant dates, which is the method used by Harold Deiters III, the expert for the Firm and Counterclaim-Defendants. This testimony is helpful for the jury to understand fully Kapoor's analysis.

**b.**

The Firm and the Counterclaim-Defendants likewise argue that Kapoor's testimony about the value of the Vested and Unrestricted Tokens should be excluded because it relies on simple arithmetic and is not the proper subject of expert testimony. See ECF No. 593 at 9. But Kapoor is testifying to the value of all the Tokens and it would make no sense to exclude this portion of his calculations simply because the math is "basic." Id. Kapoor's testimony regarding the value of these Tokens is part of a larger explanation, which is helpful to the

jury. The Firm and the Counterclaim-Defendants' objections are therefore overruled.

### c.

The Firm and the Counterclaim-Defendants do not appear to challenge Kapoor's testimony with respect to the value of the Vested and Restricted Tokens and there is therefore no proffered basis to exclude that testimony.

### d.

The Firm and the Counterclaim-Defendants seek to exclude Kapoor's testimony with respect to the valuation of the Unvested Remaining Tokens. ECF No. 593 at 10. Initially, the Firm and the Counterclaim-Defendants argue that the valuation of the Unvested Remaining Tokens should be excluded because the value of the Tokens is too speculative. Relying on cases that have precluded valuations of employee stock options for at-will employees, the moving parties argue that there are too many contingencies such that the Tokens could possibly not be awarded. See id. at 10-11 (citing Kinsey v. Cendant Corp., 521 F. Supp. 2d 292, 308 (S.D.N.Y. 2007); Guidehouse LLP v. Shah, 2022 WL 769209, at *3 (S.D.N.Y. Feb. 28, 2022); Ott v. Alger Mgmt. Inc., 2012 WL 4767200, at *8 (S.D.N.Y. Sept. 27, 2012); Smith v. Zipcar, Inc., 125 F. Supp. 3d 340, 349 (D. Mass. 2015); Cioni v. Globe Specialty Metals, Inc., 618 F. App'x 42, 45 (3d Cir. 2015); Rhee v. SHVMS, LLC, 2023 WL 8889697, at *8 (S.D.N.Y. Dec. 26, 2023);

Butvin v. DoubleClick, Inc., 2001 WL 228121, at *9 (S.D.N.Y. Mar. 7, 2001)). But the Firm cites no comparable case where there is an agreement to award benefits outside the context of employee stock options for at-will employees where courts have found that the specific consideration for a contract was too speculative to be valued.

In any event, in this case, all of the Tokens were in fact awarded and a new contract with additional compensation measured in Tokens was finalized on September 20, 2021, after Cyrulnik left the Firm. See Mastro Decl. See ECF No. 596-5; Kapoor Report ¶ 29. Therefore, the Tokens were in fact awarded and should be valued. Finally, while the Firm and the Counterclaim-Defendants argue that Kapoor's valuation of these Tokens was unreliable, the Firm and the Counterclaim-Defendants' arguments address the weight of Kapoor's testimony, can be explored on cross examination, and are therefore not a basis for exclusion. Therefore, the Firm and the Counterclaim-Defendants' motion to preclude Kapoor's testimony is **denied.**

**5.**

The Firm and the Counterclaim-Defendants seek to introduce the expert testimony of Deiters, to respond to the expert testimony offered by Kapoor. See Kaswoitz Decl., ECF No. 595-28 ("Deiters Report"). Cyrulnik moves to exclude Deiters' testimony on the grounds that Deiters is unqualified to testify to his

16

expert opinions under Federal Rule of Evidence 702 and <u>Daubert</u> and on the basis that his opinions are unreliable. <u>See</u> ECF No. 572 at 5-6. While some of Deiters' critiques of Kapoor's opinions will be irrelevant because some of Kapoor's opinions have been excluded, the remainder of Deiters' opinions are not so unreliable as to merit exclusion, and Deiters is qualified to testify about them. The motion to preclude Deiters' testimony is therefore **denied**.

Deiters is a forensic accountant with numerous certifications. <u>See</u> Deiters Report, Appendix A (Statement of Qualifications). While his valuation of cryptocurrencies has been limited, <u>see</u> Mastro Decl., ECF No. 638-6 at 8-9, he has received some training in that form of valuation and there is no showing that the task of valuing that asset is so distinctive that his expertise in valuations is not sufficient to render opinions on the valuation of the Tokens that will be helpful to the jury. <u>See</u> Fed. R. Evid. 702; <u>In re Zyprexa Prods. Liab. Litig.</u>, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007); <u>see, e.g., In re M/V MSC Flaminia</u>, 2017 WL 3208598, at *4 (S.D.N.Y. July 28, 2017) (noting that it may be "sufficient" "[i]f an expert's training and experience are in a field closely related to the subject matter of the proposed testimony").

Deiters critiques Kapoor's valuation of the 2019 Vested Tokens as of October 27, 2020 -- the date the Tokens were given

to the Firm, or August 19, 2021 -- the date that Cyrulnik allegedly learned that he had not been afforded the Vested Tokens. See Deiters Report ¶¶ I(A)-(F); Kapoor Report ¶¶ A(15)-(17). But that testimony would be irrelevant because the proper date for the valuation of the Tokens for purposes of the alleged breach of contract in this case is the date of the breach of the MOU on February 12, 2021, when Cyrulnik was discharged from the Firm, allegedly without cause. See, e.g., ECF No. 62 ¶ 73. Therefore, Deiters' critique of Kapoor's testimony on this issue will be irrelevant.

As a general matter, there is no showing that Deiters' opinions with respect to the valuation of the Tokens based on the terms of the engagement letter with Ava Labs are so unreliable that the jury should not be permitted to assess Deiters' opinions, as compared to the opinions of Kapoor on this issue of valuation. Similarly, there is no showing that Deiters' critiques of Kapoor's opinions for having failed to take into account various contingencies that should reduce the values otherwise estimated by Kapoor are so unreliable that the jury should not be permitted to take Deiters' opinions into account when reviewing Kapoor's opinions.

The motion to preclude Deiters' testimony is therefore **denied.**

18

**CONCLUSION**

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, those arguments are either moot or without merit.

For the reasons explained above, the Firm and the Counterclaim-Defendants' motion to exclude Eric Jenkins is **granted**.

The Firm and the Counterclaim-Defendants' motions to preclude Cyrulnik from testifying as a lay witness, and to exclude Vikram Kapoor are **denied**.

The Firm and the Counterclaim-Defendants' letter motion to preclude Cyrulnik from testifying as an expert is **denied as moot**.

Cyrulnik's motion to exclude Harold Deiters III is **denied**.

The Clerk is respectfully directed to close ECF Nos. 571, 579, 592, and 603.

**SO ORDERED.**

**Dated:    New York, New York**
**          May 15, 2024**

                                   *C. Koeltl*

                              **John G. Koeltl**
                         **United States District Judge**