UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FREEDMAN NORMAND FRIEDLAND, LLP,

                Plaintiff,

- against -

JASON CYRULNIK,

                Defendant.

---

JASON CYRULNIK,

                Counterclaim-Plaintiff,

- against -

FREEDMAN NORMAND FRIEDLAND, ET AL.,

                Counterclaim-Defendants.

---

21-cv-1746 (JGK)

MEMORANDUM OPINION AND ORDER

JOHN G. KOELTL, DISTRICT JUDGE:

The plaintiff, Freedman Normand Friedland LLP (the "Firm"), and the counterclaim-defendants - Freedman Normand Friedland LLP, Kyle Roche, Devin Freedman, Amos Friedland, and Edward Normand (the "Counterclaim-Defendants") - have moved to exclude various testimony from Nathan Holcomb, offered by the defendant, Jason Cyrulnik ("Cyrulnik"), and evidence related to the Fattaruso litigation.[1] See ECF No. 560. The Firm and the

---

[1] The Court assumes familiarity with the November 24, 2023 Memorandum Opinion & Order denying in part and granting in part the parties' cross motions for summary judgment, including the Court's extensive description of the facts of this case. See Roche Freedman, LLP v. Cyrulnik, -- F. Supp. 3d. -- 2023 WL 8167154, at *3-4 (S.D.N.Y. Nov. 24, 2023). As discussed in that

Counterclaim-Defendants have also moved to preclude Nathan Holcomb from testifying regarding the motivations of Freedman and Roche for discharging Cyrulnik. See ECF No. 568.

The Court will address each motion in turn. "Because a ruling on a motion in limine is subject to change as the case unfolds, the ruling constitutes a preliminary determination in preparation for trial." United States v. Adelekan, 2021 WL 4839065, at *2 (S.D.N.Y. Oct. 15, 2021).[2]

I.

The Firm and the Counterclaim-Defendants argue that various portions of Holcomb's testimony as reflected in his declaration violate the joint defense privilege that he shared with the partners of the Firm who remain as Counterclaim-Defendants. See ECF No. 561 at 6-7 (citing ECF No. 506-3 ("Holcomb's Declaration")). The Firm and the Counterclaim-Defendants argue that Holcomb made those disclosures without the permission of those other partners and thus in violation of a joint defense

---

Memorandum Opinion and Order, Nathan Holcomb was initially included among the Counterclaim-Defendants, but he was subsequently dismissed from this action. See id. at 1, 1 n.2. Paul Fattaruso was later added to the Firm established by Roche, Cyrulnik, and Freedman – although he was not a signatory to the MOU. See id. at 3. While this proceeding was pending, Fattaruso brought an action against the Firm. Id. at 13 n.13. The term, "Fattaruso litigation," refers to that action.

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

2

privilege. The Firm and the Counterclaim-Defendants point specifically to the following paragraphs of Holcomb's Declaration: ¶¶ 44, 46, 48-49, 56, 59, 63-64, and 108. See ECF No. 561 at 7 (citing Holcomb's Declaration).

The Firm and the Counterclaim-Defendants argue that Holcomb should be precluded from giving that testimony because it would violate the joint defense privilege without the permission of the remaining Counterclaim-Defendants who participated in the joint defense privilege. The motion by the Firm and the Counterclaim-Defendants is **denied**.

### A.

The Magistrate Judge found that the specific paragraphs about which the Firm and the Counterclaim-Defendants complain were not privileged, except for a portion of paragraph 108 about which Cyrulnik disclaims any intent to rely. See ECF No. 504 at 3. No objections were filed to the Magistrate Judge's Order and the Order is therefore binding.

In any event, the Firm and the Counterclaim-Defendants have failed to show that the disputed paragraphs reveal any privileged information. The paragraphs were careful to indicate that any privileged information had been redacted. See, e.g., Holcomb's Declaration ¶¶ 56, 63, 64. The Firm and the Counterclaim-Defendants have failed to make a sufficient showing that the remainder of the paragraphs reveal confidential

3

information provided to counsel or confidential advice from counsel given to members of the alleged group.

**B.**

Second, the Firm and the Counterclaim-Defendants seek to prevent Holcomb from testifying that Freedman engaged in "witness tampering." See, e.g., Holcomb Declaration ¶ 49. Holcomb should be limited to testifying to what he knows based on his own personal knowledge, without characterizing the conduct as "witness tampering." Cyrulnik has clarified that Holcomb can testify from his personal knowledge that Freedman attempted to get Holcomb to provide false information to Freedman that Freedman could use for Freedman's testimony as a Rule 30(b)(6) witness for the Firm and the Counterclaim-Defendants. See ECF No. 641 at 12-13.

