UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FREEDMAN NORMAND FRIEDLAND, LLP,

                        Plaintiff,

        - against -

JASON CYRULNIK,

                    Defendant.

---

JASON CYRULNIK,

             Counterclaim-Plaintiff,

        - against -

FREEDMAN NORMAND FRIEDLAND, ET AL.,

             Counterclaim-Defendants.

---

21-cv-1746 (JGK)

<u>MEMORANDUM OPINION
AND ORDER</u>

**JOHN G. KOELTL, DISTRICT JUDGE:**

    The defendant, Jason Cyrulnik ("Cyrulnik"), has filed several motions in limine to exclude witnesses for the plaintiff, Freedman Normand Friedland LLP (the "Firm"), and the counterclaim-defendants - Freedman Normand Friedland LLP, Kyle Roche, Devin Freedman, Amos Friedland, and Edward Normand (the "Counterclaim-Defendants"). These motions include Cyrulnik's motion (1) to exclude David G. Keyko ("Keyko") from testifying about Cyrulnik's conduct in connection with his prior employment as a partner of the Firm, see ECF No. 575; (2) to exclude Dr. Christine Porath, Ph.D ("Dr. Porath") from testifying about whether Cyrulnik demonstrated a pattern of incivility that

created a toxic workplace at the firm, see ECF No. 577; (3) to preclude Ilana Miller ("Miller") from testifying about a phone call in which Cyrulnik allegedly behaved unprofessionally, see ECF No. 581; and (4) to exclude "speculative" testimony about Cyrulnik's alleged discriminatory intent during certain interactions with employees of the Firm, see ECF No. 584.[1]

For their part, the Firm and the Counterclaim-Defendants move (5) to preclude the testimony of Bruce Green ("Green"), Cyrulnik's rebuttal expert who purports to testify about whether Cyrulnik's conduct violates applicable ethical rules. See ECF No. 600.

The Court will address each motion in turn. "Because a ruling on a motion in limine is subject to change as the case unfolds, the ruling constitutes a preliminary determination in preparation for trial." United States v. Adelekan, 2021 WL 4839065, at *2 (S.D.N.Y. Oct. 15, 2021).[2]

---

[1] The Court assumes familiarity with the November 24, 2023 Memorandum Opinion & Order denying in part and granting in part the parties' cross motions for summary judgment, including the Court's extensive description of the facts of this case. See Roche Freedman, LLP v. Cyrulnik, -- F. Supp. 3d. -- 2023 WL 8167154, at *3-4 (S.D.N.Y. Nov. 24, 2023).

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

**A.**

Pursuant to Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 570, 597 (1993), the trial court must perform a gatekeeping function with respect to expert scientific evidence. Before admitting proffered expert scientific testimony, the trial court must first determine that it is both reliable or trustworthy and relevant. Id. at 589-92 & n. 9; see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999) (applying Daubert to all expert testimony). The Federal Rules of Evidence were amended in 2002 in response to Daubert. Federal Rule of Evidence 702 now provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The proponent of the evidence must establish admissibility under Rule 104(a) by a preponderance of the evidence. See Bourjaily v. United States, 483 U.S. 171, 175-76 (1987); see also Colon ex rel. Molina v. BIC USA, Inc., 199 F. Supp. 2d 53, 69 (S.D.N.Y. 2001).

To be admissible, an "expert opinion requires some explanation as to how the expert came to his conclusion and what

methodologies or evidence substantiate that conclusion." Riegel
v. Medtronic, Inc., 451 F.3d 104, 127 (2d Cir. 2006). Expert
testimony is admissible only if – among other requirements – it
"will help the trier of fact to understand the evidence or to
determine a fact in issue[.]" Fed. R. Evid. 702(a).

## 1.

Cyrulnik moves to exclude the opinion of Keyko, the expert
witness offered by the Firm and the Counterclaim-Defendants, who
purports to testify about whether Cyrulnik committed "ethical
breaches" by (a) failing to obtain engagement letters within a
reasonable period of time; (b) engaging in allegedly unlawful
discrimination directed toward Firm employees; (c) engaging in
abusive behavior towards fellow partners and opposing counsel;
(d) making material misrepresentations during the negotiation of
the MOU. See Mastro Decl., ECF No. 602-1 ("Keyko Report").