Holcomb can also testify from his personal knowledge that another partner complained to him that the partner felt that Freedman was attempting to control that witness's testimony by sitting in on the partner's deposition. See Holcomb Declaration ¶ 49. Cyrulnik correctly explains that the statement of the other partner would not be hearsay because the statement would be a statement of an agent of a party opponent. See Fed. R. Evid. 801(d)(2)(D). And, that type of evidence is relevant to the alleged consciousness of guilt of Freedman. See United States v. Perez, 387 F.3d 201, 209 (2d. Cir. 2004). However,

4

Holcomb's testimony should be limited to the facts of what he perceived Freedman to have done without characterizing the conduct as "witness tampering." That characterization is highly prejudicial because it is an accusation of a crime and is unnecessary to understand the facts of what Freedman allegedly did. Pursuant to Federal Rule of Evidence 403, while evidence of what Freedman did is relevant and the relevance is not outweighed by the danger of unfair prejudice, the characterization of that conduct is unnecessary and unfairly prejudicial. See Fed. R. Evid. 403.

### C.

Third, the Firm and the Counterclaim-Defendants argue that Holcomb should not be permitted to testify that he would not have voted to remove Cyrulnik as a partner if he had known various facts. The Firm and the Counterclaim-Defendants argue that lay witnesses should not be permitted to answer hypothetical questions. See ECF No. 561 at 11-16. However, lay witnesses can be asked hypothetical questions that are based directly on what they would have done had they known various facts or how various facts would have affected their decisions, provided that those facts are grounded in the evidence of the case. See United States v. Cuti, 720 F.3d 453, 459 (2d Cir. 2013) ("[A] witness may testify to the fact of what he did not know and how, if he had known that independently established

5

fact, it would have affected his conduct or behavior.") (collecting cases)). The facts that were known to Holcomb, and how Holcomb would have voted on the issue of Cyrulnik's removal based on those facts, are central to the material questions before the jury and are not barred by any authority that the Firm and the Counterclaim-Defendants have cited.

### D.

Finally, the Firm and the Counterclaim-Defendants move to preclude Cyrulnik from eliciting that the Firm and the Counterclaim-Defendants allegedly sought to withhold equity from Paul Fattaruso and that Fattaruso sued and eventually settled with the Firm. The motion to preclude this testimony is **denied in part**.

The evidence that the Firm and the Counterclaim-Defendants allegedly and wrongfully withheld equity from another partner is evidence of another allegedly bad act by the Firm and the Counterclaim-Defendants, which would be precluded as inadmissible propensity evidence if offered for that reason, but is admissible to show motive or intent on the part of the Firm and the Counterclaim-Defendants in dealing with Cyrulnik. See Fed. R. Evid. 404(b). The litigation with Fattaruso and the eventual settlement raise additional issues such as the motivation for the settlement, although the litigation and settlement may be possible bases for impeachment of Fattaruso.

Therefore, the motion to exclude testimony and evidence about Fattaruso's litigation is **denied in part**.[3]

## II.

The Firm and the Counterclaim-Defendants also move to preclude what they refer to, disparagingly, as Holcomb's "telepath testimony," but what could be more accurately described as testimony by Holcomb about the alleged motivations of Roche and Freedman for discharging Cyrulnik. See ECF No. 569.

In brief, Holcomb voted to discharge Cyrulnik as a partner based on information and explanations provided by Roche and Freedman. See Holcomb Declaration ¶¶ 24-27. Holcomb was originally sued along with other partners by Cyrulnik, but eventually settled with Cyrulnik and submitted a lengthy declaration to the effect that the reasons he believed to be true at the time of Cyrulnik's removal were undermined by subsequent developments. See, generally, Holcomb Declaration; Roche Freedman LLP, 2023 WL 8167154, at *1 n.2. Holcomb now declares that he no longer believes that the reasons offered by Roche and Freedman were the true reasons for Cyrulnik's termination and, had he known about the subsequent developments,

---

[3] While the evidence relating to Fattaruso's termination is relevant to issues in this case, including the motive and intent of the Firm and the Counterclaim-Defendants in terminating Cyrulnik, the Fattaruso litigation itself may raise separate issues that the parties can brief separately at trial, including the relevance of the settlement of that litigation.

7

he would no longer have believed that there was adequate cause to terminate Cyrulnik and would not have voted to terminate Cyrulnik. See Holcomb Declaration ¶¶ 79-102.

The Firm and the Counterclaim-Defendants move to exclude any of Holcomb's testimony about the motivations of Roche and Freedman because – the moving parties allege – Holcomb cannot read the minds of Roche and Freedman to determine their true motivations, and in any event, the issues in the case are whether cause existed for Cyrulnik's termination and not the Founding Partners' motivation for Cyrulnik's termination. See ECF No. 569 at 6-7. The motion of the Firm and the Counterclaim-Defendants is **denied in part.**

### A.

A lay witness may generally testify as to facts where "evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Pursuant to Federal Rule of Evidence 701, lay witnesses may also offer opinion testimony so long as it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "Testimony is rationally based on the witness's perception where it is both (a) based on the witness's first-

hand perceptions <u>and</u> (b) rationally derived from those first-hand perceptions." <u>United States v. Hild</u>, 644 F. Supp. 3d 7, 47 (S.D.N.Y. 2022) (emphasis in original).