The parties agree that an expert (like Cyrulnik's rebuttal
expert, Bruce Green) should not be allowed to testify about the
New York or Florida Rules of Professional Conduct and the cases
interpreting them, see United States v. Bilzerian, 926 F.2d
1285, 1294 (2d Cir. 1991) ("As a general rule an expert's
testimony on issues of law is inadmissible[]"), but an expert
such as a Keyko can testify about legal customs and practices to
the extent that testimony is helpful to the jury. See Joffe v.

King & Spalding, LLP, 2019 WL 4673554, at *17 (S.D.N.Y. Sept. 24, 2019).

After reviewing Keyko's report, it is plain that for each of his opinions, he describes Cyrulnik's alleged conduct, cites relevant provisions of the Rules for Professional Conduct, interprets them, and applies them to Cyrulnik's alleged conduct. See, e.g., Keyko Report ¶¶ 31, 37, 40, 53-55, 59. Keyko's opinions are essentially opinions of law, on which the Court should instruct the jury. See Joffe, 2019 WL 4673554, at *17 (recognizing that an expert's testimony that is "premised on the expert's interpretation of judicial precedent . . . would impinge on the Court's obligation to instruct the jury on the law[]"); United States v. Avenatti, 2022 WL 103298, at *2 (S.D.N.Y. Jan. 11, 2022) (excluding a legal ethics expert because "[t]o the extent that legal ethics rules generally . . . are relevant to the jury's consideration of the charges against [the defendant] in this case, the proper course is for the Court to give appropriate instructions to the jury, not for an expert to testify.").

To the extent Keyko minimally refers to legal customs, his opinions are not helpful to the jury and any relevance is outweighed by the danger of confusion, waste of time, and unfair prejudice pursuant to Federal Rule of Evidence 403. See United States v. Gatto, 986 F.3d 104, 117 (2d Cir. 2021) (applying Rule

5

403 to find that "[e]ven if we assume [the defendant's] expert's testimony would have been helpful, it was substantially more prejudicial than probative."). Cyrulnik's motion to exclude Keyko's testimony and expert report is therefore **granted.**

2.

Cyrulnik next moves to exclude the opinions and testimony of Dr. Porath, who is proffered as an expert on "incivility," and proposes to testify regarding how incivility can cause a toxic workplace. See Kasowitz Decl., ECF No. 595-25 ("Porath Report"). Among other things, Dr. Porath purports to testify on whether the evidence she reviewed demonstrates that Cyrulnik demonstrated a pattern of incivility and created a toxic workplace while he was at the Firm. See id. ¶ 9.

Dr. Porath's testimony is not helpful to the jury as required by Federal Rule of Evidence 702, and any relevance is outweighed by waste of time and unfair prejudice. See Fed. R. Evid. 403; Fed. R. Evid. 702.

It is well-established that "[o]ne of the fundamental requirements of Rule 702 is that the proposed testimony assist the trier of fact to understand the evidence or to determine a fact in issue." In re Rezulin Prod. Liab. Litig., 309 F. Supp. 2d 531, 544 (S.D.N.Y. 2004). Indeed, "[t]his helpfulness requirement is akin to the relevance requirement of Rule 401, which is applicable to all proffered evidence, but goes beyond

6

mere relevance because it also requires expert testimony to have a valid connection to the pertinent inquiry." Id.

In this case, Dr. Porath purports to instruct the jury whether Cyrulnik's actions are "uncivil." See Porath Report ¶ 9. But the jury members do not need an expert to tell them what actions meet the subjective definition of "uncivil." See Mastro Decl., ECF No. 638-5 at 16, 18, 21; see Anderson News, LLC v. American Media, Inc., 2015 WL 5003528, at *2 (S.D.N.Y. Aug. 20, 2015) (excluding expert testimony when the "jury is more than capable of comprehending the primary facts and drawing conclusions from this evidence, without expert assistance.").

It is not helpful for an expert to testify regarding the adverse consequences of incivility if they were not perceived by the members of the Firm who made the decision to remove Cyrulnik. This is simply an opportunity for an expert to answer an extensive hypothetical summarizing the plaintiff's case, name it incivility, and opine that it is adverse to the workplace.

Moreover, any probative value of Dr. Porath's testimony is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issue, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. A material question of fact in this case is whether Cyrulnik was terminated without cause, not whether Cyrulnik engaged in any "uncivil" conduct.