Cyrulnik is correct that lay witnesses have been permitted to testify about motivations, such as discrimination, based on their personal knowledge. <u>See</u> <u>Abdus-Sabur v. Port Auth. of New York & New Jersey</u>, 2001 WL 1111984, at *1 (S.D.N.Y. Sept. 20, 2001) ("[w]itnesses are free to testify fully as to their own observations of the defendant's interactions with the plaintiff or other employees . . . [i]f [the witness] observed disparate treatment of [plaintiff] or other employees, such testimony may be materially relevant at trial.").

This principle weighs in favor of admitting Holcomb's testimony. Holcomb was a signatory to the MOU, privy to the central conversations and meetings among the Counterclaim-Defendants, and had first-hand knowledge of the steps that led to Cyrulnik's removal. <u>See</u> <u>United States v. Lumiere</u>, 249 F. Supp. 3d 748, 744 (S.D.N.Y. 2017) (admitting testimony pursuant to Rule 701 when the witness has "first-hand knowledge of the conspiracy being discussed"); <u>United States v. Yannotti</u>, 541 F.3d 112, 125 (2d Cir. 2008) ("[The witness's] testimony was rationally based on his own perception because it derived from his direct participation in the [] activities of the charged enterprise[.]"). Thus, Holcomb should be able to testify about

9

what he knew based on his personal observations at the time of the vote to discharge Cyrulnik. He should also be permitted to testify about the reasons proffered by Roche and Freedman for Cyrulnik's termination and his contemporaneous assessment of those reasons.

While the Firm and the Counterclaim-Defendants argue that the issue is whether there was cause for Cyrulnik's termination – and not the underlying reason the partners may have had for deciding that there was cause – the motivation for Cyrulnik's termination cannot be separated from the cause for his removal in the evidence. Motives are relevant to determine whether there was in fact cause for the termination, or whether the asserted reasons for the terminations were simply pretextual. See DeLeonardis v. Credit Agricole Indosuez, 2000 WL 1718543, at *12 (S.D.N.Y. Nov. 15, 2000); see also Bart v. Golub Corporation, 96 F. 4th 566, 578 (2d Cir. 2024) (recognizing that an employer's motivation is relevant to distinguish cause from pretext). Moreover, motive is relevant for the jury to determine the credibility of the testimony of the various witnesses. The extent to which Roche and Freedman benefited from Cyrulnik's termination is a relevant consideration in assessing the credibility of their testimony.

Similarly, the subsequent events that Holcomb recounts are relevant for the jury to determine the veracity of the reasons

10

originally proffered by Roche and Freedman. See, e.g., Holcomb Declaration ¶¶ 50-52, 57. For example, testimony that Roche and Freedman originally contended that Cyrulnik discriminated on the basis of gender or race, and later made statements that Holcomb purports revealed their race- and gender-based biases, is relevant evidence to determine whether the original bases for Cyrulnik's removal were true reasons or simply pretexts. See id. ¶¶ 91, 98-100.

**B.**

On the other hand, many of the ultimate opinions Holcomb purports to offer do not appear to be opinions he drew at the time based on his personal observations, but after-the-fact opinions based on an analysis of all of the evidence reached for purposes of his declaration in this litigation. See, e.g., id. ¶¶ 2, 38, 79. This is not the type of lay opinion testimony that is helpful to the jury and is not based on the witness's perception. See Fed. R. Evid. 701; United States v. Grinage, 390 F.3d 746, 750 (2d Cir. 2004). The jury is capable of drawing its own conclusion from the evidence, including the evidence with respect to the subsequent actions of Roche and Freedman, as witnessed by Holcomb, as to whether there was cause to terminate Cyrulnik. Holcomb's conclusions on those issues exceed the bounds of Rule 701 for lay witness testimony, and the prejudice from that testimony outweighs any relevance for purposes of Rule

11

403. See Fed. R. Evid. 403. Holcomb will therefore not be permitted to testify as to his conclusions that are not based on his contemporaneous personal knowledge or observations.

### C.

Finally, Holcomb's testimony about whether he would have voted for Cyrulnik's discharge had he been aware of everything he subsequently learned about the facts as they existed at the time of his original vote is relevant evidence. For the reasons discussed above, Holcomb's vote was needed for the removal and the relevance of that evidence is not outweighed by the danger of unfair prejudice. See Cuti, 720 F.3d at 358-459. Therefore, if the proper foundation is established, Holcomb is permitted to testify in response to these "what-if-you-had-known" questions. Id. at 459; United States v. Guo, 2024 WL 1862022, at *6-7 (S.D.N.Y. April 29, 2024).

### CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, those arguments are either moot or without merit.

For the reasons explained above, the motion by the Firm and the Counterclaim-Defendants to exclude Holcomb's testimony and evidence related to the Fattaruso litigation is **denied in part**.

Additionally, the motion by the Firm and the Counterclaim-Defendants to exclude Holcomb's "telepath testimony" is **denied in part**.

The Clerk is respectfully directed to close ECF Nos. 560 and 568.

SO ORDERED.

Dated:  New York, New York
        May 20, 2024

                                    /s/ John G. Koeltl
                                    _____
                                    John G. Koeltl
                                    **United States District Judge**

13