7

Dr. Porath's testimony regarding any incivility would confuse
the issue before the jury, result in unfair prejudice, and
needlessly waste the jury's time. Therefore, Cyrulnik's motion
to exclude the testimony of Dr. Porath is **granted.**

**3.**

Cyrulnik moves to exclude the testimony of Ilana Miller, a
Boies Schiller partner and the deputy general counsel of Boies
Schiller, the law firm from which all six of the MOU's
signatories left to form what is now known as Freedman Normand
Friedland LLP. See Mastro, Decl., ECF No. 638-1 at 18 ("Miller
Deposition"). In March 2020, Cyrulnik had a conversation with
Miller in which he allegedly yelled at her in a "very
unprofessional way," and she never spoke with him again after
that experience. See Miller Deposition at 28, 49, 166. After
Miller read about the lawsuit filed against Cyrulnik, Miller
reached out to the Firm to advise the Firm about her experience.
See id. at 27

Cyrulnik now moves to exclude this evidence as
impermissible propensity evidence, suggesting to the jury that
he has the propensity to yell at his colleagues and therefore
that there was cause for his removal. See ECF No. 582 at 4-5.
The Firm and the Counterclaim-Defendants acknowledge that Miller
did not report Cyrulnik's conduct to the Firm before Cyrulnik's
removal, and that the Firm was not otherwise apprised of

8

Cyrulnik's conduct, until after Cyrulnik's termination. But, "under New York law, when a party terminates a contract with an express 'for cause' termination provision, evidence discovered after the alleged breach can be used by the breaching party to justify its termination." Daytree at Cortland Square, Inc. v. Walsh, 2022 WL 2345820, at *3 (2d Cir. June 29, 2022) (quoting Rockland Exposition, Inc. v. All. Of Auto. Serv. Providers, 894 F. Supp. 2d 288, 342 n.49 (S.D.N.Y. 2012) (collecting cases)).

Accordingly, Miller's testimony is admissible as evidence of cause for Cyrulnik's removal. The MOU at issue contains an express "for cause" termination provision, instructing that a "Founding Partner cannot be removed without cause." See MOU § VI(G). And, under New York law, "a party may terminate a contract for cause, and gamble that its estimate of the situation will be justified when all the facts are proven." Kerns, Inc. v. Wella Corp., 114 F.3d 566, 570 (6th Cir. 1997) (applying New York law). Based on this principle, therefore, the Firm and the Counterclaim-Defendant can rely on Miller's testimony to justify Cyrulnik's termination.

In addition, the Firm and the Counterclaim-Defendants are correct that Miller's testimony can also be admitted as impeachment evidence, if Cyrulnik testifies that he never yelled at a business associate. See e.g., ECF No. 72 ¶ 75; ECF No. 510 ¶ 70; see United States v. Garcia, 900 F.2d 571, 575 (2d Cir.

9

1990) (quoting United States v. Cuadrado, 413 F.2d 633, 635 (2d Cir. 1969)).

**4.**

Cyrulnik next moves to exclude what he refers to as "speculative, opinion" testimony, see ECF No. 585, which includes certain testimony by associates at Freedman Normand Friedland, LLP. In particular, he asserts that associate Jordana Haviv ("Haviv") should not be permitted to testify about her opinion that certain actions by Cyrulnik towards her were motivated by gender discrimination, see id. at 3-4; that Richard Cipolla ("Cipolla") should not be permitted to testify that certain actions that he observed by Cyrulnik toward Haviv were motivated by Haviv's gender, see id. at 4; and finally, that Kelvin Goode ("Goode") should not be permitted to testify that certain actions by Cyrulnik were motivated by Cyrulnik's racial animus, see id. at 3-4.

For each of these proffered witnesses, Cyrulnik does not appear to dispute that each can testify about what they personally told the partners of the Firm about the incidents they observed, including their conclusions about Cyrulnik's motivations, because these reports would be admissible data on which the Firm could reach its conclusion as to whether there was cause to discharge Cyrulnik. See id. at 5. The motion is directed solely to the testimony by the three associates about

their opinions as to what they thought the actions they observed indicated about Cyrulnik's motivations.

Cyrulnik's motion to preclude this testimony is **denied**. The associates should be able to testify about what they observed and what that indicated to them about Cyrulnik's motivations, particularly when they conveyed these opinions to the Firm's partners and their observations were part of the input on which the Firm based its determination as to whether there was cause for Cyrulnik's termination. See United States v. Cuti, 720 F.3d 453, 457-58 (2d Cir. 2013) (rejecting Rule 701 argument on the grounds that the witnesses' testimony conveyed a fact, not opinion); United States v. Thornhill, 667 F. App'x 310, 311 (2d Cir. 2016) (rejecting Rule 701 challenge when the testimony was based on "first-hand observations" and "informed by [the witness's] personal life experiences"); Shapiro v. City of N.Y., 2015 WL 4002437, at *9 (S.D.N.Y. July 1, 2015) (admitting testimony that was "ground[ed]" in witness's "own observations about personnel decisions"), aff'd, 649 F. App'x 71 (2d Cir. 2016); Chisholm v. Sloan-Kettering, 2011 WL 2015526, at *5 (S.D.N.Y. May 13, 2011) (determining that witnesses could "testify regarding discrimination insofar as they complained to [the plaintiff] and those complaints establish[ed] a good-faith basis for [the plaintiff's] complaints of discrimination to management").

11

While Cyrulnik objects that these conclusions should be excluded under Federal Rule of Evidence 403, there is no basis for this objection. The probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403. The opinions of these associates has some relevance to the understanding of the Firm as to whether there was cause to remove Cyrulnik, and the probative value of those opinions is not substantially outweighed by any danger of unfair prejudice, particularly when those very opinions are admissible when they were conveyed to the partners who were making the decision as to whether there was cause for Cyrulnik's removal. The motion to exclude the opinions of these three associates is therefore **denied**.

**5.**

Finally, the Firm and the Counterclaim-Defendants move to preclude Cyrulnik from introducing the testimony of Bruce Green, an expert on ethics, from offering rebuttal testimony to the expert testimony of David Keyko. See ECF Nos. 600, 601. Green proposes to testify in opposition to two aspects of Keyko's testimony. See Mastro Decl., ECF No. 602-2 ("Green Report"). Green would testify that, under the circumstances of this case, the failure to enter into new retainer agreements with certain clients did not violate any Rule of Professional Conduct and that Cyrulnik's receipt of his alleged share of certain Tokens

did not violate any Rule of Professional Conduct. <u>See, e.g.</u>,
Green Report ¶ 2.

Cyrulnik opposes the motion by the Firm and the
Counterclaim-Defendants, but concedes that "if the Court
excludes Keyko from testifying . . . [Green], who is being
offered to testify only as a rebuttal witness in the event Keyko
testifies, will not testify, thereby rending this motion moot."
<u>See</u> ECF No. 632 at 2. For the reasons discussed above, this
Court will grant Cyrulnik's motion to exclude Keyko's testimony,
and therefore the motion to preclude Green's rebuttal testimony
is **denied as moot.**

In any event, this Court would preclude Green's opinion
testimony on the merits. Because the testimony about possible
violations of the Rules of Professional Conduct is a matter of
law, as to which the Court should instruct the jury, <u>see</u> <u>Joffe</u>,
2019 WL 4673554, at *17; <u>Avenatti</u>, 2022 WL 103298, at *2, Green
should not be permitted to testify on this subject for
substantially the same reasons that Keyko is not permitted to
testify on these subjects.

## CONCLUSION

The Court has considered all of the parties' arguments. To
the extent not specifically addressed above, those arguments are
either moot or without merit.

For the reasons explained above, Cyrulnik's motion to exclude the opinions and testimony of David Keyko is **granted**.

Cyrulnik's motion to exclude the opinions and testimony of Dr. Christine Porath is **granted.**

Cyrulnik's motion to exclude the testimony of Ilana Miller is **denied.**

Cyrulnik's motion to exclude speculative, opinion testimony is **denied.**

The motion by the Firm and the Counterclaim-Defendants to exclude the testimony of Bruce Green is **denied as moot.**

The Clerk is respectfully directed to close ECF Nos. 575, 577, 581, 584, and 600.

**SO ORDERED.**

Dated:     **New York, New York**
           **May 20, 2024**

                              **John G. Koeltl**
                    **United States District Judge**

14